UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-CV-23074-BLOOM/OTAZO-REYES

OCTAVIO COLLADO,

      Plaintiff,

vs.

450 NORTH RIVER DRIVE, LLC,
D/B/A KIKI ON THE RIVER,
RJ RIVER, LLC AND
ROMAN JONES,

      Defendants.

_____/

## PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION

Plaintiff, Octavio Collado, requests this Court to conditionally certify Count I of this case as a collective action against Defendants, 450 North River Drive, LLC d/b/a Kiki on the River, RJ River, LLC and Roman Jones (collectively "Kiki on the River"), and to permit him to send notice in the form and manner authorized by the Court to all other similarly situated current and former tipped captains, servers, and bussers who worked at Kiki on the River since September 23, 2019, and to inform them of their opt-in rights pursuant to 29 U.S.C. §216(b). In support, Mr. Collado states as follows:

## I.  NATURE OF RELIEF SOUGHT

A.    An Order granting conditional certification of a Collective Action under §216(b) of the Fair Labor Standards Act for the proposed Putative Class defined as follows in Count I of the Amended Complaint:

> All persons who worked, who were employed by, or who engaged as captains, servers, assistants, and/or bussers by 450 North River Drive, LLC, RJ River, LLC, and Roman Jones, or who were otherwise employed, hired, or worked at Kiki On The River any time from September 23, 2019, and up through the rendition of a judgment in this matter.

B.    An Order appointing Mr. Collado as the representative of the Putative Class with authority to appear at any mediation/settlement conference for and to bind the Putative Class.

C.    An Order requiring that within 10 days, Defendants format and produce electronically an Excel spreadsheet that contains for each member of the Putative Class one row containing in each column each person's full name, last known home address, cellular telephone number, and email address to facilitate the preparation and sending of the Notice;

D.    An Order permitting Mr. Collado's counsel to send a Court-Approved Notice by email, text message, and by U.S. Mail to all members of the Putative Class about their rights to opt into this collective action by filing a Consent to Join and to call/text each to ensure that they received the Notice and the Consent to Join;

E.    An Order permitting Mr. Collado's counsel to send a Court-Approved Reminder Notice by email and by U.S. Mail to all Putative Class members and to call/text each to ensure that they received the Reminder Notice; and

F.    An Order requiring Defendants to post a notice in their break room for the entire notice period and to provide a copy of the Court-Approved Notice to all Putative Class members in the next paycheck/paystub to be issued to the members of the Putative Class presently employed by Defendants.

## II.  INTRODUCTION

Plaintiff, Octavio Collado, originally brought this case pursuant to 29 U.S.C. §216(b) for himself and other similarly situated current and former captains, servers, and/or bussers of Defendants, who operate as the "Kiki on the River" restaurant, to address Defendants' failure to properly pay them the tips and/or overtips that they earned in violation of 29 U.S.C. §203(m)(2)(B). [ECF No. 1.] Mr. Collado originally filed this case under only the FLSA, but then filed an Amended Complaint to not only include a claim to recover the tips and/or overtips pursuant to §203(m)(2)(B) of the FLSA in Count I, but also to include two claims pursuant to Florida law in Counts II and III. [ECF Nos. 40.] Mr. Collado now requests for the Court to conditionally certify this case as a collective action for Count I and to authorize him to send notice of this lawsuit and a Consent to Join form to each member of the Putative Class – those similarly situated captains, servers, and bussers who worked for Defendants at Kiki on the River from September 23, 2019, to the present – pursuant to 29 U.S.C. §216(b) of the Fair Labor Standards Act ("FLSA").

Mr. Collado satisfies the minimal threshold for conditionally certifying Count I as a FLSA collective action for notice and discovery. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001). The allegations in Count I of the Amended Complaint, coupled with the Declarations of Octavio Collado and Augusto Guerra, demonstrate that Defendants subjected Mr. Collado and the Putative Class to a uniformly applicable compensation policy that deprived them of the tips and/or overtips they earned in violation of the FLSA. The Declarations (Exhibits A & B), coupled with the Consent to Join forms filed herein [ECF Nos. 4, 5, 7, 15, 22, 25, 38, 41], confirm that others "similarly-situated" desire to join this case, will benefit from the Court's supervision, and will benefit from the sending of Notice to each member of the Putative Class pursuant to 29 U.S.C. §216(b). The Putative Class is readily identifiable and sufficiently numerous, and their claims are readily calculable, further supporting the assemblage of a Collective Action.

## III.  PROCEDURAL HISTORY

Mr. Collado filed this lawsuit on September 23, 2022 [ECF No. 1]. Since then, seven (7) other tipped former employees of Defendants who worked at Kiki on the River joined this case as Opt-In Plaintiffs. [ECF Nos. 4, 7, 15, 22, 25, 38, 41]. Mr. Collado served a letter on Defendants pursuant to the Florida Minimum Wage Act dated November 10, 2022, in preparation for amending the Complaint to include claims pursuant to Florida law, to which Defendants did not respond. [ECF No. 40, ¶7.] Defendants filed their respective Answers and Affirmative Defenses to

the initial Complaint on November 17-18, 2022. [ECF Nos. 27, 28]. On December 7, 2022, Mr. Collado filed an Amended Complaint wherein he included one collective action claim pursuant to the FLSA at Count I and putative class claims pursuant to the Florida Minimum Wage Act at Count II and pursuant to Florida common law for wages at Count III. [ECF No. 40.] Mr. Collado now seeks to assemble a collective action for Count I, his claim pursuant to the FLSA, for unpaid tips, liquidated damages, attorneys' fees, and costs pursuant to 29 U.S.C. §§203(m)(2)(B) and 216(b).

