UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-CV-23074-BLOOM/OTAZO-REYES

OCTAVIO COLLADO
For himself and all others
similarly situated,

  Plaintiff,

v.

450 NORTH RIVER DRIVE, LLC,
d/b/a KIKI ON THE RIVER,
RJ RIVER, LLC, and
ROMAN JONES,

  Defendants.
_____/

**JOINT RESPONSE BY DEFENDANTS 450 NORTH RIVER DRIVE, LLC,
D/B/A KIKI ON THE RIVER AND ROMAN JONES,
AND RJ RIVER, LLC, IN OPPOSITION TO PLAINTIFF'S MOTION FOR
<u>CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION</u>**

Defendants, 450 North River Drive, LLC, d/b/a Kiki on the River ("Kiki"), Roman Jones ("Jones"), and RJ RIVER, LLC, ("RJ") (collectively "Defendants"), by and through their respective undersigned counsel, hereby file their Response to the Motion for Conditional Certification of a Collective Action [ECF No. 44] filed by Plaintiff Octavio Collado ("Collado" or "Plaintiff"), and state as follows in opposition:

<u>**PRELIMINARY STATEMENT**</u>

Plaintiff's Motion for Conditional Certification of a Collective Action (the "Motion") should be denied as moot. The Motion requests conditional certification of the putative class pursuant to Count I of the Amended Complaint. However, the Amended Complaint is not an

operative pleading because Plaintiff subsequently filed a Second Amended Complaint on January 11, 2023. Thus, the Motion is moot.

To the extent the Motion is not moot, it should still be denied because Count I of the Second Amended Complaint fails to state a claim upon which relief may be granted. Count I of the Second Amended Complaint improperly conflates a claim for unlawful tip retention with a claim for minimum wage violations, which are separate causes of action under the FLSA. Plaintiff claims in conclusory fashion that Count I is an FLSA minimum wage claim. However, none of the allegations in the Second Amended Complaint establish that Plaintiff, or any other employee, earned less than the applicable minimum wage or were paid on a tip credit basis. Instead, the sole focus of the allegations in the Second Amended Complaint is that Defendants improperly retained Plaintiff's tips. Plaintiff is seemingly attempting to create the appearance of a minimum wage claim in Count I to facilitate bringing a Florida Minimum Wage Act (FMWA) claim in Count II. However, Plaintiff's misleading allegations only serve to confuse potential putative class members and interfere with their understanding of the claims being asserted when determining whether to opt into the case.

Additionally, the Motion should be denied because Plaintiff has failed to establish that the proposed putative class of "captains, servers, and bussers" are similarly situated or that a sufficient number of individuals from each group are interested in joining the class. Plaintiff claims that the proposed collective is "[a]ll persons who worked, were employed by, or engaged as captains, servers, and/or bussers . . . any time during the three (3) years prior to the filings of the Complaint[.]" [E.C.F. No. 44 at pg. 2]. Plaintiff generally claims these positions are similarly situated because they are tipped employees who are subject to the same pay practice. *Id.* at pg. 4-5. However, Plaintiff does not allege that the identified positions have similar duties,

which is fatal to his request to conditionally certify a class. He also fails to adequately assert that any of the categories of employees identified in the proposed class are actually interested in joining this action because the opt-in notices and declarations that have been submitted are vague and fail to identify what positions the declarants held.

Further, the Motion should be denied or substantially limited because Plaintiff's discovery and notice requests are overly broad, excessive, and unduly burdensome. First, Plaintiff's request for a list of potential plaintiffs within ten (10) days including the individuals' addresses, cell-phone numbers, and emails is overly broad and does not provide Defendants with sufficient time to compile the requested information. Next, Plaintiff's request to use such information to email, call, and text potential class members is excessive and improper. Likewise, Plaintiff's requests to post notices at Kiki, provide notices with employees' paychecks, and send reminders about the notice is redundant and would give the impression that the Court is endorsing this action. Moreover, Plaintiff's scope of the potential putative class including individuals for a three-year period prior to September 23, 2022, is improper because the look-back period for the potential putative class should be limited to three (3) years from the date the Collective Action Notices are mailed. Also, Plaintiff's request for a 90-day notice period is unreasonable and should be limited to 45 days. Finally, to the extent that the Court does permit Plaintiff to send notices to a putative class in any form, they must be revised and Defendants request that the notices be confidential.

