# EXHIBIT

# "B"

EXHIBIT "B"

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-CV-23074-BLOOM/OTAZO-REYES

OCTAVIO COLLADO,

    Plaintiff,

vs.

450 NORTH RIVER DRIVE, LLC,
D/B/A KIKI ON THE RIVER,
RJ RIVER, LLC AND
ROMAN JONES,

    Defendants.
_____/

## DECLARATION OF AUGUSTO GUERRA

I, Augusto Guerra, make the following declaration pursuant to 28 U.S.C. §1746 and declare as follows:

1. My name is Augusto Guerra.

2. I make this Declaration based on my personal knowledge.

3. I am the named Plaintiff in this case.

4. I am over the age of 18, *sui juris*, and competent to testify to the matters contained in this Declaration.

5. I worked for the Defendants from about October 2017, to September 2022, as a server and then as a captain at Kiki on the River, a restaurant in Miami, Florida.

6. My work at Kiki on the River as a Captain involved servicing tables, such as taking food and drink orders tableside, entering all orders into the Point-of-Sale system, bringing out the food, helping bus the tables, attending to customers' needs, bringing customers their bills, collecting

payment from customers, using the Point-of-Sale system to ring up the customers and close out their bills, and doing a report of all sales for the tables I was assigned that day and providing that report to either Roman Jones or to a General Manager.

7. As a server at Kiki on the River, my job duties included servicing tables, such as taking food and drink orders tableside, entering all orders into the Point-of-Sale system, bringing out the food, helping bus the tables, and attending to customers' needs.

8. Working as a Captain at Kiki on the River involved the additional duties of collecting payment, running a daily report, and providing that daily report to Mr. Jones or to a General Manager.

9. Kiki on the River would normally assign one Captain and one Server to five or six tables at a time, and they'd work together as a team

10. Kiki on the River included an automatic service charge on the bill for customers to pay.

11. In addition to paying the mandatory service charge, customers could leave/pay an additional amount as a gratuity or tip.

12. These tips that customers left/paid above the mandatory service charge are also called overtips.

13. When I would ring up my customers in the Point-of-Sale system, I would not only collect payment for the total amount of the bill, but I would also collect the overtips that the customers paid (and enter the overtips paid by credit card into the Point-of-Sale system).

14. Kiki on the River would receive the overtips that were paid by credit cards.

15. When I received cash tips, I was required to turn them in to whichever General Manager at Kiki on the River was working at the time.

16. Kiki on the River would collect and take control of all the cash and credit card tips.

17. My paychecks at Kiki on the River came from 450 North River Drive, LLC, and included an hourly wage that was less than the applicable minimum wage, commissions (or service charges), and tips they collected to make up for the difference.

18. On a weekly basis, 450 North River Drive, LLC would pay me and issue my pay stub.

19. My paystubs identified the hourly wages I received, the service charges (commissions) shared with me, and the tips that were being paid to me.

20. Although I had customers who left significant tips/overtips on their bills, I did not receive all the overtips that Kiki on the River was supposed to be paid to me, meaning Defendants either kept a portion of the overtips or improperly distributed a portion of the overtips to employees who were not entitled to receive tips.

21. Attached as Exhibit "1" is a picture of a receipt from a customer who left me a $30,000 overtip on April 22, 2022.

22. Attached as Exhibit "2" is a picture of a receipt for payment by a customer who let me a $10,000 overtip on February 25, 2022.

23. I received significant overtips on other occasions, and I know from talking with my former coworkers that they also had customers leave significant overtips, but we did not get all the tips/overtips that we were supposed to receive.

24. I have personal knowledge that other tipped employees at Kiki on the River will want to participate in this lawsuit, but many of them are unaware of their rights regarding minimum wages and tips.

25. Defendants employed over 50 others during the time I worked for them who performed similar – if not the same type of work as me – and who were subject to the same type of pay violation practices as me.

26. I believe that many of my former coworkers also would join this lawsuit and recover the tips (overtips) they earned but did not receive while working for Defendants if they knew about this lawsuit.

27. After Mr. Collado told me about this lawsuit, I joined.

28. My personal experience with Defendants is that they are likely to retaliate against anyone who speaks up about not being paid properly, because of the management style at the restaurant.

29. Employees who currently work for the Defendants would benefit from the Court supervising a process in which they would be notified of their rights and that federal law can protect them if they are retaliated against for making a claim (or joining this lawsuit) to recover the tips (overtips) owed to them.

30. If the Court supervised the process of notifying current employees, to hopefully protect the currently employed tipped employees working for Defendants from being retaliated against, I think that others would end up joining this lawsuit to recover the tips (overtips) they earned but did not receive.

31. I fully understand and aver the facts contained within this Declaration are true and correct.

**DECLARATION**

By my signature below, I execute this declaration in Miami-Dade County, Florida, and declare under penalty of perjury that the foregoing is true and correct.

By _____
AUGUSTO GUERRA

Jan 24, 2023
DATE

# EXHIBIT

# "1"

EXHIBIT "1"



4:03 .ill 5G

Check #76               Table 90
Guest Count: 6
Ordered:        4/22/22 6:51 PM

Input Type
                C (EMV Chip Read)
AMERICAN EXPRESS
                       xxxxxxxx1009
Time            04/23/22 12:49 AM

Transaction Type           Sale
Authorization          Approved
Approval Code            886460
Payment ID       k9cHqkHCMdFO
Application ID
                 A000000025010801
Application Label
                 AMERICAN EXPRESS
Merchant ID            040922660
Card Reader               BBPOS

                Subtotal
                          $34,743.00
Service Charge
(21.00%)                  $7,296.03
           Tax            $3,363.12
        Amount           $45,402.15
+ Additional Tip:        30,000.00
         Total:          75,402.00

Muchas *[handwritten note, partially redacted]*
Customer Copy

# EXHIBIT

# "2"

EXHIBIT "2"

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

```
Server: Augusto G
Check #279                    Table 100
Guest Count: 9
Ordered:    2/25/22 10:31 PM


Input Type
                    C (EMV Chip Read)
AMERICAN EXPRESS
                          xxxxxxxx1001
                              10:47 PM
Time

                                  Sale
Transaction Type
                              Approved
Authorization
                                804616
Approval Code
Payment ID          rHYxYjcLppqN
Application ID
                    A000000025010801
Application Label
                    AMERICAN EXPRESS
Terminal ID
Merchant ID                 048922660
Card Reader                     BBPOS


            Subtotal
                            $7,000.00
Service Charge
 (21.00%)                   $1,470.00
                Tax           $677.60
             Amount         $9,147.60

+ Additional Tip:     10,000—
            Total:    19,147.60
```