UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:22-CV-23074-BLOOM/OTAZO-REYES

OCTAVIO COLLADO
For himself and all others
similarly situated,

    Plaintiff,

v.

450 NORTH RIVER DRIVE, LLC,
D/B/A KIKI ON THE RIVER,
RJ RIVER, LLC, AND
ROMAN JONES,

    Defendants.
_____/

**DEFENDANTS 450 NORTH RIVER DRIVE, LLC, D/B/A KIKI ON THE RIVER, RJ RIVER, LLC, AND ROMAN JONES' REPLY IN OPPOSITION TO PLAINTIFF'S RESPONSE AND IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS WITH PREJUDICE PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendants, 450 North River Drive, LLC, d/b/a Kiki on the River ("Kiki"), RJ River LLC (RJ), and Roman Jones ("Jones") (collectively "Defendants"), by and through their respective undersigned counsel, and pursuant to Local Rule 7.1(c)(1) of the United States District Court for the Southern District of Florida, hereby file their joint reply in opposition to Plaintiff's response and in support of Defendants' joint motion to dismiss with prejudice the Second Amended Complaint filed by Octavio Collado ("Plaintiff"). Defendants state the following in support.

**I.    PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS COUNT I DOES NOT HAVE MERIT**

Plaintiff response pertaining to Count I is insufficient to defeat Defendants' arguments supporting dismissal of the Fair Labor Standards Act (FLSA) claim.

1

### A. Defendants Did Not Waive their Arguments as to Count I.

The futility of Plaintiff's position that Defendants waived their arguments regarding Count I is clear from his acceptance of their right to contest the Second Amended Complaint and the fact that the case he cites actually supports Defendants' filing of the motion to dismiss Count I of the Second Amended Complaint.[1]

Plaintiff opted not to contest Defendants' motions to dismiss the Amended Complaint, including the arguments related to Count I, and instead sought leave from the Court to file the Second Amended Complaint to try to cure the deficiencies Defendants raised in the motions to dismiss the Amended Complaint. *See* E.C.F. No. 57 at ¶ 9. Defendants did not oppose Plaintiff's request for leave but specifically noted, as reflected in Plaintiff's motion for leave, that they "reserved the right to file motions in response thereto." *Id*. at ¶ 10. At no time during the communications addressing Plaintiff's decision not to oppose the motion to dismiss the Amended Complaint and instead seek leave of court to file the Second Amended Complaint, did Plaintiff contest Defendants' reservation of the right to file a motion to dismiss that included Count I of the Second Amended Complaint. (*See* Exhibit A: Email Exchange Between Counsel, 1/10-11/23). In fact, in those communications Plaintiff acknowledges Defendants' reservation of their right to file a motion to dismiss after analyzing the Second Amended Complaint. (*See id*.)

The case Plaintiff cites, *Krinsk v. Sun Trust Banks, Inc.*, 654 F.3d 1194, 1202 (11th Cir. 2011), does not hold that answering a complaint automatically waives arguments that are subsequently raised in a motion to dismiss an amended complaint. Instead, the court's holding pertained to the waiver of a right to arbitrate. *See Krinsk*, 654 F.3d at 1200. Significantly, the

---

[1] Not to mention Plaintiff limited his waiver theory to two sentences contained in the section of the response titled "The Second Amended Complaint" instead of including the waiver issue in the "Argument" section. *See* E.C.F. No. 64 at 2-3.

Court in *Krinsk* allowed the defendant to demand arbitration in response to the filing of an amended complaint after not doing so in response to the original complaint and despite engaging in significant litigation over a six-month period. *See Id*. at 1202-04. The Court reasoned that the arbitration demand made after the filing of the amended complaint was not waived despite the failure to seek arbitration in response to the original complaint because the "amended complaint . . . change[d] the theory or scope of the case." *Id*. at 1202.

That is exactly what the Amended Complaint and then the Second Amended Complaint did in this case. The Second Amended Complaint, like the Amended Complaint, seeks to expand the "theory" and "scope'" of the original complaint by attempting to bring claims under the Florida Minimum Wage Act (FMWA) and Florida common law. *Compare* E.C.F. No. 1 *with* E.C.F. Nos. 40 and 59. Those claims, as Plaintiff acknowledges in his response, increases the statute of limitations from 2 to 3 years under the FLSA to 4 to 5 years under the FMWA and Florida common law. *See* E.C.F. No. 64 at 3. That increase will naturally result in a significant increase of the alleged class participants and liability. As a result, Defendants did not waive their right to file a motion to dismiss Count I of the Second Amended Complaint.

