UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-CV-23074-BLOOM/OTAZO-REYES

OCTAVIO COLLADO,

    Plaintiff,

vs.

450 NORTH RIVER DRIVE, LLC,
D/B/A KIKI ON THE RIVER,
RJ RIVER, LLC AND
ROMAN JONES,

    Defendants.
_____/

# RESPONSE IN OPPOSITION TO

# TO THE DEFENDANTS' MOTION

# FOR PROTECTIVE ORDER

## I. INTRODUCTION

The Defendants' pending Motion for Protective Order is legally baseless, factually unfounded, filled with spurious *ad hominem* attacks directed at the undersigned counsel, and filed before a conferral. Defendants rely on Rule 26(c) to request the Court to issue a protective order regarding social media postings, even though Rule 26(c) does not permit the Court to issue a gag order. Defendants complain about the social media posts while offering no legitimate basis to have the Court preclude (or order removal of) them. "Although district courts are empowered to restrict communications in a class action, that power must be used sparingly because of the substantial First Amendment considerations triggered by any such restraints." *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1226 (S.D. Ala. 2008). Defendants advance unwarranted and unnecessary attacks on Plaintiff's counsel based on paranoia instead of facts and hastily pursue their Motion without a legitimate factual or legal basis. The lack of factual or legal support for the Defendants' Motion, like their failure to conduct a pre-filing conferral, requires that their motion be denied. In denying the Defendants' Motion for Protective Order, the Court should consider taking all necessary and appropriate actions to disincentivize Defendants from continuing to make baseless personal attacks on Plaintiff's counsel in the future, as has become their strategy in this case.

## II. ARGUMENT

Defendants ask for relief regarding social media postings that were not "directly targeted at individuals" and did not solicit participants for this case but were instead part of an informational social media campaign on TikTok. *See Hamric v. True N. Holdings, Inc*, 2016 WL 3912482, at *2 (N.D. Ohio July 20, 2016). Defendants mischaracterize the nature of several TikTok videos posted by the undersigned law firm to conjure up a nonexistent problem, levy personal attacks, and obtain an unavailable remedy. The Defendants contend that they waited only 90 minutes before filing

their motion because "time is of the essence." Yet, they waited several weeks after acknowledging having viewed the first TikTok video to seek relief. [ECF Nos. 82 at 16.] The United States Supreme Court in *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981) determined the relief that the Defendants now request is both unavailable and inappropriate. Defendants offer bluster instead of the type of "clear record" that warrants the Court's oversight. *Id.*, at 100. "The mere possibility of abuses in class-action litigation does not justify routine adoption of a communications ban that interferes with the formation of a class or the prosecution of a class action…." *Id.*, at 90. Herein, Defendants are not entitled to relief because no abuses occurred.

No protective order can be entered because Defendants never offered any "evidentiary showing of actual or threatened abuse." *Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554, 561 (S.D. Fla. 2008). Defendants merely offer argument of counsel, "but counsel's argument is not evidence." *Bryant v. U.S. Steel Corp.*, 428 Fed. Appx. 895, 897 (11th Cir. 2011). Defendants do not carry their burden to establish the basis to prohibit the Plaintiff, the Opt-In Plaintiffs, and their counsel from talking about this case. *See e.g.*, *McCrimmon v. Centurion of Florida, LLC*, 2021 WL 7160707, at *2 (M.D. Fla. Apr. 28, 2021) ("Any renewed motion for entry of a protective order must include the requisite factual and legal support to meet the movant's burden under Rule 26(c)(1).") Defendants also fail to carry their burden to prove "the form of communication at issue" was "abusive." *Jeld-Wen*, 250 F.R.D. at 561. Defendants do not offer any evidence of abusive communications, do not identify any factually incorrect statements, and do not argue that any social media postings were "abusive." If the Court were to issue an order, the "resulting order must be carefully drawn so that it interferes with free speech as little as possible." *Id.*, at 561 (citing *Gulf Oil*, 452 U.S. at 102.) Ultimately, no protective order can issue because Defendants fail to establish the elements *Gulf Oil* requires.

