UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-23074-CIV-BLOOM/OTAZO-REYES

OCTAVIO COLLADO,
*for himself and all others similarly situated*,

      Plaintiff,

v.

450 NORTH RIVER DRIVE, LLC, *et al.*,

      Defendants.

_____/

## ORDER

THIS CAUSE came before the Court upon Defendants 450 North River Drive LLC, d/b/a Kiki on the River ("Kiki"), Roman Jones ("Jones"), and RJ River, LLC's ("RJ") (collectively, "Defendants") Joint Motion for Protective Order (hereafter, "Joint Motion") [D.E. 96]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Beth Bloom, United States District Judge [D.E. 101]. The undersigned held a hearing on this matter on April 5, 2023. See Paperless Minute Entry [D.E. 120]. Having heard the argument of counsel and having fully considered the parties' written submissions, the undersigned DENIES Defendants' Joint Motion.

## BACKGROUND

Plaintiff Octavio Collado ("Plaintiff") worked at Defendants' restaurant, Kiki on the River, as a front-of-the-house tipped employee, specifically, as a server and a captain. See Third Am. Compl. [D.E. 122 ¶¶ 8–10]. Plaintiff brings this lawsuit as a proposed opt-in collective action against Defendants for their alleged violation of the Fair Labor Standards Act (hereafter, "FLSA"), codified at 29 U.S.C. § 203(m)(2)(B), and as a proposed class action for their alleged violation of the Florida Minimum Wage Act, Fla. Stat. § 448.110, claiming that Defendants improperly

retained and distributed tips that Plaintiff and other similarly situated tipped employees earned while working at Kiki on the River.  See generally Third Am. Compl.  [D.E. 122].

On January 27, 2023, Plaintiff filed a Renewed Motion for Conditional Certification of a Collective Action ("Renewed Motion to Certify Class") [D.E. 65].[1]  On February 15, 2023, before Defendants filed their response, Plaintiff's attorney, Brian Pollock ("Attorney Pollock"), uploaded a video to the social media video-sharing platform, TikTok, relating to this action.  See https://www.tiktok.com/@fairlawfirm/video/7200398055902924074  (hereafter, "February 15 TikTok video").[2]  Therein, Attorney Pollock makes the following statements:

> My office at FairLaw Firm, we represent several captains and servers who were supposed to receive tips from working at Kiki on the River.  Kiki on the River includes an automatic service charge which is not going all to the servers, plus, they allow their patrons to pay a tip or an over-tip.  Under United States federal law, all of the tips and over-tips have to go to tipped employees.  None of it can be kept by either the restaurant, its owners, or its managers.
>
> Several clients came to my office and complained that they understood that money was not being paid to them and instead it was going to either the owners or managers or supervisors at the restaurant.
>
> We filed this lawsuit in federal court and we're proceeding against Kiki on the River and its corporate owners to recover the tips that were either unlawfully retained or improperly distributed to traditionally non-tipped employees.
>
> I thought that this receipt was rather interesting because I have clients who had tips that were $10k, $20k, $30,000 but yet that money didn't make it all the way to my clients, based on what they're telling me.
>
> We're presently in the discovery phase, which means we're exchanging documents back and forth so that we can determine whether that money was distributed

---

[1] Plaintiff's original Motion to Certify Class [D.E. 44] was dismissed as a moot on March 22, 2023.  See Paperless Order [D.E. 108].

[2] The briefs contain several discrepancies regarding the date on which Attorney Pollock posted the TikTok video.  In the Joint Motion, Defendants state that the video was posted on February 12, 2023, but in their Reply in Support of the Joint Motion ("Reply") they state that they later found that the video was posted on February 15, 2023.  See Reply [D.E. 107 at 2 n.2].  Attorney Pollock maintains that the video was posted on February 10, 2023.  See Response [D.E. 102 at 11].  Upon reviewing the link to the video, the date stamp beneath the video shows "2-15"; therefore, the undersigned will refer to this first video as the "February 15 TikTok video".

improperly and if so, where that money went, who it went to, and how much money we're talking about so that my clients can get properly and adequately compensated.

I'm Brian Pollock and my firm is the FairLaw Firm out of Miami, and in this situation, we're handling a wage and hour case under the Fair Labor Standards Act on behalf of captains and servers and other tipped employees against Kiki on the River.

