UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 22-cv-23074-BLOOM/Otazo-Reyes**

OCTAVIO COLLADO,
*for himself and all others similarly situated*,

      Plaintiff,

v.

450 NORTH RIVER DRIVE, LLC, *et al.*,

      Defendants.

_____/

**ORDER ON MOTION FOR CONDITIONAL CERTIFICATION**

**THIS CAUSE** is before the Court upon Plaintiff Octavio Collado's Motion for Conditional Certification of a Collective Action, ECF No. [127] ("Motion"), filed on April 21, 2023. Defendants 450 North River Drive, LLC, d/b/a Kiki on the River, Roman Jones, and RJ River, LLC filed a Response in Opposition, ECF No. [141], to which Plaintiff filed a Reply, ECF No. [144]. The Court has carefully reviewed the Motion, the Response, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

**I.   BACKGROUND**

This is a putative collective action brought against Defendants for alleged violations of the Fair Labor Standards Act ("FLSA") (Count I), the Florida Minimum Wage Act (Count II), and Florida common law (Count III). *See* Third Amended Complaint, ECF No. [122]. Plaintiff claims that he was denied payment owed to him while working at Defendants' restaurant, Kiki on the River. *Id.* ¶ 1.

In his Motion, Plaintiff seeks conditional certification of an FLSA collective action based on Count I of his Third Amended Complaint, in which he alleges FLSA violations due to Defendants' alleged unlawful retention of tips. ECF No. [127] at 1. Plaintiff proposes the following class definition:

> All front-of-the-house tipped employees who worked at Kiki on the River any time during the three (3) years before filing the Complaint and up through the rendition of a judgment in this matter.

*Id*. at 2. Plaintiff additionally seeks expedited notice from Defendants regarding the contact information for the individuals who fall within its class definition ("Putative Members"), multiple methods of informing the Putative Members of Plaintiff's lawsuit, and a 90-day period for the Putative Members to join this proceeding. *See generally id*.

In response, Defendants argue that Plaintiff has failed to show that the Putative Members are similarly situated to him. ECF No. [141] at 5. Defendants additionally contest the timing, methods, and form of Plaintiff's proposed notice. *See generally id*.

**II.    LEGAL STANDARDS**

The FLSA authorizes collective actions against employers for "tips unlawfully kept by an employer[.]" 29 U.S.C. § 216(b). Section 216(b) provides that an action "may be maintained . . . by any one or more employees for and [o]n behalf of himself or themselves and other employees similarly situated." *Id.* Employees who wish to join the collective action must file written notice of their consent to join. *Id.*

Courts in the Eleventh Circuit generally use a two-tiered procedure for certifying FLSA collective actions. *See Cameron-Grant v. Maxim Healthcare Servs., Inc*., 347 F.3d 1240, 1243 n.2 (11th Cir. 2003). The first tier—the one at issue in the present Motion—is referred to as the "notice stage." *Id.* (quoting *Hipp v. Liberty Nat'l Life Ins. Co*., 252 F.3d 1208, 1218 (11th Cir. 2001)). At

this stage, the burden is on Plaintiff to show that there is a "reasonable basis for his claim that there are other similarly situated employees," such that it would be appropriate to notify those individuals of the lawsuit. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008). The Eleventh Circuit has "described the standard for determining similarity, at this initial stage, as 'not particularly stringent,' 'fairly lenient,' 'flexib[le],' 'not heavy,' and 'less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b).'" *Id.* (internal citations omitted; alteration in the original).

At the second tier, once discovery is complete and upon a motion for decertification by the defendant, the Court re-examines the question of certification. *Cameron-Grant*, 347 F.3d at 1243 n.2. At that stage, the Court conducts a fact-intensive inquiry as to whether the other employees are similarly situated such that the action should proceed to trial as a representative action. *Id.*

### III. DISCUSSION

This discussion proceeds in three parts. First, the Court addresses Defendants' argument that the Court should depart from the two-tier certification process described above, and instead hold Plaintiff to a higher burden of establishing with evidence that the Putative Members are "similarly situated" to Plaintiff. Second, the Court evaluates whether Plaintiff has met his burden for conditional certification to be granted. Third, the Court considers the parties' arguments regarding the notice and opt-in procedures.

#### A. Plaintiff's Burden

Defendants urge the Court to depart from the two-tiered approach that courts in this Circuit typically apply when evaluating whether an FLSA action can proceed as a collective action. ECF No. [141] at 3; *see* Legal Standards section, *supra*. Defendants urge the Court to follow the Fifth Circuit's approach set forth in *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir.

