UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-CV-23074-BLOOM/OTAZO-REYES

OCTAVIO COLLADO,

   Plaintiff,

**COLLECTIVE ACTION**

vs.

450 NORTH RIVER DRIVE, LLC,
d/b/a KIKI ON THE RIVER,
RJ RIVER, LLC and
ROMAN JONES,

   Defendants.
_____/

## **PLAINTIFF'S MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23(B)(3)**

### **I. INTRODUCTION**

  Mr. Collado seeks to create a hybrid class/collective action to adjudicate the common legal and factual issues for all affected parties in one proceeding. Following the Court's certification of Count I for collective treatment under 29 U.S.C. §216(b) [ECF No. 155], Mr. Collado now requests the Court to make a similar determination that Counts II and III should proceed on a Class basis under Fed. R. Civ. P. Rule 23(b)(3). Like Count I, the predominance of common factual and legal issues, typicality of Mr. Collado's claims, and the number of potentially affected persons makes class treatment of Counts II and III appropriate. Mr. Collado satisfies each element necessary to obtain class certification for Counts II and III. An evaluation of the factors considered for Class Certification under Rule 23(a) and (b)(3) confirms that class certification is appropriate. Consequently, Mr. Collado seeks an Order certifying Counts II and III to proceed on a Class basis for all others similarly situated.

1

## II. FACTUAL AND PROCEDURAL HISTORY

1. Mr. Collado filed the initial Complaint on September 23, 2022, alleging that Defendants violated 29 U.S.C. 203(m)(2)(B) by improperly retaining and/or distributing tips to traditionally non-tipped employees and sought the assemblage of a collective action under 29 U.S.C. §216(b). [ECF No. 1.]

2. Mr. Collado then served his pre-suit letter on Defendants pursuant to Fla. Stat. §448.110 on November 10, 2022, alleging that Defendants violated the Florida Minimum Wage Act by failing to appropriately distribute the tips he and the other similarly situated front-of-the-house tipped employees earned, tolling the statute of limitations applicable to the FMWA claims for 15 days. Fla. Stat. §448.110. [ECF No. 40 at ¶8.]

3. After satisfying the pre-suit requirements imposed by Fla. Stat. §448.110, Mr. Collado filed an Amended Complaint to include one claim that Defendants violated the FMWA at Count II and another claim that they violated the common law of Florida, with both claims alleging that a violation of law occurred by either retaining the tips earned by the front-of-the-house employees or improperly distributing the tips to traditionally non-tipped employees in Count III on December 7, 2022. [ECF No. 40.]

4. Mr. Collado now proceeds on his Third Amended Complaint, alleging the same claims at Counts I, II, and III, to which Defendants recently filed their Answer and Affirmative Defenses.[1] [ECF Nos. 122, 156.]

5. In Count II, Mr. Collado alleges that Defendants engaged in widespread improprieties affecting all front-of-the-house tipped employees and violated the Florida Minimum Wage Act, Fla. Stat. §448.110, and Fla. Const. Art. 10, §24.

---

[1] The Court denied Defendants' dispositive motions filed in response to the Third Amended Complaint. [ECF No. 152.]

2

6. In Count III, Mr. Collado alleges that (only) Defendant 450 North River Drive, LLC violated the common law of Florida by improperly retaining for itself or sharing with traditionally non-tipped employees the tips earned by the front-of-the-house tipped employees in derogation of the agreement of the parties. [ECF No. 122.]

7. The Court recently denied Defendants' challenges to Counts II and III and directed the remainder of this case to proceed to be litigated on the merits. [ECF No. 152.]

8. Defendants responded to the Third Amended Complaint with their Answer and Affirmative Defenses. [ECF No. 156.] Therein, Defendants asserted the same affirmative defenses to the claims by Mr. Collado "and the alleged similarly situated employees." *Id.*

9. The evidence is that Defendants failed to properly distribute all the tips the front-of-the-house tipped employees earned. [ECF Nos. 127-1, 127-2, 127-3, 127-4, 127-5.]

