UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-CV-23074-BLOOM/OTAZO-REYES

OCTAVIO COLLADO,

   Plaintiff,

**COLLECTIVE ACTION**

vs.

450 NORTH RIVER DRIVE, LLC,
d/b/a KIKI ON THE RIVER,
RJ RIVER, LLC and
ROMAN JONES,

   Defendants.
_____/

### REPLY SUPPORTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION PURSUANT TO RULE 23(B)(3)

### I. INTRODUCTION

Defendants oppose certifying Counts II and III to proceed on a class basis under Rule 23(b)(3) by attacking the merits of the claims while making arguments undermined by the record in this case and contrary to controlling law. While Mr. Collado agrees that Counts II and III are distinct claims, the operative facts and evidence involved necessarily and significantly overlap with each other, and Count I. Defendants' argument is, essentially, that although the Court decided to adjudicate Count I on a collective basis, it should not make related liability and damage decisions (subject to individualized calculations) for Counts II and III when based on the same operative facts. Defendants' nonsensical arguments against class certification ignore the benefits of a procedural mechanism to streamline the resolution of common legal and factual issues impacting hundreds of current and former employees. In light of the factors to be considered, the law thereon, and the facts of record, the Court properly certifies Counts II and III to proceed on a Class basis.

1

## II. ARGUMENT

The Eleventh Circuit Court of Appeals foreclosed the argument that a collective action under 29 U.S.C. §203(m)(2)(B) and class action under Rule 23 cannot proceed simultaneously in the same case. *Calderone v. Scott*, 838 F.3d 1101, 1104 (11th Cir. 2016) ("Our sister Circuits have ruled, and we agree, that the FLSA's plain text does not indicate that a collective action and a state-law class action cannot be maintained at the same time.") In holding that a collective action can proceed simultaneously with state-law class action claims in the same case, the Court ruled, "an FLSA collective action and a Rule 23(b)(3) state-law class action may be maintained in the same proceeding." *Id.*, 838 F.3d at 1103. Equally important in the consideration is the tenet, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). "Instead, the pivotal inquiry is whether proof of materiality is needed to ensure that the questions of law or fact common to the class will 'predominate over any questions affecting only individual members' as the litigation progresses." *Amgen Inc.*, 568 U.S. at 467 (2013) (citing Fed. Rule Civ. Proc. 23(b)(3).) As explained in more detail below, common questions predominate the issues in Counts II and III, which are most efficiently resolved in a Class setting.

**A.**     **All Claims Involving Improper Tip Distribution Involve Common Questions That Predominate Over Individualized Inquiries.**

The claims alleged in the Third Amended Complaint (hereinafter "TAC") are based on a common core of facts and issues. [ECF No. 122 at ¶¶1-36.] Each of the three claims pled in the TAC revolves around the notion that one or more of the Defendants deprived Mr. Collado and the Class of the tips left by patrons by either retaining or improperly distributing a portion to traditionally non-tipped employees. *Id.*, at ¶¶34-35. Defendants ignore that most of the elements involved in proving each claim, including the facts necessary to establish those elements, overlap

significantly. When considered in their proper context, these facts and this evidence support the Court's decision to certify Counts II and III to be resolved in a Class setting.

Count I is a claim against Defendants to recover tips because they violated 29 U.S.C. §203(m)(2)(B) of the FLSA and involves paragraphs 37 through 51 of the TAC. *Id.* Count II is a claim brought pursuant to the FMWA to recover the same tips and involves additional facts pled in paragraphs 80-97, while Count III is a claim to recover the same tips under the common law of Florida and involves additional facts pled in paragraphs 130-146. *Id.* Counts I, II, and III differ in their applicable limitation periods, the legal mechanism to recover the tips, and who is allegedly responsible for the violation (only 450 North River Drive, LLC at Count III).

To prevail on his claim at Count I for himself and others, Mr. Collado must prove that Defendants did not properly distribute (or retained for themselves) the tips left by patrons. 29 U.S.C. §203(m)(2)(B). At Count II, Mr. Collado must prove that Defendants did not properly distribute (or retained for themselves) tips left by patrons. 29 U.S.C. §203(m)(2)(B). The FMWA rolls the prohibition against tip confiscation into its statutory framework by incorporating the definition of "wage" contained in 29 U.S.C. §203(m) in Art. X, §24(b) – not just particular subparts – and necessarily allows for the recovery of tips confiscated by an employer regardless of whether the tip credit is taken. Both Art. X, §24(e) and Fla. Stat. §448.110(6)(c)1 provide for the recovery of "back wages unlawfully withheld," which, by incorporation of 29 U.S.C. §203(m), includes the tips improperly distributed or retained by an employer. Mr. Collado's claim at Count III is directed only to 450 North River Drive, LLC ("450") and is under the common law of Florida. To prevail, Mr. Collado must prove that he was one of the people who entered into a series of form agreements (written and/or oral) with 450, that the agreements specified the tip distribution to include only traditionally tipped employees, and that 450 breached its agreements. While this claim

3

necessarily involves the additional element of proving the existence of commonly applicable agreements, the remainder of the proofs necessary overlap with those involved in Counts I and II.

