## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 22-cv-23074-BLOOM/Torres

OCTAVIO COLLADO,
*for himself and all others similarly situated*,

      Plaintiff,

v.

450 NORTH RIVER DRIVE, LLC, *et al*.,

      Defendants.

_____/

### ORDER ON MOTION FOR CLASS CERTIFICATION

**THIS CAUSE** is before the Court upon Plaintiff Octavio Collado's ("Plaintiff") Motion to Certify Class Pursuant to Rule 23(b)(3), ECF No. [164] ("Motion"), filed on July 19, 2023. Defendants 450 North River Drive, LLC, d/b/a Kiki on the River, Roman Jones, and RJ River, LLC ("Defendants") filed a Response in Opposition, ECF No. [185], to which Plaintiff filed a Reply, ECF No. [187]. The Court has carefully reviewed the Motion, the Response, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

### I. BACKGROUND

This is a putative collection action brought against Defendants for alleged violations of the Fair Labor Standards Act ("FLSA") (Count I), the Florida Minimum Wage Act ("FMWA") (Count II), and Florida common law for unpaid wages (Count III). *See* Third Amended Complaint, ECF No. [122]. Plaintiff claims that he was denied payment owed to him while working at Defendants' restaurant, Kiki on the River. *Id.* ¶ 1.

On June 28, 2023, the Court granted Plaintiff's Second Renewed Motion for Conditional Certification of a Collective Action, ECF No. [127] ("Conditional Certification Order"). Therein, the Court determined that conditional certification of Plaintiff's FLSA claim for unlawful tip retention (Count I) was appropriate under 29 U.S.C. § 216(b), the provision authorizing collective actions against employers in FLSA cases. *See generally id.*

In his Motion, Plaintiff seeks class certification of Counts II and III of his Third Amended Complaint under Rule 23 of the Federal Rules of Civil Procedure. Plaintiff contends that class certification of Count II is appropriate because Defendants relied on the FMWA's "tip credit" exemption to pay the putative class members a direct wage below Florida's minimum wage and violated the FMWA by improperly retaining or distributing credit card tips to ineligible employees, thus invalidating their reliance on the "tip credit" exemption. Plaintiff argues that certification of Count III is also proper because that same conduct—improperly retaining credit card tips or distributing those tips to ineligible employees—resulted in the breach of Defendants' standardized employment agreements with the putative class members.[1] *See generally* Motion. Plaintiff proposes the following class definition for Counts II and III:

> All front-of-the-house tipped employees who worked at Kiki on the River from November 17, 2017, and up through the rendition of a judgment in this matter.

*Id*. at 6.

Defendants respond that class certification is improper under Rule 23(a) because Plaintiff's proposed class lacks any commonality of fact or law and because Plaintiff is an inadequate class representative. *See generally* ECF No. [185]. Defendants contend that class certification is additionally improper under Rule 23(b)(3) because Plaintiff fails to show that common questions

---

[1] Count III is asserted against Defendant 450 North River Drive, LLC only. *See* ECF No. [122] ¶ 134.

predominate over individual claims within the proposed class, or that class certification is a superior method to resolve those claims.[2] *Id.*

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 23 governs class certification. Moreover, "[a]scertainability is an implied prerequisite of Rule 23." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021) (citing *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012)). "Class representatives bear the burden to establish that their proposed class is 'adequately defined and clearly ascertainable,' and they must satisfy this requirement before the district court can consider whether the class satisfies the enumerated prerequisites of Rule 23(a)." *Id.*

Rule 23(a) provides that the proposed class must satisfy the following requirements:

1. the class is so numerous that joinder of all members is impracticable;
2. there are questions of law or fact common to the class;
3. the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
4. the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "If the proposed class satisfies the four factors of numerosity, commonality, typicality, and adequacy, it must then demonstrate entitlement to class relief under one of the three provisions in Rule 23(b)." *Nuwer v. FCA United States LLC*, 343 F.R.D. 638 (S.D. Fla. 2023) (citing *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1279 (11th Cir. 2000)).

Rule 23(b)(3) instructs that a proposed class is properly certified if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

---

[2] Defendants also argue that Plaintiff's proposed class is too vague and imprecise to satisfy Rule 23's requirements. *See generally* ECF No. [185].

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011). Consistent with this standard, "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied[.]'" *Id.* at 351 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)).

### III. DISCUSSION

The Court first addresses Defendants' arguments that Plaintiff's proposed class is not ascertainable, and that Counts II and III cannot harmoniously proceed as a class action. Next, the Court discusses whether Counts II and III satisfy Rule 23's requirements.

#### A. Class Definition

As noted above, Plaintiff proposes the following class definition for Counts II and III:

> All front-of-the-house tipped employees who worked at Kiki on the River from November 17, 2017, and up through the rendition of a judgment in this matter.

Motion at 6. Defendants argue that Plaintiff's proposed class is overly broad, vague, and indefinite. Defendants contend that any class of front-of-the-house employees must, at minimum, be limited to front-of-the-house employees who were paid a tip credit wage below the Florida minimum wage and who had employment contracts with Defendant 450 North River Drive, LLC ("Defendant North River"). Without those limitations, Defendants assert that the proposed class is insufficiently tailored to Plaintiff's minimum wage and breach of contract claims.

"A class is inadequately defined if it is defined through vague or subjective criteria … without an adequate definition for a proposed class, a district court will be unable to ascertain who belongs in it." *Cherry*, 986 F.3d at 1302 (citing *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th

Cir. 1970)). Here, Plaintiff's proposed class consists of all front-of-the-house tipped employees who work at Kiki on the River, or who worked there as of November 17, 2017. That definition relies on criteria that is both objective and precise: tipped front-of-the-house employees who were or are employed at Kiki on the River from November 17, 2017, through rendition of judgment in this matter. Moreover, Plaintiff supports the class definition by pointing to a spreadsheet prepared by Defendants that identifies 383 current and former front-of-the-house employees during this period, complete with their work dates. *See* ECF No. [162]. That evidence enables the Court to ascertain the putative class members without resort to vague criteria. The spreadsheet also demonstrates that Defendants were seemingly able to use Plaintiff's criteria to identify hundreds of putative class members.

Defendants rely on *Bennett v. Hayes Robertson Grp., Inc.*, 880 F. Supp. 2d 1270 (S.D. Fla. 2012) to support their argument that the proposed class is fatally overbroad. In *Bennett*, the plaintiff sought class certification for its FMWA minimum wage claim that alleged the defendants violated the FMWA by forcing its tipped employees to participate in an invalid tip pool. *Bennett*, 880 F. Supp. at 1278. The plaintiff proposed the following class:

> All hourly-paid employees of the Defendants, who were employed by Defendants from June 15, 2007 through March 11, 2011, and who the Defendants purported to pay wages through the use of a "tip credit," by paying a reduced wage and taking a tip credit of $3.02 per hour, and whose wages were reduced by the cost of uniforms, a $3.00–per–shift deduction; who were required to share tips with employees who did not work in the presence of customers and who were paid a rate of $4.19 per hour after July 24, 2009, when the Federal minimum wages increased.

*Id.* The court found that the proposed class definition was "vague, indefinite, and overbroad." *Id.* The court noted that the proposed class "fail[ed] to distinguish between tipped and non-tipped employees." *Id.* The court further explained that by "failing to limit the proposed class to those

tipped employees who were not informed of the tip credit policy and/or were not able to retain all of their tips by virtue of participating in an invalid tip pool[,]" the plaintiff "place[d] the burden on the fact-finder to determine, on an individualized basis, whether Defendants have valid affirmative defenses." *Id.*

Unlike the proposed class in *Bennett*, Plaintiff's proposed class is tailored to only include tipped employees. Moreover, the claim at issue in *Bennett* was that the defendant failed to properly inform its tipped employees of its tip credit policy or forced those employees to participate in an invalid tip pool. By conditioning liability on one of these two bases—and by failing to sufficiently tailor the class to those interrelated groups—the plaintiff consequently included "employees who were simply required to share tips with employees who did not work in the presence of customers,' but may have still 'customarily and regularly received tips.'" *Id.* Here, Plaintiff's claims encompass all putative class members. Both Counts II and III allege that Defendants' unlawful tip confiscation caused Defendants to pay *all* its tipped front-of-the-house employees below a minimum wage in violation of the FMWA, and breached the employment agreements between those employees and Defendant North River.

