UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-CV-23074-BLOOM/Torres

OCTAVIO COLLADO
For himself and all others
similarly situated,

Plaintiff,

v.

450 NORTH RIVER DRIVE, LLC,
d/b/a KIKI ON THE RIVER,
RJ RIVER, LLC, and
ROMAN JONES,

Defendants.
_______________________________________/

**JOINT RESPONSE BY DEFENDANTS 450 NORTH RIVER DRIVE, LLC, D/B/A KIKI ON THE RIVER, ROMAN JONES, AND RJ RIVER, LLC, IN OPPOSITION TO CORRECTED MOTION TO WITHDRAW AS COUNSEL**

Defendants, 450 North River Drive, LLC, d/b/a Kiki on the River ("Kiki"), Roman Jones ("Jones"), and RJ RIVER, LLC, ("RJ") (collectively "Defendants"), by and through their respective undersigned counsel, hereby file their Response in opposition to the Corrected Motion to Withdraw as Counsel ("Motion to Withdraw") [ECF No. 235][1], filed by Brian H. Pollock, Esq., ("Mr. Pollock") and FairLaw Firm ("the Firm") (jointly referred to herein as "Plaintiff's Counsel"), and state as follows in opposition.

[1] Plaintiff's Counsel filed his initial Motion to Withdraw as Counsel on December 20, 2023. [ECF No. 233]. Plaintiff's Counsel subsequently filed a Corrected Motion to Withdraw as Counsel on December 22, 2023, [ECF No. 235], and the Court then issued an Order denying as moot the Motion to Withdraw as Counsel [ECF No. 236]. As a result, Defendants are responding to the Corrected Motion to Withdraw as Counsel, [ECF No. 235].

**INTRODUCTION**

A motion to withdraw is typically unopposed under normal circumstances. However, Plaintiff's Counsel's filing and subsequent litigation of this case for approximately ***fifteen months*** is anything but normal. That said, Defendants do not oppose Plaintiff's Counsel withdrawing from this case as long as it occurs ***after*** the Rule 11 motion that was served on Plaintiff's Counsel ***prior*** to filing the Motion to Withdraw is resolved during the twenty-one (21) day safe harbor period or thereafter by the Court. As discussed in more detail below, Plaintiff's Counsel files the Motion to Withdraw within days of hearing sworn testimony from his client that establishes the claims alleged in the Third Amended Complaint as well as the preceding ***three*** complaints, are meritless and frivolous. Plaintiff's Counsel's Motion to Withdraw facilitates the potential for him to withdraw from this case to avoid responsibility and the potential resulting sanctions for his frivolous filings while pretending to care for Plaintiff and the conditional class by seeking forty-five (45) days for them to find new counsel for claims that were refuted and are defeated by Plaintiff's representative and individual testimony. Also, the requested extension means that the current discovery deadline of February 6, 2024, and trial date of June 3, 2024, will have to be continued so that another attorney can review Plaintiff's deposition, interrogatory, and approximately 40,000 documents to realize what is already painfully apparent, this case is over and the only thing missing is a formal order by the Court.

As the Court is aware from the extensive litigation that has resulted from Plaintiff's Counsel's **three amended complaints**, the claims in this case involve alleged violations of the Fair Labor Standards Act ("FLSA"), the Florida Minimum Wage Act ("FMWA"), and Florida common law. The three claims are based on allegations that Defendants unlawfully retained and distributed tips and failed to pay the Florida minimum wage.

On December 12, 2023, however, Defendants counsel deposed Plaintiff for the first of two days of deposition ordered by Magistrate Judge Alicia M. Otazo-Reyes. [ECF No. 231]. Significantly, Magistrate Judge Otazo-Reyes' also ordered that Plaintiff's deposition testimony "shall bind him and all of the Opt-in Plaintiff" since he was testifying in a representative capacity. [*Id*.]. Lastly, the order directed Plaintiff to answer Kiki's interrogatories. [*Id*.].

