UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:22-CV-23074-BLOOM/Torres

OCTAVIO COLLADO
For himself and all others similarly situated,

      Plaintiff,

v.

450 NORTH RIVER DRIVE, LLC,
D/B/A KIKI ON THE RIVER,
RJ RIVER, LLC, AND ROMAN JONES,

      Defendants.

_____/

**DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927
AND THE COURT'S INHERENT POWER AGAINST BRIAN POLLOCK, ESQ.,
AND FAIRLAW FIRM WITH SUPPORTING MEMORANDUM OF LAW**

Defendants, 450 North River Drive, LLC, d/b/a Kiki on the River ("Kiki"), RJ River LLC

(RJ), and Roman Jones ("Mr. Jones") (collectively "Defendants"), by and through their respective

undersigned counsel, and pursuant to 28 U.S.C. § 1927 and the Court's inherent power, hereby file

this Motion for Sanctions against FairLaw Firm ("the Firm") and Brian Pollock, Esq., ("Mr.

Pollock") (collectively "Plaintiff's Counsel"), and state as follows in support thereof:

**PRELIMINARY STATEMENT**

Plaintiff's Counsel has acted in bad faith throughout this litigation.  Plaintiff's Counsel has

filed multiple complaints with frivolous claims that have multiplied the proceedings in this case

and required Defendants to incur unnecessary attorneys' fees and costs exceeding $300,000.

Plaintiff's Counsel knew, or should have known, that he was engaging in vexatious litigation

because Plaintiff's sworn testimony and/or interrogatory answers confirm that (1) Plaintiff

received all cash tips that were left by Kiki's customers, (2) he was paid all credit card tips that

Kiki processed through its point of sale (POS) system, (3) he was paid minimum wage during the applicable statutory period of his employment with Kiki, (4) he has no knowledge of Kiki's POS system being manipulated as it relates to tips, and (5) he did not understand the difference between a service charge and a tip until his deposition.

Plaintiff's Counsel should have been able to determine from the outset of this case that Plaintiff did not have any viable claims.  A simple conversation with Plaintiff would have revealed the information that Plaintiff provided in his interrogatory answers and testified to at his deposition on December 12, 2023.  However, Plaintiff's Counsel tried to orchestrate a "hit and run" by frivolously demanding nearly $19,000,000 in his Florida Minimum Wage Act (FMWA) pre-suit written communication and then moving to withdraw from the case approximately one month after discovery contradicted the meritless allegations.  Further, Plaintiff's Counsel stonewalled Defendants from obtaining the written discovery they requested for months, which is the only reason a Rule 11 motion was not served prior to December 20, 2023.

Accordingly, Defendants respectfully request that the Court enter an Order granting their motion for sanctions pursuant to 28 U.S.C. § 1927 ("Section 1927") and/or the Court's inherent power in the form of directing the Firm and Mr. Pollock to pay all the reasonable attorneys' fees and expenses Defendants incurred litigating the frivolous claims.

## **FACTUAL AND PROCEDURAL HISTORY**

1.      Plaintiff's Counsel filed a one count Complaint on September 23, 2022, claiming a violation of the Fair Labor Standards Act (FLSA) based on Defendants allegedly unlawfully retaining and/or distributing tips.  [ECF No. 1].  Defendants filed an answer denying the allegations of unlawful conduct and liability.  [ECF No. 27].

2.      Plaintiff's Counsel then filed a Statement of Claim on October 13, 2022, alleging Plaintiff was entitled to $174,000.00 in unpaid tips, and opt-in plaintiffs Yordan Acosta was owed $86,000.00 and Francis Taylor $45,000.00, which equaled a total of **$305,000.00** in alleged unpaid tips.  [ECF No. 10].  Thereafter, Plaintiff's Counsel served Defendants with the FMWA required pre-suit written communication on November 10, 2022, claiming that the putative class was owed **$18,928,000.00** in alleged unpaid tips.  [*See* Plaintiff's Minimum Wage Demand dated November 10, 2022 ("the Demand"), attached as "**Exhibit A"**].

3.      Plaintiff's Counsel subsequently filed an Amended Complaint on December 7, 2022, which attempted to allege FLSA claims to recover tips and federal minimum wages (Count I), FMWA claims that sought to recover Florida minimum wages and/or tips (Count II), and a Florida common law claim to recover tips (Count III).  [ECF No. 40].  Defendants filed motions to dismiss the Amended Complaint asserting, among other arguments, that Count I and II failed to allege that Plaintiff was paid below the applicable federal and Florida minimum wage and that the FMWA does not create a cause of action to recover tips. [ECF No. 55 and 56].

