UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-CV-23074-BLOOM/TORRES

OCTAVIO COLLADO,

     Plaintiff,

vs.

450 NORTH RIVER DRIVE, LLC
D/B/A KIKI ON THE RIVER
AND ROMAN JONES,

     Defendants.

_____/

## RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTION FOR SANCTIONS
## PURSUANT TO 28 U.S.C. §1927
## <u>AGAINST BRIAN H. POLLOCK, ESQ. AND FAIRLAW FIRM</u>

## I. INTRODUCTION

The undersigned did not engage in any bad faith conduct for which sanctions could be imposed under 28 U.S.C. §1927 or the Court's inherent authority. The undersigned did not multiply these proceedings, pursue them vexatiously, or act in bad faith. Defendants do not claim that the undersigned had any prior knowledge that Mr. Collado would testify inconsistent with the information he previously disclosed to the undersigned, reviewed with the undersigned, or provided by the members of the collective he was appointed to represent. The reason is likely because no such evidence exists. The Defendants tacitly acknowledge that the undersigned was blindsided by Mr. Collado's deposition testimony but, despite their purported outrage, ignore Mr. Collado's culpability. Although Mr. Collado's surprise deposition testimony contrasted with the declarations and interrogatory answers he signed under penalty of perjury, Defendants have given him a complete pass for the testimony he gave for reasons unknown to the undersigned. [*Compare* ECF Nos. 44-1 (also filed at 127-1), 65-1, 234-4, with Depo. Collado appended hereto as Exhibit "1".] The Court properly determines that the undersigned engaged in no sanctionable conduct.

Defendants' suggestion that the undersigned "should have been able to determine from the outset of this case that Plaintiff did not have any viable claims" is absurd. [ECF No. 243 at 2.] First, there has been no disposition on the merits or the viability of any claims. In fact, discovery was never completed: Mr. Collado's deposition was not completed, Defendants never produced any witnesses for deposition, and not all written discovery was conducted. Next, 450 North River Drive, LLC admitted to the claims alleged in its answers to Plaintiff's initial Interrogatories Nos. 4 and 19 by conceding to have misappropriated tips. [ECF No. 122-1.] Lastly, the Court never made a dispositive adverse ruling on any pending claims, rendering Defendants' reliance on the viability of the claims pled purely speculative. If the Court dismisses Mr. Collado's claims for his failure to comply with the Order entered on January 9, 2024 [ECF No. 241], as Defendants request in their other pending Motion [ECF No. 249], there likely will be no substantive merits rulings.

Defendants also contend that the undersigned vexatiously multiplied these proceedings by delaying Mr. Collado's answer to Interrogatory No. 6, wherein he acknowledged that the hourly wage and service charges he received exceeded the FMWA's minimum wage. [ECF No. 243-4.] This is a red herring argument; that Mr. Collado's hourly wages and service charges exceeded the FMWA amount was never disputed. Plus, Defendants created and maintained Mr. Collado's time

and pay records, so the notion that they needed Mr. Collado's answer to Interrogatory No. 6 is disingenuous. The timing (and contents) of Mr. Collado's interrogatory answer was meaningless because they already had better and more information than what he attested to.

Defendants blame the undersigned for the continued prosecution of the FMWA claim contained in the Third Amended Complaint ("TAC"). However, Defendants have yet to identify any authority decided since the Consolidated Appropriations Act amended the FLSA (by including 29 U.S.C. §203(m)(2)(B)) precluding a claim under the FMWA to recover only (and all of) the tips unlawfully distributed or withheld. Without any authority addressing whether the FMWA incorporated §203(m)(2)(B) to allow a claim to recover only misappropriated tips, regardless of the wage paid, Defendants cannot legitimately claim that omitting unnecessary allegations from the TAC prevented an adverse decision by the Court (or provide a basis to sanction the undersigned). The court never reached this novel legal issue due to the Defendants' procedural blunder of violating Rule 12(g) by filing a motion to strike followed by a motion to dismiss. [*See* ECF No. 152.] Even if the Court considered their motion to dismiss and ruled for Defendants, there would still be no reason to impose 28 U.S.C. §1927 or the Court's inherent authority for the undersigned's legitimate pursuit of a novel legal theory.

The undersigned litigated this case ethically and appropriately and then promptly withdrew upon being discharged by Mr. Collado. With the multiple witness interviews conducted, thousands of pages of documents reviewed and analyzed, multiple conversations with Mr. Collado, and sworn statements received, the undersigned could not know that Mr. Collado would commit litigation suicide in his deposition on December 12, 2023. Mr. Collado testified contrary to the information he provided to the undersigned, the information discussed during his pre-deposition conference, his prior sworn statements, the analysis of the documents exchanged in discovery, the sworn Declarations of record, seemingly intending to commit as much collateral damage as possible. [*Compare* ECF Nos. 44-1 (also filed at 127-1), 65-1, 234-4, with Exhibit "1".]

The Court properly denies the Defendants' requests for sanctions under 28 U.S.C. §1927 and its inherent authority, just like it denied their prior request to sanction the undersigned under Rule 11. The Defendants lack any – let alone clear or convincing – evidence establishing any bad faith conduct by the undersigned. The circumstances presented and baseless nature of Defendants' motion are more properly address by the court's inherent authority to impose sanctions.

## II. BACKGROUND

Undersigned counsel has appeared as counsel of record in over 550 cases in this Court since his admission to this Court without being sanctioned. The undersigned respects the integrity of this Court, his ethical obligations, and the legal process by devoting resources to investigating cases before filing them, abandoning baseless claims, and conducting himself professionally during litigation. This case reflected more of the same by the undersigned. Although Defendants pursue sanctions against the undersigned after being blindsided by Mr. Collado's testimony, information they already had, and for pursuing a novel legal theory, they inexplicably seek no recourse against Mr. Collado for mysteriously disavowing nearly all pertinent facts to which he attested in his deposition. As explained in more detail below, the factual and procedural history of this case dispels any notion of impropriety by the undersigned.