## IV.  RELEVANT FACTS

**The Named Plaintiff.** Defendants employed Mr. Collado as a server and as a captain from approximately August 7, 2017, to January 2, 2022. (Declaration of Collado as Exhibit "A"); *see also* [ECF No. 40]. Mr. Collado attests that Kiki on the River did not pay him all the tips (overtips) that he earned. (Exhibit "A".) Mr. Collado attests that he attended to patrons at tables, that he has personal knowledge about patrons at Kiki on the River leaving discretionary tips (overtips) above the mandatory service charge at the time of dining, and that other tables/patrons would be allowed to accumulate bills into "house accounts" which, when settled, also would result in tips (overtips). *Id.* Mr. Collado then attests that Kiki on the River would then aggregate (or pool) the cash and credit card tips (overtips) collected but would not properly distribute them. *Id.* Through this lawsuit, Mr. Collado seeks to recover the overtips that Defendants either kept for themselves or improperly distributed, as well as liquidated damages, attorneys' fees and costs for himself and the other similarly situated tipped employees at Kiki on the River.

**The Seven (7) Opt-In Plaintiffs.** After Mr. Collado filed this lawsuit, seven (7) Opt-In Plaintiffs who also worked for Defendants in the capacity of tipped employees thus far joined this lawsuit. [ECF Nos. 4, 7, 15, 22, 25, 38, 41]. One of the Opt-In Plaintiffs is Augusto Guerra. Mr. Guerra provided a Declaration in which he attests to having also worked as a server and captain, to having personal knowledge of the receiving significant tips (overtips) he received and provided examples of when he received overtips of $10,000 and $30,000 while working at Kiki on the River. (Exhibit "B".) Like Mr. Collado, Mr. Guerra also attests to Defendants taking control of and distributing the cash and credit card tips, and that his paychecks did not contain all the (over)tips he earned. *Id.* Mr. Guerra attests that over 50 other people could join this lawsuit and that without the Court's involvement, current employees may not join out of fear of retaliation. *Id.*

**The Defendants.** Defendant, 450 North River Drive, LLC, is a limited liability company that operates a restaurant in Miami, Florida, known as "Kiki on the River" and admits to having

employed Mr. Collado. [*See* ECF No. 27 at ¶¶2, 7]. Defendant, RJ River, LLC, is identified as the managing member of 450 North River Drive, LLC. (Exhibit "C".) Defendant, Roman Jones, admits that he "was and is an owner of Kiki. [*See* ECF No. 27 at ¶8.] Mr. Jones is the "face" of Kiki on the River, and he holds himself out as the founder of Kiki on the River, Mokai, Baby Jane, and                  other                  service                  establishments.                  *See* https://kikiontheriver.com/about.html#:~:text=INSPIRED%20BY%20LIFE%20ON%20THE%20MIAMI%20RIVER&text=Kiki%20is%20a%20passion%20project,Lee%20Lyon%20and%20Mark%20Lehmkuhl. ("Kiki is a passion project by Opium Group founder Roman Jones, Aris Nanos, Lee Lyon and Mark Lehmkuhl.")

**Defendants' Pay Practices.** Mr. Collado alleges that he and the Defendants' other tipped employees (captains, servers, and bussers) at Kiki on the River did not receive all the tips (overtips) they earned. [ECF No. 40]. Mr. Collado attests that he served customers who left significant overtips. (Exhibit "A".) He goes on to explain that Defendants collected all the cash and credit card tips but then failed to properly distribute all the tips collected from patrons in the weekly pay he received. *Id.* Mr. Guerra likewise attests that after he had customers at Kiki on the River leave overtips, including for $10,000 and $30,000, he did not see these tips reflected on his weekly pay stubs. (Exhibit "B".) The Defendants' records will confirm the amount that customers left in tips and/or overtips, the amount paid to the tipped employees, and the "missing" tips. Defendants are required to make and maintain records that would enable Mr. Collado, the Court, and the jury to perform the necessary accounting to track the tips by 29 C.F.R. §§516.2 and 516.28. Therefore*,* Defendants' uniform pay practices at issue in Count I are appropriately litigated in a collective action setting.

## V.  THE LAW

Congress enacted the FLSA in 1938 to ensure that every employee receives "a fair day's pay for a fair day's work." *A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (quoting address to Congress by Franklyn D. Roosevelt in 1937). The FLSA "establishes federal minimum-wage, maximum hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527 (2013). Mr. Collado now requests that the Court permit him to send notice of this lawsuit to those similarly situated to him so that they can join in this lawsuit and recover the tips, liquidated damages, attorneys' fees and costs owed to them based on the Defendants' systemic violation of 26 U.S.C. §203(m)(2)(B) in a collective action pursuant to 29 U.S. C. §216(b).

### A.     <u>All Tips Belong To Tipped Employees.</u>

The FLSA precluded employers from taking any part of the tips earned by tipped employees. 29 U.S.C. §203(m). "Tipped employees" are defined as employees engaged in occupations in which they "customarily and regularly" receive more than $30.00 per month in tips. 29 U.S.C. § 203(t). Courts interpreted the FLSA as precluding employers from sharing the tips their employees received from customers.

> Title 29 C.F.R. § 531.52 explains that tips "are the property of the employee whether or not the employer has taken a tip credit" and that an employer "is prohibited from using an employee's tips, whether or not it has taken a tip credit, for any reason other than that which is statutorily permitted in section 3(m): As a credit against its minimum wage obligations to the employee, or in furtherance of a valid tip pool."

*Kubiak v. S.W. Cowboy, Inc.*, 164 F. Supp. 3d 1344, 1355 (M.D. Fla. 2016); *Perez v. Palermo Seafood, Inc.*, 548 F. Supp. 2d 1340, 1347-48 (S.D. Fla. 2008) *aff'd*, 302 Fed. Appx. 905(11th Cir. 2008) (all tips received by the employees must be retained by them); *Department of Labor Fact Sheet #15*: Tipped Employees Under the Fair Labor Standards Act (FLSA), Rev. March 2011. As The Court recognized in *Bernal v. Vankar Enterprises, Inc.*, "[C]ourts have found violations of section 203(m) (and therefore of federal minimum wage laws) even where the employees were, in fact, paid the minimum wage once their tips were taken into account." 579 F. Supp. 2d 804, 808 (W.D. Tex. 2008) (citing *Hai Ming Lu v. Jing Fong Rest., Inc.*, 503 F. Supp. 2d 706, 711 (S.D.N.Y. 2007).)