## **MEMORANDUM OF LAW**

### I. **Plaintiff's Motion is Moot and Should be Denied**

When a motion relates to a non-operative pleading, the motion should be denied as moot. *See generally, Embree v. Wyndham Worldwide Corp.*, No. 6:16-cv-928-Orl-40GJK, 2018 U.S.

Dist. LEXIS 22165, at *11 (M.D. Fla. Feb. 12, 2018) (denying a plaintiff's motion for class certification as moot after dismissing the complaint because there was no operative complaint); *Renasant Bank, Inc. v. Smithgall*, No. 1:15-cv-459-WSD, 2016 U.S. Dist. LEXIS 14307, at *n.2 (N.D. Ga. Feb. 5, 2016) ("Defendant['s] . . . Motion for Extension of Time to File Responsive Pleading was filed with respect to a non-operative complaint, and also is denied as moot"); *Allianze Global Risk US Ins. Co. v. Greater Am. Ins. Co.*, No. 1:17-CV-02291-ELR, 2019 U.S. Dist. LEXIS 239059, at *2 (N.D. Ga. Mar. 1, 2019) (explaining the court denied several motions directed at non-operative pleadings because they were moot).

Here, the Motion was filed on December 19, 2022, and it is requesting the conditional certification of a putative class pursuant to Count I of the Amended Complaint. [E.C.F. No. 44 at pgs. 2-3]. However, on January 11, 2023, Plaintiff filed the Second Amended Complaint in which he attempts unsuccessfully to make substantive revisions to the allegations relating to Count I of the Amended Complaint. [E.C.F. No. 59]. Since the Motion does not relate to the Second Amended Complaint, which is the pleading at issue, it should be denied as moot.

    **II.    The Motion is Premature and Improper because Count I of the Second Amended Complaint Fails to State a Claim Upon Which Relief May be Granted.**

If the Motion is not moot, it still must be denied because Plaintiff has not met the threshold burden of pleading a cause of action in Count I of the Second Amended Complaint. Count I of the Second Amended Complaint fails to plead a cause of action because it conflates an alleged claim for improper tip retention with a minimum wage claim. [E.C.F. No. 59 ¶¶ 2-3, 32, 37, 42, 46, 49-55, 58-64, and 69-76; Count I Wherefore Clause subsection (d) and (i)]. Under the FLSA, a tip retention claim is a distinct and separate cause of action from a minimum wage claim. *See* 29 U.S.C. 216(b). Specifically, Section 216(b) provides separate causes of

action for a violation of section 206 (minimum wage), 207 (overtime), and/or 203(m)(2)(B) (tip retention).

Here, the allegations in the Second Amended Complaint bare no substantive relation to a minimum wage claim other than Plaintiff's misleading allegations that "Defendants paid their tipped employees an hourly wage that was less than the applicable Florida or federal minimum wage" while acknowledging that Plaintiff and "others similarly situated" were **also** paid "a portion of the mandatory service charge" Kiki collected from customers. [E.C.F. No. 59 ¶¶ 8, 28, and 40]. While Plaintiff vaguely describes Kiki's pay practices, he never alleges that he was paid on a tip credit basis or that his **total hourly rate of pay** was less than the applicable minimum wage **after** his hourly pay was combined with his share of the service charge. [E.C.F. No. 59 ¶¶ 3, 28]. Although Plaintiff fails to allege he was paid on a tip credit basis or earned less than minimum wage when his hourly rate and share of the service charge are combined, he asserts in conclusory fashion that Count I of the Second Amended Complaint is an FLSA minimum wage claim. [E.C.F. No. 59 at ¶ 3; Count I Wherefore Clause subsection (i)]. Plaintiff makes those conclusory minimum wage claims in the face of repeated allegations that Defendants improperly retained Plaintiff's tips and that he seeks to recover those tips. [E.C.F. No. 59 at ¶¶ 2-3, 32, 37, 42, 46, 49-55, 58-64, and 69-76; Count I Wherefore Clause subsection (d)].

The opt-in notices that were filed only add to the conflating and confusing nature of Count I of the Second Amended Complaint. [E.C.F. Nos. 4, 5, 7, 15, 22, 25, 38, 41]. The boilerplate declarations allege the following conclusory claim: "I was not paid at least minimum wage, all the tips that I earned, and/or all overtime that I earned." *Id*. The Second Amended Complaint does not allege any overtime claim, and despite Plaintiff's misleading efforts to

5

suggest a minimum wage claim, he never alleges that he was paid on a tip credit basis or his **total compensation** between the hourly rate **and** the percentage of the service charge equaled less than the applicable minimum wage.