   **B. Plaintiff's Response Confirms the Second Amended Complaint is a Shotgun Pleading and that it Fails to Meet Federal Pleading Standards.**

As a preliminary matter, Plaintiff's response claims incorrectly that Defendants do not identify which one of the shotgun pleading categories applies to Count I. *See* E.C.F. No. 64 at 6. Defendants' motion to dismiss expressly states as follows in relation to why Count I is a shotgun pleading:

> Count I is also a shotgun pleading that must be dismissed to the extent it tries to combine a tip retention/distribution and minimum wage claim in a single count.

E.C.F. No. 63 at 4.

3

In addition to the mischaracterization dispelled above, Plaintiff's response is replete with double talk that undermines his claims addressing Count I being a shotgun pleading and his failure to meet federal pleading standards.  For example, Plaintiff's response claims "Defendants misread Count I to include a claim not present" as it relates to the minimum wage claim, and then, incredibly, argues a couple of pages later that Count I "states a cause of action for failure to pay a[t] least a minimum wage under the FLSA . . .." *See* E.C.F. No. 64 at 5, 8.  Plaintiff's response then goes from mischaracterizing and double talk to insulting anyone that reads Count I in a manner that is different than the distorted reading suggested in the response, by claiming there is "nothing in Count I from which an intelligent reader could glean that Mr. Collado seeks to recover for anything other than" tips. *Id*. at 6.  Amazingly, the response levels that insult despite the fact that Count I repeatedly suggest minimum wage violations by claiming Defendants paid "less than the applicable minimum wage," "less than the applicable Florida and federal minimum wage," and "below the $7.25 per hour minimum wage required by the FLSA." E.C.F. No. 59 at ¶¶ 8, 28, and 40.  If that is not enough, Count I's wherefore clause asks the Court to declare Defendants are "in willful violation of the minimum wage provisions of the FLSA." *Id*. at 17.  Despite the response's mischaracterization, double talk, and insult, it is clear Count I is a shotgun pleading because it fails to "give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015).

Plaintiff's reliance on *Hoenninger v. Leasing Enterprises Ltd.*, 803 Fed. Appx. 756 (5th Cir. 2020) is misplaced.  Unlike the case at issue, in *Hoenninger* there was an apparent minimum wage violation because the alleged tip tampering occurred while plaintiffs were paid on a tip credit basis.  *See Hoenninger* 803 Fed. Appx. at 759 ("FLSA allows employers to claim a tip credit,

which counts towards the required $7.25 per hour."); see also *Steele v. Leasing Enterprises Ltd.*, 826 F.3d 237, 241 (5th Cir. 2016) ("Leasing Enterprises, Limited owns Perry's Restaurants, LLC. . . Perry's paid its servers who received tips from customers $2.13 per hour in base pay in accordance with 29 U.S.C. § 203(m) and 29 C.F.R. §§ 531.52, 531.59.").

In this case, Plaintiff does not allege in Count I that he was paid on a tip credit basis or that the direct hourly rate he was paid plus the percentage of the service charge he received was below the FLSA's minimum wage. *See* E.C.F. No. 59 at ¶¶ 1-76. Such allegations are not "hyper detailed facts" as suggested in the response. To the contrary, they are simple allegations that are necessary to provide Defendants fair notice of the claims and the grounds upon which they are based. *See Weiland*, 792 F.3d at 1323; *see also Rosell v. VMSB, LLC*, No. 20-20857, 2021 U.S. Dist. LEXIS 116663, at *11(S.D. Fla. June 22, 2021) report and recommendations adopted 2022 U.S. Dist. LEXIS 55739 (Mar. 28, 2022) ("compensation that qualifies as a service charge can satisfy the FLSA's minimum wage . . . obligations"). Without such allegations, Defendants are uncertain whether Plaintiff is trying to bring a tip retention/distribution claim, minimum wage claim, or both, which is inappropriate and Plaintiff's attempt to suggest otherwise is unavailing.

### C. Defendants Never Argue in their Motion to Dismiss the Second Amended Complaint that the Only Way to Seek Relief under Section 203(m)(2)(b) is to also Allege a Federal Minimum Wage Violation.