    **A.**     <u>**The Defendants' Failure To Conduct A Meaningful Conferral Requires The Court Address This Threshold Issue In The Context Of The Defendants' Ad Hominem Attacks When Denying Their Motion.**</u>

Defendants repeatedly and unnecessarily attack the undersigned counsel in their filings. [ECF Nos. 82 at 16, 96, *passim*.] Defendants levy these inappropriate personal attacks despite their confessed failure to confer before filing the instant Motion. [ECF No. 96 at 6.] Defendants sent an email to the undersigned counsel at 3:55 p.m. on March 2, 2023, to "confer" about their requesting "the Court enter an order to cease any further postings and requiring you to delete the current videos." Defendants did not call the undersigned nor make any further attempt to discuss their requested relief before they filed the instant Motion for Protective Order approximately 90 minutes later, at 5:27 p.m. Regardless of the subsequent communications, the Defendants' failure to have a meaningful conferral before filing their Motion for Protective Order – and their filing it a mere 90 minutes after sending an email – requires the denial of the relief they request. Local Rule 7.1.

The undersigned did not see, let alone respond to, the Defendants' "conferral" email until hours after the Motion was filed, as he was driving to Orlando, Florida. Defendants admit that they filed to conduct a meaningful conferral in their Motion, despite the requirement imposed by Local Rule 7.1, in the body of their "Certificate of Good Faith", which is reproduced below:

> Defendants hereby certify that movant attempted to conferred with Plaintiff's counsel regarding the matters set forth in this Motion via email on March 2, 2023. Plaintiff's counsel has not responded to the conferral; however, based on prior communications regarding the issues presented in this Motion **Defendants anticipate** Plaintiff objecting to the relief sought. Nevertheless, **due to the nature of the requested relief and time being of the essence** Defendants submit this motion in good faith.

[ECF No. 96 at 6.] The Defendants' failure to confer is properly considered in the context of the baseless *ad hominem* attacks Defendants levy against the undersigned counsel in their Motion.

The undersigned has extended every professional courtesy to Defendants during this litigation, including granting numerous extensions to respond to the various filings in this case. [ECF Nos. 16, 34, 45, 49, 50, 53, 78.] After the Defendants requested that all parties appear in person for the settlement conference, the undersigned agreed to allow the representative for the Defendants' insurer to appear telephonically.[1] [ECF No. 89.] Against this backdrop of extending professional courtesy after professional courtesy, Defendants continue their campaign of asserting baseless and improper *ad hominem* attacks on the undersigned. The Defendants' ungrateful litigation tactic of repeatedly attacking opposing counsel is best addressed using the Court's inherent authority. *Wright v. Branch Banking & Tr. Co.*, 857 Fed. Appx. 1009, 1013 (11th Cir. 2021) (granting sanctions for "continued and pervasive **ad hominem** attacks") [*emphasis in original*].

**B.      The Defendants' Motion Is Legally Baseless Because Rule 26(c) Governs Protection From Discovery, Not Social Media.**

Defendants rely on Fed. R. Civ. P. 26(c) for their Motion, but no provision within Rule 26(c) permits the requested relief. Rule 26 governs discovery, with subsection (c) addressing the issuance of protective orders. Rule 26(c) does not provide for a protective order to address anything other than discovery issues. Defendants cite no case recognizing the Court's authority to issue a protective order concerning social media posts founded on Rule 26(c). Likely in recognition of this limitation on what Rule 26(c) permits, Defendants do not attempt to satisfy the standard for the entry of a protective order, as described below:

> Under Rule 26(c), a party or person from whom discovery is sought may obtain a protective order to guard against "annoyance, embarrassment, oppression, or undue burden or expense" upon a showing of good cause. See Fed. R. Civ. P. 26(c)(1). Under this standard, "a party ... must make a specific demonstration of facts in support of the request, as well as

---

[1]      If the Court recalls, Defendants levied another *ad hominem* attack on the undersigned during the telephonic hearing on Defendants' request to compel all parties to appear in person at the settlement conference. [*See* ECF No. 80.]

of the harm that will result without a protective order." *Fargeon v. Am. Nat'l Property and Casualty Co.*, 2008 WL 11332027, at *4 (S.D. Fla. July 8, 2008) (citing *Dunford v. Rolly Marine Service, Co.*, 233 F.R.D. 635, 636 (S.D. Fla. 2005)).