<u>Id.</u>

On February 17, 2023, Defendants filed their Response to Plaintiff's Renewed Motion to

Certify Class [D.E. 82].  That same day, Attorney Pollock posted a second TikTok video, in which

he makes the following statements:

So here's an update on the lawsuit since you asked.  Right now, we are actually in the discovery phase where we're trying to get documents and information to go ahead and help us establish that our claims are as we've alleged.

The kind of right now update is we just got a response a little bit ago, a couple of hours ago if not less, from Kiki on the River's lawyers asking the judge to not certify a collective action, which means to not let us inform each of the people who worked at Kiki who would be affected by this lawsuit by sending them an email or a letter or whatever mechanism to notify them of their rights about this lawsuit, and what their rights are about joining or not joining and hiring a lawyer and who, and what the ramifications of joining or not joining can be.

As part of their response, and in fact on page 16, Kiki's lawyers now acknowledge having seen my TikTok about Kiki on the River and they're claiming misinformation has been spread. But, the reality is, there's no misinformation here. All I've done in my TikTok is to parrot the same language . . . that I've used in the Complaint, in the Second Amended Complaint, in response to their motion asking that the court dismiss the claims, and in our motion asking the court to certify the case as a collective action.

They go on to say that social media and/or third-party dissemination damages the Kiki brand.  Now, I've seen some of the comments here and the comments that talk about Kiki, or things that are negative, are not coming from me, folks.  Those are what you guys think and I can't control or guide that.

So I hope this gives an update on what's going on with the case. We've got an appointment on March 1st with the federal magistrate judge with those people who joined the lawsuit already to see whether we can resolve the case and if so, what

3

those terms would be.  That likely would be a confidential settlement if it does happen.

And about that March 1st date, that's for anybody who joins the lawsuit, they would have to personally appear at the settlement conference in downtown Miami in the federal courthouse, there's a specific courthouse you have to go to with the federal magistrate judge to attend the settlement conference in person to try to resolve the case.

See https://www.tiktok.com/@fairlawfirm/video/7201226796317084970 (hereafter, "February 17 TikTok video").

In the Joint Motion, Defendants ask the Court to: (1) prohibit Attorney Pollock and Plaintiff from communicating with putative class members until there is a ruling on Plaintiff's Motion to Certify Class; (2) require Attorney Pollock to "cease the posting of any further videos, posts, tweets, messages, etc. on any social media platforms, including TikTok, about the pending action"; and (3) "order that any and all currently posted videos, posts, tweets, messages, etc. relating to this action be deleted from any and all social media platforms" that are under Attorney Pollock's control or that of his law firm.  Joint Motion [D.E. 96 at 2].  Defendants argue that the February 15 TikTok video and the February 17 TikTok video (together "the TikTok videos") interfere with the class certification process by providing misleading information that Defendants improperly distributed tips and by inaccurately portraying the reasons why Defendants opposed Plaintiff's Renewed Motion to Certify Class.  See Joint Motion [D.E. 96 at 2, 4].[3]  Plaintiff counters that the Joint Motion should be denied because: Defendants failed to conduct a meaningful conferral prior to filing the Joint Motion; the Joint Motion was improperly brought under Rule 26 of the Federal Rules of Civil Procedure (hereafter, "Rule 26"); and Defendants have failed to show that the TikTok videos are abusive or that they solicit participants for this case.  See Response to Joint

---

[3] As of the filing of this Order, the Renewed Motion to Certify Class [D.E. 65] has also been dismissed as moot and Plaintiff has since filed a Second Renewed Motion for Conditional Certification of a Collective Action [D.E. 127], which is pending disposition.

4

Motion (hereafter, "Response") [D.E. 102 at 2–5].

## APPLICABLE LAW

A district court has "both the duty and the broad authority to exercise control over a class action and enter orders governing the conduct of counsel and parties." Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981). This broad discretion includes prohibiting communications between parties and putative class members. See Longcrier v. HL-A Co., 595 F. Supp. 2d 1218, 1226 (S.D. Ala. 2008). However, the court's discretion is not unlimited, and a two-pronged test must be met before the court can restrict such communications. Jones v. Jeld-Wen, Inc., 250 F.R.D. 554, 561 (S.D. Fla. 2008). "First, a communication must have occurred or be threatened to occur. Next, the form of communication at issue must be abusive in that it threatens the proper functioning of the litigation." Id. (internal citations and quotations omitted). "Abusive" communications include "misleading communications to class members regarding the litigation, communications that misrepresent the status or effect of the pending action, communications that coerce prospective class members into excluding themselves from litigation, and communications that undermine cooperation with or confidence in class counsel." Id.