2021). In *Swales*, the Fifth Circuit criticized the two-step certification process as inefficient, particularly "when some discovery has occurred." *Id*. at 439. In *Swales*, the district court considered the first step of whether to grant conditional certification after the parties had produced abundant evidence on the issue of whether the parties were "similarly situated," including "eleven depositions, over 19,000 documents . . . and even expert evidence." *Id*. at 441. The district court "found that it could not consider . . . evidence of dissimilarity 'at the pre-notice stage' because it went to the merits of the case." *Id*. However, the Fifth Circuit rejected the district court's two-step approach of ignoring relevant evidence at the first step, and instead directed the district court to consider in a single step "all available evidence" to decide whether the plaintiffs and opt-in plaintiffs were "similarly situated." *Id*. at 443.

Defendants cite to no case from the Eleventh Circuit Court of Appeals or the Southern District of Florida that addresses *Swales*. However, Defendants cite to two district courts in the Eleventh Circuit that at least partially adopted the *Swales* approach. In *Green v. Atlas Senior Living, LLC*, No. 21-cv-237, 2022 WL 2007398, at *5 (S.D. Ga. June 6, 2022), the defendants opposed conditional certification with evidence, including affidavits. The *Green* court agreed with the defendants that, when such evidence was already before the court, it would be inappropriate to apply the two-step certification process outlined by the Eleventh Circuit in *Hipp*, 252 F.3d at 1218. The *Green* court reasoned:

> Rigid adherence to *Hipp* in this circumstance would potentially result in the Court granting Plaintiffs' motion for conditional certification despite already possessing evidence which would require it to grant a motion for decertification. Such a result would not square with a primary purpose of the FLSA's opt-in procedure, which reflects a policy in favor of judicial economy[.]

*Green*, 2022 WL 2007398 at *5 (quotation marks omitted). Similarly, in *Broome v. CRST Malone, Inc.*, No. 19-cv-01917, 2022 WL 205675 (N.D. Ala. Jan. 21, 2022), the district court applied the

4

one-step *Swales* approach when the record contained significant deposition evidence and documents at the time conditional certification was sought. *Id.* at *5.

Here, Defendants have neglected to introduce any evidence regarding the dissimilarities between Plaintiff and the Putative Members. While Defendants may be correct that "the *Swales* process facilitates a more fact specific review of the claims asserted and the scope of the putative class[,]" ECF No. [141] at 5, such a "fact specific review" cannot occur in the absence of a developed factual record. Accordingly, the Court applies the two-tiered certification process approved by the Eleventh Circuit and routinely employed in the Southern District of Florida. *See Morgan*, 551 F.3d at 1260; *see, e.g.*, *Rosell v. VMSB, LLC*, No. 20-cv-20857, 2020 WL 7767879, at *3 (S.D. Fla. July 7, 2020); *Wynder v. Applied Card Sys., Inc.*, No. 09-cv-80004, 2009 WL 3255585 (S.D. Fla. 2009).

### B. Similarly Situated

At the first stage of the two-tiered FLSA collective action process, Plaintiff "has the burden of showing a reasonable basis for his claim that there are other similarly situated employees." *Morgan*, 551 F.3d at 1260 (quotation marks omitted). Although this is a "fairly lenient standard," Plaintiff must provide more than "unsupported assertions that FLSA violations [are] widespread and that additional plaintiffs" wish to join the action. *Id*. (quotation marks omitted). A plaintiff seeking to conditionally certify a class must show through affidavits "that there are other employees who are 'similarly situated' with respect to their job requirements and their pay provisions, and that these employees desire to opt in." *Benitez-Fajardo v. Seafood on the Table*, No. 12-cv-22237, 2013 WL 12124621, at *2 (S.D. Fla. Nov. 19, 2013).

Plaintiff alleges that, within the last three years, Defendants have employed over 50 "front-of-the-house tipped employees" who were required to participate in Defendants' "tip pool"

process, which Defendants used to unlawfully retain employees' tips. ECF No. [122] ¶¶ 42, 45. Plaintiff alleges that the Putative Members all performed "the same type of work under the same procedures, rules, and regulations[.]" *Id*. ¶ 46.

Plaintiff supports his Motion with three groups of evidence. First, Plaintiff has produced documents demonstrating that Defendants required "Captains, Servers, Bussers, Food Runners, Bartenders, Barbacks, Hostesses, and Dock Masters" to participate in tip pools managed by Defendants. ECF Nos. [122-1] at 10-13, [144-1].