10. While occupying different positions at the Defendants' restaurant, the front-of-the-house tipped employees suffered the same injury (tip damages) due to uniformly applied pay practices. *Id.*

11. The discovery responses from Defendants confirm that Mr. Collado and the Class were subjected to standardized, common pay practices concerning Defendants' aggregation and distribution of tips/overtips. [ECF No. 122-1 at 10-13.] Defendant, 450 North River Drive, LLC, identified the practices that Kiki on the River used to collect and distribute tips and overtips to the front-of-the-house tipped employees (captains, servers, bottle servers, bussers, food runners, bartenders, barbacks, hosts, hostesses, and dockmasters) in its Answers to Interrogatories. *Id.* Its Answer to Interrogatory No. 5 describes the commonly applicable practices used and confirms that no tipped employee was treated differently than Mr. Collado, regardless of the job title of the tipped employee, in receiving tips from the tip pool.

12. The decision to allow Mr. Collado to proceed for the others similarly situated and affected in Counts II and III is founded on Florida statutory and common law [ECF No. 122] and is, therefore, governed by Rule 23.

13. Defendant, 450 North River Drive, is the entity that owns the fictitious name "Kiki on the River," a restaurant on the Miami River. [ECF No. 122 at ¶¶13-15.]

14. Its managing member is RJ River, LLC, and Mr. Collado alleges that all Defendants are liable to him and the Class in Count II.[2] [ECF No. 122.]

15. The putative Class includes current and former employees who worked at Kiki on the River as front-of-the-house tipped employees.

16. The Court already determined that Count I will proceed as a collective action for the front-of-the-house tipped employees who worked for the Defendants since June 7, 2020. [ECF No. 155.]

17. Over thirty people already joined this case, but many members of the Class have not.

18. Mr. Collado's claims are typical of those of the alleged class (i.e., front-of-the-house tipped employee seeking the improperly retained or distributed tips and all other recoverable damages). [ECF Nos. 127-1, 127-2, 127-3, 127-4, 127-5.]

19. The current and former employees are easily ascertainable and identifiable by a review of Defendants' records. [*See e.g.*, ECF No. 162.]

---

[2] Defendants admitted that 450 North River Drive, LLC employed Mr. Collado. [ECF Nos. 122, 156 at ¶20: "Defendants admit the allegations set forth in Paragraph 20 only to the extent Kiki maintained control, oversight, and direction over Plaintiff and other "front-of-the-house tipped employees."]

20. Absent notice related to their rights related to Counts II and III of this lawsuits, current and former employees will fail to learn of their right to recover tips – whether under the Florida Minimum Wage Act or the common law of Florida – possibly as far back as five years.

21. The common questions of law and fact presented in this case predominate over any individual questions. The Plaintiffs and the other class members seek to remedy common legal claims, Defendants' failure to properly pay them their minimum wages. A class action is superior to other methods of adjudicating this controversy.

### III. THE CLASS

#### A. The Legal Standard For Class Certification.

Questions regarding class certification are left to the Court's discretion. C*ooper v. S. Co.*, 390 F.3d 695, 711 (11th Cir. 2004). Rule 23(a) provides that class certification is appropriate when the following are established:

> 1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims and defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

To obtain class certification, Mr. Collado must satisfy every Rule 23(a) requirement and at least one subsection of Rule 23(b). *Carrioulo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016). Mr. Collado satisfies these requirements. Multiple lawsuits involving the same issues pose numerous problems, including the possibility of inconsistent or varying adjudications and the inequities of employees who rely on tips for their income to pursue individual lawsuits against well-funded employers. Because Mr. Collado intends to seek monetary damages on behalf of the class, he must meet the requirements of Rule 23(b)(3). *Wal-MartStores Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

This class action variant requires certification when the movant shows that common

questions predominate over individual questions and that the class action is a superior way to resolve the controversy. *See* Fed. R. Civ. P. 23(b)(3). "Plaintiffs will necessarily satisfy the commonality requirement if they can show predominance." *Carriuolo*, 823 F.3d at 985. The Eleventh Circuit also has held that a putative class representative must first "establish that the proposed class is adequately defined and clearly ascertainable." *Id.* at 984 (quotations omitted). As shown below, Mr. Collado's proposed class is adequately defined, and meets the criteria of Rule 23(a) and (b)(3).