Notwithstanding Defendants' vague arguments against class certification, sixteen of their seventeen Affirmative Defenses asserted were alleged as commonly applicable to Mr. Collado and the Class. [ECF No. 156 at 20-23.] Put another way, Defendants did not identify any defenses they contend would apply to Mr. Collado (or any other individuals) but not the Class. *Id.* Thus, they conceded that no individualized inquires were necessary.

> First, predominance. Common questions "predominate" within the meaning of Rule 23(b)(3) when the substance and quantity of evidence necessary to prove the class claims won't vary significantly from one plaintiff to another. *See Brown v. Electrolux Home Prods.*, 817 F.3d 1225, 1234 (11th Cir. 2016). **The first step in assessing predominance is to "identify the parties' claims and defenses and their elements" and to categorize "these issues as common questions or individual questions by predicting how the parties will prove them at trial."** *Id.* A common issue is one that will likely be proved using the same evidence for all class members; an individualized issue, by contrast, is one that will likely be proved using evidence that "var[ies] from member to member." *Id.* (citation and internal quotation marks omitted).

*Tershakovec v. Ford Motor Co., Inc.*, 2023 WL 4377585, at *3 (11th Cir. July 7, 2023).

Defendants then confound *resolving* common questions with *raising* common questions. To establish commonality, "plaintiffs must present a common contention capable of being proven or disproven in 'one stroke.'" *Brown v. Nucor Corp.*, 785 F.3d 895, 909 (4th Cir. 2015). In the TAC and the Motion for Class Certification [ECF Nos. 122, 164], Mr. Collado identified numerous common issues of fact and law. After advancing the general notion that Mr. Collado had not alleged "any commonality of fact or law," Defendants concede that he identified at least ten (10) common questions in his Motion for Class Certification. [ECF No. 185 at 3, 11.] Defendants ignore that Mr. Collado also identified 11 common issues of fact and law in Count II and 15 in Count III in the TAC. [ECF No. 122 at ¶¶85, 137.] Since Mr. Collado is not required to "establish" common issues – only to present them – the record establishes that Mr. Collado satisfied his burden.

4

Defendants further confuse whether the issues *can be resolved* class-wide with *the resolution* of the actual issues. For example, Defendants argue that "the remedy for an FMWA violation is the difference between the hourly rate Plaintiff was paid and the applicable Florida minimum wage as opposed to the recovery of unlimited tips." [ECF No. 185 at 12.] In support, Defendants cite *Rosell v. VMSB, LLC*, 2021 WL 4990913 (S.D. Fla. June 22, 2021), *report and rec. adopted*, 2022 WL 898589 (S.D. Fla. Mar. 28, 2022), *appeal dismissed*, 67 F.4th 1141 (11th Cir. 2023). Not only does the quotation attributed to the Court in *Rosell* fail to appear within the case, but the Court is not to resolve these merits issues at this stage in these proceedings. *Moreno-Espinosa v. J & J Ag Products, Inc.*, 247 F.R.D. 686, 687 (S.D. Fla. 2007) ("However, in deciding whether to certify the class, the court must generally take as true the allegations in the complaint, rather than determine the merits of the claim at the class certification stage.") (citing *Heffner v. Blue Cross and Blue Shield of Alabama, Inc.*, 443 F.3d 1330, 1337 (11th Cir. 2006).)

The Defendants' reliance on *Dalley v. CG RYC, LLC*, 2018 WL 7629048, at *2 (S.D. Fla. Aug. 31, 2018) is similarly misplaced. The complaint in that case was filed on January 11, 2018, *id.*, at *1, before the operative date for the "Consolidated Appropriations Act of 2018 (CAA), which amended section 203(m)", *Rodriguez v. City Buffet Mongolian Barbeque, Inc.*, 2020 WL 2476043, at *5 (M.D. Fla. Apr. 22, 2020). Similarly, the Court in *Frank v. Fresh on the Swuare LLC*, 2021 WL 4263331 (M.D. Fla. Sept. 20, 2021) did not rule, hold, or decide the damages the plaintiff could recover. The law does not foreclose the claims asserted at Counts II or III.