Defendants argue that the proposed class is broader than the class at issue in *Bennett*. As discussed, however, Plaintiff's claims encompass all tipped front-of-the-house employees during the period of November 2017 to the present. Defendant asserts that the proposed class definition is overbroad and difficult to apply, but Defendant fails to identify any subclass of front-of-the-house employees that are erroneously included in the proposed class. As Plaintiff correctly observes, revising the proposed class to only include tipped front-of-the-house employees who were paid a tip credit wage below Florida's minimum wage, and not those employees who had

employment agreements with Defendant North River is thus nonsensical.[3] The operative facts and evidence related to Counts II and III necessarily overlap and the Court accordingly finds that Plaintiff's proposed class is sufficiently ascertainable.

Before proceeding to consider whether the proposed class satisfies Rule 23's requirements, the Court addresses Defendants' arguments that Counts II and III of Plaintiff's Third Amended Complaint cannot be certified alongside Count I. Defendant argues that certifying Plaintiff's FMWA minimum wage claim (Count II) and common law breach of contract claim (Count III) with the conditionally certified FLSA tip-retention claim (Count I) would constitute an impermissible hybrid class action. Defendants concede that courts have permitted minimum wage claims under the FMWA and FLSA to proceed as "hybrid" class actions. Defendants nonetheless argue that doing so is improper here because Plaintiff seeks certification of minimum wage and common law breach of contract claims. Defendants provides no support for its argument that Counts I, II, and III cannot proceed harmoniously as a hybrid class action, however.

The Court's review of each claim suggests that, assuming Rule 23's requirements are satisfied, all three claims can proceed harmoniously. *See Calderone v. Scott*, 838 F.3d 1101, 1107 (11th Cir. 2016) ("[A] § 216(b) collective action and a state-law Rule 23(b)(3) class action may be maintained in the same proceeding."). Counts I and II allege a FLSA tip-confiscation claim and FMWA minimum wage claim, respectively. Plaintiff alleges that Defendants' unlawful tip retention invalidated their reliance on the FMWA's "tip credit" exemption, and that same misconduct caused Defendants to violate the FMWA by improperly retaining or distributing credit

---

[3] *Bennett* also observed that "[t]he class's susceptibility to individualized affirmative defenses also mitigates against class treatment under Rule 23(b)(3)." *Id.* at 1278-79. Although Plaintiff's proposed class raises similar predominance questions, the Court declines to commingle the ascertainability and predominance analyses. Whether the putative class members' common claims sufficiently predominate over individualized questions of liability will be separately analyzed in this Order.

card tips, and to breach their employment agreements under Florida common law. While those claims are not identical, they are supported by the same allegations—Defendants' unlawful tip retention or distribution. Instead of prematurely finding that the distinct elements of Plaintiff's claims render class certification improper, the Court will instead determine if those distinctions counsel against class certification under Rule 23. That determination is appropriately made by analyzing whether Counts II and III satisfy Rule 23's commonality and predominance requirements.

Defendants also argue that because Counts II and III allege distinct claims that are subject to different defenses, Plaintiff must separately demonstrate that each claim meets Rule 23's requirements. Defendants contend that by failing to separate discussion of those minimum wage and breach of contract claims, the Motion fails to satisfy Rule 23's requirements. Defendants rely on *Nuwer v. FCA United States*, but the court made no such determination. Instead, the *Nuwer* court simply analyzed each cause of action separately for compliance with Rule 23(b)(3).[4] The Court proceeds to conduct the same analysis.

## B. Class Certification Under Rule 23(a)

Defendants dispute that the proposed class satisfies Rule 23(a)'s commonality requirement, and that Plaintiff is an adequate class representative. The Court nonetheless discusses each of the four Rule 23(a) requirements to determine whether class certification is appropriate.

### 1. Numerosity

Numerosity requires the plaintiff to show that the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requirement has been described as a "low hurdle" for the class proponent. *Manno v. Healthcare Rev. Recovery Grp.,*

---

[4] As it did so, the court simply noted that it must "address the predominance of issues raised by each of the remaining causes of action." *Nuwer*, 343 F.R.D. at 653.

*LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013); *see also Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) (the plaintiff "bears the burden of making *some* showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement.") (emphasis in original).

To date, more than sixty-five current and former front-of-the-house tipped employees have joined the present action.[5] Further, Defendants produced in discovery a spreadsheet featuring 383 of those employees from 2020 – 2023 alone. ECF No. [162]. The Court is accordingly satisfied that the proposed class satisfies the numerosity requirement. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.1986*)* ("[A]s a general rule, one may say that less than twenty-one is inadequate [for a finding of numerosity], more than forty is adequate, and numbers falling in between are open to judgment based on other factors.") (citation omitted).

### 2. Commonality

The commonality inquiry "focuses on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification*." Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001). "Common questions are ones where 'the same evidence will suffice for each member,' and individual questions are ones where the evidence will 'vary from member to member.'" *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016).

Satisfying the commonality requirement "does not require that all the questions of law and fact raised by the dispute be common, or that the common questions of law or fact 'predominate' over individual issues." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009) (internal citation and quotation marks omitted). Instead, the plaintiff must show that the class members

---

[5] *See, e.g.*, ECF Nos. [127] at 9, [139], [149]-[151], [161], [169]-[172], [176], [178], [180]-[184], [186], [188]-[198], [205], [207]-[212], [215]-[216].

"have suffered the same injury[,]" and that the common issue is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011).

> Plaintiff's Motion contends that the following questions are common to the proposed class:

1. Whether Defendants are subject to the provisions of the FMWA;
2. Whether the FMWA provides a claim for tips improperly retained or distributed;
3. Whether Defendants entered into a common agreement (or series of agreements) for how they would distribute and/or share the tips;
4. Whether Defendants received discretionary gratuities (tips/overtips) from customers;
5. Whether Defendants improperly confiscated any of the tips (overtips);
6. Whether Defendants improperly distributed any of tips (overtips) to supervisory or managerial employees who were not entitled to receive tips;
7. The amount of the tips (overtips) that Defendants either improperly confiscated or distributed during each workweek at issue;
8. Who received the tips (overtips) that Defendants either improperly confiscated or distributed during each workweek at issue;
9. Whether Defendants had a good faith and reasonable belief for not paying all the tips (overtips) due to Mr. Collado and the Putative Class; and
10. Whether Mr. Collado, the Opt-In Plaintiffs, and the Putative Class are entitled to recover liquidated damages equal to the unpaid/underpaid tips.

Motion at 9-10.

> Defendants argue that the common issues identified by Plaintiff are insufficiently related to Counts II and III. Defendants contend that those questions only concern Defendants' allegedly improper tip retention. Plaintiff replies that the elements involved in proving each claim, including the facts necessary to establish those elements, overlap significantly. The Court agrees with Plaintiff that Defendants' alleged credit tip retention is central to Plaintiff's minimum wage and breach of contract claims. The allegedly unlawful tip retention is the basis for Plaintiff's claims

that Defendants violated the FMWA by paying the putative class members below a minimum wage while improperly retaining or distributing credit card tips and that Defendant North River breached its employment agreements with the putative class members. Further, Plaintiff has established that Defendants utilized a credit card tip distribution policy to distribute the tip credits among its front-of-the-house employees earned during their shifts. *See* ECF No. [122] at 10.