Plaintiff's sworn deposition testimony established that the allegations pertaining to Defendants improperly retaining and/or distributing tips are entirely devoid of merit and frivolous. First, Plaintiff testified in a representative capacity that only tipped employees received and handled cash tips and that none of the tipped employees gave their cash tips to anyone prohibited from receiving tips. [*See* Collado's Deposition Transcript dated December 12, 2023 ("Collado Dep.") attached hereto as composite **Exhibit "A"** at 38:1-42:8, 46:11-47:21, 52:1-54:11, 56:13-5, 59:2-22, 61:17-64:6, 66:9-67:16, 72:4-73:7, 74:14-76:9, 77:20-79:7]. Second, Plaintiff testified that he received all the credit card tips that were left by Kiki's customers. [Collado Dep. at 229: 8-14]. Specifically, Plaintiff testified as follows:

> Question: I'm not talking about service charges; I'm talking about discretionary credit card tips that were left by customers. Is it true, based on your testimony today [and] record exhibits that Kiki paid you all the credit card tips that were left by customers; is that true?
>
> Answer: Yes. Are we done here today?

[*Id*.]. Third, Plaintiff testified that all credit card tips were entered and processed through Kiki's POS system and that he was unaware of Mr. Jones or anyone else manipulating the POS to unlawfully retain and/or distribute credit tips:

> Question: Did you ever see anyone from Kiki's changing the customer tips that were inserted or inputted into Kiki's POS?
>
> Answer: No.

Question: Did you know of anybody in the class that ever witnessed anyone changing the customer tips that were inserted into Kiki's POS?

Answer: No.

[*Id*. at 206:14-07:8]. Finally, Plaintiff provided a sworn interrogatory answer conveying that he was always paid an hourly rate that was ***above*** the Florida and federal minimum wage. Specifically, Plaintiff responded Kiki's interrogatory as follows:

Question: For each [week] of your employment during the 5 years prior to the filing of the initial Complaint through the present, do you contend that the combination of your hourly wage and the percentage of the service charge you were paid fell below the Florida or federal minimum wage? If the answer is yes, please state the week(s) at issue and the amount you contend fell below the Florida or federal minimum wage.

Answer: No.

[*See* Plaintiff's Responses to Defendant's Request for Interrogatories ("Collado Interrogatory Answers") attached hereto as **"Exhibit B"** at No. 6].

The aforementioned sworn testimony provided on December 12, 2023, and interrogatory answer served on December 8, 2023, establish that the allegations contained in the Third Amended Complaint, which is the operative pleading, as well as the allegations in the prior ***three complaints*** filed and signed by Plaintiff's Counsel, are meritless and frivolous. Instead of voluntarily dismissing the Third Amended Complaint, however, Plaintiff's Counsel seeks to withdraw from the case and to provide Plaintiff, and the conditional class pertaining to Count I, time to seek new counsel on claims that are refuted and defeated entirely by Plaintiff's sworn deposition testimony and interrogatory answer. Significantly, Plaintiff's Counsel "sent a letter sent [sic] to Mr. Collado . . . confirm[ing] his discharge" on December 13, 2023, the day ***immediately*** following Plaintiff's deposition. [ECF No. 233 at 4].

Against this backdrop, Plaintiff's Counsel seeks an order permitting him to withdraw in hopes that the problems he created or allowed to occur, become the problems of another attorney. Plaintiff's Counsel should not be permitted to walk away from ***fifteen months*** of frivolous litigation that cost several hundred thousand dollars to defend. Additionally, Plaintiff's Counsel's false and frivolous pleadings took from the Court's time and resources to adjudicate two motions to dismiss [ECF No. 55, 56, 63, 137], motion for conditional certification under the FLSA [ECF No. 44, 65, 127], motion to certify a Rule 23 class action of the state law claims [ECF No. 164], and several discovery disputes [ECF No. 145, 231].