4.      Plaintiff's Counsel did not contest Defendants' motion to dismiss the Amended Complaint and instead opted to file a Second Amended Complaint that Defendants did not oppose. [ECF No. 57].  The Second Amended Complaint was filed on January 11, 2023, and again attempted to allege FLSA claims to recover tips and federal minimum wages (Count I), FMWA claims that sought to recover Florida minimum wages and/or tips (Count II), and a Florida common law claim to recover tips (Count III).  [ECF No. 59].

5.      Defendants filed a motion to dismiss the Second Amended Complaint and again asserted, among other arguments, that Count I and II failed to allege that Plaintiff was paid below the applicable federal and Florida minimum wage and that the FMWA does not provide a cause of

action to recover tips.  [ECF No. 63].  The Court granted Defendant's motion, in part, and dismissed the Second Amended Complaint without prejudice.  [ECF No. 112].  Thereafter, on April 7, 2023, Plaintiff's Counsel filed the Third Amended Complaint.  [ECF No. 122].

6.      Plaintiff's Counsel alleged for the *fourth* time in the Third Amended Complaint that Defendants violated the FLSA by improperly retaining or failing to distribute tips.  [ECF No. 122].  Plaintiff's Counsel also alleged for the *third* time in the Third Amended Complaint that Defendants violated the FMWA and Florida common law by improperly retaining or failing to distribute tips.  [*Id.*].

7.      The Third Amended Complaint falsely claimed that Plaintiff was paid a tip credit wage to support the FMWA claim.  [*Id.*].  Specifically, Plaintiff's Counsel alleged in the "Background Facts" section of the Third Amended Complaint that Defendants "either retained a portion of the tips and overtips collected (by failing to distribute all tips and overtips collected) and/or distributed portions of the tips and overtips to traditionally non-tipped employees (such as owners, officers, directors, partners, managers, or supervisors)."  [*Id.* at ¶ 34].  Plaintiff's Counsel goes on to allege in his FMWA claim that Defendants failed to pay minimum wage and violated the FMWA by paying a "tip credit" wage and "retaining a portion of the tips and/or overtips patrons left for their tipped employees and/or distributing such tips and/or overtips to traditionally non-tipped employees[.]"  [*Id.* at ¶¶ 102, 111, 123].  It is important to note that Plaintiff's Counsel claimed Plaintiff was paid a tip credit wage for the *first* time in the Third Amended Complaint because that was the only way he was able to establish an FMWA violation without expressly stating Plaintiff was paid less than the appliable minimum wage.

8.      Defendants worked diligently to obtain discovery from Plaintiff and the Opt-in Plaintiffs to rebut the allegations in the Third Amended Complaint.  Specifically, Kiki served

Plaintiff and the Opt-in Plaintiffs with its first set of Discovery Requests on June 16, 2023. Plaintiff's Counsel responded to these requests via email claiming he intended to seek a protective order to limit the amount of discovery Defendants could seek.  In response, Defendants reduced the number of interrogatories to five substantive questions and the request to produce to ten. Nevertheless, Plaintiff's Counsel continued to object even after the interrogatories and request to produce were significantly reduced.

9.      On September 6, 2023, the Parties attended a discovery hearing in which Magistrate Judge Otazo-Reyes required Plaintiff and the Opt-in Plaintiff's to answer specific Interrogatories identified in her Order.  [ECF No. 203].  Magistrate Judge Otazo-Reyes also ordered the Parties to work together to identify specific Request for Production that Plaintiff and the Opt-in Plaintiff's would answer.  [*Id.*].

10.     Plaintiff's Counsel appealed the September 6, 2023, Discovery Order and refused to work with Defendant's Counsel to determine if any Request for Production could be answered claiming that they were waiting for the ruling on the appeal.  [ECF No. 213].  The Court denied Plaintiff's Counsel's Appeal of the September 6, 2023, Discovery Order on November 20, 2023. [ECF No. 227].