## III. RELEVANT FACTUAL AND PROCEDURAL HISTORY

1. The undersigned first spoke with Mr. Collado on July 8, 2022.

2. Mr. Collado explained that he had experience working in restaurants in South Florida before working for the Defendants, including Joe's Stone Crab, and that he knew the difference between tips and service charges due to his acknowledgment of the "Salt Bae case" that was decided several months before and its impact on the distribution of service charges.[1]

3. During this initial consultation, Mr. Collado described how Defendants print out a sheet containing small print identifying, for each payroll period, everyone who received tips from the tip pool and the amount distributed to each after he started working at Kiki on the River ("Kiki"). Mr. Collado recognized people listed on the printout as getting tips who should not have been in the tip pool.

4. Mr. Collado explained that he complained to Roman Jones about the distribution of the tips to non-tipped employees and discussed Mr. Jones' response to him.

5. Mr. Collado was adamant that he was owed a lot of money in tips from Kiki, urged

---

[1] The "Salt Bae case" reference was to the Eleventh Circuit Court of Appeals' decision in *Compere v. Nusret Miami, LLC*, 28 F.4th 1180 (11th Cir. 2022). The significance of his reference to the "Salt Bae" case is to demonstrate Mr. Collado's ability to distinguish distinction between a service charge and a tip/gratuity/overtip. The undersigned's discussions with Mr. Collado and the other former employees at Kiki revealed consistent themes, including that Kiki misappropriated the voluntary gratuities left by patrons (tips), that Roman Jones would be considered an "employer" under the FLSA and the FMWA, and that the misappropriated tip damages at issue would be significant.

the undersigned to claim as many years back as possible, and actively urged those who worked at Kiki to contact the undersigned about recovering the tips misappropriated at Kiki.

6.      The undersigned discussed with Mr. Collado that although the distribution of tips is regulated by law, no laws protect or restrict the distribution of service charges and that he would only be able to seek recovery of the gratuities voluntarily left by patrons as tips but not a portion of the service charges Kiki automatically included in the bills.

7.      Before filing the complaint, the undersigned further investigated the claims to be pursued by collecting documents from him, and by speaking with others who contacted the undersigned concerned about the distribution of tips at Kiki (Yordan Acosta and Francis Taylor), by reviewing their documents, and by conducting legal and other factual research.

8.      Messrs. Collado,. Acosta, and. Taylor each separately talked about problems with the distribution of tips, that the tips they received did not seem accurate, why the tips they received did not seem accurate, that ineligible persons received tips from the tip pool, tips that they believed never were deposited into the tip pool, and Roman Jones' involvement in their work.

9.      After multiple individuals separately confirmed Mr. Collado's information about the improper retention and distribution of tips, and after reviewing documentation, the undersigned filed the instant lawsuit on September 23, 2022. [ECF No. 1.]

10.     The undersigned emailed a letter to Mr. Collado on September 29, 2022, explaining the status of his case and enclosing a copy of the Complaint.[2]

11.     At times, someone who consulted and/or retained the undersigned's law firm would complain about how Kiki collected, did not collect, or distributed the service charge it imposed on customers. The undersigned either personally clarified or made sure his staff explained and clarified the difference between a tip and a service charge, and that the case only involved tips.

12.     After working with Mr. Collado, Mr. Acosta, and Mr. Taylor to discuss the tips at issue and the amounts each estimated to be at issue, the undersigned prepared the Statement of Claim [ECF No. 10]. The undersigned emailed each a letter explaining the Statement of Claim, enclosed a copy, and requested they advise him of any problems with it. [ECF No. 10.] None

---

[2]      The undersigned provided a copy of the operative Complaint to Mr. Collado and each other person who joined this lawsuit, and at no time did Mr. Collado or anyone else inform the undersigned of any factual inaccuracies in any of the operative Complaints.

informed the undersigned of any problems with or inaccuracies in the Statement of Claim.

13.     The undersigned's investigation into the facts underlying this case did not end with the filing of the initial Complaint, as the undersigned and other members of his office spoke with more former employees of the Defendants about their experiences involving the tips at Kiki.

14.     For instance, the undersigned also spoke with Ines Berzina, Jovana Majetic, Andrea Compaoresi, and Andreas Bouras to discuss the information they had about the distribution and retention of tips, and they provided information that paralleled the information provided by Messrs. Collado, Acosta, and Taylor.

15.     In a conversation with one former Kiki employee who was eligible to participate in the tip pool who did not join the case, the undersigned learned that managers (specifically naming Xandra Hollow) would log into the Point of Sale ("POS") system as Captains, receive points as if they were Captains, and receive distribution of tips from the tip pool, even though they were ineligible managers.

16.     Others who worked at Kiki informed the undersigned that members of Sia Hemmati's family did not actually work in tipped positions at the restaurant but still received tips from the tip pool.[3] One person identified Mr. Hemmati's daughter as someone who did not work in a tipped position at Kiki but who received tips from the tip pool.

17.     Meanwhile, the office of the undersigned worked with Mr. Collado, Mr. Acosta, Mr. Taylor, Augusto Guerra, and Patricia Buraschi to help estimate and calculate the tips at issue under the FMWA before sending a letter demanding the recovery of tips for them and others similarly situated to the Defendants on November 10, 2022, pursuant to Fla. Stat. §448.110 and Art. X, §24, Fla. Const., while providing copies to each person named in the letter as a claimant. None thereafter identified any factual inaccuracies with the letter.

18.     This letter estimated 56 eligible employees for 260 weeks, and was based on the information obtained from Mr. Collado, Mr. Acosta, Mr. Taylor, Mr. Guerra, and Ms. Buraschi, and "subject to revision/adjustment based on the records" maintained by Defendants.[4] The letter also stated that it was based on "the absence of actual paychecks to [my clients] and the class and

---

[3]     Sia Hemmati is the Managing Partner of 450 North River Drive, LLC. [122-1 at 6.]

[4]     On July 24, 2023, Defendants identified another 358 people who had not yet joined the lawsuit and who were eligible to receive notice of their rights of the assemblage of a collective action for the three years at issue in Count I.

the records reflecting the gratuities left by patrons and the gratuities paid out."

19.     The undersigned filed an Amended Complaint on December 7, 2022, to include claims to recover the tips unlawfully retained or distributed under the FLSA, the Florida Minimum Wage Act, and Florida common law after the deadline to resolve the FMWA demand letter passed. [ECF No. 40.] A copy of this letter was sent to Mr. Collado, who did not identify any factual inaccuracies to the undersigned.