Congress amended 29 U.S.C. §203(m) in April of 2018 to specifically codify the prohibition against employers retaining any portion of the tips (or overtips) earned by their employees at 29 U.S.C. §203(m)(ii)(B), which states as follows:

> **An employer may not keep tips received by its employees for any purposes**, including allowing managers or supervisors to keep any portion of employees' tips, **regardless of whether or not the employer takes a tip credit**. [*Emphasis added.*]

At the same time, Congress also amended 29 U.S.C. §216(b) to specify the damages recoverable when an employer improperly keeps or distributes tips:

> Any employer who violates section 203(m)(2)(B) of this title shall be liable to the employee or employees affected **in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages**. An action to recover [for such] liability ... may be maintained against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees **for and in behalf of himself or themselves and other employees similarly situated**. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. [*Emphasis added.*]

*Crowell v. M St. Entm't, LLC*, 2022 WL 3438074, at \*4 (M.D. Tenn. Aug. 16, 2022) (conditionally certifying collective action). Since April of 2018, the FLSA has specifically allowed affected employees to recover as damages the tips employers improperly retain or distribute, regardless of whether employers pay more than the applicable minimum wage or take a tip credit. Tips are treated the same whether they are used to satisfy any "tip credit" taken or are above the "tip credit". *Nail v. Shipp*, 2019 WL 3719397, at \*8 (S.D. Ala. Aug. 6, 2019) ("tips [in excess of the tip credit] are not payments made by the employer to the employee as remuneration for employment within the meaning of the Act.") (*quoting* 29 C.F.R. §531.60).

**B.      Collective Actions Authorized For Tip Confiscations.**

The FLSA authorizes an employee to bring an action on behalf of himself/herself and others similarly situated to recover "all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages… for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. §216(b). "Congress' purpose in authorizing § 216(b) class actions was to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer." *Prickett v. DeKalb Cnty.*, 349 F.3d 1294, 1297 (11th Cir. 2003). Certification under 216(b) consists of a first-stage, or "notice stage," certification and a possible second-stage, or "decertification," determination afterwards. *Cameron-Grant v. Maxim Healthcare Services, Inc.*, 347 F.3d 1240, 1243 (11th Cir. 2003). Courts routinely certify collective actions involving tip pool violations. *See Rosell v. VMSB, LLC*, 2020 WL 7767879, at \*1 (S.D. Fla. July 7, 2020); and *Compere v. Nusret Miami, LLC*, 391 F. Supp. 3d 1197 (S.D. Fla. 2019). Moreover, §216(b) specifically contemplates collective action treatment of tip confiscation claims involving §203(m)(2)(B).)

**VI.   ARGUMENT FOR CONDITIONAL CERTIFICATION**

This case is properly certified as a collective action due to the (over)tip confiscation practice at issue, the demonstrated interest by seven (7) others similarly situated to Mr. Collado, the common defenses, the uniform pay practices at issue, and the policy reasons supporting conditional certification. The burden on Mr. Collado is "not heavy", and he can meet it through "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996); *Hipp*, 252 F.3d at 1218-19. As set forth in more detail below, conditional certification of his FLSA tip confiscation claim at Count I is appropriate.

The issue in Count I is whether Defendants violated the FLSA by improperly retaining or distributing the tips (overtips) they collected from customers in violation of 29 U.S.C. §302(m)(2)(B). Once Mr. Collado establishes that Defendants violated §203(m)(2)(B), he will have established that Defendants also violated §203(m)(2)(B) for the other similarly situated tipped employees. Mr. Collado will rely on the same documentary and testimonial evidence to establish Defendants' liability under §216(b) for violating §203(m)(2)(B), at which point the damages to each member of the Putative Class becomes a function of math. Therefore, this case will be a prototypical FLSA collective action in which proving Defendants are liable to Mr. Collado also proves that they are liable to the Putative Class.

### A.    What Is Not Presently At Issue.

At this stage of the proceedings, the Court properly abstains from evaluating the merits of Mr. Collado's claim at Count I, from inquiring into factual disputes, or from evaluating the credibility of the evidence in analyzing whether Mr. Collado and others are similarly situated. *Wright v. Waste Pro USA, Inc.*, 2020 WL 8641581, at *3 (S.D. Fla. Dec. 22, 2020), *reconsideration denied*, 2021 WL 1290299 (S.D. Fla. Apr. 6, 2021) (collecting cases). "At the notice stage, courts ordinarily do not engage in credibility determinations." *Bennett v. Hayes Robertson Group, Inc.*, 880 F. Supp. 2d 1270, 1284 (S.D. Fla. 2012) (quoting *Reyes v. AT & T Corp.*, 801 F. Supp. 2d 1350, 1358 (S.D. Fla. 2011) ("The Court's role is in keeping with the practical approach which shuns credibility battles at the first stage.")

### B.    Mr. Collado Satisfies The *Minimal* Burden For Certification.

The first step in the collective action process – the Notice Stage – involves the Court conditionally certifying the collective action and authorizing Mr. Collado, through counsel, to send to others similarly situated to him the designated notice about the pendency of this lawsuit and the right to opt-in so that they are informed of their rights to opt into the action and, for current employees, of the right to be free from retaliation. *See Hipp*, 252 F.3d at 1219; *see also Grayson v. Kmart*, 79 F.3d 1086, 1097 (11th Cir. 1996). The second step of the two-tiered procedure generally occurs after the close of discovery, usually on a defendant's motion for decertification, when the Court has ample information and to make a factual determination on the similarly situated question. Therefore, Mr. Collado will focus on Stage I considerations at this time.