Plaintiff's failure to properly plead a cause of action in Count I is detrimental to his request to conditionally certify a putative class because the potential putative class members cannot be sure what they are opting into. As currently pled in the Second Amended Complaint, it is unclear whether Plaintiff is trying to bring a tip retention claim, minimum wage claim, or both in Count I, which would be inappropriate. *See* Fed. R. Civ. P. 8(a); *see also, Torres v. Wendy's Int'l, LLC*, No. 6:16-cv-210-orl-40DCI, 2017 U.S. Dist. LEXIS 221548, at *14-15 (M.D. Fla. Mar. 21, 2017 (dismiss Count III of the plaintiff's complaint for lumping together multiple claims into a single count); *Graham v. NCL (Bah.) Ltd.*, 20-22826-Civ-Scola, 2021 U.S. Dist. LEXIS 93699, at *3-6 (May 17, 2021) (same). Additionally, the Second Amended Complaint gives the incorrect impression that a minimum wage claim may exist even when the employee's share of the service charge increases the hourly rate above the minimum wage. If Plaintiff intends on representing a class of individuals, he must be required to affirmatively and clearly state a cause of action before he requests the Court to conditionally certify a class. Therefore, the Motion is premature and must be dismissed until the resolution of Defendants' forthcoming Motion to Dismiss the Second Amended Complaint.[1]

### III. Plaintiff Has Failed to Show that There are Similarly Situated Individuals Who Desire to Opt-in to the Case

The right to proceed on behalf of other employees is not automatic, but instead must be approved by the court. *See Brooks v. BellSouth Telecomm's, Inc.*, 164 F.R.D. 561, 566 (N.D.

---

[1] Plaintiff filed the Second Amended Complaint on January 11, 2023. Therefore, Defendants' Response is not due until January 25, 2023, and Defendants are filing a Motion to Dismiss the Second Amended Complaint.

Ala. 1995), *aff'd*, 114 F.3d 1202 (11th Cir. 1997) (stating that the broad remedial purposes of the FLSA are best served if the district court is found to have the authority and discretion to give notice to other potential class members to 'opt in' to plaintiff's class). For the Court to order such notice, the plaintiff must show: (1) there are other employees who desire to opt-in to the litigation; and (2) these other employees are "similarly situated" with respect to their job requirements and their pay provisions. *See Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). Plaintiff fails to meet his burden as to both elements.

Courts commonly consider five factors at the conditional certification stage in determining whether members of a class are similarly situated: (1) whether plaintiffs held the same job title; (2) whether they worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether plaintiffs were subjected to the same policies and practices, and whether the policies and practices were established in the same manner and by the same decision maker; and (5) the degree to which the actions constituting the claimed violations are similar. *Compere v. Nusret Miami, LLC*, 391 F. Supp. 3d 1197, 1202 (S.D. Fla. 2019).

Notably, the Southern District of Florida has previously explained that a request to certify a class nearly identical to the one presented by Plaintiff was insufficient. Specifically, in *Alvarez v. Uno Rest. Assocs.*, the plaintiff sought the conditional certification of a class pursuant to section 216(b) for the following employees:

> All bussers and servers ('tipped employee') who worked for Defendants during the three (3) years preceding this lawsuit and who, as a result of Defendants' policy of requiring them to share their tips with non-tipped employees, earned less than the applicable minimum regular and overtime wage for one or more weeks during the Relevant Time Period.

No. 17-24452-Civ-Scola, 2018 U.S. Dist. LEXIS 84745, at *5 (S.D. Fla. May 21, 2018).

There, the plaintiff claimed that bussers and servers should be a certified class because they were subject to the same unlawful tip retention practices. *Id.* at 2, 6. The plaintiff submitted his own affidavit and the affidavit of an opt-in plaintiff who swore that he suffered the same alleged wrongs as the plaintiff. The court explained that the allegations in the complaint and the affidavits were insufficient to certify a class of servers and bussers because the "affidavits [were] devoid of any detail explaining how bussers and servers are similarly situated and say nothing about the respective job duties associated with either position." *Id.* at 7. The court also noted that the plaintiff failed to establish that any servers would want to join the class since the only individuals who submitted affidavits and opted into the case were bussers. *Id.* The court expressly stated that it "is not enough that [the plaintiff] and the purported class members were tipped employees who served restaurant patrons" because even if the court found that both categories of employees were subject to the same tip practices, there were no allegations establishing they were similarly situated. *Id.* at 8.