Plaintiff's response again mischaracterizes Defendants' straight forward assertion that Count I of the Second Amended Complaint improperly conflates an alleged claim for improper tip retention/distribution with a separate minimum wage claim. Contrary to Plaintiff's confusing recharacterization, Defendants assert as follows:

> Naturally, the FLSA creates a cause of action to protect an employee's tips when the employer does not take a tip credit and pays the employee at least the federal minimum wage. That cause of action is found at 29 U.S.C. § 216(b), which specifically grants employees a **separate** cause of action against an employer for

5

> violating certain provisions of the FLSA, including sections 206 (minimum wage), 207 (overtime), and 203(m)(2)(B) (tip retention).

E.C.F. No. 63 at 5 (emphasis in original). Again, the problem with Count I of the Second Amended complaint is that it improperly conflates and combines what should be separate claims for improper tip retention/distribution and failure to pay minimum wage. Plaintiff obfuscates the issue because both claims cannot be pleaded in good faith under the facts of this case. However, even if the Court is inclined to generally believe the joining of an improper tip retention/distribution claim with a minimum wage claim is appropriate, Defendants respectfully submit it is not in this case because Count I fails to allege that Plaintiff was paid on a tip credit basis or that the direct hourly rate he was paid plus the percentage of the service charge he received was below the FLSA's minimum wage. *See Rosell*, 2021 U.S. Dist. LEXIS 116663, at *11 ("compensation that qualifies as a service charge can satisfy the FLSA's minimum wage . . . obligations").

## II.   PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS COUNT II DOES NOT HAVE MERIT

As a preliminary matter, Plaintiff's response inaccurately portrays another argument supporting dismissal. The response inaccurately claims that Defendants failed to provide "guidance" or "supportive authority" to sustain their argument that the FMWA does not provide a cause of action to recover tips despite the motion to dismiss citing to the Florida Constitution and FMWA to support said argument. *See* E.C.F. No. 63 at 9.

Plaintiff's theory that the FLSA's definition of "wage" includes tips for purposes of the FMWA is based entirely on the unpled theory that Plaintiff was paid an hourly rate below the Florida minimum wage and Kiki took a tip credit to make up the difference, which improperly leaves Defendants and the Court to speculate as to the basis of Plaintiff's claim. *See* E.C.F. No. 64 at 11. Count II of the Second Amended Complaint **never** alleges that the direct hourly rate and

percentage of the service charge Plaintiff was paid equaled an hourly rate below the Florida minimum wage. *See* E.C.F. No. 59 at ¶¶ 1-34 and 77-88. That is a significant omission because the FLSA's regulations unequivocally exclude tips from the definition of "wage" when employees are paid at least minimum wage. The relevant FLSA regulation states as follows in relation to the term "wage" when an employee receives tips:

> Any tips received by the employee **in excess of the tip credit** need not be included in the regular rate. Such tips **are not payments made by the employer to the employee as renumeration for employment** within the meaning of the Act.

29 C.F.R. § 531.60 (emphasis added). If Plaintiff was paid at or above the Florida minimum wage, then he was not paid on a tip credit basis and the tips he received cannot be "renumeration for employment." *Id*.

Moreover, Plaintiff's references to the FLSA's meaning of "wage" tries to justify the creation of a cause action that does not exists anywhere in the FMWA. The FMWA only provides a cause of action to recover unpaid Florida minimum wage as reflected by the following statutory language:

> [P]rior to bringing any claim for **unpaid minimum wages** pursuant to this section, the person aggrieved shall notify the employer alleged to have violated this section, in writing, of an intent to initiate such an action. The notice must identify the **minimum wage** to which the person aggrieved claims entitlement . . ..

Fla. Stat. § 448.110(6)(a) (emphasis added). The response's attempt to create a FMWA cause of action to recover tips by relying on the FLSA's meaning of "wage" flies in the face of the FLSA's regulation and the FMWA.

Plaintiff's reliance on *Norsoph v. Riverside Resort & Casino, Inc.*, No. 2:13-cv-00580, 2020 U.S. Dist. LEXIS 23091 (D. Nev. Feb. 11, 2020) is misplaced. First, *Norsoph* is a Nevada case that is entirely unrelated to Florida constitutional and statutory law. Second, *Norsoph* does not pertain to the court determining whether a Nevada minimum wage statute allows a cause of

action to recover tips.  Finally, Plaintiff cites *Norsoph* for the proposition that the FLSA protects employees from unlawful tip retention/distribution regardless of the employer taking a tip credit, which is not disputed in this case.