*Davis v. Great N. Ins. Co.*, 2022 WL 18495560, at *1 (S.D. Fla. June 2, 2022). Defendants do not identify any "discovery" at issue; therefore, the Court need not proceed further in its analysis of whether to grant the requested relief under Rule 26(c) and should deny the motion.

    **C.**     <u>**The Defendants' Motion Must Be Denied Because No Direct Solicitation Occurred, And Because The Social Media Postings Were Not Abusive, Misleading, Or Directed Towards Anyone.**</u>

TikTok is a social media platform that fosters "speech within the meaning of the First Amendment." *NetChoice, LLC v. Attorney Gen., Florida*, 34 F.4th 1196, 1210 (11th Cir. 2022) (*quoting Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011)). The TikTok videos, as "speech within the meaning of the First Amendment," were not directed to anyone or designed to solicit class members. Defendants have no evidence to claim otherwise. *Id.* Although Defendants argue that social media postings were directed to their current and former employees, they fail to offer any supporting evidence. Defendants also fail to offer supporting evidence regarding their other baseless claims, which means their Motion is based on paranoia instead of facts.

Defendants do not satisfy the first *Gulf Oil* prong because they admit **no direct communications occurred** by conceding that "Mr. Pollock's law firm's TikTok account **is a public account that can be accessed and viewed by anyone**." [ECF No. 96 at 3.] Defendants make a quantum but unsubstantiated leap that a public social media posting that "can be accessed and viewed by anyone" had an intended audience comprised of Defendants' current and former employees. Although Defendants contend that the videos solicited participation, they identify no statements within any video that invited participation. Defendants certainly did not

object to their participation at the settlement conference when given the opportunity. [ECF No. 94.]

Defendants' failure to substantiate their claims that the undersigned intended to directly solicit members of the putative collective through abusive misinformation precludes the Court from restricting the rights guaranteed by the First Amendment to post on social media:

> "Although Courts have broad discretion to limit communications between parties and putative class members, that discretion should be used sparingly due to First Amendment considerations." *Calderone v. Scott*, No. 2:14–cv–519–FtM–29CM, 2015 WL 4991865, at *1 (Mirando, J.) (citing *Longcrier v. HL–A Co., Inc.*, 595 F. Supp. 2d 1218, 1226 (S.D. Ala. 2008)). "When a movant requests that the Court enter a protective order limiting communication, that party must show, '(1) that a particular form of communication has occurred or is threatened to occur, and (2) that the particular form of communication at issue is abusive and threatens the proper functioning of the litigation.' " *Id.* at *2 (quoting *OjedaSanchez v. Bland Farms*, 600 F. Supp. 2d 1373, 1378 (S.D. Ga. 2009)). "The record must reflect clear and specific evidence that the communication was abusive and threatened the litigation." *Id.* (citing *OjedaSanchez*, 600 F. Supp. 2d at 1379). District courts have the discretion to prohibit plaintiffs from sending "pre-certification statements that are factually inaccurate, unbalanced, or misleading." *Maddox v. Knowledge Learning Corp.*, 499 F. Supp. 2d 1338, 1342–44 (N.D. Ga. 2007).

*Herrera v. R & L Carriers, Inc.*, 2017 WL 3584891, at *2 (M.D. Fla. June 2, 2017) (denying defendants' request for issuance of a protective order).

The law does not prohibit talking about the substance of a lawsuit, the contents of court filings, or matters of public record relating to a pending case in the public forum or to the media:

> This Court will not limit in any manner the parties' right to speak with the media regarding the substance of this lawsuit, **so long as no attempts are made by either side to overtly solicit participation or nonparticipation by potential class members**. *See In re School Asbestos Litigation*, 842 F.2d 671, 684 (3rd Cir.1988) (striking down limitations on defendant's communication through mass media while upholding limitations on direct communications to members of plaintiff class); *Shores v. Publix Super Markets, Inc.*, 1997 WL 714787, at *1 (M.D. Jan. 27, 1997) ("The Court does not intend to examine each public communication to determine its accuracy, fairness or bias, preferring to leave those determinations to the marketplace of ideas. **Despite the fact that class members are exposed to such public communication, the Court will not place any restrictions on Publix's public communications**.") [*Emphasis added*.]