Even if the two prongs of this test are met, "limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." Gulf Oil, 452 U.S. at 101. Thus, any order that restricts communications between parties and potential class members "must be carefully drawn so that it interferes with free speech as little as possible." Jones, 250 F.R.D. at 561 (citing Gulf Oil, 452 U.S. at 102).

## DISCUSSION

### I.        Compliance with Local Rules

Plaintiff argues that Defendants' Joint Motion should be denied because Defendants violated Southern District of Florida Local Rule 7.1 (hereafter, "Local Rule 7.1") by failing to conduct a "meaningful conferral" prior to filing the Joint Motion.  See Response [D.E. 102 at 4]. According to Attorney Pollock, Defendants' counsel emailed him on March 2, 2023, to "'confer' about their requesting 'the Court to enter an order to cease any further postings and requiring you to delete the current video'"; but 90 minutes later and before Attorney Pollock could respond, Defendants filed the Joint Motion without any further attempts to confer.  Id.  Plaintiff contends that, by filing the Joint Motion "a mere 90 minutes after sending an email", Defendants failed to comply with Local Rule 7.1.  Id.

Local Rule 7.1(a)(3) provides, in relevant part, that "[p]rior to filing any motion in a civil case . . . counsel for the movant shall confer (orally or in writing), or make reasonable effort to confer (orally or in writing), with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve by agreement the issues to be raised in the motion", and counsel shall certify these efforts in the motion.  S.D. Fla. L.R. 7.1(a)(3).  In Defendants' Joint Motion, their counsel certified that they "attempted to confer[] with Plaintiff's counsel regarding the matters set forth in [the Joint] Motion via email on March 2, 2023" but that " Plaintiff's counsel has not responded to the conferral."  See Joint Motion [D.E. 96 at 6].  Defendants further certified that "based on prior communications regarding the issues presented in this [Joint] Motion Defendants anticipate Plaintiff objecting to the relief sought.  Nevertheless, due to the nature of the requested relief and time being of the essence Defendants submit this motion in good faith." Id.  In their Reply, Defendants explain that their counsel previously conferred with Attorney

Pollock about the February 15 TikTok video following the filing of their Response to Plaintiff's

Renewed Motion to Certify Class [D.E. 82], in which they argued that the February 15 TikTok

video contained a statement that was misleading and subject to incorrect interpretation. See Reply

[D.E. 107 at 4]. Defendants further state that Attorney Pollock responded in an email: "Your

statements that the TikTok [video] I posted contains misleading information is unfounded. That

TikTok [video] was not directed at anyone in particular, nor was it directed to solicit others to join,

and instead was part of a social media strategy that involves posting about employment law topics."

Id. Defendants argue that this exchange, coupled with Attorney Pollock's subsequent posting of

the February 17 TikTok video, informed their decision to file the Joint Motion only 90 minutes

after emailing Attorney Pollock. Id.

Having considered the foregoing exchanges, the undersigned finds that Defendants

sufficiently satisfied the good faith conferral requirements of Local Rule 7.1. Moreover, Plaintiff

has now had the opportunity to review Defendants' Joint Motion and has submitted a full

Response. Therefore, the undersigned proceeds to consider Plaintiff's additional arguments.

## II.     Applicability of Rule 26

Defendants rely on Rule 26 in support of the Joint Motion. See Joint Motion [D.E. 96 at

1]. Plaintiff argues that Defendant's Joint Motion is legally baseless because Rule 26 governs

protection from discovery rather than protections from communications with putative class

members. See Response [D.E. 102 at 5–6]. Indeed, Rule 26 provides: "A party or any person

from whom discovery is sought may move for a protective order . . . ." See Fed. R. Civ. P. 26 (c).

In contrast, Rule 23 of the Federal Rules of Civil Procedure (hereafter, "Rule 23") governs class

actions in federal court, including the potential issuance of orders to protect the class members.

See Fed. R. Civ. P. 23(d). Specifically, Rule 23(d) provides that: "the court may issue orders" as

required "to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of any step in the action"; to "impose conditions on the representative parties or on intervenors"; or to "deal with similar procedural matters." Id.  In this way, "Rule 23(d) gives the courts the power to regulate the notice and opt-out processes and to impose limitations when a party engages in behavior that threatens the fairness of the litigation." See Finder v. Leprino Foods Co., No. 1:13-cv-2059-AWI-BAM, 2017 WL 1272350, *3 (E.D. Cal. Jan. 20, 2017) (citation and quotations omitted).