Second, Plaintiff has filed four detailed Declarations. In the first, Plaintiff describes his duties as a server and captain and alleges that he did not receive tips and overtips that Defendants were "supposed to" pay him. ECF No. [127-1] ¶¶ 5-6, 10, 16. Two additional Declarations from bartenders describe bartenders' duties and allege that they did not receive the tips they earned. ECF No. [127-3] ¶¶ 7, 19, [127-4] ¶¶ 7, 19. A fourth Declaration from a bottle server describes her duties in that role and contains similar allegations of "pay violation practices." ECF No. [127-5] ¶¶ 5-6, 14. Each Declaration avers that the employees were tipped employees whose tips were collected and redistributed by Defendants.

Third, Plaintiff's Motion is supported by approximately thirty Notices of Consent to Join from other individuals employed by Defendants. *See* ECF Nos. [127] at 9 (listing the Notices filed as of April 21, 2023), [139], [149], [150], [151]. The Notices of Consent include affidavits from former employees, including servers, bartenders, a food runner, ECF No. [150-1], and a bar manager, ECF No. [139-1], which all assert similar FLSA violations against Defendants.

Defendants have neglected to file any evidence to contest Plaintiff's evidence and allegations. Rather, Defendants argue that Plaintiff has failed to meet his burden because he has "only attached four declarations" in support of his motion, and none of the Declarations or Notices

of Consent to Join include bussers, barbacks, hosts, hostesses, or dockmasters,[1] and there is no evidence that those employees are similarly situated or wish to join Plaintiff's lawsuit. ECF No. [141] at 8.

Defendants' argument primarily relies on *Alvarez v. Uno Restaurant Associates, Inc.*, 17-cv-24452, 2018 WL 2305561 (S.D. Fla. May 21, 2018). In *Alvarez*, the plaintiff was a busser who alleged several FLSA violations. He sought to certify a class of "[a]ll bussers and servers" who worked for the defendants during the relevant period. *Id*. at *2. In support of his motion, he produced his affidavit and another busser's affidavit who suffered the same alleged violations. *Id*. at *3. The *Alvarez* plaintiff argued that "the proposed class members are similarly situated because they provided 'service to dining customers' and were subjected to the same improper policies and practices." *Id*. The defendants responded by filing eight affidavits indicating that bussers and servers do not have the same job duties and are not similarly situated. *Id.* at *4. The *Alvarez* court found the plaintiff's motion lacking because it (a) included no evidence "about the respective job duties associated" with the server and busser positions, and (b) lacked any affidavit or consent to join from a server. *Id*. at *3. Finding insufficient evidence "to support the conclusion that Alvarez and other tipped employees were subject to the same payment provisions and alleged wrongs," the *Alvarez* court concluded that the plaintiff failed to meet his burden of showing that the proposed class members were similarly situated. *Id.* at *3.

Here, by contrast, Plaintiff has provided *uncontested* evidence that (a) the Putative Members were tipped employees who were required to participate in the "tip pools" managed by Defendants, and (b) approximately thirty (30) Putative Members assert identical claims that

---

[1] Defendants added "food runner" to this list of employee positions for which no evidence exists, but a food runner subsequently filed a Notice of Consent to Join. ECF No. [150-1].

Defendants' tip distribution policies violated their FLSA rights. That evidence suffices for Plaintiff to meet his "not heavy" burden of establishing that conditional certification is appropriate, particularly since Defendants have neglected to file "affidavits to the contrary." *Benitz-Fajardo*, 2013 WL 12124621 at *2 (quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)). The Putative Members "worked in the same geographic location" as Plaintiff, the "alleged violations occurred during the same time period," all employees were "subjected to the same policies and practices" regarding tip pools, those "policies and practices were established in the same manner and by the same decision maker," and the alleged tip retention violations are identical. *Smith v. Tradesmen Int'l, Inc.*, 289 F. Supp. 2d 1369, 1372 (S.D. Fla. 2003) (quotation marks omitted) (listing factors to consider in the "similarly situated" analysis). In light of those uncontested similarities between Plaintiff and the Putative Members, the fact that some Putative Members have different job titles is an insufficient basisi to deny Plaintiff's Motion.

Accordingly, the Court finds that Plaintiff has met his burden of showing that conditional certification is appropriate.

### C. Notice and Opt-In Procedures

The remaining issues relate to the procedures in which the Putative Members will be contacted and given the opportunity to opt in.

#### i. Beginning Date of Class Period

The parties first dispute when the class period should be deemed to begin. Plaintiff argues that notice should be provided to all employees who worked at Kiki on the River during the three years preceding Plaintiff's initiation of this lawsuit in September 2019. ECF No. [127] at 15. Defendants respond that the three-year period should date back from the date the Court grants conditional certification. ECF No. [141] at 9-10.