The Court properly ignores the merit of the claims in Counts II and III, which the Court determined can proceed at ECF No. 148, in certifying the Class. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-8 (1974).

The Class definition requirement does not require a strict degree of certainty and is to be liberally applied. *Singer v. AT & T Corp.*, 185 F.R.D. 681, 685 (S.D. Fla. 1998).

**B.** **The Definition Of The Proposed Class.**

First, the proposed class is adequately defined. "A proposed class is ascertainable if it is adequately defined such that its membership is capable of determination." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021). Mr. Collado seeks to certify the following Class:

> **All front-of-the-house tipped employees who worked at Kiki on the River from November 17, 2017, and up through the rendition of a judgment in this matter**.

The members of the Class are known to Defendants. [*See e.g.*, ECF No. 162.] The class definition utilizes the (5) year limitation period applicable to Count II instead of the four (4) year limitation period applicable to Count III and the 15-day tolling period provided by Florida law for the FMWA claim. *Compare* Fla. Stat. §§448.110 with 95.11. Everyone who qualifies for inclusion in a class for Count III would necessarily be a part of Count II.

6

## IV. ARGUMENT

While Mr. Collado bears the burden of showing he met the requirements of Rule 23, "[f]or the purposes of class certification…the Court accepts the plaintiffs' substantive allegations as true." *In Re Carbon Dioxide Antitrust Litigation*, 149 F.R.D. 229, 232 (M.D. Fla. 1993). In deciding whether certification is appropriate, "[t]he Court resolves any doubt in favor of class certification." *Id.*, at 232. Additionally, "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S. Ct. 2140, 2153, 40 L. Ed. 2d 732 (1974); *see also Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1337 (11th Cir. 2006) ("a district court may not resolve the merits of a case when ruling on a Rule 23 motion").

Since claims for unpaid minimum wages under the FMWA are analogous to minimum wage claims under the FLSA, hybrid class action suits under Rule 23 (for state law minimum wages) and 29 U.S.C. § 216(b) (for minimum wages and/or overtime wages) often proceed harmoniously. *See e.g.*, *Calderone v. Scott*, 838 F.3d 1101, 1107 (11th Cir. 2016) (Holding that, as a matter of first impression, "[a] § 216(b) collective action and a state-law Rule 23(b)(3) class action may be maintained in the same proceeding[,]" and reversing lower court ruling to the contrary); *see also* Advisory Committee's Notes to Federal Rule 23(b)(3) ("The present provisions of 29 U.S.C. § 216(b) are not intended to be affected by Rule 23, as amended."); *Prickett v. DeKalb County*, 349 F.3d 1294, 1297 (11th Cir. 2003) (distinguishing opt-in procedure under FLSA and Rule 23); and *Bennett v. Hayes Robertson Group, Inc.*, 880 F.Supp.2d 1270, 1276-1277 (S.D. Fla. 2012) (recognizing "hybrid class actions").

Federal courts in Florida routinely certify wage and hour claims brought under Florida state law as class actions. *See, e.g.*, *Lopez v. Hayes Robertson Grp., Inc.*, 2013 WL 10561294, at *1 (S.D.