1. <u>Count II involves common questions of fact and law that will predominate over individualized inquiries.</u>

Mr. Collado alleged at Count II that Defendants paid a "tip credit" wage but violated the FMWA by "retaining a portion of the tips and/or overtips patrons left for their tipped employees and/or by distributing such tips and/or overtips to traditionally non-tipped employees (such as

5

owners, officers, directors, partners, managers, or supervisors) each week instead of distributing all tips and overtips to only the front-of-the-house tipped employees who worked during each shift when the tips were earned." [ECF No. 122 at ¶¶102, 111, 123.] Defendants contend that common issues will not predominate but provide no examples of the individualized inquiries they contend would overwhelm the Court. Whether Defendants violated the FMWA by not distributing all the tips to their front-of-the-house tipped employees involves issues that Courts typically find to predominate and resolve on a Class basis. *See Kubiak v. S.W. Cowboy, Inc.*, 2014 WL 2625181 (M.D. Fla. June 12, 2014) (certifying FLSA collective and FMWA class action.)

Given that the only evidence at this stage in the proceedings is that Defendants used a commonly applicable compensation practice affecting all front-of-the-house tipped employees, common issues (including of liability) will necessarily predominate. "On balance, it is clear to this Court that the common issues, which arise from the implementation of an across-the-board compensation policy… predominate over any individualized issues." *Lopez v. Hayes Robertson Group, Inc.*, 2013 WL 10561294, at *6 (S.D. Fla. Sept. 23, 2013), amended, 2013 WL 10568828 (S.D. Fla. Sept. 25, 2013) (amending class definition only). The eleven issues outlined in paragraph 85.c. of the TAC will predominate over any individualized damage issues (capable of computation by formula). Consequently, Count II is properly certified to proceed on a Class basis.

  2. <u>Determining that Defendant 450 North River Drive, LLC is liable at Count III also will involve questions of fact and law that predominate over individualized inquiries.</u>

The allegations in Count III are that this Defendant had "standardized agreements" through which it offered to pay an hourly wage, collect and distribute tips, and that Mr. Collado and the Class agreed to receive a specified "percentage(s) of the tips and overtips as a condition of their employment." [ECF No. 122 at ¶¶139-42.] In paragraph 42 of the TAC, Mr. Collado provided the Court with record evidence of the specific agreements that 450 attested to entering

6

into with Mr. Collado and the other Class members. [*Id.*, at ¶142; *see also* ECF No. 122-1 at 10.] Although the existence of different contracts normally precludes class certification, "It is the form contract, executed under like conditions by all class members, that best facilitates class treatment." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Services, Inc.*, 601 F.3d 1159, 1171 (11th Cir. 2010). The evidence before the Court is that Defendants had, as a condition of employment and continued employment, standardized agreements to distribute tips, with the amount of tips distributed based on each person's position held and hours worked. [ECF No. 122 at ¶142; *see also* ECF No. 122-1 at 10.] The employment arrangement whereby 450 utilized uniform agreements and set formula to distribute tips is appropriate for class certification due to the lack of individualized contracts or terms. *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 677 (S.D. Fla. 2011) ("In contrast, the agreements at issue here are uniform form contracts offered on a take-it-or-leave it basis and were not the product of any individual negotiation.")

Mr. Collado identified fifteen common issues that will predominate over individualized once when deciding Count III. [ECF No. 122 at ¶137.b.] Given that 450 did not identify separate contracts through which it agreed to pay its tipped employees but only a series of common agreements, it defies logic that individualized issues will be involved in anything other than damages. [ECF No. 122-1 at 10.]

**B.  The Class Definition Appropriately Includes All Members Of The Overlapping Classes For Those Entitled To Recovery In Counts II And III.**

The Class definition offered by Mr. Collado meets the requirements of Rule 23(a). "[T]he definition is concise and specific, and that such a group is readily identifiable." *Luczak v. Nat'l Beverage Corp.*, 548 F. Supp. 3d 1256, 1261 (S.D. Fla. 2021) (approving class definition with slight modifications). Defendants tacitly concede that everyone who falls within the Class definition is a member of the Class affected by Counts II and III.

Defendants' argument against using the "concise and specific" definition ignores that the persons subsumed by the Class would only include those who were entitled to relief in Counts II and III. The additional information requested by Defendants, such as "paid a tip credit wage below the Florida minimum wage" and "who had employment contracts with Kiki" would only serve to add confusion. Defendants' argument regarding the proposed language for Count III ignores the concession that 450 made that in its Answer to Interrogatory No. 5, that it paid its tipped employees based on specific formulas used during different periods of time. [ECF No. 122-1 at 10.] Florida law recognizes that an employment relationship is contractual in nature. *See e.g.*, *Johnson v. Family Practice & Injury Ctr., Inc.*, 437 F. Supp. 3d 1108, 1119 (M.D. Fla. 2020) ("Florida law demonstrates that at-will employment provides a sufficient contractual relationship for the purpose of a § 1981 analysis") (collecting cases); and *Barfield v. APRO Int'l, Inc.*, 2017 WL 6947417, at *3 (M.D. Fla. Oct. 27, 2017) ("Thus, claims for unpaid wages claims can be based either on an employment relationship between the parties or an express contractual agreement.")