Whether Defendants improperly confiscated or distributed the putative class members' credit card tips is necessary to determine whether Defendants violated the FLSA, FMWA, or the terms of Defendants' employment agreements with the putative class members. Those questions— as well as the interrelated questions regarding the amount of credit card tips confiscated and whether retaining those tips was contrary to Defendants' credit card tip distribution policy—are common questions to all putative class members. Defendants observe that questions one and two of Plaintiff's proposed questions are no longer at issue, but that does not support finding that the putative class members lack commonality as to the remaining questions. Moreover, pointing to two questions among ten to argue that the putative class lacks commonality disregards the Supreme Court's guidance that "for purposes of Rule 23(a)(2) [e]ven a single [common] question will do[.]" *Dukes*, 564 U.S. at 359 (alterations in original) (internal quotation marks and citations omitted). As discussed, Plaintiff has shown that its proposed questions are common to all putative class members.

Defendants also argue that Counts II and III are unsuitable for class certification because they are incapable of resolution in a single stroke. Defendants contend that Count II will necessarily require individualized determinations as to liability and damages to determine if Defendants' retention of tip credits resulted in paying class members below a minimum wage in violation of the FMWA. Regarding Count III, Defendants argue that determining whether class

members' employment agreements were breached would necessarily require individualized damages inquiries. Considering whether individualized questions of liability and damages outweigh the common questions posed by Plaintiff's proposed class is properly analyzed under Rule 23(b)(3)'s predominance standard, however. As noted, to satisfy Rule 23(a)'s commonality requirement, Plaintiff must show that the putative class members suffered the same injury, and that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 349-50.

Here, determining whether Defendants systematically and unlawfully withheld credit card tips to which the putative class members were entitled is plainly central to the validity of all three claims. Plaintiff does not allege that Defendants sporadically withheld some credit tips from some front-of-the-house employees. Plaintiff instead alleges that Defendants engaged in a systematic practice of withholding tip credits in violation of both applicable law and their employment agreements with the putative class members. Should Plaintiff show that Defendants did in fact engage in a common practice of unlawful tip confiscation, that showing establishes Defendants' liability for tip confiscation under the FLSA (Count I).

Moreover, Plaintiff alleges that withholding credit card tips invalidated Defendants reliance on the FLSA's tip credit exemption and thus violated the FMWA by withholding credit card tips it owed to the putative class members (Count II). Plaintiff also alleges that withholding those credit card tips breached Defendant North River's employment agreements with the putative class members. Demonstrating that Defendants withheld the credit card tips from the putative class members is central to the validity of both claims, as liability is conditioned on those tips being improperly withheld. Conversely, if Defendants establish that those credit card tips were *not* improperly withheld, that finding renders all three claims invalid, as liability under the FLSA,

FMWA, and the putative class members' employment agreements is conditioned on the Defendants' improper withholding of credit card tips.

Plaintiff has accordingly satisfied Rule 23(a)'s commonality requirement with respect to Counts II and III. The remaining questions concern whether those common questions predominate over questions of individual liability and damages. *See Nuwer*, 343 F.R.D. at 650 ("The Court will analyze the predominance issue in due course. But for purposes of satisfying the Rule 23(a) requirements, the Court concludes that there are common questions of law and fact.")

### 3. Typicality

The typicality requirement "focuses on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Piazza v. Ebsco Indus., Inc.,* 273 F.3d 1341, 1346 (11th Cir. 2001). "[T]he claim of a class representative is typical if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Bouton v. Ocean Props., Ltd.,* 322 F.R.D. 683, 699 (S.D. Fla. 2017). "The central issues are whether the class representatives have standing, *Hines v. Widnall,* 334 F.3d 1253, 1256 (11th Cir. 2003), and whether they have 'the same interest and the same injury as the class members.'" *Nuwer*, 343 F.R.D. at 650 (quoting *Holzman v. Malcolm S. Gerald & Assocs., Inc.,* 334 F.R.D. 326, 331 (S.D. Fla. 2020)).

The Court finds that Plaintiff has standing to serve as a class representative, a finding that Defendants do not dispute. Plaintiff is a former front-of-the-house tipped employee who alleges that Defendants unlawfully retained a portion of his tips in violation of the FLSA, FMWA, and his employment agreement with Defendant North River. Those claims arise from Defendants' allegedly common practice of improperly retaining credit card tips, and all claims are based on a

theory of FLSA and FMWA violations as well as the breach of the putative class members' employment agreements. Plaintiff also alleges that he has an identical interest and suffered the same basic injury as all class members, with the only variation being potential damages. The Court accordingly finds that Plaintiff satisfies the typicality requirement.

### 4.  Adequacy

"The 'adequacy of representation' analysis encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Id.* at 651 (quoting *Valley Drug Co. v. Geneva Pharms., Inc.,* 350 F.3d 1181, 1189 (11th Cir. 2003)) (alterations in original). "A fundamental conflict exists where some party members claim to have been harmed by the same conduct that benefitted other members of the class." *Id.*

Plaintiff alleges that he and the putative class members were harmed by the same conduct—Defendants' unlawful retention of credit card tips. The Court accordingly determines that there is no fundamental conflict between Plaintiff and the class. Defendants contend that Plaintiff is an inadequate class representative because he seeks restitution under the FMWA, a remedy Defendants argue the FMWA does not afford Plaintiff. Defendants rely on a single sentence in Plaintiff's Motion referring to "an award of restitution in the form of tips" the putative class allegedly did not receive in violation of the FMWA and their respective employment agreements. Motion at 13.

That reference to restitution fails to demonstrate that Plaintiff is an inadequate class representative in light of Plaintiff's competent litigation of this action and the absence of any conflict between Plaintiff and the putative class members. Moreover, Plaintiff's Third Amended Complaint seeks damages for improperly withheld credit card tips that the putative class members

are entitled to under the FMWA. *See* ECF No. [122] at 29-30. Plaintiff does not seek restitution as a remedy under Count II. *Id.* The Court accordingly declines to interpret Plaintiff's Motion as erroneously seeking restitution under the FMWA.

To date, Plaintiff's counsel has actively pursued Plaintiff's claims in this action. Plaintiff's counsel obtained conditional certification of Plaintiff's FLSA claim (Count I), promptly moved to certify Counts II and III of Plaintiff's Third Amended Complaint as a class action under Rule 23, litigated discovery disputes, and participated in the Parties' settlement conference. Plaintiff's counsel also attests that he has litigated hundreds of FLSA cases in this District as well as several class or collective actions in Florida state and federal courts. That prior experience and conduct in the present action indicate that Plaintiff's counsel will continue to competently represent Plaintiff and the putative class members should the Court grant Plaintiff's Motion. The Court concludes that Plaintiff's counsel is able to adequately represent the putative class members.

## C. Class Certification under Rule 23(b)(3)

Having determined that Plaintiff satisfies Rule 23(a)'s requirements, the Court proceeds to discuss whether Counts II and III satisfy Rule 23(b)(3). Certification is proper under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1. Predominance

To show predominance, a plaintiff must show that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Kerr v. City of West Palm Beach,* 875 F.2d 1546, 1558 (11th Cir. 1989). "It is not necessary that all questions of fact or law be common;

it is enough that there exist some common questions and that they predominate over individual questions." *Aranaz v. Catalyst Pharmaceutical Partners Inc.,* 302 F.R.D. 657, 666 (S.D. Fla. 2014). "This is a far more exacting standard than the commonality requirement of Rule 23(a) and the court is obligated to take a 'close look' at whether common questions predominate." *Nuwer*, 343 F.R.D. at 652 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24, 117 S.Ct. 2231, 138 L. Ed. 2d 689 (1997)). Both Counts will be discussed in turn.