The forgoing demonstrates that this Motion to Withdraw is not a normal, run of the mill motion. As a result, Defendants respectfully request that the Court deny or stay the Motion to Withdraw to afford Plaintiff's Counsel time to address the Rule 11 motion Defendants served ***prior*** to the filing of the Motion to Withdraw, and if the Third Amended Complaint is not voluntarily dismissed with prejudice during the safe harbor period, to provide Defendants the opportunity to file the Rule 11 motion and have it adjudicated by the Court. Should the Court decide to grant the Motion to Withdraw, however, Defendants respectfully request that the Court retain jurisdiction over the served and pending Rule 11 motion to address the fifteen months Defendants were forced to defend frivolous claims that were based on allegations that are unequivocally false as established by Plaintiff's sworn deposition testimony and interrogatory answer.

## PROCEDURAL HISTORY OF FALSE AND FRIVOLOUS FILINGS

The conduct of Plaintiff's Counsel in litigating this case for approximately ***fifteen months*** without ascertaining whether Plaintiff's tip and minimum wage claims are viable ***prior to filing four*** separate frivolous complaints is demonstrated by the following procedural history.

Plaintiff's Counsel filed a one count Complaint on September 23, 2022, claiming a violation of the FLSA based on the false and frivolous theory that Defendants allegedly unlawfully retained and/or distributed tips. [ECF No. 1]. Defendants filed an answer denying the allegations of unlawful conduct and liability. [ECF No. 27].

Plaintiff's Counsel then filed a Statement of Claim on October 13, 2022, falsely alleging that Plaintiff was entitled to $174,000.00 in unpaid tips, and opt-in plaintiffs Yordan Acosta was owed $86,000.00 and Francis Taylor $45,000.00, which equaled a total of **$305,000.00** in alleged unpaid tips. [ECF No. 10]. Thereafter, Plaintiff's counsel served Defendants with the FMWA required pre-suit written communication on November 10, 2022, falsely claiming that the putative class was owed **$18,928,000.00** in alleged unpaid tips. [*See* Plaintiff's Minimum Wage Demand dated November 10, 2022 ("the Demand"), attached as **Exhibit "C"**]. As previously noted, Plaintiff disavowed the Statement of Claim and the Demand by admitting that he received all cash and credit card tips, and that the class had no knowledge of Mr. Jones or anyone else manipulating the Point of Sale (POS) to unlawfully retain and/or distribute credit tips. [*See* Collado Dep at 38:1-42:8, 46:11-47:21, 52:1-54:11, 56:13-5, 59:2-22, 61:17-64:6, 66:9-67:16, 72:4-73:7, 74:14-76:9, 77:20-79:7, 206:14-07, 229:8-14].

Plaintiff's Counsel subsequently filed an Amended Complaint on December 7, 2022, which falsely alleged that Plaintiff and the proposed class were entitled to recover tips under the FLSA (Count I), FMWA (Count II) even though the FMWA does not provide a cause of action to recover tips, and Florida common law (Count III). [ECF No. 40]. The Amended Complaint also falsely suggested that Plaintiff and the proposed class were entitled to federal minimum wages under the FLSA (Count I) and Florida minimum wages under the FMWA (Count II). [*Id*.]. Defendants filed a motion to dismiss the Amended Complaint asserting, among other

arguments, that Counts I and II failed to allege that Plaintiff was paid below the applicable federal and Florida minimum wage and that the FMWA does not create a cause of action to recover tips. [ECF No. 55 and 56].

Plaintiff's Counsel decided not to contest Defendants' motion to dismiss the Amended Complaint and instead opted to file a Second Amended Complaint that Defendants did not oppose to afford Plaintiff's Counsel the opportunity to remedy the issues raised in the motion to dismiss the Amended Complaint. [ECF No. 57]. The Second Amended Complaint was filed on January 11, 2023, and ***again*** attempted to allege frivolous FLSA claims to recover tips and federal minimum wages (Count I); frivolous FMWA claims that sought to recover Florida minimum wages and/or tips (Count II), which again ignored that the FMWA does not provide a cause of action to recover tips; and a frivolous Florida common law claim to recover tips (Count III). [ECF No. 59]. Defendants filed a motion to dismiss the Second Amended Complaint and again asserted, among other arguments, that Count I and II failed to allege that Plaintiff was paid below the applicable federal and Florida minimum wage and that the FMWA does not provide a cause of action to recover tips. [ECF No. 63].