11.     Shortly thereafter, on November 27, 2023, the Parties attended another discovery hearing before Magistrate Judge Otazo-Reyes.  [ECF No. 231].  There, Magistrate Judge Otazo-Reyes required Plaintiff to attend two deposition sessions for seven hours each.  [*Id.*].  She further confirmed that Plaintiff's testimony would be binding on him and all the Opt-in Plaintiffs on the specific topics Defendants identified.  [*Id.*].  Moreover, Magistrate Judge Otazo-Reyes required Plaintiff and each Opt-in Plaintiff to respond to the specific Interrogatories and Request for

Production in the same manner she did through her September 6, 2023 Discovery Order.   [*Id.*].

Plaintiff and the Opt-in Plaintiff's responses were due on or before December 8, 2023.  [*Id.*].

12.     Magistrate Judge Otazo-Reyes expressed her displeasure with Plaintiff's Counsel

for taking no action on her September 6, 2023, Discovery Order because he filed an appeal by

stating:

| | |
|---|---|
| The Court: | I mean, I'm wondering, Mr. Pollock, why hasn't the written discovery that was the subject of my order back in September been produced? |
| Mr. Pollock: | Your Honor, we received an order from Judge Bloom denying the appeal just a couple of days ago. |
| The Court: | So you were just sitting on it? |
| Mr. Pollock: | I mean, we have been working on it for Mr. Collado, but as far as the remainder, we were waiting for an order from Judge Bloom, which we just received.  I can look at the date of when that came in, but I want to say that it was within the past couple of days. So as with any order, once the appeal is final, the order becomes final.  So I can take a look, but I want to say that the paperless order came in on Monday of last week.  So it's been like three working days since that order came in. |
| The Court: | All right.  But you said you were working on it on the off-chance that Judge Bloom might think that I was correct? |
| Mr. Pollock: | I was working on it with respect to Mr. Collado, but we were waiting for the rest because I didn't want to go ahead and unnecessarily expend time or effort on other people, plus we don't have an agreement as to who those other representative people are going to be, which was the beginning of this hearing. So without a formula for determining who was going to be representative, I couldn't go ahead and do that.  That's the other subject of this hearing, which is how we go ahead and who the people are that are going to respond to it. |
| Mr. Velazquez: | Your Honor -- |
| The Court: | And you are facing a discovery deadline of February when practically nothing has been done yet? |
| Mr. Velazquez: | Your Honor, if I may.  Starting on October 11th, we sent our first request to confer about depositions and the requests for production.  October 13th, we followed up.  October -- |

The Court:    I'm sorry.  It sounds like Mr. Pollock was just sitting waiting to see if Judge Bloom would give him a pass.

[*See* Discovery Hearing Transcript dated November 27, 2023 ("Hrg. Tr.") attached hereto as "**Exhibit B"** at 29:2-30:14].

13.     On December 12, 2023, Defendants deposed Plaintiff for the first time.  In the presence of Mr. Pollock and in the face of *four* complaints filed by his attorneys, Plaintiff testified in a representative capacity that cash tips were handled by the employee(s) who directly received the cash from the patron(s).  [*See* Collado's Deposition Transcript dated December 12, 2023 ("Collado Dep.") attached hereto as composite "**Exhibit C"** at 38:1-42:8, 46:11-47:21, 52:1-54:11, 56:13-5,  59:2-22,  61:17-64:6,  66:9-67:16,  72:4-73:7,  74:14-76:9,  77:20-79:7].   Plaintiff also explained in a representative capacity that no employees ever gave cash tips to any employees who were prohibited from receiving tips, including Mr. Jones, Kiki's owners or managers, or anyone employed with RJ.  [*Id.*].  Since only tipped employees received and handled cash tips and Plaintiff admitted that none of the tipped employees gave their cash tips to anyone prohibited from receiving tips, Plaintiff's Counsel's claims in the Third Amended Complaint alleging Defendants improperly retained and/or distributed cash tips is entirely devoid of merit and frivolous.

14.     Similarly, Plaintiff testified that he received all the credit card tips that were left by Kiki's customers.  [Collado Dep. at 229: 8-14].  Specifically, Plaintiff testified as follows:

Question:    I'm not talking about service charges; I'm talking about discretionary credit card tips that were left by customers. Is it true, based on your testimony today [and] record exhibits that Kiki paid you all the credit card tips that were left by customers; is that true?

Answer:    Yes.  Are we done here today?