20.     Mr. Collado remained in contact with the undersigned. During one telephone conversation that occurred on December 7, 2022, Mr. Collado recounted a situation in which Ciro Constanzo, a former General Manager, told him $900,000 in tips was distributed amongst Roman Jones, Aris Nanos, and Sia Hemmatti in one year, and that another owner – Lee Lyons – was not aware of this situation. Mr. Collado also identified Defendants as using Unify Employee as their payroll company and City National Bank for their corporate accounts during the call.

21.     During the same conversation with Mr. Collado on December 7, 2022, he recalled and described a situation when he complained to Roman Jones and John Maria about the distribution of the tips at Kiki.

22.     The undersigned then sent a corrected FMWA demand letter to Defendants on December 8, 2022, to address a scrivener's error in the prior FMWA demand letter, again emailing copies of it to those identified in the letters as a claimant, and none advised the undersigned of any facts incorrectly stated therein.

23.     To assemble a collective action, the undersigned filed a Motion for Conditional Certification on January 19, 2022 [ECF No. 44].

24.     Mr. Collado executed a Declaration on December 13, 2022, and Mr. Guerra on December 19, 2022, after each confirmed the facts contained therein were true and correct. [ECF Nos. 44-1, 44-2.]

25.     Each described, in his Declaration, the differences between the service charges imposed by Kiki and gratuities (tips or overtips) left by customers, and that each was paid with "an hourly wage less than the applicable minimum wage, commissions (or service charges), and tips," along with other factual details. [ECF Nos. 44-1 at ¶¶11, 15, 16; 44-2 at ¶¶14, 16, 17.]

26.     The undersigned then filed the Second Amended Complaint ("SAC") on January 11, 2023 [ECF No. 59] and provided copies of it by email to Mr. Collado and the others who had

joined the case by then. The SAC alleged that Defendants paid a direct hourly wage that was "less than" or "below" the federal and Florida minimum wages. *Id.* at ¶¶8, 28, 40, 90, 98, 109.

27.     Defendants requested the Court to dismiss the SAC by contending that they were confused about whether Count I sought relief under 29 U.S.C. §203(m)(2)(B) as a claim for tip confiscation and retention or for recovery of minimum wages, by contending that Count II was not viable because the FMWA does not permit a claim for tip confiscation and retention absent a minimum wage violation, and by claiming that Count III was not viable because Florida law does not consider tips as wages. [ECF No. 63.]

28.     The undersigned filed a Response in Opposition to the Defendants' Motion to Dismiss directed to the SAC, to which the Defendants filed a Reply. [ECF Nos. 64, 69.]

29.     To assemble a collective action for Count I of the SAC, the undersigned file a Renewed Motion for Conditional Certification on January 27, 2022 [ECF No. 65.]Messrs. Collado, Guerra, and Taylor executed Declarations in support of the Motion, wherein each described his experiences at Kiki, the differences between the service charges (imposed by Kiki) and gratuities (tips or overtips left by customers), and identified how each received as pay "an hourly wage less than the applicable minimum wage, commissions (or service charges), and tips." [ECF Nos. 65-1 at ¶¶13, 17; 65-2 at ¶¶17-19; 65-3 at ¶22.] Messrs. Collado, Guerra, and Taylor each attested to not receiving all the tips they should have received because Defendants improperly or failed to distribute them. [ECF Nos. 65-1 at ¶18, 65-2 at ¶21, 65-3 at ¶23.]

30.     Defendants then *admitted to liability* by conceding that discrepancies existed in the distribution of the tips at issue in this lawsuit in their February 8, 2023, Answers to Plaintiff's Interrogatories Nos. 4 and 19, validating the basis for pursuing recovery of tips for Mr. Collado and the others who worked at Kiki. [ECF No. 122-1.]

31.     The Court directed the parties to conduct a settlement conference on March 1, 2023.[5] In preparation, the undersigned discussed with Mr. Collado and others who attended the event's significance, the nature of the claims being pursued (for tips and not service charges), and the potential for resolution.

32.     After the settlement conference was adjourned, the undersigned emailed a letter to

---

[5]     If compelled, the undersigned would divulge certain information discussed during the settlement conference and its impact on his view of the viability of the claims alleged.

Mr. Collado and the other former employees at Kiki who attended to remind them of the confidential nature of the proceedings, discuss the claims in the lawsuit, and specify that the claims were for recovery of "tips" under three different legal theories.

33.     The Court conducted a hearing on the Joint Motion to Dismiss on March 23, 2023, and dismissed the SAC without prejudice for the reasons stated on the record. [ECF No. 112.]

34.     Defendants objected to the initial discovery, resulting in a discovery hearing on April 5, 2023, wherein the Court required them to provide better and more complete responses. [ECF Nos. 121, 145.]

35.     The Third Amended Complaint (TAC) was filed on April 7, 2023 [ECF No. 122].[6]

36.     Like the SAC, the TAC reiterated that Defendants paid a direct hourly wage that was "less than" or "below" the applicable Florida minimum wage(s). *Id.*, at ¶¶95, 99, 101, 108, 110, 120, 122.[7] The TAC removed the references to the payment/receipt of a service charge as immaterial and unnecessary to the FMWA claims asserted based on the undersigned's understanding of how the FMWA incorporated 29 U.S.C. §203(m)(2)(B), and created a similar cause of action for recovery of tips improperly retained or distributed regardless of the wages paid.[8]

37.     Priya Krishna interviewed Mr. Collado and the undersigned on April 11, 2023, for an article to be published in the New York Times. Ms. Krishna discussed with Mr. Collado his experiences while working at Kiki, the differences between tips and service charges, and his thoughts on them. Mr. Collado responded to several of Ms. Krisna's follow-up questions by confirming how he told diners to tip in cash to ensure he would receive the money and asked the owners at Kiki about who received money from the service charges and tips without a response.[9]

38.     The Second Renewed Motion for Conditional Certification was filed on April 21, 2023, and included Mr. Collado's Declaration from December 13, 2022, and Declarations from

---

[6]     Defendants misrepresent that the TAC alleged "that Defendants failed to pay minimum wages" in paragraphs 102, 111, and 123 of Count II. [ECF No. 243 at ¶7.]