At this preliminary Stage I, the Court's determination is "usually based only on the pleadings and any affidavits which have been submitted." *Hipp*, 252 F.3d at 1218. Because of the

minimal evidence available at this stage and the lack of discovery, "this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Id.* (internal citations omitted).

To assemble a collective action under the FLSA, "an employee need only show that he is suing his employer for himself and on behalf of other employees 'similarly situated.'" *Grayson*, 79 F.3d at 1096; *Aguirre v. Aventura's Finest Hand Car Wash at Gulfstream Park, Inc.*, 2014 WL 3721360 (S.D. Fla. July 25, 2014). Mr. Collado satisfies the Notice Stage considerations by showing that others who held positions that were similar, but not identical, to him joined this lawsuit. Mr. Collado must also provide evidence that co-workers were similarly affected by an improper company-wide pay policy in violation of the FLSA. *See Guerra v. Big Johnson Concrete Pumping, Inc.*, 2006 WL 2290512, at *2 (S.D. Fla. May 17, 2006) ("The Defendant complains about the lack of limits-such as a specific job title, job duty, or geographic location-placed on the class definition, but its objection ignores the nature of the Plaintiff's allegation. What the Plaintiff alleges is a company-wide pay policy with the uniform result that the final pay of all laborers is lower than it should. While each laborer may have worked different hours of overtime or at different locations, they were all similarly affected."). Consequently, Mr. Collado satisfies each of the foregoing elements, making the assemblage of a collective action proper.

### 1.    *Interest by Mr. Collado's former co-workers is more than sufficient for conditional certification.*

With respect to the first factor, *i.e.*, whether other similarly situated employees desire to opt into the lawsuit, the seven (7) Consents to Join filed herein satisfies this standard. [ECF Nos. 4, 7, 15, 22, 25, 38, 41.] Plus, Mr. Collado offers his Declaration and the Declaration of Augusto Guerra, whom both worked at Kiki on the River, received tips (overtips), and attest that Defendants failed to properly distribute all the tips that they earned. (Exhibits "A" and "B".) Conditional certification is proper when a Court is presented with testimony from one other person, besides the named plaintiff, who desires to opt into a collective action. *See Wynder v. Applied Card Systems, Inc.*, 2009 WL 3255585 (S.D. Fla. 2009) (granting conditional certification of an FLSA collective action based upon two affidavits – one from the named plaintiff and one from an opt-in plaintiff); *see also Guerra, supra*, at *4 ("the Affidavit of Mr. Vidales shows that at least one other co-worker desires to join the suit, thereby raising the Plaintiff's contention beyond one of pure speculation."). Sufficient interest in this suit by seven (7) former employees and the Declaration of

Mr. Guerra satisfies the "sufficient interest" standard.  [ECF Nos. 4, 7, 15, 22, 25, 38, 41.]

> **2.    *Numerous other employees are similarly situated to Mr. Collado with respect to their job requirements and pay provisions.***

Mr. Collado and the opt-in plaintiffs are similarly situated, also favoring conditional certification. District courts consider the following five factors to determine that members of a collective are similarly situated: (1) whether the plaintiffs held the same job title; (2) whether the alleged violations occurred during the same time period; (4) whether the plaintiffs were subjected to the same policies and practices, and whether these policies and practices were established in the same manner and by the same decision maker; and (5) the degree to which the actions constituting the violations are similar. *Didoni v. Columbus Rest., LLC*, 327 F.R.D. 475, 480 (S.D. Fla. 2018). No single factor is dispositive.

Mr. Collado need only show that his position was similar, but not identical, to the positions held by the putative class members at this early stage of the certification process. *See Smith v. Tradesmen Intern., Inc.* at 1372. "So long as the tasks are similar, not identical, class treatment is appropriate." *Pendlebury v. Starbucks Coffee Co.*, 518 F. Supp. 2d 1345, 1355 (S.D. Fla. 2007) (citing *Anderson v. Cagles, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007)).

Mr. Collado satisfies this standard with the allegations in the Complaint, coupled with his Declaration and the Declarations from his former co-worker. Regarding the Court's analysis, Mr. Collado and Mr. Guerra declare that they: (1) worked at Kiki on the River at its restaurant (in South Florida); (2) during the past three years (3) interacted with customers by attending to them at their tables, (4) that customers left tips in addition to the mandatory service charges (overtips), and (5) received some but not all of the tips (overtips) that their customers intended for them to receive, thereby suffering the same FLSA violations of not receiving the tips they earned. (Exhibits "A" and "B"). Mr. Collado and his co-workers performed similar job duties, but with different titles. *Id.*

"Plaintiffs at the conditional-certification stage are therefore not required to demonstrate a unified, explicit scheme of FLSA violations, but rather must show only that they are similarly situated with respect to general workplace policies and practices." *Alequin v. Darden Restaurants, Inc.*, 2013 WL 3939373, at *6 (S.D. Fla. July 12, 2013). Satisfying this standard, Mr. Collado and Mr. Guerra attest that although they served customers at Kiki on the River who left sizeable gratuities – upwards of $10,000 – but Defendants confiscated those gratuities. (Exhibits "A" and "B"). Mr.

Collado and his co-workers did not see their paychecks reflect gratuities beyond what they regularly received. Put another way, a customer would leave a gratuity that should register as an earthquake, but their paychecks did not detect any difference. (Exhibits "A" and "B").