Here, like the plaintiff in *Alvarez*, Plaintiff has failed to establish that captains, servers, and bussers are similarly situated. In support of the Motion, Plaintiff presented his declaration and the declaration of Augusto Guerra ("Guerra"). [*See* E.C.F. No. 44-1 and 44-2]. Both declarations merely allege that the purported class members "performed similar – if not the same type of work as me" but fail to describe the specific job duties associated with the captains, servers, or bussers. [E.C.F. No. 44-1 ¶ 18; No. 44-2 ¶ 22]. Specifically, the descriptions of the job duties provided by Plaintiff and Guerra are insufficient because they do not distinguish them from those of a captain or server, and neither of them worked as a busser. [*See* E.C.F. No. 44-1 ¶¶ 5 and 10; No. 44-2 ¶¶ 5-6]. That omission is fatal to Plaintiff's similarly situated claim as it relates to captains, servers, and bussers. *See Alvarez*, 2018 U.S. Dist. LEXIS 84745, at *7

("affidavits . . . say nothing about the respective job duties associated with" the positions alleged to be similarly situated).

Plaintiff and Guerra's declarations have another fatal flaw. Plaintiff claims he was employed as a server and a captain from August 7, 2017, through January 2, 2022. [E.C.F. No. 44-1 ¶ 5]. Guerra claims he "worked for the Defendants from about October 2017 through September 2022, as a server and then as a captain[.]" [E.C.F. No. 44-2 ¶ 5]. Notably, Plaintiff and Guerra fail to state the exact dates when they worked as a server and a captain. Plaintiff and Guerra's failure to identify the specific dates when they worked as a captain and server is fatal to Plaintiff's request for conditional certification because the Court cannot determine what position they held during the applicable statute of limitations. Because Plaintiff and Guerra claim they were employed for several years outside of the statute of limitations, which dates back only to September 23, 2019, it is possible that they were *only* a server *or* captain within the statute of limitations. For example, if Plaintiff and Guerra were only a captain during the applicable statute of limitations, then there is no evidence that any servers have joined the class, and if they were only a server, then there is no evidence that any captains have joined the class.

Finally, Plaintiff notes that seven (7) individuals filed opt-in notices joining the lawsuit. [E.C.F. No. 44 at pg. 4]. However, a cursory review of these opt-in declarations reveals that they are all identical bare bone declarations that only provide that the individuals "worked at Kiki . . . and [were] employed by 450 North River Drive, LLC, RJ River, LLC, and Roman Jones . . . .." [E.C.F. Nos. 4, 5, 7, 15, 22, 25, 38, and 41]. Noticeably missing from all the opt-in declarations are any facts relating to what positions the individuals held or the duties they performed. As a result, the opt-in declarations should be given no weight because the individuals did not state

9

their positions or duties and failed to identify how their unknown positions had duties that were similar to a captain or server.

Finally, Plaintiff and Guerra failed to allege that they were a busser, and none of the remaining declarations assert that the individuals were bussers. Therefore, Plaintiff has completely failed to allege that bussers were similarly situated to him as either a captain or server and that bussers are interested in joining this action.

Merely alleging that captains, servers, and bussers were employed by Kiki and subject to the same improper tip retention is insufficient where there is no factual support distinguishing the captain, server, and busser positions and explaining how they are similarly situated, where the Court cannot tell whether the work Plaintiff and Guerra performed as a captain or server was outside the statute of limitations, where the opt-in declarations do not state the positions or duties of the individuals, where Plaintiff and Guerra failed to allege that they worked as a busser and the remaining declarations do not assert that the individuals were bussers, and where there is no evidence of the busser's duties and whether they want to opt-in to the case. *See Alvarez,* U.S. Dist. LEXIS 84745, at *5-8.  Therefore, this Motion must be denied.

    **IV.**    **Plaintiff's Request for Expedited Discovery and Proposed Methods of Disseminating the Notice are Intrusive, Overly Broad, Excessive, and Redundant**

        **A.**    **Three Years from the Date of Conditional Certification Should be the Appropriate Time Period for Discovery Pertaining to Information Sought in the Motion for Conditional Certification**

FLSA claims generally must be brought within two years of the alleged violation or within three years for willful violations. 29 U.S.C. § 255(a). The FLSA statute of limitations for putative FLSA collective action members is not tolled by the filing of a complaint, because an

opt-in plaintiff does not commence his or her action until the date on which that plaintiff files his or her written opt-in form. 29 U.S.C. § 256(b).