Plaintiff also cites *Biller v. Café Luna of Naples, Inc.*, No. 2:14cv659, 2017 U.S. Dist. LEXIS 234991, at *11-12 (M.D. Fla. Feb. 7, 2017) and quotes that "[e]mployers can factor the employee's tips into the calculation of the employee's wages."  Plaintiff uses said quote to try to suggest tips are always factored into an employee's wages when the court was actually referring to factoring tips into wages **only when the employer is taking a tip credit to reach the minimum wage.**  See *Biller*, 2017 U.S. Dist. LEXIS 234991 at *4, 11-12.  In this case, Defendants and the Court are unaware whether Plaintiff was paid on a tip credit basis because of his failure to allege that the direct hourly rate he was paid plus the percentage of the service charge he received was below the FLSA's minimum wage.  See *Rosell*, 2021 U.S. Dist. LEXIS 116663 at 11 ("compensation that qualifies as a service charge can satisfy the FLSA's minimum wage . . . obligations").  The other two cases Plaintiff cites do **not** involve claims for alleged unlawful tip retention/distribution and do **not** stand for the proposition that the FMWA creates a cause of action to recover tips, that the tips at issue in this case fall within the term "wage" under the FLSA, or that Plaintiff should be allowed to assert a non-existent cause of action to recover tips under the FMWA and then have issue regarding whether tips are wages resolved during discovery.  See *Chavez v. Grill Enterprises LLC*, No. 20-Civ-22603, 2022 U.S. Dist. LEXIS 167005 (S.D. Fla. Sept. 15, 2022) (case involved defendant's failure to pay plaintiff minimum wage under the FLSA and FMWA and taking a tip credit greater than the amount allowed by the FLSA); *Ash v. Sambodromo, LLC*, 676 F. Supp. 2d 1360, 1363 (S.D. Fla. 2009) (case involved allegations of failure to pay minimum wage in relation to tip credit).

### III. PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS COUNT III DOES NOT HAVE MERIT

Plaintiff's response makes a futile attempt to address the fact that the tips at issue in this case are not wages under Florida common law. Assuming, *arguendo*, the tips are wages, it is a distinction without a difference because to state an unpaid wages cause of action against Jones or RJ under Florida common law, an express or implied contact must be alleged. Plaintiff fails to contend otherwise in his response and the allegations in Counts III$_b$ and III$_c$ do not allege an express or implied contract or otherwise satisfy the elements of a breach of an oral contract.

**A. The Tips at Issue in this Case are not Wages under Florida Common Law.**

Defendants provide the Court with ample authority to hold Florida's common law does not encompass tips. Specifically, to the Florida constitution, FLSA, and Florida Supreme Court. The Florida Constitution states that the term "'Wage' shall have the meaning[] established under the federal Fair Labor Standards Act (FLSA) and its implementing regulations." Fla. Const. Art. X § 24(b). The FLSA then states that tips **"in excess of the tip credit" . . . are not payments made by the employer to the employee as renumeration for employment** within the meaning of the Act. 29 C.F.R. § 531.60 (emphasis added). Defendants then cite to the Florida Supreme Court, which states "[f]or a principle of law to be governed by the common law in Florida, that principle . . . must not be inconsistent with the constitution and laws of the United States or the acts of the legislature of this State." *State ex rel. Clayton v. Bd. of Regents*, 635 So. 2d 937, 938 (Fla. 1994).

Plaintiff's response, despite its suggestion to the contrary, only cites a **single** case finding that tips are recoverable under Florida common law. The balance of the cases in the response only have references to definitions that summarily convey tips are included within the definition of wages but none of the cases hold that tips are wages or consider the Florida Constitution's definition of "wage" in its analysis. In relation to the **one** case that concludes tips are wages,

9

*Hamann v. Little Italy's Meatballs, LLC*, No. 8:20-cv-2589, 2021 U.S. Dist. LEXIS 64142 (M.D. Fla. Mar. 31, 2021) report and recommendations adopted, 2021 U.S. Dist. LEXIS 75564 (M.D. Fla. Apr. 20, 2021), it is not binding and unpersuasive because it reaches the conclusion without considering the Florida Constitution's definition of "wage" that only includes tips that are used to reach the state's minimum wage, i.e., tip credit. Since Count III fails to allege that Plaintiff was paid on a tip credit basis or that Plaintiff was paid below minimum wage after adding his direct hourly rate with the service charge, there is no tip credit and that means none of the tips are wages under the Florida Constitution and common law.