*Abdallah v. Coca-Cola Co.*, 186 F.R.D. 672, 679 (N.D. Ga. 1999). As content published on a public medium (social media), the TikTok videos and the social media account that form the subject of the Defendants' Motion embody the type of free speech courts routinely refuse to enjoin when directed to an audience at large and not particular people or groups.

Courts traditionally limit their involvement in pre-certification communications between parties (or their counsel) to when defendants discourage participation by initiating direct communications with potential class members. Defendants cite *Jeld-Wen* and *Martin v. Partsbase, Inc.* as support for their requested relief, despite both courts prohibiting **the defendants** from further communications with the putative class members. *Jeld-Wen*, 250 F.R.D. at 558 ("Plaintiffs seek Court supervision of communications between Jeld–Wen and the putative class."); and *Martin*, 2020 WL 8254281 (Defendants may not contact any Plaintiffs, Opt-In Plaintiffs, or putative collective members). *See also Abdallah*, 186 F.R.D. at 679 (entering an order that "prohibited [the defendant] from discussing this lawsuit directly with potential class members"); and *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985) (affirming trial court's order prohibiting the defendant from unilaterally communicating directly with the plaintiff class). Courts more commonly prohibit defendants from initiating direct communications with putative class members about putative class or collective actions than they prevent plaintiffs from making generalized statements.

The courts considering social media postings by other plaintiffs' counsel about putative class actions typically refused to curtail their exercise of free speech.

One example is *Finder v. Leprino Foods Co.*, 2017 WL 1272350, at *5 (E.D. Cal. Jan. 20, 2017), wherein the defendant requested a protective order under Rule 23 to preclude the plaintiff's counsel from communicating with the putative class members through a Facebook group. Faced

with similar arguments to those offered by these Defendants, the Court in *Leprino Foods* determined the defendants failed to establish a basis to enter a protective order. *Id.*, at *5 ("Plaintiff's counsel's comments may consist of insinuations that cast Defendants and the supporting declarants in a negative light, those comments do not mislead employees about their rights as potential class members.")

In another case, the District Court for the Northern District of Georgia refused to prohibit general advertisements to putative class members and recognized as follows:

> [C]ourts routinely distinguish between general advertisements and solicitations sent directly to potential collective members. *See, e.g.*, *Gardner v. G.D. Barri & Assocs. Inc.*, CV-20-01518, 2021 WL 2474032, at *4 (D. Ariz. June 17, 2021) (finding that "counsel should not initiate direct contact (e.g., emails, letters, text messages, telephone calls) with members of the collective beyond the authorized notice" but "may continue to make general advertisements"); *Hamric v. True N. Holdings, Inc.*, No. 1:16-cv-01216, 2016 WL 3912482, at *2 (N.D. Ohio July 20, 2016) (concurring with plaintiffs' attorney's argument that advertisements on Facebook "were not solicitations, because they were not directly targeted at individuals").

*Campo v. Granite Services Int'l, Inc.*, 584 F. Supp. 3d 1337, 1349 (N.D. Ga. 2022). These social media posts were not directly targeted to anyone and were not advertisements, further eroding any basis to curtail the speech at issue.

If the Court considered these social media postings as pre-certification communications with putative members of an FLSA collective action, which they were not, then the social media posts still would be permissible because the statements contained were consistent with the contents of the record.