Because the TikTok videos do not involve discovery, Rule 26 in inapplicable to them. Rather, the issue before the Court involves regulation of Attorney Pollock's communications with potential class members.  Therefore, the undersigned addresses the Joint Motion in that context.

## III.   Communications with the Putative Class

When determining whether to issue a protective order restricting communication, the Court must first find that a communication occurred. See Jones, 250 F.R.D. at 561.  Defendants argue that this first element has been satisfied because Attorney Pollock communicated with the putative class when he uploaded the TikTok videos. See Joint Motion [D.E. 96 at 3].  Plaintiff counters that no communication occurred because Attorney Pollock did not have any direct communications with the putative class and did not solicit any putative class members. See Response [D.E. 102 at 6].

The undersigned finds Campo v. Granite Servs. Int'l, Inc., 584 F.Supp.3d 1337 (N.D. Ga. 2022) instructive on this point.  In Campo, the plaintiff brought a collective action under the FLSA and his attorneys advertised the case on social media. Id. at 1348.  The ads included language such as "'Did you get paid straight time for overtime while working at FieldCore? Many who worked for them may not have been paid what they were rightly owed.'" Id.  The ads also encouraged the

defendants' employees to reach out to the plaintiff's attorneys for more information and included

prompts such as "'Get your unpaid overtime' and 'Find out if you may be owed unpaid wages.'"

Id.  In determining whether to intervene in the notice process to the putative class, the Campo court

noted:

> [C]ourts routinely distinguish between general advertisements and solicitations sent
> directly to potential collective members. See, e.g., Gardner v. G.D. Barri & Assocs.
> Inc., CV-20-01518, 2021 WL 2474032, at *4 (D. Ariz. June 17, 2021) (finding that
> "counsel should not initiate direct contact (e.g., emails, letters, text messages,
> telephone calls) with members of the collective beyond the authorized notice" but
> "may continue to make general advertisements"); Hamric v. True N. Holdings, Inc.,
> No. 1:16-cv-01216, 2016 WL 3912482, at *2 (N.D. Ohio July 20, 2016)
> (concurring with plaintiffs' attorney's argument that advertisements on Facebook
> "were not solicitations, because they were not directly targeted at individuals").

Id.  at 1349.  The Campo court ultimately concluded that the social media ads were not direct

solicitations to potential collective action members and did not interfere with the notice process

for case management purposes.  Id.

Here, as in Campo, Attorney Pollock did not directly contact the putative class but rather

advertised the case on a public social media platform.  Defendants counter that "[s]imply because

the TikTok videos are not sent directly to specific individuals does not change the fact that they

are intended for putative class members even if they can be viewed by other individuals."  See

Reply [D.E. 107 at 5].  However, even if Attorney Pollock intended the videos to reach the putative

class, this alone does not warrant the issuance of a protective order.  As noted in Heibel v. U.S.

Bank Nat. Ass'n, No. 2:11-CV-00593, 2012 WL 4463771, at *6 (S.D. Ohio Sept. 27, 2012):

> Turning specifically to FLSA collective actions, several courts 'have found that
> pre-certification communication with putative members of a collective action
> should be allowed unless the communication contradicts a court notice, is
> misleading, or improper."  Goody v. Jefferson County, No. CV09437, 2010 WL
> 3834025, at *2 (D. Idaho Sept. 23, 2010) (collecting cases); see also Bennett v.
> Advanced Cable Contractors, Inc., No. 1:12CV115, 2012 WL 1600433, at *10
> (N.D. Ga. May 7, 2012) ("[P]re-certification communications to potential class

members by both parties are generally permitted, and also considered to constitute constitutionally protected speech.").

Id.

Moreover, the fact that Attorney Pollock specifically references some of the Defendants by name and the claims made by Plaintiff is not sufficient to issue a protective order limiting Plaintiff or his attorney from issuing public advertisements about the case on social media. See Campo, 584 F.Supp.3d at 1348–49 (allowing plaintiff's social media ads that specifically named the defendant and referenced plaintiff's claims); see also Finder, 2017 WL 1272350, at *4 (plaintiff's counsel's communications with prospective class members were not inherently abusive just because they occurred on Facebook). Nevertheless, assuming that the TikTok videos do constitute "communications" for purposes of a protective order analysis, the undersigned turns to the issue of whether they amount to misleading or abusive communications.