Courts in the Southern District of Florida have been inconsistent regarding the trigger date of the three-year period. *See, e.g.*, *Wynder*, 2009 WL 3255585, at *4 ("three years preceding the filing of this lawsuit"); *Blake v. Batmasian*, 208 F. Supp. 3d 1292, 1295 (S.D. Fla. 2016) (three years from the date of the filing of the operative amended complaint); *Gutescu v. Carey Int'l, Inc.*, No. 01-cv-4026, 2003 WL 25586749, at *18 (S.D. Fla. July 21, 2003) (three years from the date of mailing of the notice).

According to 29 U.S.C. § 255(a), an FLSA "cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued[.]" Section 256 provides that, "in the case of a collective" FLSA lawsuit, the action is deemed to commence for an opt-in plaintiff on the date when the opt-in plaintiff files "written consent" to join. *Id.* § 256(b). Accordingly, "[u]nder the plain terms of this statute, if the written consent of an opt-in plaintiff is not filed within three years from their last pay date, their action is barred." *Gutescu*, 2003 WL 25586749 at *17. The Court therefore agrees with Defendants that, absent tolling of the statute of limitations, it would be inappropriate to notify individuals who did not work for Defendants within three years from the mailing of the notice.

In his Reply, Plaintiff points out that Defendants have already agreed to toll the statute of limitations period for three weeks. ECF No. [144] at 6 n.2 (citing ECF Nos. [86-2], [86-3]). Accordingly, the opt-in notice shall be sent only to all individuals who worked at Kiki on the River at any time after **June 7, 2023**.

ii.   The Manner of Providing Notice to Putative Members

Regarding the manner of noticing Putative Members of their rights to opt in, the parties agree that notice via email and United States mail are appropriate. The parties dispute whether notification via text message should also be permitted. Defendants argue that text messages are

9

intrusive and may cause recipients to incur unwanted costs. ECF No. [141] at 10-11. Plaintiff concedes that text message notification is "not necessarily prevalent in this District," but argues that text notification is appropriate in this era following disruptions caused by COVID-19. ECF No. [127] at 17-18.

The only case cited by Plaintiff from this District that allowed notice via text message did so during the height of disruptions caused by the COVID-19 pandemic. *See Martin v. Partsbase Inc.*, 20-cv-80235, 2020 WL 13389358, at *8 (S.D. Fla. May 14, 2020). Those circumstances are no longer present. The Court agrees with Defendants that text messages are intrusive, may cause unwanted monetary charges to the recipients, and are not necessary in the circumstances of this case.

Relatedly, the parties dispute whether Defendants should be required to (a) include a copy of the Notice with employees' next paper checks, and (b) post the Notice at the restaurant. ECF No. [127] at 19. Citing out-of-district cases, Defendants argue that both of those forms of providing notice would be unnecessarily intrusive of the restaurant's operations. ECF No. [141] at 13. Defendants further argue that including the Notice with paper checks would be ineffective because only seven employees from the proposed class receive paper checks. *Id*. at 13.

In his Reply, Plaintiff does not address Defendants' opposition to providing copies of the Notice with paper checks. ECF No. [144] at 8. The Court agrees with Defendants that notice by that process is ineffective and unnecessary.

As for posting the Notice at the restaurant, Plaintiff has cited several cases from this District indicating that posting the Notice at the employer's location is routine. *Hubbard v. Jerry's Seamless Guttering, Inc.*, No. 19-cv-81705, 2020 WL 6038110, at *4 (S.D. Fla. Oct. 6, 2020); *Didoni v. Columbus* Rest., LLC, 327 F.R.D. 475, 482 (S.D. Fla. 2018). "It is not unusual for a

court to require an FLSA defendant to post the Notice and Consent in its break/lunch room or another place where employees regularly gather." *Didoni*, 327 F.R.D. at 481 (quotation marks and citations omitted). The Court is not convinced by Defendants' argument that posting the Notice will "disrupt the workplace[.]" ECF No. [141] at 13; *see Didoni*, 327 F.R.D. at 481 (rejecting Defendants' argument in similar circumstances). Accordingly, the Court will require Defendants to post the Notice in an employees' space of the restaurant throughout the opt-in period.