7

Fla. Sept. 23, 2013), *amended*, 2013 WL 10568828 (S.D. Fla. Sept. 25, 2013); *Garcia-Celestino v. Ruiz Harvesting, Inc.*, 280 F.R.D. 640 (M.D. Fla. 2012); *Rosario-Guerrro v. Orange Blossom Harvesting*, 265 F.R.D. 619 (M.D. Fla. 2010; *Napoles-Arcila v. Pero Family Farms, LLC*, 2009 WL 1585970 (S.D. Fla. June 4, 2009); and *Mesa v. Ag-Mart Produce, Inc.*, 2008 WL 2790224 (M.D. Fla. July 18, 2008)(same). Plus, some courts granted class certification in cases after certification of an opt-in collective action was denied. *See Kubiak v. S.W. Cowboy, Inc.*, 2014 W.L. 2625181 (M.D. Fla. 2014).

Like in Count I, the crux of Mr. Collado's claims at Counts II and III is that Defendant's front-of-the-house tipped employees suffered the same injury – not receiving all tips earned – due to Defendants' unlawful pay practices. [ECF Nos. 127-1, 127-2, 127-3, 127-4, 127-5.] The Court should certify the proposed class because it meets the requirements of Rule 23(a)(1-4) (numerosity, commonality, typicality, and adequacy of representation) and Rule 23(b)(3). *Grimes v. Rave Motion Pictures Birmingham*, 264 F.R.D. 659, 662–64 (N.D. Ala. 2010). The Court should also appoint Mr. Collado as the representative of the Class and the undersigned as Class Counsel under Rule 23(g).

**A.**     **Mr. Collado Satisfies Rule 23(a)'s Requirements.**

1.     *The class is sufficiently numerous.*

Rule 23(a)(1) requires "a class [be] so numerous that joinder of all members is impracticable." The numerosity requirement does not require that joinder be impossible, but rather difficult or inconvenient. *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 669 (S.D. Fla. 1997). Plaintiff need only proffer a reasonable estimate of the size of the class. *Leszczynski*, 176 F.R.D. 659, 669 (S.D. Fla. 1997). Mr. Collado does not need to provide the exact number of class members. *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983). When resolving numerosity, courts typically find that "less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009).

8

Over 30 people already joined his case, and the Defendants did not contend that others do not exist. Instead, they responded to the Court's Order by providing a list of 383 front-of-the-house tipped employees who worked for Defendants during the three years before June 20, 2023. [ECF No. 162.] This list will only grow to include those who worked for Defendants during the five years before the filing of the Amended Complaint. *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974) ("We are convinced that the rule most consistent with federal class action procedure must be that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.") The practicalities of joining over 400 people in this lawsuit favor adjudication of the issues in a class setting.

2. *Common issues will predominate over individualized inquiries.*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." The Rule is disjunctive, meaning a showing of a common question of *either* fact *or* law satisfies Rule 23(a)(2). *Georgia State Conference of Branches of NAACP v. State of Ga.*, 99 F.R.D. 16, 25 (S.D. Ga. 1983). "[O]ne significant common question of law or fact will satisfy this requirement. *Id.* Commonality "focuses on whether a *sufficient nexus* exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001). "Common questions are ones where 'the same evidence will suffice for each member,' and individual questions are ones where the evidence will 'vary from member to member.'" *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016).

"A court will normally find commonality where a question of law refers to standardized conduct by defendants towards members of the proposed class." *In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 428 (S.D. Fla. 1991). However, it is not necessary that all members of the class have identical

9

claims, since [u]nder the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof. *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001).

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability." *Carriuolo*, 823 F.3d at 985. The merits of Mr. Collado's claims at Counts II and III, under the FMWA and common law of Florida, present a series of predominating, common questions, thereby satisfying Rule 23(a)(2)'s commonality requirement and Rule 23(b)(3)'s predominance requirement.