If the Court determines that the proposed Class definition needs to be revised – or that subclasses are required, the Court can make the revisions without disturbing the propriety of Class treatment. *See e.g.*, *Cardenas v. Toyota Motor Corp.*, 2021 WL 6926418, at *23 (S.D. Fla. Aug. 12, 2021) ("the Court has the ability to further divide the class into subclasses or further revise the class definition as needed to manage the litigation."); and *Alhassid v. Bank of Am., N.A.*, 307 F.R.D. 684, 694 (S.D. Fla. 2015) ("the court may revise or permit the plaintiff to cure the flawed definitions) (collecting cases).

### C. Defendants' Arguments About Differing Damages Do Not Preclude Class Certification For Counts II And III.

Defendants devote several pages to arguing that individualized damages should preclude class certification. [ECF No. 185 at 13-15.] First, it is worth pointing out that Defendants'

8

arguments that unpaid tips cannot be done based on a "single analysis or formula" ignores the representations that Defendants previously made and which the Court accepted in finding that Defendants "need not perform the computations required by this interrogatory [7] because they can be equally performed by Plaintiff based on the data contained in said documents." [ECF No.121 at 2.] Once Defendants provide the necessary information or formula(s), each Class member's damages are subject to computation and do not serve as an impediment to class certification.

> Thus, the real question for the district court was whether the common issue of liability predominated over the individual issues raised by Exxon's affirmative defenses, which pertained primarily to the issue of damages rather than liability. In similar situations, **numerous courts have recognized that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate**.

*Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) (collecting cases). Once Defendants provide the formula(s) they used to calculate the tips paid to each member of the Class, the same formula(s) and information can be re-used and re-run, but with all the tips that were supposed to be paid to Mr. Collado and the Class. This analysis is markedly different from the individualized analysis the Court deemed to predominate and preclude class certification *Cardiovascular Care of Sarasota, P.A. v. Cardinal Health, Inc.*, 2009 WL 928321, at *6 (M.D. Fla. Apr. 3, 2009). Considering that Defendants already ran the calculations once for each member of the Class when distributing tips each pay period, the damages to be awarded in Counts II and III would be the same as those awarded under Count I.

### D. Mr. Collado Has And Will Continue To Fairly And Adequately Represent The Class For Counts II And III.

Defendants do not identify any conflict of interest between Mr. Collado and any member of the Class. They also fail to identify any instance in which he failed to adequately prosecute the action. To the contrary, the Clerk of Court's docket reflects that Mr. Collado was an active

participant in the settlement conference previously held. [ECF Nos. 94, 95.] It also reflects that he actively prosecuted this action, including by filing his Motion for Class Certification less than three weeks after the Defendants filed their Answer and Affirmative Defenses to the TAC. [ECF No. 156.] Defendants once again mistakenly conflate the merits of the Claims at Counts II and III for their misguided belief that class certification is inappropriate.

### E.     **The Issues In Counts II And III Are Best Resolved On A Class Basis.**

Resolving these common issues, once for all affected employees, will alleviate the concerns of incompatible results if each Class member were to retain separate counsel, file separate lawsuits, and pursue the tips at issue. Defendants did not dispute these issues and only remarked that "there is no evidence supporting Plaintiff's suggestion that potential class member[s] will fear retaliation if they pursue an individual claim." [ECF No. 185 at 17.] Considering that Defendants did not dispute the remaining issues favoring the assemblage of a Class, Mr. Collado need not respond further.

### III. CONCLUSION

Defendants identify nothing that prevents the Court from making wholesale decisions about the issues involved in Counts II and III in this case. The only individualized issues involve damages, which can ultimately be resolved by re-running the tips received through the same formulas Defendants previously used -thereby relegating the damages to math. The concise definition of the Class will encompass those affected by Counts II and III, especially when Defendants (who possess all the data) never identified anyone who could be a member of the Class encompassed by Count II but not Count III. Defendants' objections to Class certification were poorly veiled attempts to delay the Court's assemblage of a Class under Rule 23(b)(3). Accordingly, Mr. Collado requests that the Court grant his Motion.

Respectfully submitted this 14th day of August 2023.

Brian H. Pollock, Esq.
Brian H. Pollock, Esq.
Fla. Bar No. 174742
brian@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, FL 33146
Tel:    305.230.4884
*Counsel for Plaintiff(s)*