### a.   Count II – FMWA

As discussed, Plaintiff's minimum wage claim implicates common questions regarding whether Defendants' allegedly improper retention of credit card tips invalidate any reliance on the FMWA's "tip credit" exemption. Plaintiff's Motion contends that common questions predominate over individual questions regarding its FMWA claim because Defendants allegedly engaged in a company-wide practice of either improperly confiscating or distributing credit card tips.

### i.   Legal Standard and Supporting Evidence

Plaintiffs contend that the evidence supporting Counts II and III "is that Defendants failed to properly distribute all the tips the front-of-the-house tipped employees earned." Motion at 3. Plaintiff also points to declarations from Plaintiff and three former servers. Each declaration attests that the employee was paid below a direct minimum wage, and that Defendants' pay practices violated the FMWA by failing to distribute all of the credit card tips the employees were owed.[6] *See* ECF Nos. [127-1], [127-3]-[127-5]. Plaintiff also observes that Defendants' discovery responses "confirm that [Plaintiff] and the Class were subjected to standardized, common pay practices concerning Defendants' aggregation and distribution of tips/overtips." Motion at 3.

---

[6] Plaintiff also relies on two sales receipts reflecting substantial credit card tips left by patrons. ECF No. [127-2].

Plaintiff specifically relies on Defendants' description of their credit card tip distribution policy in response to Plaintiff's interrogatories. Therein, Defendants explain that they collect and distribute the credit card tips accrued during a given shift and distribute them using "an internal points system." *See* ECF No. [122-1] at 10. Defendants determined the credit card tips each front-of-the-house employee earned per-shift by 1) multiplying the total points earned by the number of hours worked for each employee, 2) totaling all the points earned by the front-of-the-house tipped employees during that shift, 3) dividing the sum of pooled tips by the total points earned during that shift, and 4) multiplying this "tip point value" by the total points accrued by each employee to determine the credit card tips they were owed for that shift. *Id.* at 10-11.

Defendants also explain that their credit card tip distribution policy changed over time. Most notably, the distribution of 100% of the credit card tips to the front-of-the-house tipped employees was altered to distribute 50% of the total accrued credit card tips to servers and captains, with the remaining 50% distributed to bussers, food runners, bartenders, barbacks, hostesses, and dock masters using an internal point system. *Id.* at 11-12. The precise formulations of those tip pools vary during the period in controversy, with different roles receiving different percentages of the total credit card tips accrued during a given shift. From February 2021 to the present, however, Defendants have operated either two or three distinct tip pools for the front-of-the-house tipped employees. *Id.* The two-tip pool distribution policy invariably features captains and sometimes features captains along with servers and bartenders or barbacks. Defendants' three-tip pool distribution policy distinguishes between a "Tipped Support Staff Pool," "Captains and Servers Pool," and a "Bartender and Barback Pool." *Id.* at 12.

As noted, Plaintiff alleges that Defendants violated the FMWA by relying on its "tip credit" exemption to pay the putative class members below a direct minimum wage while confiscating or

improperly distributing the credit card tips to which the putative class members were entitled. "In Florida, the FMWA expressly adopts the statutory and regulatory provisions of the FLSA." *Kubiak v. S.W. Cowboy, Inc.*, No. 312-CV-1306-J-34JRK, 2014 WL 2625181, at \*1 (M.D. Fla. June 12, 2014) (citing Fla. Const. art. X, ¶ 24). Under both the FLSA and FMWA, "an employer may pay an employee a cash wage below the minimum wage, so long as the employer supplements the difference with the employee's tips; this is known as an employer taking a 'tip credit.'" *Rubio v. Fuji Sushi & Teppani, Inc.,* No. 6:11–cv–1753–Orl–37TBS, 2013 WL 230216, at \*2 (M.D. Fla. Jan. 22, 2013) (citing 29 U.S.C. § 203(m)).[7]

To qualify for a "tip credit" exemption, "the employer must establish that (1) the tip credit is claimed for qualified tipped employees; (2) the employees received proper notice …; and (3) all tips received by the employees were retained by them, except when the employee participates in a valid tip pool with other customarily tipped employees." *Kubiak*, 2014 WL 2625181, at \*2 (internal citations and footnote call number omitted). "If an employer fails to satisfy any of these preconditions, the employer may not claim the tip credit, regardless of whether the employee suffered actual economic harm as a result." *Id.* (citing *Garcia v. Koning Rest. Int'l. L.C.*, No. 12–CV–23629–HUCK, 2013 WL 8150984, at \*4 (S.D. Fla. May 10, 2013)).

As the Eleventh Circuit recently observed, analyzing predominance requires evaluating the claims and defenses presented by each party:

> Common questions "predominate" within the meaning of Rule 23(b)(3) when the substance and quantity of evidence necessary to prove the class claims won't vary significantly from one plaintiff to another. *See Brown v. Electrolux Home Prods.*, 817 F.3d 1225, 1234 (11th Cir. 2016). The first step in assessing predominance is to "identify the parties' claims and defenses and their elements" and to

---

[7] *See Perez v. Palermo Seafood, Inc.,* 548 F.Supp.2d 1340, 1347 (S.D. Fla. 2008) ("The 'tip credit' allowed by Florida law is the same as that allowed by the FLSA … As such, the Florida law on 'tip credit' is the same as that of the FLSA … Thus, the discussion of 'tip credit' law is the same for Plaintiffs' FLSA and FMWA claims.") (citing Fla. Const. art. 10, § 24(c)), *aff'd* 302 F. App'x 905 (11th Cir. 2008)).

> categorize "these issues as common questions or individual
> questions by predicting how the parties will prove them at trial." *Id.*
> A common issue is one that will likely be proved using the same
> evidence for all class members; an individualized issue, by contrast,
> is one that will likely be proved using evidence that "var[ies] from
> member to member." *Id.* (citation and internal quotation marks
> omitted).

*Tershakovec v. Ford Motor Co., Inc.*, 79 F. 4th 1299, 1306 (11th Cir. 2023).

Plaintiff does not argue that Defendant improperly relied on the tip credit exemption by claiming a "tip credit" on ineligible employees or by failing to provide proper notice. Plaintiff instead focuses on the third element, arguing that Defendants invalidated their reliance on the "tip credit" exemption. As noted, Plaintiff contends that Defendants did so by either improperly retaining tips owed to the putative class members or by distributing credit card tips to employees who were ineligible to receive those tips. Defendants deny that they improperly retained credit card tips or distributed those tips to ineligible employees. Defendants also respond that Plaintiff was not paid a sub-minimum wage—and that Defendants accordingly did not rely on the "tip credit" exemption—considering both the direct wage paid to Plaintiff and commission payments he received.[8] For the reasons discussed below, the evidence necessary to prove this claim demonstrates that individualized questions of liability and damages predominate over the common question of whether Defendants have a common practice of improperly managing the putative class members' credit card tips.

---

[8] Defendants explain that Plaintiff—like all other front-of-the-house tipped employees—was paid a portion of the patrons service charge as a "commission payment." Response at 2. Assuming that those commission payments are mandatory charges, they are typically considered as wages rather than tips. *See, e.g.*, *Soliman v. SOBE Miami, LLC*, 312 F. Supp. 3d 1344, 1350 (S.D. Fla. 2018) ("[A] service charge is a 'tip' if the customer retains discretion over its payment, and is a 'commission' if the customer is required to pay it.").

### ii.     Liability

Taking Plaintiff's allegations as true, demonstrating that Defendants' credit card tip confiscation or improper distribution violated the FMWA nonetheless requires individualized proof to establish liability. Plaintiff points to Defendants' credit card tip distribution policy as a uniform pay practice to which all putative class members were subject. Plaintiff does not allege that this *policy* constitutes an unlawful practice under the FMWA. Rather, Plaintiff alleges that Defendants violated the FMWA—and the terms of this policy—by failing to distribute all the credit card tips to which the putative class members were entitled.