The Court dismissed the entire Second Amended Complaint based on Defendants' motion to dismiss but without prejudice to file another amended complaint. [ECF No. 112]. The Court explained to Plaintiff's Counsel at the hearing that he could not establish a FMWA claim based on alleged unlawfully retained or distributed tips unless he alleged Plaintiff was paid on a tip credit basis.

Thereafter, on April 7, 2023, Plaintiff's Counsel filed the Third Amended Complaint, which is the current operative pleading. [ECF No. 122]. The Third Amended Complaint alleged for the ***fourth*** time an FLSA claim in Count I and for the ***third*** time a Florida common law claim

in Count III based on the false allegations that Defendants unlawfully retained and/or distributed tips. [*Id*.]. Count II of the Third Amended Complaint alleged for the ***third*** time a minimum wage violation under the FMWA but this time it was based on the false allegations that Plaintiff and the proposed class were paid on a tip credit basis and that Defendants unlawfully retained and/or distributed tips. [*Id*.].

Critically, the Third Amended Complaint was the ***first time*** Plaintiff's Counsel alleged that Plaintiff was paid below the Florida minimum wage on a tip credit basis. [ECF No. 1, 40, 59]. In fact, in the three prior versions of the complaints he signed and filed, Plaintiff's Counsel claimed that Plaintiff was paid an hourly wage that was supplemented by a service charge. [*Id.*] In the Third Amended Complaint, however, Plaintiff's Counsel conveniently failed to mention the commissions Plaintiff was paid from the service charge. [ECF No. 122]. It is clear Plaintiff's Counsel omitted the reference to the service charge, which he previously recognized in the three prior signed and filed complaints, to suggest in bad faith that Plaintiff was paid on a tip credit basis below the Florida minimum wage. That false allegation was intended to circumvent the basis for the Court's prior dismissal of the FMWA claim included in the Second Amended Complaint.

As established by the previously quoted deposition testimony and interrogatory answer, Plaintiff's Counsel's claims in the Third Amended Complaint alleging Defendants improperly retained and/or distributed cash tips and failed to pay the Florida minimum wage are entirely devoid of merit and frivolous. As a result, Defendants respectfully submit that Plaintiff's Counsel cannot be allowed to wash his hands of the pleadings that he signed and filed by withdrawing from this case even if the withdrawal is based, as alleged in the Motion to

Withdraw but not supported with a written exhibit, on Plaintiff discharging Mr. Pollock and the Firm.

## MEMORANDUM OF LAW

### I. Legal Standard for Motion to Withdraw

This Court's Local Rules explain that "no attorney shall withdraw the attorney's appearance in any action or proceeding except by leave of Court after notice is served on the attorney's client and opposing counsel." S.D. Fla. L. R. 11.1(d)(3)(A). Additionally, the Eleventh Circuit has held that "it is incumbent on the court to assure that . . . the withdrawal of counsel is for good cause." *Mekdeci v. Merrell Nat'l Laboratories, Div. of Richardson-Merrell, Inc.*, 711 F.2d 1510, 1522-23 (11th Cir. 1983) (quoting *Broughten v. Voss*, 634 F.2d 880, 882-83 (5th Cir. 1981). Therefore, the court is afforded discretion in determining whether counsel is permitted to withdraw from pending litigation. *Innovative Genetics, LLC v. Flavocure Biotech, LLC*, No. 21-21457-CV-Williams, 2023 U.S. Dist. LEXIS 70300, at *1-2 (S.D. Fla. Mar. 10, 2023) (denying the attorney's motion to withdraw because the attorney failed to show good cause and the client was a limited liability corporation that could not proceed *pro se*).