[*Id.*].  Further, Plaintiff testified that all credit card tips were entered and processed through Kiki's

POS system and that he was unaware of Mr. Jones or anyone else manipulating the POS to

unlawfully retain and/or distribute credit tips:

| | |
|---|---|
| Question: | Did you ever see anyone from Kiki's changing the customer tips that were inserted or inputted into Kiki's POS? |
| Answer: | No. |
| Question: | Did you know of anybody in the class that ever witnessed anyone changing the customer tips that were inserted into Kiki's POS? |
| Answer: | No. |

[*Id*. at 206:14-07:8].  Accordingly, Plaintiff's Counsel's claims in the Third Amended Complaint

alleging Defendants improperly retained and/or distributed credit tips are also meritless and

frivolous.

15.     Moreover, Plaintiff Counsel's minimum wage claim under the FMWA is similarly

devoid of merit and frivolous.  Like the FLSA and Florida common law claims, the FMWA claim

is negated entirely by Plaintiff's testimony acknowledging receipt of all tips left by Kiki's

customers.  Plaintiff's acknowledgement confirmed that there was no tip credit violation to support

the purported FMWA minimum wage claim as alleged in the Third Amended Complaint.  As if

that was not enough, Plaintiff provided a sworn interrogatory answer conveying that he was always

paid an hourly rate that was *above* the Florida and federal minimum wage.  Specifically, Plaintiff

responded as follows to this interrogatory:

| | |
|---|---|
| Question: | For each [week] of your employment during the 5 years prior to the filing of the initial Complaint through the present, do you contend that the combination of your hourly wage and the percentage of the service charge you were paid fell below the Florida or federal minimum wage? If the answer is yes, please state the week(s) at issue and the amount you contend fell below the Florida or federal minimum wage. |
| Answer: | No. |

[*See* Plaintiff's Responses to Defendant's Request for Interrogatories ("Collado Interrogatory Answers") attached hereto as **"Exhibit D"** at No. 6].

16.     Finally, Plaintiff testified that throughout this entire litigation he did not understand the difference between a tip and service charge, which apparently resulted in him being confused about what money he alleged was unlawfully retained and/or distributed.  Specifically, Plaintiff stated the following:

| | |
|---|---|
| Question: | When did it occur to you that Ciro was referring to service charges as it relates to the $900,000 instead of credit card tips that were left by customers? When did that first come to you? |
| Answer: | I didn't know – I didn't understand that it was separate. I thought it was just one – one thing.  Service charges, tips. It was all – it's still one thing.  I understand that service charges can be – the management can do whatever they want with it. I'm learning. I just learned that. |
| Question: | And when did you learn that management can do whatever they want with service charges? |
| Answer: | Today. |

[Collado Dep. at 223:22-24:10].

17.     It is apparent from Plaintiff's deposition testimony and interrogatory answer that he knew Defendants did not improperly retain or distribute tips and paid above the Florida minimum wage.  It is also apparent that Plaintiff's Counsel failed to properly investigate this case prior to filing the initial complaint and before filing the *three* amended complaints alleging facts that his client refuted during his sworn deposition and in his interrogatory answers.  Plaintiff's Counsel's failure to inquire about this case with his client resulted in approximately fifteen months of unnecessary litigation and the expenditure of legal fees and costs that are in the six-figure range.

18.     When it became apparent that the record evidence did not support any of the claims Plaintiff's Counsel presented in the Third Amended Complaint, or any prior complaint, Plaintiff's

Counsel attempted to avoid responsibility for his vexatious litigation by withdrawing from the case claiming that he was discharged by Plaintiff.  [ECF Nos. 233 and 235].

19.     As sanctions for Plaintiff's Counsel's actions as previously described, Defendants respectfully request that the Court award Defendants the attorneys' fees and other expenses for having to defend themselves against these objectively frivolous and bad faith claims.  These fees and expenses should be awarded against the Firm and Mr. Pollock for litigating this case in bad faith from the outset.

## MEMORANDUM OF LAW

### I.     Legal Standards

#### A.     Section 1927

Section 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  Unlike Rule 11, Section 1927 does not have a safe harbor provision to allow an attorney to correct his or her frivolous filing before sanctions may be awarded.  *See id.*  Also, unlike Rule 11, Section 1927 is not primarily focused on frivolous pleadings.  *See Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001).  Instead, under Section 1927 attorneys are required "to avoid dilatory tactics throughout the entire litigation."  *Id.*

An attorney violates Section 1927 when he or she acts in bad faith and multiplies a proceeding unreasonably.  *Dukes v. LVNV Funding, LLC*, No. 6:21-cv-1342-GAP-DAB, 2023 U.S. Dist. LEXIS 32680, *14 (M.D. Fla. Feb. 27, 2023), report and recommendations adopted at

2023 U.S. Dist. LEXIS 46453, *1 (M.D. Fla. March 20, 2023).[1]  Under Section 1927, "[b]ad faith

is an objective standard that is satisfied when an attorney knowingly or recklessly pursues a

frivolous claim."  *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010).  Generally, courts have

explained that the authority of the court to sanction attorneys under Section 1927 "is either broader

than or equally as broad as the district court's authority to issue a sanctions order under its inherent

powers."  *Amlong & Amlong, P.A. v. Denny's Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2006).