[7]     The TAC omitted the references from the SAC to the payment of a reduced direct hourly wage (or "tip credit") in Count I as immaterial. [*Compare* ECF Nos. 59, 122.]

[8]     Defendants always had (and then produced in this case) the payroll records identifying how and how much they paid Mr. Collado and the other members of the Collective. Defendants also had Declarations wherein Mr. Collado attested to receiving an hourly wage below the applicable minimum wage, supplemented by a part of the service charges, and tip. [ECF Nos. 44-1, 65-1.]

[9]     The article, *The Restaurant Service Charge Isn't Going Anywhere*, was published in the New York Times on May 15, 2023, and includes statements attributable to Mr. Collado.
(https://www.nytimes.com/2023/05/15/dining/restaurant-service-charges.html.)

Samantha Mehew, Hiosmel Zayas, and Brenna Wagnon [ECF Nos. 127, 127-1, 127-3, 127-4, 127-5]. Each separately attested to receiving an hourly wage below the applicable minimum wage, plus services charges and tips, and to receiving paystubs reflecting their hourly wages, service charges received, and tips distributed. *Id.*

39.     Defendants responded to the TAC with their Motion to Strike [ECF No. 136] followed by their Motion to Dismiss [ECF No. 137]. Defendants argued *inter alia* that certain language in Count II of the TAC should be stricken, while arguing that the Claim at Count II was not viable. *Id.*

40.     Plaintiff's Response in Opposition to the Motion to Strike elaborated on the position that the FMWA incorporated the FLSA's definition of wage, thereby incorporating 29 U.S.C. §203(m)(2)(B), and similarly created a cause of action for improper tip retention or distribution regardless of the total non-tip wages paid exceeded the minimum wage required by Florida law [ECF No. 143].

41.     Defendants' procedural blunder of filing a Motion to Strike and then a Motion to Dismiss [ECF Nos. 136, 137] precluded the Court from reaching the issue of whether the FMWA allows for recovery of tips improperly retained or distributed by an employer regardless of whether a tip credit is taken. [ECF No. 152: "Accordingly, the Court agrees with Plaintiff that Defendants' second Rule 12 motion—the Motion to Dismiss, ECF No. [147]—must be denied as being improperly filed."][10]

42.     The Court specifically considered Defendants' argument that "employees may recover only up to the tip credit and not the actual tips" and found "that the cases Defendants cites for this proposition provide **weak support**, as they discuss the FLSA rather than the FMWA." [ECF No. 152 at fn. 1.] [*Emphasis added.*]

43.     No court has yet ruled on the issue presented in Count II, whether the FMWA incorporates 29 U.S.C. §203(m)(2)(B), rendering it a novel issue of first impression.

---

[10]     Defendants' procedural error precluded the Court from making a substantive ruling on the viability of Plaintiff's FMWA claim alleged at Count II. The Court declined to address Defendants' arguments for dismissal of Count II because of their mistake, and so they are not "without blame" in allowing the FMWA claim to persist. *Compare Caiazza v. Marceno*, 2021 WL 1193166, at *1 (M.D. Fla. Mar. 30, 2021) (Denying sanctions under 28 U.S.C. §1927 and finding the Defendant "is not without blame. He could have moved for summary judgment on the matter but did not do so. This left the exemption for trial.")

44.     The undersigned diligently pursued discovery in this case, including serving interrogatories and requests for production on Defendants on January 9, 2023, and then timely obtaining a hearing to address Defendants' deficient responses thereto. [*See e.g.* ECF Nos. 120, 121, 145.] The undersigned then served a second request for production on Defendants on March 14, 2023. In response to the disclosure requirements imposed by Rule 26 and the discovery requests served on them, Defendants produced tens of thousands of documents in digital format.

45.     After going back and forth, and initially claiming that the documents could not be located, Defendants ultimately located and produced digital copies of the handwritten reports the Captains at Kiki would complete at the end of each shift to document their total sales, service charges collected, and tips collected for the three of the four weeks the undersigned requested/identified (Kiki Captain Closeout). The undersigned analyzed the Captain Closeouts to calculate the total tips reported as having been received in each of the three identified weeks against the tips Defendants reported as having distributed during those weeks in their Sales By Range and Sales Summary reports. The undersigned found accounting discrepancies between the amounts reported as collected in tips and the amounts distributed in tips each week, calling into question the accuracy of Defendants' records and accounting of the tips at issue in this lawsuit:

   a. The total tips reported in the Kiki Captain Closeouts for the week of January 20-26, 2020, reflected a discrepancy of $2,984.72 with the tips Kiki reported as paying out in the Sales Summary report for the same week;

   b. The total tips reported in the Kiki Captain Closeouts for the week of November 22-28, 2021, reflected a discrepancy of $9,387.25 with the tips Kiki reported as paying out in Sales By Range Report for the same week; and

   c. The total tips reported in the Kiki Captain Closeouts for the week of February 22-27, 2022, reflected a discrepancy of $3,460.62 with the tips Kiki reported as paying out with the Sales Summary Export for the same week.

46.     Defendants, on the other hand, did not "work[] diligently" in seeking discovery and instead lollygagged by waiting until June 16, 2023, to propound any written discovery before the looming discovery cut-off of October 9, 2023. [ECF Nos. 26, 243 at ¶8.]

47.     Defendants possibly delayed serving written discovery because they always had the time and pay records for Mr. Collado. They created or possessed nearly all other records relevant to the case claims and defenses. *See, e.g.*, Statement of Earnings at KIKI000008-000014 and KIKI000040-003808 (produced in discovery by Defendants as "Confidential.")

48.     Defendants mislead the Court by claiming that the undersigned unreasonably delayed responding to their written discovery served on June 16, 2023.

    a.   Defendants neglected to acknowledge initially serving 25 initial interrogatories plus 43 requests for production (excluding sub-parts) directed to Mr. Collado and 29 Opt-Ins, totaling 750 interrogatories and 1,200 requests for production.

    b.   Defendants served revised discovery requests on July 21, 2023, that included 6 interrogatories and 10 requests for production, totaling 120 interrogatories and 300 requests for production.

    c.   Defendants failed to acknowledge the prior informal verbal agreement amongst counsel for an informal stay of discovery in favor of devoting efforts to mediate the case. (Exhibit "2.")