Questions of law or fact common to Mr. Collado, the Opt-In Plaintiffs, and Defendants' other tipped employees predominate in this case. Mr. Collado's claims are typical of the claims of Defendants' other captains, servers, and bussers employed at Kiki on the River since September 23, 2019. Mr. Collado and the Putative Class also have significant, common issues that predominate over any individualized inquiries, including:

1) Whether Defendants are subject to the provisions of the FLSA;

2) Whether Defendants received discretionary gratuities (tips/overtips) from customers;

3) Whether Defendants improperly confiscated any of the tips (overtips);

4) Whether Defendants improperly distributed any of tips (overtips) to supervisory or managerial employees who were not entitled to receive tips;

5) The amount of the tips (overtips) that Defendants either improperly confiscated or distributed during each workweek at issue;

6) Who received the tips (overtips) that Defendants either improperly confiscated or distributed during each workweek at issue;

7) Whether Defendants had a good faith and reasonable belief for not paying all the tips (overtips) due to Mr. Collado, the Opt-In Plaintiffs, and the Putative Class; and

8) Whether Mr. Collado, the Opt-In Plaintiffs, and the Putative Class are entitled to recover liquidated damages in an amount equal to the unpaid/underpaid tips.

Although subtle differences between the claims to be made by each member of the Putative Class employee may exist, these minute differences do not preclude the Court conditionally certifying the Putative Class.[1] *Pena v. Handy Wash, Inc.*, 28 F. Supp. 3d 1289 (S.D. Fla. 2014)

---

[1] As the Court recognized in *Vondriska v. Premier Mortg. Funding, Inc.*, 564 F. Supp. 2d 1330, 1335 (M.D. Fla. 2007), "[V]ariations in specific duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered at [the notice] stage." Quoting *Scott v. Heartland Home Finance, Inc.*, 2006 WL 1209813, *3 (N.D. Ga. May 3, 2006) (granting conditional certification to loan officers despite allegations their duties differed among branches); citing *Pendlebury v. Starbucks Coffee Co.*, 2005 WL 84500 (S.D. Fla. Jan. 3, 2005) (granting conditional certification to store managers classified as exempt despite some difference in job duties).

(Conditionally certifying class of drivers with subtle differences who claimed to have been denied overtime wages).

C.     **More People Will Join The Lawsuit Once Notified.**

The procedural history of this case confirms that other tipped employees similarly situated to Mr. Collado will join his lawsuit once they receive notice of it. Without the Court authorizing notice, seven (7) former employees already joined this lawsuit. The Declarations offered by Mr. Collado and Mr. Guerra provide the Court with sufficient record evidence that others similarly situated will join this lawsuit once notified. (Exhibits "A" and "B"); *compare Didoni v. Columbus Rest., LLC*, 327 F.R.D. 475, 480 (S.D. Fla. 2018) (quoting *Bennett v. Hayes Robertson Group, Inc.*, 880 F. Supp. 2d 1270, 1283 (S.D. Fla. 2012).) The Declarations provide the evidence that over 50 similarly situated persons who worked at Kiki on the River as captains, servers, and bussers, that all were subjected to the same pay practices, and that other servers, captains, and bussers will likely join this lawsuit once they are notified about it.

D.     **Preliminary Certification Is Efficient.**

Conditional certification will serve the broad remedial purpose behind the FLSA by notifying members of the Putative Class who may not otherwise be aware of their rights. *See Hoffman-LaRoche, Inc.*, 493 U.S. at 170-71 (noting that collective actions allow plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources," and preserve judicial economy "by efficient resolution in one proceeding of common issues of law and fact arising from the same discriminatory activity.") In *Hoffman-La Roche, Inc.*, the United States Supreme Court ruled that trial courts not only have authority to compel Defendant-employers to provide the names and addresses of potential Plaintiffs through the pre-trial discovery process, but that this authority also included the ability to require the sending of court-authorized consent forms to members of the Putative Class. *See id.* District Courts have discretion to take the appropriate action in FLSA cases such as this one to implement the purpose behind 29 U.S.C. §216(b) by facilitating notice to potential plaintiffs. *See id* at 486. This authority arises from the Court's broad discretionary power to manage the process of joining multiple parties in an orderly manner. *Id.* Court-supervised notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cut-off dates to expedite the disposition of the action. *Id.* at 487. Additionally, the benefits of the collective action provisions of 29 U.S.C. §216(b) "depend on employees receiving accurate

and timely notice concerning the pendency of the collective action so they can make informed decisions about whether to participate." *Id*. at 486.

> "Where discovery has not been completed, the typical result is that the motion is granted." *Cameron–Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 (11th Cir. 2003)(quoting *Hipp*, 252 F.3d at 1216). *See also Morgan*, 551 F.3d at 1262 (stating that "detailed pleadings and affidavits" may suffice to demonstrate reasonable basis that other employees are "similarly situated" and refusing to "hold that the [relatively substantial] amount of discovery that preceded the first-stage certification here is required").

*Bennett*, 880 F. Supp. 2d at 1283. *See also Morgan*, 551 F.3d at 1262 (stating that "detailed pleadings and affidavits" may suffice to demonstrate reasonable basis that other employees are "similarly situated" and refusing to "hold that the [relatively substantial] amount of discovery that preceded the first-stage certification here is required"). In this case, the parties have not yet begun, let alone completed discovery, which further favors conditional certification.

### E.  The Policy Reasons Support Preliminary Certification.

The FLSA establishes that an action for unpaid overtime wages, "may be maintained... by any one or more employees for and on behalf of himself and themselves and other employees similarly situated." 29 U.S.C. §216(b); *see also Dybach*, 942 F.2d. at 1566. So-called "collective actions" provide workers an opportunity to, "lower individual costs to vindicate rights by pooling resources," and enable the "efficient resolution in one proceeding of common issues of law and fact..." *Hoffmann-La Roche v. Sperling*, 493 U.S. 169, 170 (1989). Collective actions allow Courts to avoid the burdens posed by deciding a series of nearly identical individual suits involving claims arising from the same pay practices by the same employers. The collective action mechanism safeguards against inconsistent decisions and against employers spreading misleading information to the putative class members by assuring that the notifications to and joinder of additional parties are managed by the Court, promoting efficiency in the discovery process, and expediting resolution. *See e.g., Id.* at 170-72; *see also Garner v. G.D. Searle Pharm. & Co.*, 802 F. Supp. 418, 427 (M.D. Ala. 1991).