Accordingly, the appropriate period for discovery purposes pertaining to the information sought in the Motion is the three-year period preceding the date of this Court's conditional certification approval, if any. *Madison v. United Site Servs. of Fla.*, No. 6:16-cv-1991-Orl-41DCI, 2017 U.S. Dist. LEXIS 159991, at *11 (M.D. Fla. Aug. 17, 2017) (ordering Defendant to provide information of the putative plaintiffs who worked for Defendant during the three years preceding the Court's order conditionally certifying the case as a collective action). Additionally, the applicable look-back period to elect to opt-in to the class should be limited to a three (3) year period from the date the notice is emailed or physically mailed.[2] *See Gutescu v. Carey Int'l, Inc.*, No. 01-4026-civ-Martinez-Simonton, 2003 U.S. Dist. LEXIS 27507, at *51 (S.D. Fla. Jun. 16, 2003) (concluding that the opt-in notice should be sent only to those employees that performed work for defendant within three years from the date the notice is mailed). Therefore, any relief the Court grants because of the Motion should be limited accordingly.

### B. Plaintiff Has Not Established the Need for Putative Class Members' Cell Phone Numbers and the Request is Unnecessarily Intrusive

Plaintiff is not entitled to the cell-phone numbers of proposed putative class members because notice via email and United States mail is adequate. *Villarino v. Pacesetter Pers. Serv.*, No. 20-60192-CIV-SINGHAL/VALLE, 2021 U.S. Dist. LEXIS 259382, at *20 (S.D. Fla. 2021) (holding the "notice should be mailed to putative class members' last known address[.]"); *Kiley*

---

[2] Defendants note that it has agreed to extend the statutory look-back period an additional 14 days based on Plaintiff's agreement to provide Defendants with a 14-day extension to file this Response. Thus, the applicable look-back period would be 14 days prior to the date of the mailing of the notices if the Court permits the sending of such notices.

*v. Medfirst Consulting Healthcare Staffing, LLC*, 297 F. Supp. 3d 1260, 1268 (S.D. Ala. 2018) ("permitting notice via email, but denying notice via text because "the court is concerned that a text message notice could be incomplete and might not convey the seriousness of the communication."). Courts have frequently held that text message notice is appropriate only when all other means fail. Plaintiff has not shown that directly emailing and mailing the notice to the last known addresses will fail or that there is a need to issue the notice via text message or otherwise communicate by calling proposed putative class members. *Gibbs v. MLK Express Servs., LLC*, No. 2:18-cv-434-FtM-38MRM, 2019 U.S. Dist. LEXIS 78007, at *49 (M.D. Fla. Mar. 28, 2019), *adopted, in part, by* 2019 U.S. Dist. LEXIS 107480, at *34-35 (M.D. Fla. Jun. 26, 2019). As Plaintiff concedes, it is not prevalent for courts in the Southern District of Florida to require defendants to produce employees' cell-phone numbers. [E.C.F. No. 44 at pg. 17]. Accordingly, Plaintiff has no need for the putative class members' cell phone numbers.

Further, Plaintiff's request for the putative class members cell phone numbers is unnecessarily intrusive under any circumstances. That is especially true in this case where Plaintiff has not demonstrated in the Motion that emailing **and** mailing the notices to the last known addresses will fail or the need to otherwise communicate by texting and/or calling putative class members. As a result, Plaintiff is already permitted to contact the putative class through electronic correspondence by way of email if the Motion is granted. Thus, providing Plaintiff the ability to call and text message putative class members in addition to emailing is unnecessarily intrusive and redundant. *Miller v. JAH, LLC,* No. 5:16-cv-01543-AKK, 2018 U.S. Dist. LEXIS 2139, at *8-9 (N.D. Ala. Jan. 5, 2018) (denying plaintiff's request to text message the notice to putative class members because (1) the individuals may have limited cellular plans and incur costs with the messages and (2) the messages will subject the individuals to "the

annoyance of unsolicited messages that congress passed the Telephone Consumer Protection Act, in part, to address.").

Accordingly, the request for cell phone numbers to call and/or text message putative class members must be denied. To the extent Defendants are required to produce any information, however, including email and physical addresses, they respectfully request at least 30 days to search through hundreds of personnel records to compile the information and then prepare as requested for production.