### B. Plaintiff's Response Essentially Concedes a Breach of Contract must be Pled.

Plaintiff's response does not refute that he failed to allege the existence of a contract between himself and Jones or RJ. As a result, Counts $III_b$ and $III_c$ fail because the vague allegations that exist are insufficient under Florida common law to satisfy the elements of a breach of oral contract. *See W.R. Townsend Contracting, Inc. s. Jensen Civil Construction, Inc.,* 728 So.2d 297, 299 (Fla. 1st DCA 1999) ("[t]o state a cause of action for breach of an oral contract, a plaintiff is required to allege facts that, if taken as true, demonstrate that the parties mutually assented to 'a certain and definite proposition' and left no essential terms open."). Moreover, Plaintiff's theory that he does not have to plead a contract with Jones or RJ under Florida common law, which he admits is "not as prevalent" in the Southern District, is not supported by the six cases he cites and two of the cases support that a contract must be pled. *See Hanshaw v. Veterans & Medicaid Planning Grp. PLLC*, No. 5:17-cv-410-Oc-41PRL, 2019 U.S. Dist. LEXIS 146749 at *14 (M.D. Fla. Mar. 28, 2019) ("Plaintiff alleges that she entered into an oral agreement with Defendants . . .."); *Eldridge v. EDCare Mgmt. Inc.,* 13-61373, 2013 U.S. Dist. LEXIS 166267 at *15 (S.D. Fla. Nov. 22, 2013) ("In this case, Eldridge's claim is brought under a breach of contract theory.").

10

Dated:  February 3, 2023

Respectfully submitted,

| | |
|---|---|
| JACKSON LEWIS P.C. | Levine & Partners, P.A. |
| One Biscayne Tower, Suite 3500 | 3350 Mary Street |
| Two South Biscayne Boulevard | Miami, Florida 33133 |
| Miami, Florida 33131 | Telephone: (305) 372-1352 |
| Telephone: (305) 577-7600 | |
| /s/ *Reynaldo Velazquez* | /s/ *Allan Reiss* |
| Reynaldo Velazquez, Esq. | Allan Reiss, Esq |
| Florida Bar No.: 069779 | Florida Bar No. 858500 |
| Email: rey.velazquez@jacksonlewis.com | Email: asr@levinelawfirm.com |
| Roman Sarangoulis, Esq. | *Counsel for RJ River, LLC* |
| Florida Bar No. 1011944 | |
| Email: roman.sarangoulis@jacksonlewis.com | |

*Counsel for 450 North River Drive, LLC,*
*d/b/a Kiki on the River and Roman Jones*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document is being served on February 3, 2023, on all counsel of record on the Service List below via transmission of Notices of Electronic Filing generated by CM/ECF

*s/ Roman Sarangoulis*
Roman Sarangoulis, Esq.

**SERVICE LIST**

Brian Pollock, Esq.
Florida Bar No. 174742
Email: *brian@fairlawattorney.com*
FAIRLAW FIRM
135 San Lorenzo Ave.
Coral Gables, Florida 33146
Telephone: (305) 230-4884

*Attorneys for Plaintiff*

Reynaldo Velazquez, Esq.
Florida Bar No.: 069779
Email: *rey.velazquez@jacksonlewis.com*
Roman Sarangoulis, Esq.
Florida Bar No. 1011944
Email: roman.sarangoulis@jacksonlewis.com
JACKSON LEWIS P.C.
One Biscayne Tower
2 South Biscayne Boulevard, Suite 3500
Miami, Florida 33131
Telephone: 305-577-7600
Facsimile: 305-373-4466

*Counsel for 450 North River Drive, LLC, Kiki on the River and Roman Jones*

Allan Reiss, Esq.
Florida Bar No. 858500
Email: *Asr@Levinelawfirm.com*
Levine & Partners, P.A.
3350 Mary Street
Miami, Florida 33133
Telephone: (305) 372-1352
Facsimile: (305) 372-1352

*Attorneys for RJ River, LLC*