> Turning specifically to FLSA collective actions, several courts "have found that **pre-certification communication with putative members of a collective action should be allowed unless the communication contradicts a court notice, is misleading, or improper**." *Goody v. Jefferson County*, No. CV09437, 2010 WL 3834025, at *2 (D. Idaho Sept. 23, 2010) (collecting cases); *see also Bennett v. Advanced Cable Contractors, Inc.*, No. 1:12CV115, 2012 WL 1600443, at *10 (N.D. Ga. May 7, 2012) ("[P]re-certification communications to potential class members by both parties are generally

permitted, and also considered to constitute constitutionally protected speech."). [*Emphasis added*.]

*Heibel v. U.S. Bank Nat. Ass'n*, 2012 WL 4463771, at *6 (S.D. Ohio Sept. 27, 2012); *see also Frye v. Baptist Memorial Hosp., Inc.*, 2008 WL 2117264, at *5 (W.D. Tenn. May 20, 2008); *Piper v. RGB Inventory Spec, Inc.*, 2007 WL 1690887, at *8 (N.D. Cal. June 11, 2007); and *Maddox v. Knowledge Learning Corp.*, 499 F. Supp. 2d 1338, 1342-43 (N.D. Ga. 2007).

The Defendants' failure to identify any direct communication that the undersigned counsel initiated with potential class members to encourage them to join this case, like their failure to identify any abusive or misleading information, is fatal to their motion and requires it to be denied.

**D.   The Defendants Complain About Misinformation When The Only Misinformation Is Contained In Their Motion, Requiring It Be Denied.**

Defendants improperly seek to restrain further social media postings and the removal of TikTok videos that do not include the style of the lawsuit or the case number, name any corporate Defendant or Mr. Jones, directly solicit potential class members, or invite − let alone insinuate − that others could contact the undersigned counsel to join this lawsuit. *See* https://www.tiktok.com/@fairlawfirm/video/7200398055902924074. Defendants rely on cursory references to generalized statements they contend were one-sided, misleading, subject to incorrect interpretation, or untrue. [ECF No. 96.] Defendants use the following terminology to address the social media postings at issue:

- One-sided
- Misleading
- Subject to incorrect interpretation
- Not true
- A gross oversimplification of the issues
- Portrays Jones in a negative light

[ECF No. 96 at 4.]² None of the Defendants' statements are true or supported to quoted language from any social media post.

The first TikTok video mentioned in the Defendants' Motion was poasted on February 10, 2023, viewed over 47,000 times, liked more than 2,750 times, and received over 100 comments. https://www.tiktok.com/@fairlawfirm/video/7200398055902924074. The video's popularity and appeal confirm that it was not directly targeted at the Defendants' current or former employees but to a mass audience.

Defendants rely entirely on one quotation as the only "evidence" for their Motion, but when the quoted statement is considered in the context of the remaining statements that Defendants failed to acknowledge to the Court, any legitimacy to their argument vanishes:

### Only Statement Offered By Defendants

> We filed this lawsuit in federal court and we're proceeding against Kiki on the River and its corporate owners to recover the tips that were either unlawfully retained or improperly distributed to traditionally non-tipped employees.

### Order Of Pertinent Statements (Not Provided By Defendants)

> Several clients came to my office and complained that they understood that money was not being paid to them and instead it was going to either the owners or managers or supervisors at the restaurant.

> We filed this lawsuit in federal court and we're proceeding against Kiki on the River and its corporate owners to recover the tips that were either unlawfully retained or improperly distributed to traditionally non-tipped employees.³

> I thought this receipt was rather interesting because I have clients who had tips that were $10k, $20k, $30,000 but yet that money didn't make it all the way to my clients based on what they're telling me.⁴

---

² Defendants contend that the TikTok video portrays Mr. Jones badly despite his name never being mentioned. Ironically, Mr. Jones' Instagram is filled with posts where he paints himself in a bad light: https://www.instagram.com/theromanjones/?hl=en.
³ *See* ECF No. 1 at ¶39, No. 59, *passim*, No. 65 at 8.
⁴ *See* ECF No. 65-2 at ¶¶21-22.

> We're presently in the discovery phase which means we're exchanging documents back and forth so that we can determine whether that money was distributed improperly and if so where that money went, who it went to, and how much money we're talking about so that my clients can get properly and adequately compensated.