### IV.    Misleading or Abusive Communications

With respect to the February 15 TikTok video, Defendants take issue with the following statement by Attorney Pollock: "We filed this lawsuit in federal court and we're proceeding against Kiki on the River and its corporate owners to recover the tips that were either unlawfully retained or improperly distributed to traditionally non-tipped employees." See Joint Motion [D.E. 96 at 4] (quoting the February 15 TikTok video). Defendants argue that this statement is misleading because it "suggests Kiki and its 'corporate owners' violated the law." See Reply [D.E. 107 at 6]. With respect to the February 17 TikTok video, Defendants argue that Attorney Pollock's characterization of their response in opposition to Plaintiff's Renewed Motion to Certify Class was misleading when he stated that their opposition "means defendants do not want to let opposing counsel inform current and former employees of their rights about this lawsuit." See Joint Motion

[D.E. 96 at 4].  Defendants further contend that both TikTok videos are one-sided and present a "gross oversimplification of the issues".  Id.

In considering whether the TikTok videos are misleading or abusive, Finder, 2017 WL 1272350, provides helpful guidance.  There, a potential class member created a private Facebook group regarding the plaintiff's wage and hour class action lawsuit and invited plaintiff's counsel to join.  Id. at *2.  After joining the group, plaintiff's counsel asked those in the group to notify him if they knew anything about the individuals who had submitted declarations on behalf of the defendants in support of their opposition to class certification.  Id.  In one of his Facebook posts, plaintiff's counsel quoted sections of a declaration from one of defendants' witnesses and asked the group why she would provide conflicting testimony; in another post, plaintiff's counsel asked how a named putative class member "ma[de] the leap" from purchasing clerk to supervisor in defendants' warehouse despite having no prior experience working in the warehouse.  Id.  A third post asked "If anyone knows how Monica Mata was promoted so quickly at Leprino, with specific information, including names, please contact me privately."  Id.

Like Defendants here, the defendants in Finder argued that the various posts were misleading and abusive because they insinuated improper conduct by the defendants and mischaracterized their position in the lawsuit.  Id.  The Finder defendants also argued that the plaintiff's attorney's comments in an online public forum amplified the harmful nature of the comments and sought a protective order similar to the one sought here.  Id.  However, the Finder court found that the Facebook posts were not misleading or abusive and denied the motion for protective order.  Id. at *6.  The court reasoned that, although plaintiff's counsel's comments "may consist of insinuations that cast Defendants and the supporting declarants in a negative light", the

11

comments did not mislead the potential class members about their rights and "did not seek to influence whether members opt-in or opt-out of the class." Id. at *5.

Similarly, while Attorney Pollock's TikTok videos may have portrayed Defendants in a negative light, they do not mislead potential members about their right to opt-in or opt-out of the class, and the fact that they appear in a public forum does not render them misleading or abusive. "Ultimately . . . case law does not require that communications to potential class members be objective and neutral." Id. Moreover, "[w]hether a communication is misleading or coercive— and therefore warrants judicial intervention—often depends not on one particular assertion but rather the overall message or impression left by the communication." Id. at *4. Here, Attorney Pollock's TikTok videos, when taken as a whole, included enough qualifying language to accurately reflect the procedural posture of the case and the nature of Plaintiff's claims without being misleading or improper. See id. ("A restriction on communications between counsel and putative class members should be based on whether the communication at issue is 'misleading or improper.'").

Finally, Defendants argue that the February 17 TikTok video's reference to the March 1, 2023, settlement conference encouraged potential class members to appear at the settlement conference and join in the case. See Joint Motion [D.E. 96 at 4]. However, the video does not explicitly invite potential class members to appear and does not convey information that was not already available to the public on the Court's docket. Therefore, the undersigned finds no merit in Defendants' arguments that the February 17 TikTok video unduly influenced potential class members.

## CONCLUSION

Based on the foregoing considerations, it is

ORDERED AND ADJUDGED that Defendants' Join Motion [D.E. 96] is DENIED.

Nevertheless, the parties are cautioned that, for pre-certification communications with potential

class members in FLSA cases to be allowed, they must not be misleading or improper.  See Heibel,

2012 WL 4463771, at *6.

**DONE AND ORDERED** in Chambers at Miami, Florida this 18th day of May, 2023.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc:     United States District Judge Beth Bloom
        Counsel of Record

13