### iii. Reminder Notification

The parties dispute whether Plaintiff should be permitted to send a reminder notice midway through the opt-in period. *See* ECF No. [127] at 20 (citing, *inter alia*, *Caamano v. 7 Call Ctr. Inc.*, No. 16-cv-20932, 2016 WL 4704934, at *4 (S.D. Fla. Sept. 8, 2016) (approving reminder halfway through notice period)). Defendants respond that reminder notices are unnecessary and inappropriate. ECF No. [141] at 11-12 (citing, *inter alia*, *Cooper v. E. Coast Assemblers, Inc.*, No. 12-cv-80995, 2013 WL 308880, at *3 (S.D. Fla. Jan. 25, 2013)). Given that the Court denies Plaintiff's request to send text messages, a reminder notice is appropriate to mitigate the risk of Putative Members missing the first notice in their mailboxes or inboxes.

### iv. Social Media

Defendants seek an order barring Putative Members from publishing the Notice on social media or otherwise disseminating the Notice to third parties. ECF No. [141] at 14. Defendants argue that Plaintiff's counsel has already posted incomplete and inaccurate videos on TikTok. *Id.* at 17.

Defendants' argument lacks any citations to courts that have issued the type of prior restraint they request. Moreover, Judge Otazo-Reyes has already rejected Defendants' argument that the TikTok videos are misleading. ECF No. [148] at 12. As Judge Otazo-Reyes concluded,

posting on social media is appropriate so long as it is not "misleading or improper." *Id*. at 13. If Defendants become aware of postings they consider misleading or improper, they are of course free to bring such postings to Judge Otazo-Reyes' attention.

### v. Length of the Opt-In Period

The parties dispute the length of the opt-in period. Plaintiff requests a 90-day period. ECF No. [127] at 20 (citing, *inter alia*, *Hubbard*, 2020 WL 6038110, at *4 (90-day period)). Defendants request a 45-day period. ECF No. [141] at 14 (citing, *inter alia*, *Brasaus v. FreshPoint of S. Fla., Inc.*, No. 15-cv-61529, 2016 WL 7469979, at *3 (S.D. Fla. Feb. 12, 2016)). Neither party provides a convincing argument as to why, within the particular circumstances of this case, its proposed opt-in period is appropriate. The Court will limit the opt-in period to 60 days. *See, e.g.*, *Lara v. G & E Fla. Contractors, LLC*, No. 15-cv-20306, 2015 WL 4768328 (S.D. Fla. Aug. 11, 2015).

### vi. Notice and Tolling the Statute of Limitations

Lastly, Defendants object to Plaintiff's proposed Notice and Consent forms, and they additionally oppose Plaintiff's request for Defendants to provide a spreadsheet with Putative Members' contact information within ten days of the Court's Order. Defendants assert that ten days "does not provide Defendants with sufficient time to compile the requested information," ECF No. [141] at 2, and they request an opportunity to meet and confer regarding the substance of the draft notices. *Id*. at 18.

Plaintiff argues that ten days should be sufficient for Defendants to compile and produce the Putative Members' contact information. ECF No. [144] at 8. Plaintiff additionally asserts that Defendants have already had the opportunity to propose changes to the Notice and Consent forms, but have failed to do so. *Id*. at 6-7. Alternatively, Plaintiff requests to toll the staute of limitations

period during the additional time Defendants request to meet and confer regarding the substance of the forms.

The Court agrees with Plaintiff's request in the alternative. Granting Defendants additional time is appropriate and not prejudicial to Plaintiff or the Putative Members as long as the limitations period is tolled during this time. Accordingly, the Court will require the parties to meet and confer regarding the Notice and Consent forms and file proposed forms no later than **July 17, 2023**. Defendants shall provide Plaintiff with Putative Members' contact information no later than that same date. The limitations period shall be tolled between the issuance of this Order and **July 17, 2023**.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion, **ECF No. [127]**, is **GRANTED**.

2. The Court conditionally certifies an FLSA collective action consisting of all front-of-the-house tipped employees who worked at Kiki on the River after **June 7, 2020**.

3. On or before **July 17, 2023**, Defendants shall provide Plaintiff's counsel with a list containing the names, email addresses, last known addresses, and dates of employment of each potential class member.

4. The Parties shall meet and confer regarding the substance of the Notice and Consent forms. On or before **July 17, 2023**, the parties shall file the proposed forms.

5. The time period for opting into this action will be sixty (60) days from the date Notice is sent. Consent forms must be signed by the Putative Members, dated, and filed with the Court by the 60th day after notice is sent.

6. Plaintiff is permitted to send one reminder notification via mail and email to Putative Members who have not opted in after 30 days.

7. The statute of imitations period is tolled for three weeks in accordance with the parties' agreements, ECF Nos. [86-2], [86-3], and an additional period between the date of issuance of this Order and **July 17, 2023**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 28, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record