"The commonality element is generally satisfied when a plaintiff alleges that '[d]efendants have engaged in a standardized course of conduct that affects all class members.'" *In re Checking Account Overdraft Litigation*, 275 F.R.D. 666, 673 (S.D. Fla. 2011) (*citing In re Terazosin Hydrochloride*, 220 F.R.D. 672, 687 (S.D. Fla. 2004); *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 697 (S.D. Fla. 2004); *In re AmeriFirst Sec. Litig.*, 139 F.R.D. 423, 428 (S.D. Fla. 1991).

        i.        *<u>A Class Action will resolve the common question of law and fact.</u>*

Questions of law or fact common to Mr. Collado and Defendants' other front-of-the-house tipped employees predominate in this case. Mr. Collado's claims share common issues with the claims of Defendants' other captains, servers, and bussers employed at Kiki on the River since November 27, 2015. Mr. Collado and the Putative Class also have significant, common issues that predominate over any individualized inquiries, including:

1) Whether Defendants are subject to the provisions of the FMWA;
2) Whether the FMWA provides a claim for tips improperly retained or distributed;

3) Whether Defendants entered into a common agreement (or series of agreements) for how they would distribute and/or share the tips;

4) Whether Defendants received discretionary gratuities (tips/overtips) from customers;

5) Whether Defendants improperly confiscated any of the tips (overtips);

6) Whether Defendants improperly distributed any of tips (overtips) to supervisory or managerial employees who were not entitled to receive tips;

7) The amount of the tips (overtips) that Defendants either improperly confiscated or distributed during each workweek at issue;

8) Who received the tips (overtips) that Defendants either improperly confiscated or distributed during each workweek at issue;

9) Whether Defendants had a good faith and reasonable belief for not paying all the tips (overtips) due to Mr. Collado and the Putative Class; and

10) Whether Mr. Collado, the Opt-In Plaintiffs, and the Putative Class are entitled to recover liquidated damages equal to the unpaid/underpaid tips.

Resolving the foregoing issues for Mr. Collado will resolve them for each member of the Class, leaving only the issue of damages to be resolved individually. The fact that damages may have to be calculated individually does not necessarily establish that individual issues predominate. *See, e.g., Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) ("Numerous courts have recognized that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate."); and *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259 (11th Cir. 2004).

    ii. <u>*Mr. Collado's claims are typical of the Class claims.*</u>

Rule 23(a)(3) requires "the claims or defenses of the parties are typical of the claims or defenses of the class." "Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262,1287 (11th Cir. 2001). The claims of the representative parties need to be sufficiently similar to the factual positions of the other class members so that they will adequately represent

11

them. *Powers v. Stuart-James Co.*, 707 F.Supp. 499, 503 (M.D. Fla. 1989). The typicality requirement requires a class representative to "possess the same interest and suffer the same injury as the class members," albeit there may be substantial factual differences. *Murray*, 244 F.3d 807, 811. The distinction between commonality and typicality is "commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Piazza*, 273 F.3d 1341, 1346.

### iii. *Mr. Collado and his counsel will adequately protect the interests of the Class.*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class. This fourth requirement, adequacy, encompasses both the adequacy of class counsel and the adequacy of the named plaintiff to prosecute the action. *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985). Class representatives must "fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), and must, therefore, "possess the same interest and suffer the same injury as the class members." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997).

The *adequacy* requirement encompasses two steps: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action. *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).

A conflict exists where the representatives' interests are antagonistic to the class, such that party members that claimed to be harmed by the conduct conflict with class members that claim to be benefited by the conduct. *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). In the case *sub judice*, Mr. Collado and the class members share the same claims and interests. Mr. Collado has already appeared at a settlement conference and is actively involved in this case. [*See* ECF Nos. 95 and 127-1.] and the class members claim violations of the FMWA and the common law of Florida resulting from improperly confiscating or distributing tips. Upon

a favorable decision, both Mr. Collado and the class members will benefit from an award of restitution in the form of the tips they earned but did not receive from the Defendants. Mr. Collado will not benefit from any acts detrimental to the class members, nor vice-versa.