To prevail on Count II, each putative class member must show that he or she worked a shift or shifts wherein Defendants confiscated a portion of the credit card tips he or she was owed, or improperly distributed those tips to ineligible employees. Defendants, in turn, must demonstrate that 1) they paid the employee in question above Florida's minimum wage when considering both direct wages and the commission payments, or 2) that all credit card tips owed to each front-of-the-house employee were distributed to that employee. Resolving Count II on a class wide basis would require reviewing employment records over Plaintiff's proposed five-year period to determine if each of the hundreds of putative class members were paid on a "tip credit" basis during the shifts he or she worked, and whether Defendants failed to distribute all of the credit card tips he or she was owed by either improperly retaining or distributing those tips.

Demonstrating that Defendants improperly retained or distributed credit card tips during a given shift or shifts does not establish that Defendants invariably did so during the relevant five-year period. The putative class members must therefore affirmatively show that each worked shifts during which Defendants both relied on the "tip credit" exemption and mismanaged their credit

Case No. 22-cv-23074-BLOOM/Torres

card tips.[9] Plaintiff's allegations do not provide an alternative manner in which class-wide liability may be established. The common proof relied on by Plaintiff may establish that Defendants have a common practice of improperly retaining credit card tips, but that showing does not obviate the need to demonstrate that doing so invalidated Defendants' reliance on the FMWA's "tip credit" exemption as to each putative class member. The putative class member's FMWA claim and the evidence upon which it relies thus militates against class certification. *See Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1171 (11th Cir. 2010) ("If 'after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, [their] claims are not suitable for class certification under Rule 23(b)(3).'") (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004)).

The "class proof" relied upon by Plaintiff is thus analogous to the fraud claims at issue in *Tershakovec*. In *Tershakovec*, the Eleventh Circuit reversed the district court's certification of the plaintiffs' fraud claims under various state laws based on Ford Motor Company's misrepresentation of a vehicle as "track ready." *Tershakovec*, 79 F. 4th at 1304. The court drew a distinction between the different showings required to prove reliance under the statutory and common law of those states, with some states requiring affirmative proof of reliance and others providing that reliance may be presumed. *Tershakovec* considered this a critical distinction, observing that "[a]ffirmatively proving reliance is a very individualized inquiry, the kind that would predominate over other common questions in a class action. By contrast, where the

---

[9] This class-wide showing is further complicated by the nature of Defendants' credit card tip distribution policy. As discussed, Defendants maintained between one and three distinct tip pools during this period. Establishing that one of those tip pools was improperly managed during a given shift accordingly fails to show that all putative class members who worked that shift suffered an FMWA violation. Plaintiff does not address how this complexity may be accounted for on a class-wide basis.

presumption of reliance applies, it does so generally and can therefore be resolved on a class-wide basis." *Tershakovec*, 79 F. 4th at 1307-08. Like the reliance element at issue in *Tershakovec*, Plaintiff's allegation that Defendants improperly distributed the putative class members' credit card tips presents a highly individualized inquiry that can neither be presumed nor generally established as a common practice. Even if a pattern or practice is established, "Rule 23(b)(3)'s predominance requirement … bar[s] class treatment of those claims, as the facts pertinent" to Defendants mismanagement of credit card tips "will have to be proved on a plaintiff-by-plaintiff basis." *Id.* at 1310. As discussed, doing so requires reviewing vast quantities of employment and payroll records to determine if each shift during the five year-period featured Defendants' mismanaging the credit card tips owed to the putative class members, as well as verifying that Defendants claimed a "tip credit" on each of those employees by paying each employee below Florida's direct minimum wage.

Plaintiff relies on *Kubiak v. S.W. Cowboy, Inc.*, No. 312-CV-1306-J-34JRK, 2014 WL 2625181 (M.D. Fla. June 12, 2014) and *Lopez v. Hayes Robertson Grp., Inc.*, No. I3-10004-CIV, 2013 WL 10561294 (S.D. Fla. Sept. 23, 2013) to argue that he satisfies Rule 23(b)(3)'s predominance requirement. However, those cases are distinguishable, and the distinctions between them and the present action aptly illustrate why certification of Count II is inappropriate. In *Kubiak*, the plaintiffs, three former servers, brought a putative class action against defendants, two restaurants in St. Augustine, Florida and their corporate owners, alleging that the defendants violated the FLSA and FMWA "by not paying servers in their restaurants the required minimum wage." *Kubiak*, 2014 WL 2625181, at *1. The plaintiffs argued that the defendants had a "policy and practice of taking a tip credit on servers' salaries while requiring them to contribute a portion

of their tips to a 'tip pool[]'" and subsequently distributing the tips to employees who were ineligible to receive those tips. *Id.*

Relevant here, the plaintiffs alleged three FMWA claims regarding the defendants' mismanagement of the tip pool. The plaintiffs alleged a FLSA and FMWA claim based on the defendants' reliance on an invalid tip pool, an FMWA unlawful tip confiscation claim, and a claim alleging an additional FMWA violation based on defendants "exercising dominion and control over the tip pool and directing the distribution of the tip pool funds in accord with its [sic] own incentive and disciplinary policies." *Id.*, at *4. The court denied certification of the first two claims because both claims "necessitate[d] individualized proof and examination of each server's motivation for participating" in the tip pool. *Id.*, at *18. The court found that the plaintiffs' claim that defendants violated the FMWA by distributing the tips in accordance with their incentive and disciplinary policies satisfied Rule 23(b)(3)'s predominance requirement, however. *Id.* The court explained that, unlike the other two FMWA claims, "[t]he factual and legal questions of whether … [defendants] actually distributed or withheld tip proceeds from the Kitchen Tip Pool in furtherance of the [d]efendants' management or disciplinary goals, and if so, whether such action rendered the tip credit unavailable, are questions common to all putative class members, with no significant individualized factual questions." *Id.*

The FMWA claim certified in *Kubiak* thus presented a common question that was capable of resolution by class-wide proof. Critically and in contrast to the case here, plaintiffs alleged that the defendants' distribution of tips in accordance with their management or disciplinary goals was effectively a *per se* FMWA violation. To establish class-wide liability, the putative class members accordingly needed to show only that the defendants' tip distribution policy constituted an FMWA violation. Upon such a showing, the defendants' liability as to all class members was established,

leaving only the task of verifying that each class member was subject to the defendants' unlawful policy and calculating the damages owed to each employee.

Here, like the invalid tip pool claim rejected in *Kubiak*, Count II conversely requires individualized proof to establish liability. As noted, Plaintiff does not articulate a uniform policy that similarly establishes Defendants' liability under the FMWA. Instead, Plaintiff alleges that Defendants failed to adhere to their otherwise valid credit card distribution policy by improperly retaining or distributing tips, thereby violating the FMWA. Proving this FMWA violation requires showing that Defendants failed to properly distribute all of the credit card tips owed to the putative class members on a per-shift, per-class-member basis.