Generally, courts in the Southern District of Florida rely on several factors when evaluating whether a motion to withdraw should be granted or denied. The factors that the courts typically consider are the following: "1) the reasons why withdrawal is sought; 2) the prejudice that might result from withdrawal; 3) the harm withdrawal might cause to the administration of justice; and 4) the degree to which withdrawal will cause a delay in the resolution of the case." *See United States v. Travers*, 996 F. Supp. 6, (S.D. Fla. 1998) (emphasis added); *see also, Bowes v. Haymore,* No. 13-14304-CIV-2015-Graham/Lynch, 2015 U.S. Dist. LEXIS 195617, at *3-4 (S.D. Fla. Aug. 31, 2015).

## II. Argument

The facts and procedural history of this case establish that the four factors courts consider when evaluating an attorney's request to withdraw weigh in favor of denying or staying the Motion to Withdraw to afford Plaintiff's Counsel time to address the Rule 11 motion Defendants served ***prior*** to the filing of the Motion to Withdraw, and if the Third Amended Complaint is not voluntarily dismissed with prejudice during the safe harbor period, to provide Defendants the opportunity to file the Rule 11 motion and have it adjudicated by the Court.

### A. The Reasons why Withdrawal is Sought Weighs in Favor of Denying or Staying the Motion to Withdraw.

As previously stated, Plaintiff's Counsel's Motion to Withdraw facilitates the potential for him to withdraw from this case to avoid responsibility and the potential resulting sanctions for the false and frivolous claims contained in the Third Amended Complaint. Considering the manner Plaintiff's Counsel litigated this case for ***fifteen months***, which included filing ***four*** signed complaints that contained false allegations pertaining to Defendants unlawfully retaining and distributing tips and failing to pay minimum wage, as well as demanding **$18,928,000.00** in alleged unpaid tips in his FMWA required pre-suit demand, it is insufficient for Plaintiff's Counsel to merely convey, without written proof, that he was "discharged." *See Mekdeci*, 711 F.2d at 522-23 ("it is ***incumbent on the court to assure*** that . . . the withdrawal of counsel is for good cause") (emphasis added) (quoting *Broughten* 634 F.2d at 882-83).

In fact, Defendants respectfully submit that it is plausible, if not an actual reason, that Plaintiff discharged Mr. Pollock and the Firm because he does not want to continue with this litigation considering he testified under oath on December 12, 2023, that he received ***all tips***, he and the class have ***no knowledge*** of the POS being manipulated to take tips, and was paid ***above*** the Florida minimum wage during his employment with Kiki. [Collado Dep. at 38:1-42:8,

46:11-47:21, 52:1-54:11, 56:13-5, 59:2-22, 61:17-64:6, 66:9-67:16, 72:4-73:7, 74:14-76:9, 77:20-79:7, 206:14-07:8, 229: 8-14; Collado Interrogatory Answers at No. 6]. Then, on the day ***immediately after*** Plaintiff's deposition, Plaintiff's Counsel claims he sent a written communication to Plaintiff and the conditional class "to confirm his discharge." [ECF No. 233 at 4]. Those facts beg the question as to whether Plaintiff discharged Mr. Pollock and the Firm because he wants to dismiss his case. As a result, Plaintiff's self-serving representation in the Motion to Withdraw about being discharged is insufficient to permit him to walk away from this case without first addressing the four false and frivolous complaints he filed, which include the no longer sustainable Third Amended Complaint.