### B.      The Court's Inherent Power to Sanction

"A district court has inherent powers to manage its affairs in order to achieve the orderly

and expeditious disposition of cases."  *Obukwelu v. Bd. of Trs. Fla. State. Univ.*, 837 Fed. Appx.

686, 687 (11th Cir. 2020) (*per curiam*).  Also, a district court may "impose sanctions for litigation

misconduct under its inherent power."  *Id.*

The inherent power of the court to sanction an attorney "is both broader and narrower than

other means of imposing sanctions."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).  "The

key to unlocking a court's inherent power is a finding of bad faith."  *Barnes v. Dalton*, 158 F.3d

1212, 1214 (11th Cir. 1998).  Critically, "the inherent-powers standard is a subjective bad-faith

standard."  *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir.

2017).  Generally, a "finding of bad faith is warranted where an attorney knowingly or recklessly

raises a frivolous argument or argues a meritorious claim for the purpose of harassing an

---

[1]      Defendants note that "Section 1927 only applies to unnecessary filings after the lawsuit
has begun and does not apply to initial pleadings." *Dukes*, at 2023 U.S. Dist. LEXIS 32680, *14.
Therefore, to the extent the Court grants Defendant's Motion pursuant to Section 1927, Defendants
are only seeking fees for Plaintiff's Counsel's conduct from December 7, 2022, through present as
that is when the First Amended Complaint was filed.  However, if the Court grants this Motion
pursuant to its inherent power, Defendants request a complete recovery of its fees associated with
defending itself against the meritless claims filed by Plaintiff's Counsel, which includes the initial
Complaint.

opponent." *Id.* (quoting *Primus Automotive Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997).

Critically, the court's inherent powers are not limited by the Federal Rules of Civil Procedure, and they exist to fill interstices. *Peer*, 606 F.3d at 1314. For example, the Eleventh Circuit has stated that in situations such as this one, where an attorney files frivolous claims and withdraws from the case before discovery reveals the improper conduct, sanctions under the court's inherent power are appropriate. *Id.* at 1315. Specifically, the Eleventh Circuit explained that "*Rule 11* does not allow parties to protect themselves from 'hit and run' abuse of the judicial process[,]" which is exactly what has occurred in this case. *Id.*

## II. Argument

As a preliminary matter, it is important to note that Plaintiff's Counsel's withdrawal from the case does not shield him from responsibility for the bad faith in which he initiated and litigated this case. Specifically, the Eleventh Circuit has authorized the imposition of sanctions against an attorney in a scenario where the motion for sanctions under Section 1927 and the Court's inherent power was filed *after* the attorney withdrew from the case. *See Peer v. Lewis*, 606 F.3d 1306, 1309-10 (11th Cir. 2010) (attorney subject to sanctions pursuant to Section 1927 and the Court's inherent power where he withdrew from the case on or about June 19, 2006, and the motion for sanctions was filed more than one year later, on July 9, 2007).

### A. Plaintiff's Counsel has Acted in Bad Faith by Multiplying the Litigation and Harassing Defendants by Unreasonably and Recklessly Pursuing Meritless Tip Claims that are Contradicted by Plaintiff's Sworn Testimony and Interrogatory Answer

Plaintiff's Counsel acted in bad faith pertaining to the alleged tip claims under the objective test applicable to Section 1927 and the subjective test under the Court's inherent powers analysis. Plaintiff admitted during his deposition that tipped employees received all the tips (cash and credit

card) that were left for them by Kiki's customers.  This is critical because the entire Third Amended

Complaint is premised on the allegations that Defendants improperly retained and/or distributed

the tips of front-of-the-house tipped employees.  [ECF No. 122 at Count I, Count II, and Count

III].  In fact, the Third Amended Complaint claims that Plaintiff and the FLSA conditional class

are entitled to damages in the form of "tips and overtips earned" because Defendants improperly

retained/received/distributed tips.  [*Id.* at ¶¶ 79 and 128].