49.     Once the undersigned requested dates from Defendants to depose Sia Hemmati in the event the mediation proved unsuccessful on September 22, 2023, they responded by refusing to provide dates for his deposition until after they (i) received discovery responses and (ii) deposed Mr. Collado and reneged on the agreement previously struck. *Id.*

50.     The parties engaged in email exchanges not reflected on the record to confer about the pending discovery issues between October 13-18, 2023. The undersigned then prepared for and attended trial before Judge Dimitrouleas from October 30, 2023, to November 1, 2023, in *Valdivieso Figuera vs. All VIP Care Inc.*, S.D.Fla. Case No.: 0:22-CV-61553-WPD.

51.     The undersigned obtained verified answers to the interrogatories from Mr. Collado in compliance with the Court's Order [ECF No. 231] after an extensive process that started long before the hearing held on November 27, 2023, and his responses revealed information consistent with the claims pursued.[11] (*See* Exhibit Declaration of Steffany Sanguino as Exhibit "3.")

52.     Mr. Collado's verified Answers to Interrogatories [ECF No. 243-4] resulted from many discussions, including in-person discussions, with the undersigned law firm's paralegal, Steffany Sanguino. (Exhibit "3.")

53.     The undersigned coordinated to meet with Mr. Collado in person to prepare him for his deposition on Thursday, December 7, 2023.

54.     Mr. Collado discussed that the Captain had the financial responsibility to account for the money collected/charged for food and drinks, service charges, and tips. He described

---

[11]     Defendants sought no sanctions during the November 27, 2023, discovery discovery regarding these interrogatory answers, waiving the issue. [ECF No. 243-2.]

turning in the receipts to the Manager on Duty, writing the total amounts received for each type of revenue on an envelope, and how he would distribute cash tips to people who were not eligible to receive tips – such as those working in the kitchen. Mr. Collado also discussed how he was reprimanded for asking patrons to tip in cash after having done so because Defendants were not properly distributing the credit card tips.

55.     Mr. Collado explained that besides guests who paid at the time of dining, Kiki allowed certain other guests to pay at the end of the month or weeks after dining. He explained that when those checks/accounts were paid, the money would go to the office, the office would log the money as "no revenue," and he would not see any no tips distributed from the money collected.

56.     Mr. Collado further stated that Mr. Hemmati had financial management responsibilities at Kiki before they hired their CFO, and that he was "siphoning" tips and distributing them to Roman Jones, Aris Nanos, and himself, based on a discussion he had with Ciro Constanza. Mr. Collado described overhearing the conversation Mr. Constanza had with Petra Stepanik (Bar Manager) and Petra. He specifically recalled Petra's remark "You have no idea what I've seen," in regard to improprieties at Kiki.

57.     Although Mr. Collado said he believed Mr. Hemmati's daughter improperly received money from the tip pool, he acknowledged not having personal knowledge of this fact.

58.     Mr. Collado further explained how Mr. Jones would direct him and others at Kiki to not charge customers for certain items (including costly ones such as bottles of wine, champagne, or alcohol), to attend to certain things he observed, and to take certain actions to improve the guest experience at Kiki.

59.     The undersigned also discussed with Mr. Collado the difference between tips and service charges, the discrepancy between the tips the Captains reported as having received and the tips that Defendants paid out, showed him the spreadsheets reflecting the discrepancies, and discussed the significance of the discrepancy (indicating financial irregularities).

60.     Mr. Collado's two-day deposition commenced but was not completed on Tuesday, December 12, 2023 [Exhibit "1"].

61.     The morning session of Mr. Collado's deposition was largely innocuous, and during the lunch break, the undersigned ate with Mr. Collado. Although Mr. Collado disclosed certain facts he intended to bring out later that afternoon, he did not later testify to them.

62.     Mr. Collado's deposition issues evolved from at first seeming to omit facts previously disclosed (whether in a sworn statement or a statement to the undersigned), to explicitly contradicting his prior sworn statements (and statements to the undersigned), to drawing conclusions from incomplete documents that did not allow such a conclusion to be drawn,[12] to claiming confusion and that he (and everyone else) received all they tips they were entitled to receive, to ultimately acknowledging Kiki paid him all the tips left by customers.[13] [Exhibit "1" at pp. 229.]

63.     After his deposition was adjourned, and while waiting for the elevator with Mr. Collado after his deposition concluded for the day, and without the undersigned saying anything, Mr. Collado remarked "I had to tell the truth."

64.     Mr. Collado discharged the undersigned the next day. [ECF No. 233, 234.]

### III. THE LAW

**A.     Sanctions Under 28 U.S.C. §1927.**

As a penal statute, 28 U.S.C. §1927 is strictly construed. *Peterson v. BMI Refractories*, 124 F.3d 1386, 1395 (11th Cir. 1997). "[T]he statute sets out a three-prong, conjunctive test: (1) unreasonable and vexatious conduct; (2) such that the proceedings are multiplied; and (3) a dollar amount of sanctions that bears a financial nexus to the excess proceedings." *Macort v. Prem, Inc.*, 208 F. App'x 781, 785-86 (11th Cir. 2006) (citing *Peterson*, 124 F.3d at 1396.) "All three requirements must be met before sanctions are imposed." *Id.* at 786. "Something more than a lack of merit is required for § 1927 sanctions or they would be due in every case." *McMahan v. Toto*, 256 F.3d 1120, 1129 (11th Cir. 2001), *amended on reh'g*, 311 F.3d 1077 (11th Cir. 2002). That "something" is bad faith. *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003) ("'Bad

---

[12]     Defendants introduced excerpted pages from their payroll records that contained the payroll details identifying the amounts paid to Mr. Collado each week from September 6, 2019, to December 31, 2021, as Exhibits 6-9 (designated as "Confidential"). There was no way Mr. Collado could have actually verified (or calculated) whether he received all tips to which he was entitled based on the deposition Exhibits offered by Defendants. Missing was evidence or information that would have allowed for a comparison of the total weekly tips received against the total amount distributed in payroll, calculations for how the tips received were distributed, and calculations performed to go from the total tips received to the tips reported on Mr. Collado's weekly payrolls.