In furtherance of the FLSA's "broad remedial purpose", Courts supervise notifying potential opt-in plaintiffs of their right to join an existing action early in the proceeding. *Hoffmann-La Roche*, 493 U.S. at 169. The prompt issuance of notice after a case is filed is necessary because the FLSA's statute of limitations continues to run for each individual class member until that affected individual files a written consent to join form with the Court. 29 C.F.R. §790.21(b)(2); *Grayson*, 79 F.3d at 1105-06. The damages and liquidated damages available to putative class

members who have not yet joined this action decrease for each day that passes, absent tolling. Thus, Mr. Collado seeks permission to notify Putative Class members of their rights as soon as possible so that they can decide whether to join this proceeding, return their consent to join forms to the undersigned to be filed herein, toll the limitations period, and be bound by any settlement reach or the Court's findings.

### F.    A Three-Year Notice Period Is Proper.

The FLSA permits affected employees to recover for up to three-years of back wages, albeit not in every case. In line with the notion that the Court does not rule on the merits of the case at the conditional certification stage,[2] the Court also properly allows Mr. Collado to send notice of to the Putative Class who worked for Defendants since Septebmber 23, 2019:

> The Court concludes that it is prudent to "err[ ] on the side of overinclusiveness and d[oes] not want to exclude potential claimants prematurely." *Pendlebury v. Starbucks Coffee Co.*, 2008 WL 700174, at *4 (S.D. Fla. Mar. 13, 2008). Accordingly, this Court will permit notice of the action to be sent to individuals who worked for Defendants extending back to three years prior to the filing of the Amended Complaint, at this time.

*Blake v. Batmasian*, 208 F. Supp. 3d 1292, 1295 (S.D. Fla. 2016). Consequently, those who receive notice of this action should include the captains, servers, and bussers who worked for Defendants from September 23, 2019, to the present. *See e.g.*, *Leo v. Sarasota County Sch. Bd.*, 2017 WL 477721, at *3 (M.D. Fla. Feb. 6, 2017) (3-year notice period); and *Martinez v. DHL Express (USA) Inc.*, 2016 WL 455394, at *9 (S.D. Fla. Feb. 5, 2016) (three-year notice period). This three-year notice period is appropriate given the allegations in Count I and the Declarations. *Hu v. Windhaven Ins. Co.*, 8:15-2016 WL 7177618, at *5 (M.D. Fla. Feb. 16, 2016) ("Because the question of willfulness requires a fact intensive inquiry as to what Defendants knew or simply disregarded, the Court does not ordinarily address the statute of limitations at the notice stage."); and *Pares v. Kendall Lakes Auto., LLC*, 2013 WL 3279803, at *10 (S.D. Fla. June 27, 2013).

### G.    Disclosures and Notice Should Be Expedited.

Since the limitations period applicable to the Putative Class members continues to run until they file their Consents to Join in this action or file their own lawsuit(s), Mr. Collado requests that the Court require the Defendants to provide the names, last known addresses, telephone numbers,

---

[2]    *Devries v. Morgan Stanley & Co. LLC*, 2014 WL 505157, at *7 (S.D. Fla. Feb. 7, 2014) ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations".)

and email addresses for each similarly situated employee who worked from Defendants from September 23, 2019, to the present – within 10 days from any Order entered by the Court – and while the parties negotiate the terms of any Notices to be distributed.

Mr. Collado further requests that Defendants be required to format and produce, on this expedited basis, the list in an Excel spreadsheet, with each Putative Class member listed alphabetically (by last name) in rows from "A" to "Z". Mr. Collado requests that this Excel spreadsheet be formatted to include in separate columns containing each person's first and last name, last known home address, cellular telephone number, and email addresses to facilitate the preparation and mailing of the approved notice. *See Vasquez v. Scotts Co. LLC*, 2017 WL 3154775, at *3 (S.D. Fla. July 25, 2017) ("the Defendants shall produce to the Plaintiffs a computer readable data file containing the names, addresses, telephone numbers, and e-mail addresses of all members of the conditional collective action.")

The information at issue is readily available to the Defendants, is not difficult to produce, and is required to be produced pursuant to Rule 26(a), Fed R. Civ. P. before discovery is requested and irrespective of class certification. Rule 26(a) of the Federal Rules of Civil Procedures expressly provides in pertinent part:

> **(a) Required Disclosures.**
> (1) Initial Disclosures.
> (A) In General. … a party must, without awaiting a discovery request, provide to the other parties:
> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information — along with the subjects of that information — that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

The requested information is clearly discoverable in this case and should be produced as expeditiously as possible. *See Pares v. Kendall Lakes Auto., LLC*, 2013 WL 3279803 (S.D. Fla. 2013); *Disimone v. Atlantic Services, Inc.*, 09-CV-804602 (S.D. Fla. Dec. 29, 2009 at DE 7); and *Donahay v. Palm Beach Tours & Transp., Inc.*, 2007 WL 1119206, *1 (S.D. Fla. Apr. 16, 2007).

It is the Court's responsibility to ensure that notice is provided in an "efficient and proper way" to Putative Class members. *Hoffmann-La Roche*, 493 U.S. at 170-71. Mr. Collado requests permission to send notice by email, text message, and by U.S. Mail to each member of the Putative Class and to require Defendants to post Notice of this action at a conspicuous place at their business location (where the employment law posters are displayed) as well as to provide a copy of the Notice

and Consent to Join form in the next paycheck/pay stub provided to the similarly situated captains, servers, and bussers currently employed by Defendants to help ensure that each member of the Putative Class is timely notified of his/her rights to participating in this lawsuit. *See Peña*, *supra*. Mr. Collado also requests the ability to send out a reminder letter halfway through the opt-in period (Exhibit "E") and to call/text each member of the putative class after sending the notices and after sending the reminder postcard/letter notices to ensure that each member of the Putative Class actually received the notices. *See Caamano v. 7 Call Ctr. Inc.*, 2016 WL 4704934 (S.D. Fla. Sept. 8, 2016) (granting permission to send notices by email and a reminder notice).