> **C. Plaintiff Should Not be Permitted to Send Periodic Confirmations or Reminders Regarding this Action**

Courts in this Circuit have explained that "[r]eminder notices are unnecessary because they are redundant and could be interpreted as encouragement by the Court to join the lawsuit." *Smith v. Wiring Specialist, Inc.*, No. 2:14-cv-277-FtM-29DNF, 2014 U.S. Dist. LEXIS 1335446, at *8 (M.D. Fla. Sept. 25, 2014); *see also, Cooper v. E. Coast Assemblers, Inc.*, No. 12-80995-CIV-MARRA, 2013 U.S. Dist. LEXIS 10435, at *11 (S.D. Fla. Jan. 24, 2013) ("no 'reminder notice postcards' may be sent."); *Anish v. National Securities Corporation*, 10-80330-CIV-MARRA, 2012 U.S. Dist. LEXIS 125075, at *6 (S.D. Fla. Sep. 2, 2012) ("Plaintiff may not send out a reminder notice 10 days prior to the expiration of the opt-in period.").

Plaintiff's request for confirmation and reminder communications entails an intrusive and unnecessary four-part process. First, Plaintiff is seeking permission to send the initial court approved notice. Second, Plaintiff is requesting permission to send text messages and call putative class members to allegedly ensure that the initial notice was received. Third he is requesting authority to send a reminder notice via text, email, and correspondence, half-way through the Court approved notice period. Finally, Plaintiff is seeking the ability to send a fourth communication via text and cell phone call to allegedly ensure that the putative class members

13

received the reminder notice. Plaintiff's request to have **four** communications with each member of the putative class is intrusive, overbroad, excessive, and likely to give the impression to putative class members that the Court is encouraging their involvement in the case. To avoid any potential unintended inference that the Court is encouraging individuals to opt-in to this action, Plaintiff's request to send confirmation communications and reminder notices must be denied.

> **D.   Plaintiff's Request to Post Notices at Kiki and Provide Notices to Individuals in the Proposed Putative Class with their Paycheck is Disruptive and Redundant**

In addition to the four communications addressed in the prior section, Plaintiff has requested that Defendants be required to post a notice in the restaurant for the entire notice period. Plaintiff's request should be denied because he failed to demonstrate that Defendants will not cooperate in the collective action process and that notice by mail is insufficient to provide potential class members notice. *See e.g., Ciani v. Talk of the Town Rests., Inc.,* No. 8:14-cv-2197-T-33AEP, 2015 U.S. Dist. LEXIS 5580 at *14-15 (noting that "other courts have required that Class Notice be posted at the workplace only after a showing that a defendant has failed to cooperate in the collective action process."); *Phelps v. MC Communications, Inc.*, 2011 U.S. Dist. LEXIS 84428 at *17 (D. Nev. Aug. 1, 2011) (declining to order defendants to post notices in all locations, as there was "no indication that service by first class mail would be ineffective or inadequate.").

Additionally, it will be unduly disruptive and redundant for Defendants to post a notice in the restaurant. Plaintiff's proposed putative class is limited to "captains, servers, and bussers" and may be reduced as previously argued herein. Therefore, employees who are not in the putative class will view and read the posted notice. Posting a notice regarding this collective

action in the restaurant will disrupt the workplace by causing distractions associated with the posted notice and confuse Kiki's employees who are not entitled to opt-in to this case. Such a result is prejudicial to Kiki as the restaurant expects and must have its employees focused on working instead of talking about ongoing litigation or trying to figure out whether or why they are included or excluded. Therefore, Defendants respectfully request that the Court deny Plaintiff's request to have the notice posted inside Kiki.

In relation to providing the notice with the proposed putative class employees' paychecks, the request is also unnecessarily intrusive because, as of the most recent payroll, only fourteen employees received a paper check. Of the fourteen individuals who receive paper checks, none are bussers, one is a server, two are captains. The extremely small number of employees in the proposed putative class receiving paper checks limits the reach of the distribution in this manner. Also, distribution of the notice with paper checks will be disruptive to the workplace even with the limited number receiving the notice. Such employees will receive the check and notice prior to or during their shift, which will cause the same distractions addressed regarding the posting of the notice. Lastly, the requested distribution with checks is redundant because all these putative class employees will receive the notice via email and/or United States mail if approved by the Court.