(https://www.tiktok.com/@fairlawfirm/video/7200398055902924074.) Defendants identify no language from this first TikTok video they consider as "misinformation" and that supposedly "implies Defendants improperly distributed tips, which is not accurate." [ECF No. 96 at 2.] The above-quoted language confirms that the Defendants are paranoid and their concerns unjustified.

The first TikTok video accurately recounts that Mr. Collado filed the instant lawsuit in this United States District (federal) Court, including against two corporate Defendants whom he alleges are his employers and whom he alleges either unlawfully retained or improperly distributed tips which he seeks to recover for himself and for the others similarly situated. (https://www.tiktok.com/@fairlawfirm/video/7200398055902924074; *compare* ECF Nos. 1, 59.) The video summarizes the nature of Plaintiff's allegations. It explains (verbally and in the verbatim captions) that the case "is in the discovery phase" and that the parties are "exchanging documents back and forth so we can determine whether that money was distributed improperly and if so where that money went who it went to and how much money we're talking about." (https://www.tiktok.com/@fairlawfirm/video/7200398055902924074.) With the explanation(s) in the video, there could be no confusion about whether the Defendants violated the law, whether any money is available, or whether interested persons could join the lawsuit. Defendants also claim that the first TikTok urged people to join the lawsuit and to appear at the settlement conference. This video does not suggest that anyone contact the undersigned law firm to participate in this case or appear at the settlement conference. *Id.*

The second TikTok (February 17, 2023) video responded to a viewer's comment to the first TikTok video requesting an update ("need an update"). (https://www.tiktok.com/@fairlawfirm/video/7201226796317084970.) The second video has no title, does not mention the word "Kiki," reiterates that the case was in the discovery phase, that the Defendants' lawyers filed a response asking the Court not to certify the case as a collective action, that the Defendants opposed conditional certification, and what it meant to certify a case as a collective action. *Id.* Defendants take issue with how their opposition to the Motion for Conditional Certification was portrayed in this second video. [ECF No. 96 at 3: "The February 17 TikTok also contains misleading information about the reasons why Defendants opposed the Motion for Conditional Certification of a Collective Action."] No TikTok videos discuss the "reasons" behind any actions taken by any party (or their counsel) to any legal proceeding, and for this reason, Defendants identify no language supporting their position.

The videos at issue do not mention the date, time, or location at which any settlement conference would be held. Those who appeared at the settlement conference either already joined the lawsuit or heard about its particulars from a participant in the lawsuit. While additional persons joined the case and appeared at the settlement conference (after February 12, 2023), it is more likely that additional participation resulted from communications between those who filed Consents to Join and the Defendants' other employees.[5]

Although the Court has not yet ruled on whether Defendants failed to distribute tips properly, Defendant 450 North River Drive, LLC, agreed that it could not account for all the tips

---

[5] The only reference to a settlement conference occurred after nearly a week after its occurrence and stressed the confidential nature of the proceedings and discussions that occurred therein. (https://www.tiktok.com/@fairlawfirm/video/7207503872821169450.)

it collected. [ECF No. 86-1 at 30.] The Defendants' admission to a "variance" in "the distribution of those tips" in its Answer to Interrogatory No. 19, even if unintentional, will require a finding that it violated §203(m)(2)(B) of the FLSA and is liable to Plaintiff. *Id.* The FLSA is a "strict liability" statute in which intent is irrelevant to liability:

> Generally, however, the FLSA is a "strict liability" offense, meaning an employer's intent to comply is not relevant to whether the employer violated the statute. *See Norceide v. Cambridge Health Alliance*, 814 F. Supp. 2d 17, 24 n.5 (D. Mass. 2011) ("One of the ways that Congress articulated it['s] overriding concern for worker fairness was by imposing strict liability on employers, signaling that even well-intentioned and negligent employees were liable.").

*Higar v. Task Force of Texas, LLC*, 2018 WL 3849853, at *1 (E.D. Tex. July 12, 2018), *report and recommendation adopted*, 2018 WL 3837862 (E.D. Tex. Aug. 11, 2018). Even if the Defendants are correct that the failure to distribute tips properly was "not intentional[]," their intent would still be irrelevant the imposition of liquidated damages. *See Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999) ("To establish good faith, the employer must take active steps to ascertain the dictates of the FLSA and then act to comply with them.")