Regarding the second prong, the representative plaintiff must "provide competent counsel and vigorously prosecute the action on behalf of the class." *Moreno-Espinosa v. J & J Ag Products, Inc.*, 247 F.R.D. 686, 690 (S.D. Fla. 2007). Under Rule 23(g), a district court that certifies a class action must also appoint class counsel. Fed. R. Civ. P. 23(g)(1)(A). In appointing such counsel, the Court must determine that counsel will "fairly and adequately represent the interests of the class." FED. R. CIV. P. 23(g)(1)(B). The Court "must consider [1] the work counsel has done in identifying or investigating potential claims in the action, [2] counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, [3] counsel's knowledge of the applicable law, and [4] the resources counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(C)(i). The Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class; [and] may direct potential class counsel to provide information on any subject pertinent to the appointment[.]" Fed. R. Civ. P. 23(g)(1)(C)(ii)(iii). Mr. Collado respectfully submits that his counsel are qualified in handling class action and collective wage claims and, considering the work his counsel has performed in investigating his claims and pursuing this litigation, counsels' experience and knowledge of the applicable law, and the financial resources that counsel has already committed and will continue to commit to this litigation, counsel is qualified to represent the class, and will fairly and adequately represent the interests of the class. Further, where competent and zealous counsel represents a class, class certification should not be denied when there the named plaintiff has an interest in the outcome of the litigation. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 728 (11th Cir. 1987). Mr. Collado's counsel has litigated hundreds of FLSA cases in the Southern District of Florida and

served as counsel for a class and/or collective in multiple cases in the Florida state and federal courts. Plus, the Court already found Mr. Collado and his counsel adequate to represent the Collective for similar claims that arise under federal law. [ECF No. 162.]

## B. Mr. Collado Meets The Requirements of Rule 23(b)(3).

Once the requirements of Rule 23(a) are met, Mr. Collado must demonstrate that a class action is a superior method of resolving the controversy. *See* Fed. R. Civ. P. 23(b)(3). The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id.* Prevailing on the claims at Counts II and III is not a foregone conclusion, and litigation costs alone threaten to exhaust even medium-sized settlements, and any potential contingency award is too small to incentivize a lawyer to invest the amount of time and energy necessary to see this case through, demonstrating that a class action remains the better vehicle for advancing this litigation.

> The focus of this analysis is on "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay,* 382 F.3d at 1269. As a result, the predominance analysis has a "tremendous impact on the superiority analysis ... for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims," *id.,* both relative to other forms of litigation such as joinder or consolidation, and in absolute terms of manageability, *see* Fed. R. Civ. P. 23(b)(3)(D).

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Services, Inc.*, 601 F.3d 1159, 1183–84 (11th Cir. 2010). More recently, the Eleventh Circuit Court of Appeals discussed that:

> "Common questions "predominate" within the meaning of Rule 23(b)(3) when the substance and quantity of evidence necessary to prove the class claims won't vary

14

>significantly from one plaintiff to another. *See Brown v. Electrolux Home Prods.*, 817 F.3d 1225, 1234 (11th Cir. 2016).

*Tershakovec v. Ford Motor Co., Inc.*, 22-10575, 2023 WL 4377585, at *3 (11th Cir. July 7, 2023). The class claims will predominate over any individual claims to such an extent that the individual claims will become subsumed within the class claims, and the class proof will override any individual proofs. The class seeks recovery of tips under the Florida Minimum Wage Act and the common law of Florida based on a *company-wide practice* of not properly and fully distributing all tips to the front-of-the-house tipped employees. Once Mr. Collado establishes a company-wide practice that resulted in the failure to properly distribute, no individualized legal or factual questions beyond the damages recoverable by the class members, which is readily determinable through a spreadsheet.