Reliance on *Lopez v. Hayes Robertson Grp., Inc* is similarly unavailing. The court in *Lopez* certified a class featuring a similar claim of a class-wide, mechanical violation of the FMWA as to all putative class members. In *Lopez*, the plaintiffs, former servers, brought minimum wage claims under the FLSA and FMWA against the defendants, five Key West, Florida restaurants and their owners. *Lopez*, 2013 WL 10561294, at *1. The plaintiffs alleged that the "[d]efendants' deduction of $3 per shift from each [p]laintiff's paycheck, and their deduction from [p]laintiff's wages of the cost of uniforms … impermissibly caused the employees' pay to drop below the sub-minimum wage." *Id.*, at *1. The plaintiffs also alleged that they were owed a full minimum wage because the defendants relied on tip credits but "(1) did not give the notice required by statute, (2) collected Plaintiffs' tips, thus creating a tip pool, but improperly shared some of those tips with non-tipped employees, and (3) retained some of the tips for themselves." *Id.*

In finding both claims satisfied Rule 23(b)(3)'s predominance requirement, the court determined that "common issues, which arise from the implementation of an across-the-board compensation policy at all five restaurants, predominate over any individualized issues[:] … (1)

[whether] the $3 per shift deduction reduced [p]laintiffs' wage below the required minimum wage and, (2) whether [d]efendants improperly managed the tip pool at each of their restaurants by first, failing to provide the notice required by law, and second, taking control of the tips, then failing to fully distribute the tip money (retaining some for themselves), or distributing some tip money to non-tipped employees." *Id.* The court acknowledged that there would be individualized damages issues but concluded that this alone failed to defeat predominance under Rule 23(b)(3). *Id.*

The court in *Lopez* thus determined that whether the defendant's policy of applying a $3 per-shift deduction reduced the putative class members' wages below the sub-minimum wage presented a common FMWA claim that predominated over individualized questions of liability. Like the allegedly unlawful tip policy certified in *Kubiak*, determining whether the $3 per-shift reduction policy violated the FMWA required establishing that the uniformly applied policy invariably resulted in FMWA violations. Here, Plaintiff does not allege a similarly unlawful policy that, once proven, establishes Defendants' liability as to all putative class members. Plaintiff instead alleges that by either improperly retaining tips, distributing tips to ineligible employees, or both, Defendants violated the FMWA. Determining liability on a class-wide basis thus requires individualized liability determinations as to whether Defendants engaged in either form of misconduct. As such, the Court is unpersuaded that the common question of whether Defendants improperly managed a tip pool or tip pools, without more, establishes that this common question predominates over individual questions of liability and damages.

The Court accordingly finds that individual questions of whether the putative class members' credit card tips were improperly retained or distributed in violation of the FMWA predominates over common questions regarding whether Defendants' alleged mismanagement of those credit card tips violated the FMWA. Moreover, certification of Count II is also improper due

Case No. 22-cv-23074-BLOOM/Torres

to the predominance of individualized damages questions over common questions regarding the appropriate remedy.

### iii.    Damages

As discussed, Count II alleges that Defendants are liable to all putative class members for improperly retaining or distributing a portion of credit card tips owed to those employees. Plaintiff's Motion contends that the "damages to Mr. Collado and the class are readily determinable by analyzing Defendants' records, which will indicate the tips paid by customers, the tips each person should have earned, the wages and tips paid to each person, to whom and when tips were distributed, and the amounts improperly retained or distributed." Motion at 16. Plaintiff concludes by suggesting that the question of damages "will be a straightforward spreadsheet calculation for [Plaintiff] and each Class member." *Id.* Defendants respond that any assessment of the putative class members' damages under Count II will require individualized determinations for each employee. Defendants contend that determining the putative class members' damages will inevitably "devolve into a series of mini-trials[]" requiring the Court to review each putative class member's payroll records to determine 1) if each was paid below Florida's minimum wage, and if so 2) the difference between the wage paid to that employee and the full wage each was entitled to for the shifts in question.[10]

"[I]n assessing whether to certify a class, the Court's inquiry is limited to whether or not the proposed methods [for computing damages] are so insubstantial as to amount to no method at

---

[10] The Parties dispute the proper remedy afforded by the FMWA. Plaintiff contends that the FMWA permits recovering the credit card tips improperly withheld by Defendants as a remedy for those alleged violations, while Defendant argues that the FMWA only permits recovering the difference between the wages paid to the putative class members and Florida's minimum wage. As Plaintiff accurately observes, the decisions Defendants rely upon for support were decided before the FLSA was amended to permit the recovery of unlawfully retained tips. The Court need not decide this question, however, as Plaintiff fails to show that the putative class members' common questions predominate over individualized questions of liability and damages, regardless of the remedy afforded by the FMWA.

all.... [Plaintiff] needs only come forward with plausible statistical or economic methodologies to demonstrate impact on a class-wide basis." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259 (11th Cir. 2004) (alterations in original) (quoting *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 698 (S.D.Fla.2004)). "It is primarily when there are significant individualized questions going to liability that the need for individualized assessments of damages is enough to preclude 23(b)(3) certification." *Id.* at 1260 (citations omitted); *see also Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1240 (11th Cir. 2016) ("[I]ndividual damages defeat predominance when they are accompanied by 'significant individualized questions going to liability.'") (citing *Klay,* 382 F.3d at 1260)).

The Court has already determined that the predominance of individualized liability questions over the common question of whether Defendants improperly retained or distributed the putative class members credit card tips preclude certification of Count II. Plaintiff's reliance on *Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) is accordingly unhelpful to the Court's analysis. In *Allapattah Services*, the Eleventh Circuit simply explained that where "the common issue of liability predominate[s] over the individual issues … numerous courts have recognized that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." *Id.* at 1261. Here, both individualized questions of liability and damages predominate over common questions.

Certification is particularly improper considering Plaintiff's failure to present "plausible statistical or economic methodologies to demonstrate impact on a class-wide basis." *Klay*, 382 F.3d at 1260. Plaintiff contends that "[o]nce Defendants provide the formula(s) they used to calculate the tips paid to each member of the Class, the same formula(s) and information can be re-used and re-run, but with all the tips that were supposed to be paid" to the putative class

members. Reply at 9. That assertion oversimplifies the additional variables that must necessarily be considered in calculating the damages owed to each class member. Moreover, simply pointing to Defendants' credit card tip distribution formulas is not itself a plausible statistical methodology for determining damages on a class-wide basis.

Defendants' interrogatory responses provide that credit card tips were calculated on a per-shift, per-employee basis. *See* ECF No. [122-1] at 10. Running the credit card tip distribution formulas used by Defendants to distribute those tips is thus only the beginning of any statistical damages methodology. Doing so would produce the total credit card tips accrued during a given shift and the portion of those tips a given putative class member was owed. To determine each putative class member's damages, however, Plaintiff must then calculate 1) the direct wages and credit card tips paid to the employee during a particular shift; 2) the portion of credit card tips earned by the employee during the shift but improperly withheld by Defendants; and 3) the difference between the withheld credit card tips and the credit card tips received by the employee during that shift. That calculation must be conducted for each putative class member for each shift each worked to determine the total damages owed for that employee.

Those calculations must also account for the variable credit card tip distribution formulas based on the putative class members' various roles as well as the multiple tip pools managed by Defendants. Plaintiff does not address how those complexities may be addressed on a class-wide basis. In the absence of any methodology plausibly accounting for those complexities, the Court would need to undertake significant individualized assessments of each putative class member's damages, as it would to determine liability under the FMWA in the first instance.

The need for individualized assessments of damages thus further demonstrates that certification of Count II is improper. The Court accordingly finds that individualized questions of liability and damages preclude certification of Count II under Rule 23(b)(3).

### b.   Count III – Florida common law for unpaid wages

The remaining question is whether Count III similarly precludes class certification under Rule 23(b)(3)'s predominance and superiority requirements. Count III alleges that Defendant North River's improper retention or distribution of the putative class members' credit card tips violated the terms of its standardized employment agreements with those employees. As set forth below, prevailing on this claim also requires resolving individualized questions of liability and damages.