**B. The Prejudice that Will Result from Withdrawal Weighs in Favor of Denying or Staying the Motion to Withdraw.**

In this case, it is imperative that the Court consider the prejudice to Defendants if Plaintiff's Counsel is allowed to withdraw ***prior*** to addressing the false and frivolous pleadings that culminated in and includes the signed filing of the Third Amended Complaint. Plaintiff's Counsel sustained this litigation for ***fifteen months*** on the patently false claims and allegations repeatedly presented even though Defendants challenged the sufficiency of the complaints through the filings of two motions to dismiss. [ECF No. 55, 56, 63, 137]. Nevertheless, Plaintiff's Counsel continued this litigation and alleged "facts" and claims that have been proven to be untrue and meritless, as confirmed by Plaintiff's deposition testimony and interrogatory answer. Plaintiff's Counsel's disregard of the facts or failure to ascertain them, resulted in the expenditure of several hundred thousand dollars defending against the false claims and allegations contained in the Third Amended Complaint, and an investment of an incredible amount of human capital that included the production of approximately forty thousand (40,000) documents during the litigation. *See Rhinehart v. CBE Group, Inc.*, 714 F. Supp. 2d 1183, 1186

n. 5 (M.D. Fla. 2010) (emphasizing that "counsel's obligations are not measured ***solely at the time of filing*** because a party or counsel has a ***continuing obligation*** to advise the court of any changes regarding the veracity of information before the court") (emphasis added). Accordingly, Plaintiff's Counsel must be required to finish what he started by addressing the pending Rule 11 motion that Defendants served ***prior*** to the filing of the Motion to Withdraw because permitting him to walk away without doing so is prejudicial to Defendants when considering the legal fees and costs spent defending against the frivolous claims and allegations contained in the pleadings he signed and filed, including the Third Amended Complaint.

**C. The Harm Withdrawal will Cause to the Administration of Justice Weighs in Favor of Denying or Staying the Motion to Withdraw.**

Looking forward in this case, the administration of justice will be significantly harmed should Plaintiff's Counsel be allowed to withdraw ***prior*** to addressing the Rule 11 motion because it would permit him to exit the case in the face of sworn testimony and interrogatory answers that entirely and unequivocally defeat all the claims contained in the Third Amended Complaint that he signed and filed. Thus, Plaintiff's Counsel gets to walk away while leaving a meritless and frivolous case pending before the Court, which will unnecessarily extend the duration of a case that does not belong on the docket and will result in additional work for the Court and the needless expenditure and waste of the Court's time, judicial resources, and taxpayer dollars.

Moreover, permitting Plaintiff's Counsel to withdraw ***prior*** to addressing the pending Rule 11 motion also has broader implications beyond this case as it relates to the administration of justice. Such a scenario sends the message that an attorney's conduct during litigation is only a motion to withdraw away from being beyond the reach of the Court for purposes of addressing and sanctioning attorney conduct that is subject to a Rule 11 motion. Defendants respectfully

submit that the long-term consequences of such a message is detrimental to the administration of justice in this and all future cases.

**D. The Degree to Which Withdrawal will Cause a Delay in the Resolution of the Case Weighs in Favor of Denying or Staying the Motion to Withdraw.**

Any delay in this case is unwarranted and prejudicial at this juncture because of Plaintiff's sworn deposition testimony and interrogatory answer ***discrediting and defeating*** the claims contained in the Third Amended Complaint. Again, Plaintiff testified in a representative capacity that ***only*** tipped employees received and handled cash tips and that ***none*** of the tipped employees gave their cash tips to anyone prohibited from receiving tips. [*See* Collado Dep. at 38:1-42:8, 46:11-47:21, 52:1-54:11, 56:13-5, 59:2-22, 61:17-64:6, 66:9-67:16, 72:4-73:7, 74:14-76:9, 77:20-79:7]. Plaintiff also testified that he received ***all the credit card tips*** that were left by Kiki's customers. [Collado Dep. at 229: 8-14]. Specifically, Plaintiff testified as follows:

> Question: I'm not talking about service charges; I'm talking about discretionary credit card tips that were left by customers. Is it true, based on your testimony today [and] record exhibits that Kiki paid you all the credit card tips that were left by customers; is that true?
>
> Answer: Yes. Are we done here today?