However, Plaintiff testified that Defendants did not improperly retain or distribute any tips

from him or the Opt-in Plaintiffs.  Plaintiff was asked multiple times if Defendants unlawfully

retained or distributed cash tips.  [Collado Dep. at 38:1-42:8, 46:11-47:21, 52:1-54:11, 56:13-5,

59:2-22, 61:17-64:6, 66:9-67:16, 72:4-73:7, 74:14-76:9, 77:20-79:7].  In each instance, Plaintiff

confirmed that Defendants did not unlawfully retain or distribute any cash tips.  [Collado Dep. at

*Id.*].  In fact, Plaintiff testified that employees who received cash tips were permitted to distribute

them among the other tipped employees as he or she felt was appropriate, and that Defendants

were ***not*** involved in that process.  [Collado Dep. at *Id.*].  Put differently, Plaintiff conceded that

Defendants never had any possession of cash tips that the front-of-the-house tipped employees

received and distributed.   Thus, Plaintiff admitted that Defendants could not and did not

improperly retain or distribute cash tips because Defendants never had the money.

Additionally, Plaintiff's testimony pertaining to credit card tips establishes without doubt

that Defendants never improperly retained or distributed credit-card tips.  [Collado Dep. at 229:8-

14].  Specifically, Plaintiff testified that he received all the credit card tips that were left by Kiki's

customers as reflected by the following:

> Question:   I'm not talking about service charges; I'm talking about discretionary credit
> card tips that were left by customers. Is it true, based on your testimony
> today [and] record exhibits that Kiki paid you all the credit card tips that
> were left by customers; is that true?

| Answer: | Yes.  Are we done here today? |
|---|---|

[*Id.*].  Moreover, Plaintiff testified that all credit card tips were entered and processed through Kiki's POS system and that he was unaware of Mr. Jones or anyone else manipulating the POS to unlawfully retain and/or distribute credit tips:

| Question: | Did you ever see anyone from Kiki's changing the customer tips that were inserted or inputted into Kiki's POS? |
|---|---|
| Answer: | No. |
| Question: | Did you know of anybody in the class that ever witnessed anyone changing the customer tips that were inserted into Kiki's POS? |
| Answer: | No. |

[*Id*. at 206:14-07:8].

Significantly, the bad faith pursuit of this case was also facilitated by Plaintiff's Counsel's failure to explain to Plaintiff the difference between a tip and service charge.  Plaintiff's Counsel knows the difference between a tip and service charge, as reflected by the four complaints that were filed in this case and his extensive FLSA and FMWA experience, yet he seemingly failed to explain the distinction to his client through more than a year of litigation.  Specifically, Plaintiff testified as follows when asked about service charges and tips:

| Question: | When did it occur to you that Ciro was referring to service charges as it relates to the $900,000 instead of credit card tips that were left by customers? When did that first come to you? |
|---|---|
| Answer: | I didn't know – I didn't understand that it was separate. I thought it was just one – one thing.  Service charges, tips. It was all – it's still one thing.  I understand that service charges can be – the management can do whatever they want with it. I'm learning. I just learned that. |
| Question: | And when did you learn that management can do whatever they want with service charges? |
| Answer: | Today. |

14

CASE NO.: 1:22-CV-23074-BLOOM/Torres

[Collado Dep. at 223:22-24:10].  That is another example of why the facts uncovered during

Plaintiff's deposition establish objective and subjective bad faith on the part of Plaintiff's Counsel.

In addition to the above deposition testimony, Plaintiff admitted in response to an

interrogatory that his hourly rate never "fell below the Florida or federal minimum wage."  [*See*

Collado Interrogatory Answers at No. 6].

Plaintiff's sworn deposition and interrogatory admissions that Defendants did not

unlawfully retain and/or distribute tips and that he was always paid above the Florida and federal

minimum wages, are a complete bar to the claims in the Third Amended Complaint.  In sum,

Defendants cannot be liable for unlawful tip retention and/or distribution under the FLSA or

Florida common law, or for a tip credit violation under the FMWA, since they did not take any

tips from Plaintiff or the FLSA conditional class.  Similarly, Defendants cannot be liable under the

FMWA because Plaintiff was paid above the Florida minimum wage at all relevant times during

his employment with Kiki.  Thus, the Third Amended Complaint is frivolous and was pursed in

bad faith, objectively and subjectively, because it has no reasonable factual basis pertaining to the

allegations claiming Defendants unlawfully retained and/or distributed tips and/or failed to pay

Plaintiff the Florida minimum wage.