[13]     Mr. Collado testified that he had no basis to dispute that the amount of tips Defendants reported as having received in Exhibits 9-12 were inaccurate [Exhibit 1, pp. 192-3], despite his Answers to Interrogatories [ECF No.122-1], and his discussions with the undersigned, and his review of the spreadsheets reflecting the discrepancies between the tips calculated as having been received the Captain Reports and those reported as having been received in the Sales Summary Reports and Sales by Range Reports.

faith' is the touchstone. Section 1927 is not about mere negligence.") The Eleventh Circuit Court of Appeal stated, "§ 1927 is not a 'catch-all' provision for sanctioning objectionable conduct by counsel." *Peterson*, 124 F.3d at 1396.

> We have consistently held that an attorney multiplies proceedings "unreasonably and vexatiously" within the meaning of the statute only when the attorney's conduct is so egregious that it is "tantamount to bad faith." *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991); see also *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003) ("'Bad faith' is the touchstone.").
>
> *          *          *
>
> Thus, an attorney's conduct must be particularly egregious to warrant the imposition of sanctions—the attorney must *knowingly* or *recklessly* pursue a frivolous claim or needlessly obstruct the litigation of a non-frivolous claim. [*Emphasis in original*.]

*Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239-1242 (11th Cir. 2007). The imposition of sanctions under §1927 requires egregious conduct:

> A "high standard of bad faith" is required under § 1927. H.R. Conf. Rep. No. 1234 at 8; *e.g., Amlong*, 500 F.3d at 1241-42 (holding that "bad faith is the touchstone"). "Thus, an attorney's conduct must be particularly egregious to warrant the imposition of sanctions – the attorney must *knowingly* or *recklessly* pursue a frivolous claim or needlessly obstruct the litigation of a non-frivolous claim." *Amlong*, 500 F.3d at 1241-42 (citing *Schwartz*, 341 F.3d at 1225). Specifically, an attorney's conduct "must have a manifest effect on court processes, such as causing the multiplication of proceedings by abusive discovery tactics, reassertion of meritless claims and any other conduct resulting in the lengthening of trial proceedings." *Jenkins v. Jury*, 2009 WL 248232, at *2 (M.D. Fla. Feb. 2, 2009). And the attorney's conduct must have caused the multiplication of proceedings. *Peterson*, 124 F.3d at 1396.

*Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 2022 WL 1203562, at *10 (S.D. Fla. Mar. 29, 2022), *report and recommendation adopted in part*, 2022 WL 1793573 (S.D. Fla. June 2, 2022).

## B.     The Court's Inherent Power To Sanction.

The Court's inherent authority does not expand the availability of sanctions beyond situations contemplated by 28 U.S.C. §1927. *Cole-Parmer Instrument Co., LLC v. Prof'l Labs., Inc.*, 2023 WL 2915810, at *8 (S.D. Fla. Apr. 12, 2023) ("[T]he Court's inherent power to sanction is no broader than the authority to sanction under § 1927.") "[I]f § 1927 sanctions are impermissible, then sanctions under the court's inherent powers are also impermissible." *Agudelo v. Padron*, 2019 WL 4694145, at *5 (S.D. Fla. July 8, 2019) (citing *Amlong*, 500 F.3d at 1252.) "[T]he failure of § 1927 to support sanctions means the same is true of the Court's inherent power." *Amlong*, 500 F.3d at 1239. *Produce Pay Inc. v. Agrosale, Inc.*, 2021 WL 8895283, at *8 (S.D. Fla. Aug. 10, 2021), *report*

*and recommendation adopted,* 2021 WL 5050398 (S.D. Fla. Nov. 1, 2021)

**C.     A Hearing Is Required Before Sanctioning Counsel.**

An attorney threatened with §1927 is entitled to a hearing before sanctions are awarded. *Reynolds*, 207 F.3d 1302. No hearing is required if the Court determines that sanctions are not warranted. *See, e.g., Allen v. Robert F. DeLuca, M.D., P.A.*, 2019 WL 5578100, at *1 (S.D. Fla. Oct. 29, 2019) (denying §1927 sanctions without a hearing).

## IV. ARGUMENT

No basis exists to find that the undersigned engaged in any bad faith or vexatious conduct that would support the imposition of sanctions under 28 U.S.C. §1927 or the Court's inherent authority. Defendants go on for pages about about their contention that Mr. Collado's testimony renders the claims not viable, improperly presuming that his testimony is dispositive of the claims alleged while ignoring the stark contradictions with his prior sworn statements upon which the undersigned was entitled to rely.[14] Mr. Collado's testimony certainly convolutes the evidentiary record but does not invalidate the claims alleged. Discovery has not been completed, the discovery period has not expired, and the Court has not made a substantive determination that the pending claims are not viable. Thus, the Defendants' arguments that the undersigned knew the claims asserted were frivolous are nothing more than wishful thinking based on postulation. The undersigned's actions were objectively reasonable throughout these proceedings. The only problematic conduct involves Mr. Collado's testimony and the curious decision by Defendants and their counsel to pardon Mr. Collado for it.

**A.     Defendants' Motion Is Untimely.**

Defendants rely on *Peer v. Lewis*, 606 F.3d 1306 (11th Cir. 2010), to argue that they can pursue sanctions under §1927 after the undersigned was permitted to withdraw from the case. The Eleventh Circuit did not address whether the district court could award sanctions under §1927 based on a motion filed after it permitted Rosenbaum to withdraw from representation in *Peer*. Rather, it determined that sanctions were not warranted under §1927 and were unavailable under

---

[14]     Mr. Collado also testified inconsistent with prior statements to the undersigned, including about Mr. Jones' involvement in the day-to-day operations at Kiki (such as directing employees to bring out bottles to tables as no charge, to comp food and other items, and to bring out rounds of shots to patrons at no charge), about the cash tips he distributed to back-of-the house-employees, about Mr. Hemmati's daughter receiving tips from the tip pool, and why he believed that Mr. Hemmati was skimming tips.