### 1.   *Emailing of the notice is proper.*

Email is an efficient, effective, and non-intrusive means of providing legal notice of one's rights. To put the request to provide email notice in context, such notice was determined to be an efficient and effective means for the Florida Department of Corporations to notify all Florida corporations of the requirements to timely file an annual report. (https://efile.sunbiz.org/ubrintro.html.) Email is also now the preferred method for Courts in this State to communicate with litigants. Not surprisingly, Courts within this District routinely determine that notice of a pending FLSA collective action is properly sent by email:

> Plaintiffs are correct in noting that courts in this Circuit commonly approve email notice to potential opt-in class members in FLSA cases. *See Cooper v. E. Coast Assemblers, Inc.*, 2013 WL 308880, at *4 (S.D. Fla. Jan.25, 2013); *Stuven v. Texas deBrazil (Tampa) Corp.*, 20 Wage & Hour Cas.2d (BNA) 1110, at *6 (M.D. Fla. 2013) (declining to impose a presumption that regular mail is the preferred method of notice, and finding that email is not too intrusive); *Pittman v. Comfort Sys. USA (Se.), Inc.*, 2013 WL 525006, at *2 (M.D. Fla. Feb.13, 2013) ("conclud[ing] that communication through email, in addition to regular mail, is fair and proper notice"). The Court agrees that email is an efficient and nonintrusive method of communication.

*Alequin v. Darden Restaurants, Inc.*, 2013 WL 3945919 (S.D. Fla. July 31, 2013); *see also Cooper v. E. Coast Assemblers, Inc.*, 2013 WL 308880 (S.D. Fla. 2013) (the Court concludes that Plaintiff's counsel may email the Notice in addition to its mailing). Other courts also have determined email to be an effective and efficient means of providing notice of an FLSA action. *See Palma v. Metropcs Wireless, Inc.*, 2014 WL 235478 (M.D. Fla. 2014) ("A number of courts have determined that email is an inexpensive and appropriate means of delivering notice of an action to a class.") (citations omitted); *Hubbard v. Jerry's Seamless Guttering, Inc.*, 2020 WL 6038110, at *3 (S.D. Fla. Oct. 6, 2020).

### 2.   *Text notification is proper.*

The majority of the Putative Class and the majority of those who are likely to join in these

proceedings are most likely those who no longer work for Defendants. This translates into many of Defendants' current and former tipped employees moving their residence through the years, especially after COVID-19. Due to the prolific use of cell phones as the primary means of communicating, Courts find that sending notice of a collective action by text message is appropriate. *Martin v. Partsbase Inc.*, 2020 WL 13389358, at *8 (S.D. Fla. May 14, 2020) ("and I find that it is appropriate to allow Plaintiff to send notice by text message"). "In these circumstances, notice by e-mail and text message may be the best means of reaching the collective members." *Campo v. Granite Services Int'l, Inc.*, 2022 WL 212205, at *9 (N.D. Ga. Jan. 24, 2022). With the prevalence of cellular telephones, and the reliance on cellular telephones as the primary telephone numbers (even foregoing traditional land lines at home), people are more likely to be tracked down by their cellular phones than through the mail. *Deatrick v. Securitas Sec. Services USA, Inc.*, 2014 WL 5358723, at *5 (N.D. Cal. 2014) ("The Court is persuaded that notice by mail, including the issuance of reminder postcards and telephone numbers to facilitate tracing potential class members if mailings are returned as undeliverable, is the most appropriate method to effectuate notice in this case.") While not necessarily prevalent in this District, Courts have for years recognized that text messaging is an effective means of contacting employees about their rights.

> But privacy and data manipulation concerns do not prevent Defendants from communicating with their employees via text message regarding administrative matters; indeed, the evidence before the Court suggests that text messaging is Defendants' preferred method of employee communication. (Deck of Shawn Clark, dated Sept. 5, 2014, Doc. No. 23, Ex. 2; Mem. Certify 9.) Here, given the high turnover characteristic of the restaurant industry, the Court finds that notice via text message is likely to be a viable and efficient means of communicating with many prospective members of this collective action. *See Chamorro v. Bahman Ghermezian*, No. 12–cv–8159 (TPG), ECF No. 17 ¶ 5 (S.D.N.Y. Feb. 25, 2013) (authorizing dissemination of FLSA § 216(b) notice via text message); *see also McKinzie v. Westlake Hardware, Inc.*, No. 09–cv–796 (FJG), 2010 WL 2426310, at *5 (W.D.Mo. Jun. 11, 2010) (ordering defendant to provide cellular phone numbers following conditional certification). Accordingly, the Court finds that Plaintiffs may provide notice to potential opt-in Plaintiffs via a text message.

*Bhumithanarn v. 22 Noodle Mkt. Corp.*, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015). "Simply put, email, text message and other electronic means of communication is far more prevalent than snail mail, whether fortunately or not." *Millin v. Brooklyn Born Chocolate, LLC*, 2020 WL 2198125, at *3 (E.D.N.Y. May 6, 2020) ("There is no credible reason why notice should not be provided by email or text message, especially given the broad remedial purpose of the FLSA"); *accord Rieske v.*

*Gov't Employees Ins. Co. Inc.*, 2022 WL 17127745 (E.D.N.Y. Nov. 22, 2022).