### E. Plaintiff's Request for a 90-day Notice Period to Opt-In is Excessive

A 90-day opt-in period is excessive, and many Florida courts adopt 45 or 60-day periods. *See, e.g., Brasaus v. Freshpoint of S. Fla., Inc.*, No. 15-CV-61529-WPD, 2016 U.S. Dist. LEXIS 186957, *9 (S.D. Fla. Feb. 11, 2016) (45-day opt-in period); *Lara v. G&E Fla. Contrs., LLC*, 2015 U.S. Dist. LEXIS 105981 (S.D. Fla. July 21, 2015) (60-day notice period); *Trentman v. RWL Communs., Inc.*, No. 2:15-cv-89-FtM-38CM, 2015 U.S. Dist. LEXIS 58153, at *16 (M.D.

Fla. May 2, 2015) (60-day notice period); *Randle v. Allconnect, Inc.*, 2014 U.S. Dist. LEXIS 62271 (N.D. Ga. May 6, 2014) (45-day notice period). Thus, Defendants request the opt-in period be limited to 45 days if the Court grants the Motion.

> **F.      Putative Class Members that Receive a Notice of This Action Must be Barred from Publishing the Notice on Social Media or Otherwise Disseminating the Notice to Third Parties**

Generally, the purpose of the Court's involvement in the preparation and distribution of collective action notices is to "ensure that [the notice] is timely, accurate, and informative." *Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 172 (1989).  Further, courts have explained that "the purpose for judicial notice [] is simply to inform potential class members of their rights[.]" *Robinson v. Ryla Teleservices, Inc.*, No. CA 11-131-KD-C, 2011 U.S. Dist. LEXIS 147207, at *n.7 (S.D. Ala. Dec. 20, 2011) (internal quotation marks omitted) (citing *Wlotkowski v. Michigan Bell Tele. Co.*, 267 F.R.D. 213, 220 (E.D. Mich. 2010)).

Plaintiff's proposed putative class is limited to a group of individuals that work or worked at Kiki.  If these individuals receive notice of this action, they must be prohibited from publishing the notice on social media or otherwise disseminating the notice to third parties because further dissemination extends beyond the purposes of the notice, which is to notify the class members of their rights in relation to this case. *See Hoffman-LaRoche*, 493 U.S. at 172.  Such dissemination, whether via social media or otherwise to third parties, has the inherent risk of spreading misinformation.  The Court's notice will be specific and advises potential class members of their rights.  The more attenuated the Court's notice becomes because of improper dissemination, the greater the risk of unintended harm to the Defendants as a result of inaccurate characterizations of the Court's notice, including but not limited to, incomplete or inaccurate publications such as omitting critical information, dates and deadlines.  Moreover, social media

and/or other third-party dissemination damages the Kiki brand and the Defendants without an adjudication of wrongdoing and will hurt Kiki's business, Defendants' reputations, and the current employees' livelihood.

Such a result goes well beyond the intended purpose of the Court approved notice and is prejudicial to Defendants. As a result, Defendants request that any notice authorized by the Court contain a statement prohibiting putative class member from publishing the notice on social media or otherwise disseminating the notice to third parties.

### G.   Defendants' Oppose Plaintiff's Proposed Notices and Consent Form

The substance of the notice proposed by Plaintiff and the manner in which he proposes to disseminate the notice are inappropriate. Additionally, Plaintiff's request for personal information about putative collective members is unwarranted and intrusive, and could encourage improper and unauthorized contact. If, over Defendants' objections, conditional certification is granted, Defendants respectfully requests that counsel be given a period of three weeks from the issuance of any order granting conditional certification to "meet and confer" on the terms of a notice and consent form, and the terms of disclosure, if any, of private putative class information relating to the notice. *See Moxley v. Os Rest. Servs., LLC,*, 8:21-cv-1760, 2022 U.S. Dist. LEXIS 85204, at *13 (M.D. Fla. May 11, 2022) (requiring the parties to meet and confer regarding the "information needed to send notice, as well as its content and method of distribution."); *see also, Conchado v. Kauff'S, Inc.*, 20-cv-80344, 2020 U.S. Dist. LEXIS 259179, at *9-10 (S.D. Fla. June 5, 2020) (requiring the parties to meet and confer regarding defendant's issues with plaintiff's submitted proposed notice in order to address any issues jointly); *D'Antuono v. C & G of Groton, Inc.*, No. 11-CV-0033 (MRK), 2011 U.S. Dist. LEXIS 135402, at *19 (D. Conn. Nov. 23, 2011) (ordering parties to submit joint revised notice, and if no agreement, ordering parties to submit separate reports explaining "disagreements and reasons

for each party's respective preferences"). Alternatively, Defendants respectfully request ten (10) days from the date of the Court's order to file their proposed notice and consent form should the Court not allow conferral.