> That SNET did not purposefully violate the provisions of the FLSA is not sufficient to establish that it acted in good faith. *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 909 (3d Cir. 1991) Nor is good faith demonstrated by the absence of complaints on the part of employees, *see Williams v. Tri–County Growers, Inc.*, 747 F.2d 121, 129 (3d Cir.1984), or simple conformity with industry-wide practice, *see Cooper Elec.*, 940 F.2d at 910; *Brock v. Wilamowsky*, 833 F.2d 11, 19-20 (2d Cir. 1987). Thus, although the evidence cited by SNET establishes that company officials are not scofflaws, it does not establish that SNET officials acted in good faith as understood in this context. Were SNET's argument to carry the day, anytime an employer unintentionally violates an unsettled wage or hour provision of the FLSA, the employer would be acting in good faith so long as it acted in accord with prevailing industry practice and no employee had complained. Such a view is incompatible with the compensatory nature of liquidated damages under the FLSA.

*Reich v. S. New England Telecommunications Corp.*, 121 F.3d 58, 71 (2d Cir. 1997).

Defendants failed to provide a "clear record" of "misinformation" directed to the putative collective members that warrant the grant of any relief they request. The free speech at issue does

not threaten the orderly progress of this case, contained no misinformation, was not abusive, and did not directly solicit anyone. The Defendants' Motion is, therefore, properly denied.

### E. While Pre-Opt-In Communications Are Not *Per Se* Improper, Defendants Do Not Identify Any Communications By Plaintiff Or The Opt-Ins.

There is no blanket prohibition against discussing a putative FLSA collective action, including by plaintiffs or their counsel, as Defendants acknowledge by failing to cite any authority for this proposition. The absence of direct solicitation or abusive and misleading communications does not require any communication restrictions. *Stitt v. Am. Disposal Services of Georgia, Inc.*, 2018 WL 6716046, at *4 (N.D. Ga. Dec. 20, 2018) ("courts have declined to do so in the absence of such a record.") Defendants' failure to support their request to prevent any discussion about this case by anyone (including Plaintiff and the Opt-In Plaintiffs) precludes the Court from restricting communications by Plaintiff or the others who joined these proceedings.

### F. Defendants Cannot Argue New Cases In Reply.

Defendants cannot offer new arguments supported by case law for the first time in their reply, as doing so would be tantamount to ambushing Plaintiff:

> But it is improper for a party to raise a new argument in its reply. *See Foley v. Wells Fargo Bank, N.A.*, 849 F. Supp. 2d 1345, 1349 (S.D. Fla. 2012) ("Because it is improper for [the party] to raise this new argument in its Reply brief, the argument will not be considered") (citing *Herring v. Sec. Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court")). Accordingly, the Court will not consider this argument from the reply memorandum at this time

*Katchmore Luhrs, LLC v. Allianz Glob. & Corp. Specialty*, 2016 WL 1756911, at *1 (S.D. Fla. May 3, 2016). Any new arguments hereafter raised by Defendants should not be considered. *Id.*

## IV. CONCLUSION

The Court properly denies the Defendants' request for a protective order due to the failure to have a pre-filing conferral and because the Defendants cannot establish the elements required by *Gulf Oil*. The Defendants provide no legitimate basis to restrict the free speech at issue by relying on the argument of counsel instead of facts and legal authority. Defendants identify no abusive misinformation, no false or misleading statements, and have no evidence that the undersigned initiated any contact with any putative class members. The Defendants' complete failure to support their arguments requires their motion to be denied. Further, the continued *ad hominem* attacks are improper and properly addressed by the Court to discourage them from continuing through the entry of an appropriate Order.

Respectfully submitted this 14th day of March 2023,

<u>s/Brian H. Pollock, Esq.</u>
Brian H. Pollock, Esq.
Fla. Bar No. 174742
brian@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, FL 33146
Tel:    305.230.4884
*Counsel for Plaintiff*