Class members may be reluctant to file separate causes of action for the reasons discussed, *supra*, geographic dispersion, and fear of retribution. *Torres v. Gristede's Operating Corp.*, 2006 WL 2819730, at *18 (S.D.N.Y. Sept. 29, 2006) ("since some class members are still employees of Defendants, class members may fear reprisal and would not be inclined to pursue individual claims."). An employee fearful of retaliation or of being "blackballed" in his or her industry may choose not to assert his or her FLSA rights. *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 163 (S.D.N.Y. 2008) ("Indeed, it may be that in the wage claim context, the opt-out nature of a class action is a valuable feature lacking in an FLSA collective action, insofar as many employees will be reluctant to participate in the action due to fears of retaliation." (internal citations omitted)); *Scott v. Aetna Services*, 210 F.R.D. 261, 267 (D.Conn. 2002) (noting "the evidence that potential class members failed to join the FLSA class action because they feared reprisal"). *See Sanft v. Winnebago Indus., Inc.*, 214 F.R.D. 514, 524 (N.D. Iowa 2003) (compiling cases holding Rule 23's numerosity requirement satisfied because, where some class members are still employed by the defendant, "concern regarding employer retaliation or reprisal renders individual joinder less practicable").

Other concerns about joining relate to the requirement to participate in discovery that Defendants seek to impose on those who consented to join this case under 29 U.S.C. §216(b), which concerns are not as great for class members who do not opt out under Rule 23(b)(3). [*See* ECF No. 163-1.]

The relevant documents are present in Miami, the Defendants are present in Miami, supervisors and co-workers not part of the class continue to reside in Miami, while Mr. Collado and other Class members continue to reside in Miami. [*See e.g.*, ECF Nos. 127-1, 127-2, 127-3, 127-4, 127-5.]

With respect to the last factor, no significant administrative difficulties are expected in managing the class. The damages to Mr. Collado and the class are readily determinable by analyzing Defendants' records, which will indicate the tips paid by customers, that tips each person should have earned, the wages and tips paid to each person, to whom and when tips were distributed, and the amounts improperly retained or distributed. The damages will be a straightforward spreadsheet calculation for Mr. Collado and each Class member.

Therefore, a unified determination as to whether the Defendants' wage policies violated the Florida Minimum Wage Act and/or the common law of Florida would predominate over any individualized questions and would be the superior method to adjudicate the issues in Counts II and III.

## V. CONCLUSION

Mr. Collado respectfully requests for the Court conditionally certify Counts II and III of the Third Amended Complaint as a class action as follows:

a. To certify a class pursuant to Rule 23 (a) and (b)(3) defined as:

> **All front-of-the-house tipped employees who worked at Kiki on the River from November 17, 2017, and up through the rendition of a judgment in this matter**.

b. To appoint Mr. Collado as the Representative of the Class;

    c.      To appoint Brian H. Pollock, Esq. of the FairLaw Firm as counsel for the Class;

    d.      To require that within 10 days hereof, Defendants format and produce electronically an Excel spreadsheet that contains for each member of the Putative Class one row containing in each column each person's full name, last known home address, and email address to facilitate the preparation and sending of notice;

    e.      To permit Mr. Collado to send notice by email and by U.S. Mail to each member of the Putative Class;

    f.      To require the Defendants to post the Notice in an employees' space of the restaurant throughout the opt-out period;

    g.      To award such other and further relief as the Court deems just and proper.

## **LOCAL RULE 7.1 CERTIFICATION**

Counsel for the movant conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and represents that defense counsel did not agree to the relief herein.

Respectfully submitted this 19th day of July 2023.

                                                <u>Brian H. Pollock, Esq.</u>
                                                Brian H. Pollock, Esq.
                                                Fla. Bar No. 174742
                                                brian@fairlawattorney.com
                                                FAIRLAW FIRM
                                                135 San Lorenzo Avenue
                                                Suite 770
                                                Coral Gables, FL 33146
                                                Tel:    305.230.4884
                                                *Counsel for Plaintiff(s)*