### i.   Legal Standard and Supporting Evidence

Plaintiff contends that Defendant North River violated "the common law of Florida and the standardized agreements" between Defendant North River and the putative class members by failing to pay those employees all of the credit card tips each earned. ECF No. [122] ¶ 134. Plaintiff alleges that Defendant North River offered to collect the credit card tips on behalf of the putative class members "[i]n exchange for employment and continued employment[,]" as evidenced by Defendants' credit card tip distribution policy. *Id.* ¶¶ 140-41 (citing ECF No. [122-1] at 10). Plaintiff also alleges that all putative class members accepted Defendant North River's offer to receive "the agreed-upon percentage(s) of the tips and overtips as a condition of their employment and/or continued employment." *Id.* ¶ 142.

To support its allegation that Defendant North River breached those standardized agreements, Plaintiff relies on the same allegations and record evidence as with Count II, namely, 1) Plaintiff's allegation that Defendants failed to distribute all of the credit card tips owed to the

putative class members; 2) declarations from Plaintiff and three former servers attesting that Defendants failed to pay them all of the credit card tips they were owed; and 3) Defendants' description of their credit card tip distribution policy. *See* Motion at 3.

Florida Statutes § 448.08 "set[s] forth the basis for an award of reasonable attorney's fees and costs for prevailing in an action for unpaid wages." *Hamann v. Little Italy's Meatballs, LLC*, 2021 WL 1931257, at *5 (M.D. Fla. Mar. 31, 2021), *report and recommendation adopted*, 2021 WL 1541086 (M.D. Fla. Apr. 20, 2021) (citing Fla. Stat. § 448.08). Here, Plaintiff alleges a claim for unpaid wages based on the putative class members' standardized employment agreements with Defendant North River rather than § 448.08 alone. *See id.* ("[W]hen confronted with a claim for unpaid wages under Florida law, asserting only Section 448.08 as the basis for such claim, courts analyze the claim under Florida common law.") (collecting cases). Florida common law permits contractual unpaid wages claims to be "based either on an employment relationship between the parties or an express contractual agreement." *Barfield v. APRO Int'l, Inc.*, 2017 WL 6947417, at *3 (M.D. Fla. Oct. 27, 2017).

### ii.   Liability

Plaintiff thus contends that Defendant North River 1) was obligated to distribute credit card tips to all putative class members pursuant to the credit card tip distribution policy and 2) breached that obligation by improperly retaining or distributing a portion of those tips. Defendant North River denies improperly retaining or distributing credit card tips and denies that it was contractually obligated to provide those tips to the putative class members in the first place. *See* ECF No. [156] ¶ 141 n.2.

Plaintiff argues that certification of Count III is appropriate because all putative class members have standardized agreements with Defendant North River containing the credit card tip

distribution policy. Plaintiff contends that establishing Defendant North River's breach of those employment agreements by engaging in a common practice of improperly managing credit card tips establishes Defendant's liability as to all putative class members.

As noted, the putative class members can bring breach of contract claims against Defendant North River "based either on an employment relationship between the parties or an express contractual agreement." *Barfield*, 2017 WL 6947417, at *3 (M.D. Fla. Oct. 27, 2017). The absence of evidence on the nature of the contractual relationship between Defendant North River and the putative class members raises the question of whether Count III is based on an employment relationship with Defendant North River or based on express employment agreements. Moreover, it is unclear if each putative class member has the same employment agreement with Defendant North River, or if the agreements varied—in form, substance, or both—among those employees. The record establishes, at minimum, that the terms of Defendant North River's credit card tip distribution policy varied over time. *See* ECF No. [122-1] at 10. Even assuming that each putative class member had a standard employment agreement that included the credit card tip distribution policy, Plaintiff nonetheless fails to satisfy Rule 23(b)(3)'s predominance requirement.

Similar individualized liability questions predominate over the common questions raised by Plaintiff's breach of contract claim as those implicated by Plaintiff's FMWA minimum wage claim. Unlike Count II, however, Plaintiff need not show that Defendant North River paid the putative class members below Florida's minimum wage to establish liability. Instead, the putative class members can establish Defendant North River's liability by showing that it breached those employees' standardized employment agreements by failing to pay them all credit card tips owed under the credit card tip distribution policy.

As with Plaintiff's minimum wage claim, establishing that the putative class members had standardized employment agreements with Defendant North River does not establish that Defendant North River breached those agreements with each putative class member. After establishing that the credit card tip distribution policy was a standard term in the putative class members' employment agreements, Plaintiff must then show that each agreement was breached as to each employee. Doing so requires introducing significant and varying employment and payroll records, as well as Defendant North River's varying credit card tip distribution policies. That showing must establish that each putative class member worked a shift or shifts wherein each failed to receive credit card tips each was owed under his or her employment agreement. In short, the breach of one putative class member's employment agreement does not establish a breach of all putative class members' employment agreements.

Taking Plaintiff's allegation that Defendant North River has a pattern or practice of improperly retaining or distributing the putative class members credit card tips as true, that showing nonetheless falls short of establishing a uniform breach of all putative class members' employment agreements. Defendant North River would likely respond by showing that the putative class members received the portion of credit card tips each was entitled to under the operative credit card tip distribution policy, or that some of those employees received all credit card tips to which they were entitled, even if others did not. Regardless of whether Defendant North River successfully did so, class-wide liability would not be established without first showing that Defendant invariably retained or improperly distributed credit card tips in violation of its policy.

To show a class-wide breach the standardized employment agreements, Plaintiff must show that Defendant North River failed to provide all of the credit card tips owed to the putative

class members during each of the hundreds of shifts over Plaintiff's proposed four-year period. That showing must then be followed by an individualized analysis of whether each putative class member failed to receive credit card tips owed under the policy. Simply showing that some credit card tips were retained by Defendant North River is insufficient, as each employee was owed a variable percentage of credit card tips under the credit card tip distribution policy utilized during the shift or shifts in question.

In sum, class-wide liability cannot be established without showing that 1) all putative class members had standardized employment agreements; 2) those employment agreements included Defendant North River's credit card tip distribution policy as a condition of employment; 3) Defendant North River improperly retained or distributed credit card tips during some or all shifts during this four-year period; and 4) by doing so, Defendant North River breached each employee's employment agreement by failing to distribute the agreed-upon percentage of credit card tips. The alleged existence of standardized employment agreements between Defendant North River and the putative class members accordingly fails to show that the common question of breach predominates over individualized questions of liability.

Plaintiff's reliance on *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159 (11th Cir. 2010) and *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 677 (S.D. Fla. 2011) is thus inapposite. Neither decision supports finding that the presence of standardized agreements demonstrates that class certification is appropriate. In *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159 (11th Cir. 2010), the court explained that "claims for breach of contract are peculiarly driven by the terms of the parties' agreement, and common questions rarely will predominate if the relevant terms vary in substance among the contracts." *Id.* at 1171. In contrast, the court noted that "[i]t is the form contract,

executed under like conditions by all class members, that best facilitates class treatment." *Id.* The court did not suggest that the existence of a form contract, by itself, establishes predominance where the question of breach is subject to individualized liability determinations.

As the court subsequently explained, "[e]ven the most common of contractual questions— those arising, for example, from the alleged breach of a form contract—do not guarantee predominance if individualized extrinsic evidence bears heavily on the interpretation of the class members' agreements. The risk of voluminous and individualized extrinsic proof runs particularly high where a defendant raises substantial affirmative defenses to breach." *Id.* at 1176-77 (citations omitted). As discussed, Count III's shortcoming is not that substantial extrinsic evidence is needed to interpret the putative class members' employment agreements, but that substantial extrinsic evidence is needed to establish that each putative class member suffered the same breach. Moreover, Defendant is likely to raise substantial affirmative defenses, either by showing that the putative class members had no employment agreement, that it paid all credit card tips owed to that employee, or both. As such, *Sacred Heart's* observation that allegations of breach of a form contract common to all class members often satisfy Rule 23(b)(3)'s predominance requirement does not apply to the facts here.