[*Id*.]. Significantly, Plaintiff testified in a representative capacity as follows regarding the POS:

> Question: Did you ever see anyone from Kiki's changing the customer tips that were inserted or inputted into Kiki's POS?
>
> Answer: No.
>
> Question: Did you know of anybody in the class that ever witnessed anyone changing the customer tips that were inserted into Kiki's POS?
>
> Answer: No.

[*Id*. at 206:14-07:8]. Finally, Plaintiff provided a sworn interrogatory answer conveying that he was always paid an hourly rate that was ***above*** the Florida and federal minimum wage. [*See* Collado Interrogatory Answers at No. 6].

Therefore, Plaintiff's Counsel's request to afford Plaintiff and the conditional class forty-five (45) days to seek new counsel means that the current discovery deadline of February 6, 2024, and trial date of June 3, 2024, will have to be continued so that another attorney can review Plaintiff's deposition, interrogatory, and approximately 40,000 documents to realize what is already known, this case is over and the only thing missing is a formal Court order. Accordingly, any continuances of the existing deadlines and trial date will unnecessarily delay the resolution of this case and result in additional prejudice to Defendants.

## CONCLUSION

WHEREFORE, Defendants respectfully requests that the Court enter an Order: (a) denying or staying the Motion to Withdraw until such time as Defendants' Motion for Sanctions is resolved by Plaintiff's Counsel during the twenty-one (21) day safe harbor period or thereafter by the Court, or (b) should the Court grant the Motion to Withdraw, retaining jurisdiction of the served and pending Rule 11 motion to address the fifteen months Defendants were forced to defend frivolous claims that were based on allegations that are unequivocally false as established by Plaintiff's sworn deposition testimony and interrogatory answer, and (c) granting such further relief as the Court deems appropriate.

Dated: December 22, 2023

Respectfully submitted,

JACKSON LEWIS P.C.
One Biscayne Tower, Suite 3500
Two South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7600

*/s/ Reynaldo Velazquez*
Reynaldo Velazquez, Esq.
Florida Bar No.: 069779
Email*: rey.velazquez@jacksonlewis.com*
Roman Sarangoulis, Esq.
Florida Bar No. 1011944
Email: *roman.sarangoulis@jacksonlewis.com*

*Counsel for 450 North River Drive, LLC, d/b/a Kiki on the River and Roman Jones*

LEVINE & PARTNERS, P.A.
3350 Mary Street
Miami, Florida 33133
Telephone: (305) 372-1352

*/s/ Allan Reiss*
Allan Reiss, Esq
Florida Bar No. 858500
Email: *asr@levinelawfirm.com*

*Counsel for RJ River, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document is being served on December 22, 2023, on all counsel of record on the Service List below via transmission of Notices of Electronic Filing generated by CM/ECF.

*s/ Roman Sarangoulis*
Roman Sarangoulis, Esq.

**SERVICE LIST**

Brian Pollock, Esq.
Florida Bar No. 174742
Email: *brian@fairlawattorney.com*
FAIRLAW FIRM
135 San Lorenzo Ave.
Coral Gables, Florida 33146
Telephone: (305) 230-4884

*Attorneys for Plaintiff*

Reynaldo Velazquez, Esq.
Florida Bar No.: 069779
Email: *rey.velazquez@jacksonlewis.com*
Roman Sarangoulis, Esq.
Florida Bar No. 1011944
Email: *roman.sarangoulis@jacksonlewis.com*
JACKSON LEWIS P.C.
One Biscayne Tower
2 South Biscayne Boulevard, Suite 3500
Miami, Florida 33131
Telephone: 305-577-7600

*Counsel for 450 North River Drive, LLC, d/b/a Kiki on the River, and Roman Jones*

Allan Reiss, Esq.
Florida Bar No. 858500
Email: *Asr@Levinelawfirm.com*
LEVINE & PARTNERS, P.A.
3350 Mary Street
Miami, Florida 33133
Telephone: (305) 372-1352

*Attorneys for RJ River, LLC*