**B.      The FMWA Claim in the Third Amended Complaint is Frivolous Because it was Filed in Bad Faith for Improper Motive.**

Plaintiff's Counsel acted in bad faith pertaining to the alleged FMWA claim under the

objective test applicable to Section 1927 and the subjective test under the Court's inherent powers

analysis. Plaintiff's Counsel signed and filed the Third Amended Complaint, which includes

factually inaccurate representations.  Specifically, Plaintiff's Counsel filed three prior complaints

asserting Defendants paid their front-of-the-house tipped employees an hourly rate that was

supplemented by a service charge.  On April 7, 2023, the Court entered an Order granting

Defendants Motion to Dismiss the Second Amended Complaint, and it explained at the hearing that the FMWA claim could not be maintained unless Plaintiff was either paid on a tip credit basis or earned below the applicable minimum wage.  In response to the Court's Order, Plaintiff's Counsel signed and filed the Third Amended Complaint, which was the first time any reference to the service charge was omitted and claimed Defendants paid Plaintiff a "tip credit" wage.  It was clear then, as it is now, that Kiki never paid Plaintiff or any other class employee on a tip credit basis.  Therefore, the Third Amended Complaint was frivolously filed in bad faith to circumvent the Court's prior order dismissing the Second Amended Complaint.

### C. A Reasonable Inquiry of the Claims Contained in the Third Amended Complaint and the Prior Complaints would have Revealed that they were Frivolous.

Plaintiff's Counsel's apparent failure to conduct a reasonable inquiry before and after filing the Third Amended Complaint constitutes bad faith under the objective test applicable to Section 1927 and the subjective test under the Court's inherent powers analysis. Plaintiff's sworn deposition testimony and interrogatory answer definitively establish that Defendants did not violate the FLSA, FMWA, or Florida common law and that the claims contained in the Third Amended Complaint and prior complaints are objectively frivolous.  Defendants respectfully submit the following as determinative facts establishing Plaintiff's Counsel had sufficient time prior to filing all of the complaints, including the Third Amended Complaint, to investigate the claims.  Accordingly, the Third Amended Complaint as well as the prior complaints were not based on a plausible view of the law or facts when considering the Plaintiff's sworn deposition testimony and interrogatory answer.

First, it is undisputed the original Complaint in the case was filed on September 23, 2022, [ECF No. 1].  The Third Amended Complaint was subsequently filed on April 7, 2023.  [ECF No.

122].  That is a period of approximately six months to investigate the claims presented in the Third Amended Complaint without considering the time Plaintiff's Counsel had prior to filing the original Complaint.

Second, any alleged reliance by Plaintiff's Counsel on what he claims he was told by Plaintiff is misplaced and cannot absolve the Firm and Mr. Pollock of their failure to properly investigate the claims in the Third Amended Complaint and the prior complaints.  *See Worldwide Primates Inc. v. McGreal*, 87 F.3d 1252, 1255 (11th Cir. 1996) (counsel is obligated to "make a reasonable inquiry into both the legal and factual basis of a claim prior to filing suit [and] . . . [a]bsent certain extenuating circumstances, an attorney cannot simply rely on the conclusory representations of a client . . .."); *Estrada v. FTS USA, LLC*, No. 14-23388-CIV-MOORE/MCALILEY, 2018 WL 3697491 at *5 (S.D. Fla. July 20, 2018) ("Plaintiffs counsel's singular reliance on what their client evidently told them was not a reasonable inquiry.").

As an initial matter, in the *six months* between the filing of the original Complaint and Third Amended Complaint, Plaintiff's Counsel filed *two* amended complaints that resulted in Defendants filing two motions to dismiss addressing the claims that reappeared in the Third Amended Complaint.  [ECF No. 40, 55, 56 59, and 63].  Defendants' motion to dismiss the Amended Complaint resulted in Plaintiff's Counsel seeking leave to file the Second Amended Complaint.  [ECF No. 57].  Defendants' motion to dismiss the Second Amended Complaint resulted in a Court order dismissing in part said complaint without prejudice.  [ECF No. 112]. Additionally, Plaintiff's Counsel received during discovery approximately 40,000 documents, which included payroll records showing the tips and gross pay Plaintiff and class members were paid.  The forgoing establishes Plaintiff's Counsel was presented with more than enough time and information to question whatever he may have been told by Plaintiff and rely on other evidence

and information.   Instead, Plaintiff's Counsel continued litigating the case for approximately fifteen months leading up to his client's deposition.