Rule 11. *Id.* The Eleventh Circuit specifically found that Rosenbaum received documentation establishing (and therefore knew) that the defendant never accessed the plaintiff's credit report before filing the federal lawsuit, but nonetheless proceeding to allege a violation of the Fair Credit Reporting Act in the complaint filed in the district court the next day. After further finding "overwhelming evidence" that Rosenbaum "knowingly pursued a frivolous claim and thus acted in bad faith," the Court remanded the case to the district court with instructions to reconsider imposing sanctions under its inherent authority. *Id.* at 1316-17.

While the recommendation to consider sanctions under the Court's inherent powers in *Peer* was based on "overwhelming evidence" that went undiscovered until long after Rosenbaum withdrew, Defendants have ***no evidence*** that the undersigned knew Mr. Collado would perjure himself, disregard statements by those he was appointed to represent, or draw seemingly impossible conclusions from Exhibits of excerpted records lacking key information.[15] [ECF Nos. 243-3, 243-4, and Exhibit "1" at p 229.]

Defendants' receipt of Mr. Collado's verified Answers to Interrogatories on December 8, 2023, does not result in any parallels to *Peer*. Although the defendant in *Peer* did not obtain information that Rosenbaum knew the complaint was futile until much later, these Defendants had all the (time, pay, tip, and payroll) records for Mr. Collado and the other members of the Collective before this case was even filed but delayed 15 months, until after Mr. Collado's deposition (and after the undersigned withdrew from representation), to seek sanctions.

If Defendants sincerely believed that TAC was frivolous or drafted to prolong the proceedings, they needed to serve a Rule 11 motion, move for summary judgment, or seek sanctions shortly after it was filed on April 10, 2023 [ECF No. 122]. *Hyde v. Irish*, 962 F.3d 1306, 1311 (11th Cir. 2020) (considering the defendant's delay in denying sanctions based on the "falsity of the allegations was obvious from the face of the complaint.") Defendants' inexplicable delay renders their request for sanctions untimely, requiring denial.

**B.**     **The Undersigned Never Knowingly Or Recklessly Pursued Frivolous Claims.**

Critically absent from the Defendants' Motion is any ***actual evidence*** that the

---

[15]     Mr. Collado testified to receiving all tips left by customers without any information about who participated in the tip pool each week, the amounts or percentages assigned to each, the calculations performed, nor the total tips paid out each week according to the payroll records. [*But see* ECF No. 122-1 at 10-13.]

undersigned knew the claims pursued were "frivolous." An award of sanctions under §1927 requires the type of "clear and convincing" evidence Defendants lack. *See Peer v. Liberty Life Assurance Co. of Boston*, 2022 WL 329217, at *5 (S.D. Fla. Jan. 18, 2022) ("awarding fees pursuant to § 1927 requires clear and convincing evidence establishing objective bad faith conduct.") (*citing Hyde*, 962 F.3d at 1310.) Defendants never claim when or how the undersigned knew any claims were futile, and their inability to identify ***actual evidence*** is because the undersigned pursued ***valid claims*** against the Defendants ***supported by testimonial and documentary evidence***.

      i.   <u>The evidence established that Defendants misappropriated tips.</u>

Defendants disregard sworn statements from the parties in misrepresenting that "Defendants did not unlawfully retain and/or distribute tips." [ECF No. 243 at 15.] Through December 11, 2023, the evidence of record included:

- Declarations signed under penalty of perjury in which Mr. Collado and others formerly employed at Kiki attested to Defendants misappropriating their tips. [*See* ECF Nos. 44-1, 44-2, 65-1, 65-2, 65-3, 127-1, 127-3, 127-4, and 127-5.]

- Answers to Interrogatories by 450 North River Drive, LLC, wherein it attested that it did not "intentionally fail to distribute any tips it processed" and that any "variance" either had an explanation or was "inadvertent." [ECF No. 122-1 at Nos. 4, 19.][16]

Mr. Collado attested to his Answers to Interrogatories on December 8, 2023, wherein he attested to accounting discrepancies with the tips Defendants collected, the persons he believed misappropriated tips, and described a pertinent conversation regarding Defendants' misappropriation of tips. [ECF No. 234-4.] The undersigned's analysis of the records produced by Defendants revealed accounting abnormalities, more specifically that the amount Defendants collected in tips differed from the amounts it distributed in tips for the representative weeks reviewed. The discrepancies signaled that Defendants failed to properly and accurately account for all tips received, necessitating further discovery – including through depositions of Defendants' personnel as previously requested – had the undersigned continued as counsel in the case.

      ii.   <u>The Undersigned was blindsided by Mr. Collado's deposition testimony, which</u>

---

[16] Under the FLSA, a party's intent is not a defense to liability or damages, but only considered to determine whether to impose liquidated damages or the applicable limitations period. *See e.g.*, *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1162 (11th Cir. 2008). Under the FMWA, a party's intent is similarly relevant only to the imposition of liquidated damages and the applicable limitations period, not liability. Fla. Stat. §§95.11; 448.110(6).

<u>contradicted his verified interrogatory answers, sworn Declarations, prior
discussions with the undersigned, and other witness accounts.</u>

Defendants do not support their argument that it was "objectively unreasonable" for the undersigned to rely on Mr. Collado's sworn and unsworn statements, statements of others who worked for Defendants, or the discovery exchanged. Defendants rely *exclusively* on Mr. Collado's deposition testimony from December 12, 2023, to disclaim liability and baselessly contend the undersigned solely relied on Mr. Collado. [ECF No. 243.] Defendants cite *Estrada v. FTS USA, LLC* for the proposition that "Plaintiffs' counsel's singular reliance on what their client evidently told them was not a reasonable inquiry." 2018 WL 3697491, at *5 (S.D. Fla. July 20, 2018), *report and recommendation adopted*, 2018 WL 4777160 (S.D. Fla. Aug. 9, 2018), *aff'd*, 810 Fed. Appx. 743 (11th Cir. 2020). But *Estrada* is distinguishable because, among many reasons, the undersigned did not rely solely on Mr. Collado's unsworn statements. Defendants don't identify any "overwhelming" evidence that the claims were frivolous other than Mr. Collado's testimony. Stated another way, "there is not enough evidence to find that the [the undersigned's] actions are tantamount to bad faith." *Sutakovic v. CG RYC, LLC*, 2018 WL 2766206, at *5 (S.D. Fla. June 8, 2018).