Mr. Collado requests that the Court permit him send a text message each member of the Putative Class to simply inquire whether each received the Notice packet. This can be done through a simple script, such as "This is attorney Brian Pollock from the FairLaw Firm. I am writing to confirm that you received the Notice packet informing you of your rights about a pending collective action lawsuit against 450 North River Drive, LLC d/b/a Kiki on the River, RJ River, LLC, and Roman Jones by email and/or U.S. Mail. If you did not receive the Notice packet, then please respond to this text message, send an email to <u>brian@fairlawattorney.com,</u> or call my office at 305.230.4884 to request a copy of the Notice packet."

### 3.    *Mailing of the Notice is proper.*

Mailing is an effective and efficient means of providing notice of a pending FLSA collective action, even when other means of notice are being provided. *See e.g.*, *Alequin*, 2013 WL 3945919 at *2; and *Cooper*, 2013 WL 308880 ("Plaintiff's counsel may email the Notice in addition to its mailing").

### 4.    *Defendants' posting and provision of Notice is proper.*

Mr. Collado requests that the Court require Defendants to post the Notice (Exhibit "D") at a conspicuous location frequented by their employees (such where Kiki on the River posts its notices to employees) as well as to require Defendants to include a copy of the Notice (Exhibit "D") and Consent to Join Form (Exhibit "E") with the next paycheck / paystub issued to each of their employees who has at any time since September 23, 2019, worked as a captain, server, and/or busser, and to then provide Mr. Collado with a Declaration attesting to the completion of this task. Requiring Defendants to post a notice within their business locations and to include a copy of the Notice and Consent to Join with paychecks / paystubs will provide those captains, servers, assistants, and/or bussers who have not updated their addresses with Defendants notice of their rights. *Caamano*, 2016 WL 4704934, at *4 ("The Court also finds that posting a Notice in a break room or common employee area is appropriate.") (citing *Martinez v. DHL Express (USA) Inc*, 2016 WL 455394, at *9 (S.D. Fla. Feb. 5, 2016) ("The Court finds the means of transmitting the Proposed Notice appropriate.") (collecting cases).

### 5.    *A Reminder Notice is proper.*

Besides sending notice of this action by email, text messaging, and U.S. Mail, Mr. Collado requests permission to send a reminder notice to members of the putative class by email, text

message, and by U.S. Mail at the halfway point in the Notice Period. Mr. Collado's request is not out of the ordinary, as Courts consistently permit such a reminder notice to ensure that putative class members are aware of their rights and the time within which to exercise them. *See Caamano v. 7 Call Ctr. Inc.*, 2016 WL 4704934 (approving reminder halfway through notice period) *Martinez*, 2016 WL 455394, at *9; *Hubbard*, 2020 WL 6038110, at *3.

Considering the FLSA's remedial purposes and the many cases explicitly permitting FLSA plaintiffs to send a reminder notice, Mr. Collado submits that the Court should permit him to send the Putative Class reminder notices to ensure that each member is are aware of his/her rights and the applicable deadlines within which to exercise them. The proposed Reminder Notice is appended hereto as Exhibit "F".

**H.** **A 90-Day Notice Period If Appropriate.**

Mr. Collado requests that the Court require those who seek to join in these proceedings to return their Consents to Join within 90 days of the mailing/emailing/posting of the Notice. *See Hubbard v. Jerry's Seamless Guttering, Inc.*, 2020 WL 6038110, at *4 (S.D. Fla. Oct. 6, 2020) (90-day notice period); *Flete v. All Am. Facility Maint. Inc.*, 2020 WL 5534270, at *4 (S.D. Fla. July 13, 2020) (same); *Schumann v. Collier Anesthesia, P.A.*, 2013 WL 645980, at *4 (M.D. Fla. Feb. 21, 2013) (same).

# VII.  CONCLUSION

Mr. Collado respectfully requests for the Court conditionally certify Count I of the Amended Complaint as a collective action comprised of all captains, servers, and/or bussers who worked for Defendants from September 23, 2019, to the present at Kiki on the River, who received tips from the "tip pool" controlled by Defendants, and to award the following additional relief:

a.  To appoint Mr. Collado as the Representative of the Class with authority to negotiate and appear at settlement conferences / mediations for the Class;

b.  To appoint Brian H. Pollock, Esq. of the FairLaw Firm as counsel for the Class;

c.  To require that within 10 days hereof, Defendants format and produce electronically an Excel spreadsheet that contains for each member of the Putative Class one row containing in each column each person's full name, last known home address, cellular telephone number, and email address to facilitate the preparation and sending of notice;

d.  To permit Mr. Collado to send notice by email, text message, and by U.S. Mail to each member of the Putative Class in the form appended hereto as Exhibit "D", with a proposed opt-in / Consent to Join form as Exhibit "E";

e.  To require the Defendants to post the Notice appended hereto as Exhibit "D" in a conspicuous place in Defendants' offices in either an employee break room, next to the Minimum Wage Notice posters located in Defendants' places of business, or other conspicuous location routinely visited by Defendants' tipped employees at Kiki on the River (and declare doing this);

f.  To require Defendants to include a copy of the Notice and the proposed opt-in / Consent to Join form in the next paycheck/paystub provided to all current captains, servers, assistants, and/or bussers (and provide Mr. Collado with a Declaration attesting to completion);

g.  To permit Mr. Collado to send out a letter/email/text message reminding members of the Putative Class of their right to join in this lawsuit and the deadline for same (Exhibit "F");

h.  To text/call each member of the Putative Class to ensure that each received the Notice and then the reminder; and

i.  To award such other and further relief as the Court deems just and proper.

## **LOCAL RULE 7.1 CERTIFICATION**

Counsel for the movant conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and represents that defense counsel did not agree to the relief herein.

Respectfully submitted this 19th day of December 2022.

Brian H. Pollock, Esq.
Brian H. Pollock, Esq.
Fla. Bar No. 174742
brian@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, FL 33146
Tel:    305.230.4884
*Counsel for Plaintiff(s)*