Defendants believe conferral on the draft notices and consent form submitted by Plaintiff is required because they include a number of issues that Defendants' contest, including but not limited to the following. The notices do not explain that Defendants intend to defend this lawsuit, the notices minimize the fact that there has been no adjudication of unlawful conduct by Defendants, the notices do not inform the potential class members that they become a party to this lawsuit, the notices do not explain the employee may be subject to depositions and involved in discovery, the notices emphasis Plaintiff's summary of the FLSA unnecessarily, the notices do not include Defendants' counsel's contact information, and the notices do not advise individuals of potential liability for attorney fees and costs if Plaintiff is unsuccessful in his claims. *See Garcia v. J and J, Inc.*, 19-cv-60728-BLOOM/Valle, 2019 U.S. Dist. LEXIS 127200, at * (S.D. Fla. ) (Bloom, J.) (explaining the plaintiff's notice must be revised because (1) it did not advise individuals of right to choose their own attorney, (2) it did not provide the defendant's counsel's contact information, (3) it did not notify the individuals of the potential liability for attorneys' fees and costs, (4) it did not notify the individuals about the need to participate in discovery, (5) it included inappropriate language about plaintiff's counsel's ability to reuse the form and refile a separate claim, and (6) it included language regarding the statute of limitations.) As a result, Defendants request that the parties confer regarding these issues before the Court approves the unilateral submissions filed by Plaintiff.

.

## CONCLUSION

WHEREFORE, Defendants respectfully requests that the Court enter an Order: (a) denying the Motion entirely; or in the alternative, (b) limiting the scope of the notice and consent form as set forth above; (c) requiring conferral about the notice and consent form during the three weeks immediately following the order, or alternatively, providing Defendants ten (10) days from the date of the Court's order to file their proposed notice and consent form should the Court not allow conferral; and (d) granting such further relief as the Court deems appropriate.

Dated: January 17, 2023

Respectfully submitted,

| | |
|---|---|
| JACKSON LEWIS P.C. | Levine & Partners, P.A. |
| One Biscayne Tower, Suite 3500 | 3350 Mary Street |
| Two South Biscayne Boulevard | Miami, Florida 33133 |
| Miami, Florida 33131 | Telephone: (305) 372-1352 |
| Telephone: (305) 577-7600 | |
| /s/ *Reynaldo Velazquez* | /s/ Allan Reiss |
| Reynaldo Velazquez, Esq. | Allan Reiss, Esq |
| Florida Bar No.: 069779 | Florida Bar No. 858500 |
| Email: *rey.velazquez@jacksonlewis.com* | Email: asr@levinelawfirm.com |
| Roman Sarangoulis, Esq. | *Counsel for RJ River, LLC* |
| Florida Bar No. 1011944 | |
| Email: *roman.sarangoulis@jacksonlewis.com* | |

*Counsel for 450 North River Drive, LLC,*
*d/b/a Kiki on the River and Roman Jones*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document is being served on January 17, 2023, on all counsel of record on the Service List below via transmission of Notices of Electronic Filing generated by CM/ECF

*s/ Roman Sarangoulis*
Roman Sarangoulis, Esq.

**SERVICE LIST**

Brian Pollock, Esq.
Florida Bar No. 174742
Email: *brian@fairlawattorney.com*
FAIRLAW FIRM
135 San Lorenzo Ave.
Coral Gables, Florida 33146
Telephone: (305) 230-4884

*Attorneys for Plaintiff*

Allan Reiss, Esq.
Florida Bar No. 858500
Email: *Asr@Levinelawfirm.com*
Levine & Partners, P.A.
3350 Mary Street
Miami, Florida 33133
Telephone: (305) 372-1352
Facsimile: (305) 372-1352

*Attorneys for RJ River, LLC*

Reynaldo Velazquez, Esq.
Florida Bar No.:  069779
Email: *rey.velazquez@jacksonlewis.com*
Roman Sarangoulis, Esq.
Florida Bar No. 1011944
Email: roman.sarangoulis@jacksonlewis.com
JACKSON LEWIS P.C.
One Biscayne Tower
2 South Biscayne Boulevard, Suite 3500
Miami, Florida 33131
Telephone: 305-577-7600
Facsimile: 305-373-4466

*Counsel for 450 North River Drive, LLC, d/b/a Kiki on the River, and Roman Jones*