The court in *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 677 (S.D. Fla. 2011), certified a breach of contract claim based on a bank's "alleged scheme to maximize overdraft fees through the hidden reordering of transactions at account posting." *Id.* at 676 (citation omitted). The court found that whether this scheme breached the putative class members contracts with the bank predominated over individualized questions pertinent to individual class members. The court explained that "[a]ny analysis of this scheme will depend on evidence relating to the standardized form account agreement and bank practices affecting all class members in a uniform manner." The

court also noted that "Plaintiffs allege that Union [Bank]'s course of conduct commonly, and adversely, affected the entire class, and have submitted evidence supporting that allegation." Establishing this alleged corporate scheme on an individual basis would thus require each plaintiff to re-prove an essentially identical breach. *Id.* (citations omitted).

The court distinguished the contrary results reached in *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.,* 601 F.3d 1159 (11th Cir.2010) and *Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004). The court explained that both cases featured substantial variations in the material terms of the contracts at issue, and that "[i]n contrast, the agreements at issue here are uniform form contracts offered on a take-it-or-leave it basis and were not the product of any individual negotiation." *Id.* at 677 (citation omitted). The court also distinguished those decisions by noting that "Plaintiffs do [not] have to prove a variety of individual circumstances supporting the breach, as [the bank's] standard re-sequencing policy resulted in uniform conduct directed at all members of the class." *Id.*

Unlike *In re Checking Account Overdraft Litig.*, the existence of standardized employment agreements does not establish that Defendant North River's allegedly improper conduct affected all putative class members in a uniform manner. Plaintiff does not allege that Defendant North River's credit card tip distribution policy resulted in a uniform breach of all class members employment agreements. Plaintiff alleges that Defendant North River's practice of violating that policy by retaining or improperly distributing credit card tips caused it to breach those employment agreements. Analyzing this alleged breach will therefore not depend on establishing whether Defendant North River implemented an unlawful policy, but whether its misconduct led to breach of the putative class members' employment agreements during some or all of the shifts they worked. Other than Plaintiff's allegations of the existence of standardized form agreements, and

the breach of those agreements, there is no evidence that Defendant North River's alleged misconduct affected the putative class members in a uniform manner. This case is thus distinguishable, as individualized questions of liability do not consist of standardized conduct affecting all putative class members in a uniform manner.

Plaintiff's breach of contract claim is instead similar to the claim rejected in *Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004), as inappropriate for class certification. In *Klay*, a group of physicians brought several claims against several insurers alleging that the defendants, "almost all major health maintenance organizations (HMOs)[,]" conspired to systemically underpay physicians for their services. *Id.* at 1246. Relevant here, the court reversed the district court's certification of the plaintiff's breach of contract claims. The plaintiffs alleged that all of their various form contracts required that defendants reimburse them "at a 'reasonable rate' for the 'medically necessary' services they provide." *Id.* at 1263. The court found that "[e]ven assuming" that all contracts at issue contain this provision, "along with the common legal issue of what constitutes a 'breach' under state law," that common issue "is dwarfed by the individualized issues of fact to be resolved." *Id.* at 1263-64. The court explained:

> The facts that the defendants conspired to underpay doctors, and that they programmed their computer systems to frequently do so in a variety of ways, do nothing to establish that any individual doctor was underpaid on any particular occasion. *See Rutstein,* 211 F.3d at 1235 ("Whether Avis maintains a policy or practice of discrimination may be relevant in a given case, but it certainly cannot establish that the company intentionally discriminated against every member of the putative class."); *Motel 6,* 130 F.3d at 1006 (holding that plaintiffs alleging racial discrimination had failed to show "predominance" because proof concerning the existence of a general policy of racial discrimination does not show whether any individual plaintiff was actually discriminated against); *Ramirez v. DeCoster,* 194 F.R.D. 348, 353 (D. Me. 2000) (holding that plaintiffs "do not necessarily satisfy the requirement that questions of law or fact predominate merely by alleging a pattern or practice claim"). The evidence that each doctor must introduce to make out

> each breach claim is essentially the same whether or not a general
> conspiracy or policy of breaching existed.

*Id.* at 1264. Plaintiff's breach of contract claim may not be as factually complex, yet it nonetheless presents similar individualized issues of fact that subsume the common question of breach. Like the contracts in *Klay*, establishing that Defendant North River engaged in a pattern or practice of confiscating or improperly distributing tips does nothing to establish that a particular employee's credit card tips was confiscated during a particular shift. Consistent with *Klay*, the evidence each putative class member must present to establish breach is also "essentially the same whether or not a general conspiracy or policy of breaching existed." *Id.*

Regardless of the existence of an unlawful policy or practice, to establish "each alleged breach of contract (that is, each alleged underpayment)," the physicians in *Klay* were obligated to prove "the services he provided, the request for reimbursement he submitted, the amount to which he was entitled, the amount he actually received, and the insufficiency of the HMO's reasons for denying full payment." Here, regardless of Defendant North River's alleged practice of confiscating credit card tips, to prove each breach of his or her employment agreement, each front-of-the-house tipped employee must show the shifts each worked, the credit card tips accrued during that shift, the amount of those tips the employee was entitled to under their employment agreement, the amount the employee actually received, and the insufficiency of Defendant North River's reasons for providing less than the full amount of credit card tips owed.

As in *Klay*, "there are no common issues of fact that relieve each plaintiff of a substantial portion of this evidentiary burden." The fact that the putative class members worked at the same restaurant and worked shifts featuring tip confiscation does not offer such relief. As discussed, different front-of-the-house employees were owed different percentages of the total credit card tips over different periods of time, subject to variations based on their position and the respective tip

pool. Proving breach is thus an individualized, class-member-by-class member showing, regardless of the fact that each class member would rely on the same kind of evidence, namely, Defendant North River's employment records, timesheets, and internal policies.

The Court accordingly finds that individualized questions predominate over common questions regarding whether Defendant North River breached its alleged standardized employment agreements with the putative class members. As with Count II, individualized damages questions also preclude certification of Count III under Rule 23(b)(3).

### iii.    Damages

Plaintiff contends that determining each putative class member's damages requires a straightforward spreadsheet calculation utilizing Defendants' credit card tip distribution formulas for both Counts II and III. As discussed above, however, this fails to account for additional complexities inherent in calculating the putative class members' damages and fails to present a plausible statistical methodology for calculating such damages. The putative class members' standardized employment agreements do not obviate the need to conduct individualized damages determinations, as each putative class member must establish each of Defendant's breaches of his or her employment agreement and their corresponding damages.[11] The Court thus concludes that, as with Count II, "the need for individualized assessments of damages" also precludes certification of Count III under Rule 23(b)(3). *Klay*, 382 F.3d at 1260.

### 2.   Superiority

As discussed, both Counts II and III fail to satisfy Rule 23(b)(3)'s predominance requirement. That determination precludes class certification under Rule 23(b)(3). The Court

---

[11] Plaintiff accurately observes that additional factual complexities were present in *Cardiovascular Care of Sarasota, P.A. v. Cardinal Health, Inc.*, 2009 WL 928321 (M.D. Fla. Apr. 3, 2009). This observation fails to show that class certification is appropriate here in light of the Court's conclusion that Counts II and III fail to satisfy Rule 23(b)(3)'s predominance requirement.

accordingly need not consider whether Counts II and III satisfy Rule 23(b)(3)'s superiority requirement.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion, **ECF No. [164]**, is **DENIED**.

2. Count I shall continue to proceed against Defendants as a conditionally certified FLSA claim.

3. Count II shall proceed against Defendants as an individual claim.

4. Count III shall also proceed against Defendant 450 North River Drive, LLC as an individual claim.

5. The putative class members must file separate claims against Defendants if they wish to pursue similar FMWA and Florida common law unpaid wages claims.

**DONE AND ORDERED** in Chambers at Miami, Florida, on December 1, 2023.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record