Additionally, Plaintiff's Counsel took no responsibility for his actions after the record evidence established that he pursed this case in bad faith.   Instead, Plaintiff's Counsel withdrew from this case and is trying to orchestrate a "hit and run" against Defendants.   Plaintiff's Counsel's conduct should not be permitted and is precisely the type of behavior that the Court's inherent power is intended to prevent via sanctions. *See Peer*, 606 F.3d at 1315.

Finally, Plaintiff's Counsel's Third Amended Complaint or the prior complaints cannot be viewed as being based on a plausible view of the FLSA, FMWA, or Florida common law. Specifically, Plaintiff's sworn testimony regarding receiving all cash and credit card tips and interrogatory answer confirming he was paid above the applicable Florida minimum wage during his employment with Kiki, undermine any suggestion that the Third Amended Complaint and the prior complaints were based on a plausible view of any of the facts and laws at issue.

### III.    Conclusion

Based upon the foregoing, Defendants respectfully request that this Honorable Court grant Defendants' Motion for Sanctions pursuant to Section 1927 and/or its inherent powers, and award Defendants' their reasonable attorneys' fees and costs incurred in having to defend against Plaintiff's Counsel's frivolous claims and award any other and further relief as the Court deems just and proper.

### CERTIFICATE OF GOOD FAITH

Defendants hereby certify that movant conferred with Plaintiff's Counsel regarding the matters set forth in this Motion via email and telephone on January 12, 2024.  Plaintiff's Counsel opposes the relief sought in this motion.

CASE NO.: 1:22-CV-23074-BLOOM/Torres

Dated:  January 12, 2023

Respectfully submitted,

| | |
|---|---|
| JACKSON LEWIS P.C. | Levine & Partners, P.A. |
| One Biscayne Tower, Suite 3500 | 3350 Mary Street |
| Two South Biscayne Boulevard | Miami, Florida 33133 |
| Miami, Florida 33131 | Telephone: (305) 372-1352 |
| Telephone: (305) 577-7600 | |

/s/ *Reynaldo Velazquez*
Reynaldo Velazquez, Esq.
Florida Bar No.: 069779
Email*: rey.velazquez@jacksonlewis.com*
Roman Sarangoulis, Esq.
Florida Bar No. 1011944
Email: *roman.sarangoulis@jacksonlewis.com*

*Counsel for 450 North River Drive, LLC,*
*d/b/a Kiki on the River and Roman Jones*

/s/ *Allan Reiss*
Allan Reiss, Esq
Florida Bar No. 858500
Email: asr@levinelawfirm.com
*Counsel for RJ River, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document is being served on

January 12, 2023, on all counsel of record on the Service List below via transmission of Notices

of Electronic Filing generated by CM/ECF

*s/ Roman Sarangoulis*
Roman Sarangoulis, Esq.

19

CASE NO.: 1:22-CV-23074-BLOOM/Torres

## SERVICE LIST

Brian Pollock, Esq.
Florida Bar No. 174742
Email: *brian@fairlawattorney.com*
FAIRLAW FIRM
135 San Lorenzo Ave.
Coral Gables, Florida 33146
Telephone: (305) 230-4884

*Attorneys for Plaintiff*

Reynaldo Velazquez, Esq.
Florida Bar No.: 069779
Email: *rey.velazquez@jacksonlewis.com*
Roman Sarangoulis, Esq.
Florida Bar No. 1011944
Email: roman.sarangoulis@jacksonlewis.com
JACKSON LEWIS P.C.
One Biscayne Tower
2 South Biscayne Boulevard, Suite 3500
Miami, Florida 33131
Telephone: 305-577-7600
Facsimile: 305-373-4466

*Counsel for 450 North River Drive, LLC, Kiki on the River and Roman Jones*

Allan Reiss, Esq.
Florida Bar No. 858500
Email: *Asr@Levinelawfirm.com*
Levine & Partners, P.A.
3350 Mary Street
Miami, Florida 33133
Telephone: (305) 372-1352
Facsimile: (305) 372-1352

*Attorneys for RJ River, LLC*

20