**C.   <u>The Undersigned Did Not Cause Or Multiply Any Proceedings.</u>**

The imposition of sanctions pursuant to Section 1927 requires a finding that counsel caused "proceedings which would not have been conducted otherwise." *Daniels v. Sodexo, Inc.*, 2013 WL 4008744, at *7 (M.D. Fla. Aug. 5, 2013) (*citing Peterson*, 124 F.3d at 1396.) Here again, Defendants fail to establish that the undersigned's conduct prolonged any proceedings. Defendant's procedural error precluded the Court from addressing their substantive arguments against Count II in the Motion to Dismiss filed at ECF No. 137. [ECF No. 152.] Defendants could have taken steps to have the Court rule on the novel issues involving the FMWA but did not. Clearly, the undersigned is not responsible for Defendants' procedural errors or tactical decisions.

i.   <u>Mr. Collado's tip recovery claim under the FMWA is unaffected by his receipt of services charges.</u>

Mr. Collado's receipt of a service charge plus a reduced hourly wage does not affect Defendants' liability under the FMWA for misappropriating tips. Defendants cannot legitimately contend that they first learned that the combination of Mr. Collado's hourly wages and service charges exceeded the applicable Florida minimum wage upon receipt of his Interrogatory Answers, given that they paid him, had his time records, and produced his payroll records on December 20,

2022. Regardless, the undersigned's theory of recovery under the FMWA was not dependent upon the amount Mr. Collado received in total wages. By contending the FMWA incorporated 29 U.S.C. §203(m)(2)(B) upon its enactment in 2018, which provision permits recovery of tips improperly distributed regardless of the wage paid, the total wage paid is immaterial. The arguments that the FMWA permits a cause of action for tip recovery by incorporating 29 U.S.C. §203(m)(2)(B) were argued in the Responses filed at ECF Nos. 142 and 143.

      ii.    <u>Advancing a novel claim that has not been decided precludes sanctions.</u>

The law does not permit the imposition of sanctions against counsel for pursuing a novel legal theory. *Suazo v. NCL (Bahamas), Ltd.*, 822 F.3d 543, 556 (11th Cir. 2016)("Where an appeal requires a court to decide an issue of first impression in a circuit court, it is not frivolous"); *see also Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998) ("However, the purpose of Rule 11 is to deter frivolous lawsuits and not to deter novel legal arguments or cases of first impression.")).

> Where no previous court has considered a particular or novel issue, sanctions under § 1927 generally are disfavored. *See Proctor & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 531-32 (5th Cir.2002); *Serrato by & Through Serrato v. John Hancock Life Ins. Co.*, 31 F.3d 882, 887 n. 2 (9th Cir.1994).

*Torres v. City of Madera*, 2006 WL 3257491, at *4 (E.D. Cal. Nov. 9, 2006). Advancing a novel legal theory does not amount to the objectively bad faith conduct. *Tolliver v. Youfit Health Clubs, LLC*, 2019 WL 13246553, at *5 (M.D. Fla. June 11, 2019) (denying §1927 sanctions for pursuing "a somewhat novel issue.") Defendants postulate that the undersigned's theory of liability is not viable, but cannot point to a dispositive ruling by this or any Court on the issue.

**D.    <u>Sanctions Under 28 U.S.C. §1927 Are Unavailable For The Filing Of The Third Amended Complaint.</u>**

Defendants request the Court sanction the undersigned for filing the Third Amended Complaint. They contend that filing that pleading was "frivolous," but 28 U.S.C. §1927 does not authorize the Court to sanction counsel for filing a complaint.

> "The filing of a complaint may be sanctioned pursuant to Rule 11 or a court's inherent power, but it may not be sanctioned pursuant to § 1927." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir.1996).

*Macort v. Prem, Inc.*, 208 Fed. Appx. 781, 786 (11th Cir. 2006); *see also Fox v. Ritz-Carlton Hotel Co., LLC*, 2022 WL 2802910, at *5 (S.D. Fla. July 18, 2022) ("Initially, challenges to the merits or good faith bases for the filing of pleadings are more appropriately asserted pursuant to Federal Rule of

Civil Procedure 11, which addresses frivolous and legally unsupported claims, defenses and other legal contentions.") Therefore, Defendants cannot recover sanctions based on the filing of any iteration of the complaints filed herein. Defendants likewise waived any issue with any of the Complaints by failing to pursue the recourse provided by Rule 11 in a timely manner. *Hyde*, 962 F.3d 1310-11.

**E.    The Court Properly Considers The Imposition Of Sanctions Against Defendants And Their Counsel For Vexatiously Pursuing Sanctions Only Against The Undersigned In Bad Faith.**

Defendants and their counsel unnecessarily prolonged these proceedings by improperly seeking hundreds of thousands of dollars in sanctions from the undersigned without any evidence of misconduct. After the undersigned (and the members of the Collective) were victimized by Mr. Collado's apparent epiphanies in deposition on December 12, 2023, Defendants now seem to reward him by seeking sanctions from the undersigned. Their baseless pursuit of the undersigned while pardoning Mr. Collado is troubling. *But see Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017). While Mr. Collado's testimony created disputed issues of fact that did not previously exist, other members of the Collective have already and may hereafter offer contrary testimonial and documentary evidence. Defendants and their counsel know that disputed record evidence does not render a claim futile or pursued in bad faith. Yet, they pursue the undersigned (only). The undersigned urges the Court to consider whether its inherent authority is more appropriately employed to sanction Defendants and their counsel for vexatiously prolonging the undersigned's exit from this case. *Osorio v. Art Landscaping, Corp.*, 2017 WL 3730989, at *2 (S.D. Fla. Aug. 11, 2017) (citing *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998).

## V.    CONCLUSION

The undersigned requests the Court deny the Defendants' request for sanctions pursuant to 28 U.S.C. §1927 and the Court's inherent authority. The undersigned further requests the Court to impose the appropriate sanctions on Defendants and their counsel based on its inherent authority for vexatiously and unnecessarily engaging in bad faith conduct that has unnecessarily prolonged these proceedings.

Respectfully submitted this 9th day of February 2024,

<div style="margin-left: 40%">

Brian H. Pollock, Esq.
Brian H. Pollock, Esq.
Fla. Bar No. 174742
brian@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, FL 33146
Tel:    305.230.4884

</div>