UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:22-CV-23074-BLOOM/Torres

OCTAVIO COLLADO
For himself and all others similarly situated,

    Plaintiff,

v.

450 NORTH RIVER DRIVE, LLC,
D/B/A KIKI ON THE RIVER,
RJ RIVER, LLC, AND ROMAN JONES,

    Defendants.
_____/

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927 AND THE COURT'S INHERENT POWER AGAINST BRIAN POLLOCK, ESQ., AND <u>FAIRLAW FIRM WITH SUPPORTING MEMORANDUM OF LAW</u>**

**PRELIMINARY STATEMENT**

Defendants, 450 North River Drive, LLC, d/b/a Kiki on the River ("Kiki"), RJ River, LLC, ("RJ"), and Roman Jones ("Mr. Jones") (collectively "Defendants"), hereby file this Reply in Support of Their Motion for Sanctions against Brian Pollock, Esq., ("Mr. Pollock") and FairLaw Firm ("the Firm") (collectively "Counsel"), and state as follows.

Defendants' Motion for Sanction was filed timely. The Eleventh Circuit has confirmed that district courts may sanction attorneys under Section 1927 and the Court's inherent power even after the attorney withdraws from the case. Accordingly, this Court has the authority to sanction Counsel.

Additionally, sanctions are warranted because Counsel vexatiously multiplied these proceeding by asserting a claim for violations of the Florida Minimum Wage Act ("FMWA") without any basis in fact or law. Counsel falsely claims in his Response to the Motion for Sanctions ("the Response") that he was pursuing the FMWA claim based on a "novel legal theory." [ECF No. 250 at pp. 3, 20]. That is inaccurate as Counsel actually claimed a minimum wage violation in the Third Amended Complaint under the FMWA on the basis of a well-known and frequently alleged tip credit violation theory. [ECF No. 122 at pp. 17-29].

Specifically, Counsel made false allegations in the Third Amended Complaint when he claimed that Plaintiff was paid a "'tip credit' wage" and that Kiki "paid Plaintiff . . . a direct hourly wage below the direct minimum hourly wage required by the FMWA" in a bad faith attempt to get around the Court order dismissing the Second Amended Complaint. [ECF No. 122 at pp. 18-20, 23-24]. Counsel made these false claims while knowing the allegations could not be supported by the facts of this case, and after the Court instructed him that he had to plead Plaintiff was paid below the Florida minimum wage to establish an FMWA claim.

1

Significantly, Counsel admits in the Response that Plaintiff's "hourly wages and service charges exceeded the FMWA amount" and claims it "was never disputed" [ECF No. 250 at p. 2]. However, the allegations in Count II of the Third Amended Complaint demonstrate that Counsel did dispute what he now admits as the truth. If it was never in dispute that Plaintiff's hourly wages and service charges exceeded the Florida minimum wage, then why did Counsel allege in the Third Amended Complaint that Plaintiff was paid a "'tip credit' wage" and that Kiki "paid Plaintiff . . . a direct hourly wage *below the direct minimum hourly wage required by the FMWA*? [ECF No. 122 at pp. 18-20, 23-24] (emphasis added). Also, why does Counsel state in his FMWA pre-suit letter seeking payment of **$18,928,000.00** that the FMWA claim is for "*unpaid minimum wages (including tips)*"? [ECF No. 243 at Exhibit A] (emphasis added). The answer to those questions is clear - to multiply the proceeding in bad faith by relying on allegations that Counsel *now* admits are false.

Incredibly, Counsel suggests that because Defendants knew his allegation in the Third Amended Complaint were false, the false allegations constitute "no harm, no foul." Counsel's theory, however, disregards that it took over one year of litigation, Plaintiff's concessions in the interrogatories and deposition, the termination of Counsel by Plaintiff, and the motion for sanctions for Counsel to admit the truth - that Plaintiff was paid minimum wage during his employment with Kiki.

Counsel makes additional misrepresentations to this Court in the Response. First, Plaintiff implies in the Response that the Court "denied [Defendants'] prior request to sanction [Counsel] under Rule 11[,]" which is false. [ECF No. 250 at p. 3]. Defendants never filed a Motion for Sanctions pursuant to Rule 11 against Counsel. Second, Counsel claims Defendants admitted to liability through their interrogatory answers, which is also untrue. Defendants never admitted that

2

tips were improperly distributed or retained by any individuals that were not entitled to tips. In reality, the interrogatory answers in question state that "Kiki distributed all tips that were processed by the restaurant from credit card transactions to tipped employees" and that "[a]ny variance that may exist[]" pertains to "the distribution of those tips to tipped employees."

Finally, Defendants withdraw their argument that Counsel should be sanctioned based on his failure to ascertain, prior to and after filing the Third Amended Complaint, that Plaintiff received all his cash and credit card tips, and that Plaintiff did not know the difference between service charges and tips as reflected in Plaintiff's sworn deposition testimony. When Defendants filed their Motion for Sanction, they relied on the sworn record evidence it ascertained from Plaintiff's sworn interrogatory answers and deposition testimony. At that time, the record evidence Defendants ascertained established that Plaintiff, testifying on behalf of the entire collective, stated he was not aware until his deposition that an employer could lawfully do whatever it wanted with a service charge. That record evidence also confirmed that Plaintiff was always paid above the Florida minimum wage and received all tips to which he was entitled. However, Counsel has now disclosed his confidential and privileged attorney-client conversations with Plaintiff and asserted that he discussed the differences between service charges and tips with Plaintiff and Plaintiff conveyed to him that he was owed "tips." As a result of Counsel's summaries of the privileged conversations he disclosed, Defendants withdraw their request for sanctions based on Plaintiff's sworn testimony regarding service charges and receiving all his tips.

## **RELEVANT FACTUAL AND PROCEDURAL HISTORY**

1. Counsel alleged in the First Amended Complaint that Plaintiff was paid "an hourly rate of pay, supplemented by a non-discretionary service charge and by gratuities left at the discretion of Defendants' patrons." [ECF No. 40 at ¶ 30]. However, Counsel did not allege that

3

Plaintiff was paid a total hourly wage that was less that the applicable Florida minimum wage. Accordingly, Defendants filed their Motions to Dismiss the First Amended Complaint, arguing in part, that Plaintiff failed to allege he earned less than the Florida minimum wage and/or paid a tip credit wage. [ECF Nos. 55 at p. 9; 56].

2.  Counsel did not oppose Defendants' Motions to Dismiss and elected to file a Second Amended Complaint. Counsel tried to circumvent the requirements of the FMWA by claiming in the Second Amended Complaint that Plaintiff was paid "a direct hourly rate of pay that was less than the applicable Florida or federal minimum wage, supplemented by a portion of a non-discretionary service charge Defendants received, and further supplemented by [a] portion of the gratuities left at the discretion of Defendants' patrons." [ECF No. 59 at ¶ 28].

3.  Defendants moved to Dismiss the Second Amended Complaint arguing, in part, that Plaintiff still did not allege he was paid a total hourly rate that was less than the Florida minimum wage when considering the service charge payments and/or paid on a tip credit basis to permit him to pursue an FMWA claim. [ECF Nos. 63 at p. 9; 69 at p. 6-8].

4.  The Court granted Defendants' Motion to Dismiss the Second Amended Complaint, in part, and dismissed Plaintiff's FMWA claim without prejudice. Notably, the Honorable Judge Beth Bloom stated that the FMWA claim could only be maintained if Plaintiff was paid less than the applicable Florida minimum wage or was paid a tip credit wage. [*See* Trans. Of Motion Hearing Before the Honorable Beth Bloom United States District Court Judge dated March 29, 2023, attached hereto as **Exhibit "A"**]. Specifically, the Court stated the following:

> Court: Well, the FMWA requires that employers shall pay employees wages no less than the minimum wage for all hours worked. So what allegation would support the cause of action?
>
> And then 448.110 States that: "For tipped employees meeting eligibility requirements for the tip credit under the FLSA, employers may credit towards

4

> satisfaction of the minimum wage tips up to the amount of the allowable FLSA tip credit."
>
> So once again, where would the Court find the allegation that Mr. Collado was paid less than the minimum wage to sustain a cause of action with regard to Count 2?
>
> . . .
>
> Court: Then perhaps we should look at the law. You cited the *Biller* case. And it appears to the Court – and I think that Defendants' argument has merit in its reply – that, in that case, it's only when the employer is taking a tip credit to reach the minimum wage. And it's unclear whether Mr. Collado was paid on a tip credit basis because there is a failure to allege that the direct hourly rate paid, plus the percentage of the amount he received [from the service charge], was below the minimum wage.
>
> So tell me how the law supports the claim as alleged. ***And I think, quite frankly, it requires that Mr. Collado allege that he is being paid less than the minimum wage. And I am failing to see how you can actually get around that requirement.***

[*Id.* at 15:1-11; 17:4-17] (emphasis added).

5. On April 7, 2023, Counsel filed the Third Amended Complaint. [ECF No. 122]. Counsel failed to allege in the Third Amended Complaint what he knew to be true - and what he previously alleged, that Plaintiff was paid a direct wage that was supplemented by a portion of the service charge. Instead, Counsel alleged under the FMWA claim that Plaintiff was paid a "'tip credit' wage" and that Kiki "paid Plaintiff . . . a direct hourly wage below the direct minimum hourly wage required by the FMWA." [ECF No. 122 at pp. 18-20, 23-24].

6. Contrary to Counsel's claims, the omission that Plaintiff was also paid a service charge was a material exclusion. It was a material omission because it allowed Counsel to instead falsely allege that Plaintiff was paid a "'tip credit' wage" and "below the direct minimum hourly wage required by the FMWA" to get around Judge Bloom's prior order. Specifically, Counsel lied in the Third Amended Complaint to get around Judge Bloom's basis for the dismissal pertaining to the FMWA claim in the Second Amended Complaint.

5

**MEMORANDUM OF LAW**

    I.    **Defendants' Motion for Sanctions is Timely**

A district court has the authority and power to sanction an attorney even after the attorney withdraws from the case. *See Peer v. Lewis*, 606 F.3d 1306, 1316-17 (11th Cir. 2010); *see also, Jallali v. USA Funds*, 578 Fed. Appx. 965, 965-66 (11th Cir. 2014). As Counsel recognizes in the Response, the Eleventh Circuit explained in *Peer* that sanctions pursuant to the Court's inherent power could be awarded ***after*** the attorney withdrew from the case, and it remanded the issue to the district court for further review. 606 F.3d 1306, at 1316-17. Similarly, the Eleventh Circuit has confirmed that under Section 1927, a district court may sanction an attorney regardless of whether the attorney in the case withdrew before the sanctions were awarded. *See Jallali v. USA Funds*, 578 Fed. Appx. at 965-66 (stating Section 1927 "plainly applies to 'any attorney . . . admitted to conduct cases and is not limited to the current attorney of record at the time a sanction is made.'").

Moreover, Counsel incorrectly suggests that Defendants could have filed a Rule 11 motion for sanctions or motion for summary judgment prior to receiving Plaintiff's sworn interrogatory answers on December 8, 2023, and taking his deposition on December 12, 2023. Prior to then, the allegations in the Third Amended Complaint, and Plaintiff's Statement of Claim and declaration, which were prepared by Counsel, disputed Kiki's "time, pay, tip, and payroll records." Those factual disputes would defeat a Rule 11 motion and motion for summary judgment. As a result, Defendants had to establish that the allegations contained in the Third Amended Complaint, and Plaintiff's Statement of Claim and declaration, were false prior to moving for sanctions or summary judgment. In fact, Defendants served Counsel with a Rule 11 motion on December 20, 2023, only eight days after the deposition, which was not filed because he withdrew from the case.

6

## II. Counsel Multiplied Proceedings by His Bad Faith Pursuit of the FMWA Claim in the Third Amended Complaint based on Knowingly False Allegations

Counsel did not purse the FMWA claim in the Third Amended Complaint based on a "novel legal theory." He pursued the FMWA claim in the Third Amended Complaint based on a frequently alleged minimum wage violation premised on knowingly false allegations that Plaintiff was paid a "'tip credit' wage" and that Kiki "paid Plaintiff . . . a direct hourly wage below the direct minimum hourly wage required by the FMWA." Significantly, Counsel now admits that Plaintiff was always paid above the Florida minimum wage. [*See* ECF No. 250 at p. 2].

As discussed above, Counsel alleged in the First and Second Amended Complaint that Plaintiff was paid (1) a direct hourly wage, (2) a portion of the mandatory service charge that Kiki applied to every patron's bill, and (3) discretionary tips left by customers. [ECF No. 40 at ¶ 30; ECF No. 59 at ¶ 28]. Similarly, Counsel submitted a signed and sworn declaration from Plaintiff confirming that Plaintiff was paid a directly hourly wage that was supplemented by the mandatory service charge. [ECF No. 44-1].

Defendants' filed Motions to Dismiss the First and Second Amended Complaint arguing, in relevant part, that they did not establish a claim under the FMWA because they failed to allege that Plaintiff was (1) paid a total hourly wage, including the service charge, that was less than the Florida minimum wage and/or (2) that he was paid a tip credit wage and was not given all the tips he earned to meet the Florida minimum wage. [ECF Nos. 55 and 63]. Judge Bloom held a hearing on Defendants' Motion to Dismiss the Second Amended Complaint on March 29, 2023. At the hearing, the Court explained to Counsel that under the applicable law as reflected in *Biller v. Café Luna of Naples, Inc.*, No.2:14cv659, 2017 U.S. Dist. LEXIS 234991, at *11-12 (M.D. Fla. Feb. 7, 2017), tips are only factored into an employee's wages when the employer takes a tip credit, and the Second Amended Complaint failed to allege that (1) Defendants took a tip credit or (2) Plaintiff

7

was paid less than minimum wage. [*See* Hearing Trans., Ex. A. at 15:1-11; 17:4-17].

To circumvent the Court's basis for dismissal of the FMWA claim in the Second Amended Complaint, Counsel amended the Third Amended Complaint in bad faith by omitting all references to the service charge payments and claiming for the first time in a pleading that Plaintiff was paid only a "'tip credit' wage" and below the Florida minimum wage. Counsel's decision to exclude the service charge payments and knowingly include false allegations in his signed pleading was a calculated and intentional act to mislead the Court and overcome the basis for the dismissal of the FMWA claim in the Second Amended Complaint.[1] Therefore, sanctions are proper under Section 1927 and/or this Court's inherent power.[2]

### III. Counsel's Other Misrepresentations Contained in the Response

Counsel claimed in the Response that this Court should deny Defendants' Motion for Sanctions on the false premise that "it denied their prior request to sanction [Counsel] under Rule 11." [ECF No. 250 at p. 3]. Defendants did *not* file a Rule 11 Motion for Sanctions against Counsel. Moreover, Counsel also falsely claimed that Defendants "admitted to liability" through their interrogatory answers. [ECF No. 25 at ¶ 30, p.18]. In Interrogatory No. 4, Plaintiff asked

---

[1] Counsel's implication that Defendants are not entitled to sanctions against him because of the technical misstep of filing a motion to strike before the Motion to Dismiss the Third Amended Complaint is a red herring and absurd. A technical misstep does not change the fact that Counsel previously made false allegations in the Third Amended Complaint and cannot excuse his bad faith behavior. Further, the case cited by Counsel to "support' his claim is distinguishable. In *Caiazza v. Marceno*, the defendant did not move for summary judgment on an issue and allowed it to proceed to trial. Here, discovery was still ongoing, and Defendants intended to move for summary judgment, but Counsel withdrew from the case and the matter is now dismissed. [ECF No. 252].

[2] Counsel claims incorrectly that sanctions for filing the Third Amended Complaint are not available under Section 1927. [ECF No. 250 at p. 20]. Courts have held that sanctions may be awarded under Section 1927 when the plaintiff files **amended complaints** to multiply litigation. *See Squitier v. Nocco*, No. 8:19-cv-0906, 2022 U.S. Dist. LEXIS 71183, *15-18 (M.D. Fla. April 18, 2022). Here, Counsel filed the Third Amended Complaint to vexatiously multiply the litigation by falsely maintaining a non-existent FMWA claim.

Defendants to "Describe all facts that support any defense that Plaintiff's claims for unpaid/underpaid tips and/or overtips are barred, overstated, and/or unrecoverable." Kiki answered as follows:

> ***Kiki distributed all tips that were processed by the restaurant from credit card transactions to its tipped employees in accordance with all applicable laws and its tip payment policies***. Any variance that may exists between the tips the restaurant processed from credit card transactions and the ***distribution of those tips to tipped employees***, have related explanations and where an explanation is not apparent, the variance was inadvertent and would have been corrected had it come to the restaurant's attention. Kiki is unaware of a single instance when any of the Plaintiffs complained that they did not receive all their tips. Kiki never handles cash tips. Cash tips are accepted by the Captains and distributed as they see fit without oversight or interference by Kiki.

In Interrogatory No. 19, Plaintiff asked Defendants to "state whether Kiki failed to distribute tips/overtips it received, and if so, state all the reasons why Kiki failed to do so, the amount it believed it failed to distribute each week, the weeks at issue, the amount of money that should have been distributed, and to whom." Kiki responded as follows:

> Subject to the above objections and limited to a three (3) year period, Defendant did not intentionally fail to distribute any tips it processed. Any variance that may exists between the tips the restaurant processed from credit card transactions and ***the distribution of those tips to tipped employees***, have related explanations and where an explanation is not apparent, the variance was inadvertent and would have been corrected had it come to the restaurant's attention. Kiki is unaware of a single instance when any of the Plaintiffs complained that they did not receive their tips.

It is clear from Kiki's answers to Interrogatories 4 and 19, that Defendants did not admit they unlawfully distributed tips. Thus, Counsel's claim that Defendants "admitted to liability" is false.

### IV. **Defendants Withdraw Their Request for Sanctions Based on Counsel's Failure to Ascertain that Plaintiff Received all His Tips and that Plaintiff did not Know the Difference Between Service Charges and Tips**

When Defendants filed their Motion for Sanctions, the sworn record evidence Defendants ascertained established that Plaintiff received all his tips and that Counsel failed to explain to Plaintiff the difference between service charges and tips. Therefore, the Motion for Sanctions

9

pertaining to this issue was properly filed. Counsel has now disclosed in the Response, his attorney-client privileged communications with Plaintiff; during which Counsel claims that he discussed the differences between service charges and tips with Plaintiff and that Plaintiff told him he was owed "tips." [ECF No. 250 at ¶¶ 6, 59]. Defendants did not know about those privileged communications when the motion for sanctions was filed. Also, Defendants were not privy to them, so they cannot be disputed. Thus, this basis for sanctions is withdrawn.

Counsel's suggestion that Defendants should have known Plaintiff understood the legal distinction between service charges and tips has no merit. While Counsel identifies a declaration Plaintiff signed, that and the other declarations merely state that Defendants included an automatic service charge to patrons' bills and that patrons were permitted to leave a discretionary tip above the service charge. [ECF No. 44-1 at ¶¶ 7-8, 44-2 at ¶¶ 7-8]. Critically, the declarations do ***not*** confirm that Plaintiff or any Opt-in Plaintiffs were told about and understood the differences between service charges and tips. Moreover, Defendants were entitled to depose Plaintiff on the veracity of the allegations in the Third Amended Complaint and his declaration. For all Defendants knew, Plaintiff was given documents that were never explained or read, and he just signed them.

WHEREFORE, Defendants respectfully request that this Honorable Court grant Defendants' Motion for Sanctions pursuant to Section 1927 and/or its inherent powers as it relates to the frivolous FMWA claim contained in the Third Amended Complaint that was filed in bad faith, and award Defendants' their reasonable attorneys' fees and costs incurred in having to defend against that claim[3] and award any other and further relief as the Court deems just and proper.

---

[3] Pursuant to Local Rule 7.3, Defendants will confer with Plaintiff's Counsel regarding the amount of attorneys' fees and costs to be awarded upon the granting of Defendants' Motion for Sanctions under Section 1927 and/or the Court's inherent power. If an agreement cannot be reached, Defendants will file a motion to determine the amount of attorneys' fees and costs to be awarded.

CASE NO.: 1:22-CV-23074-BLOOM/Torres

Dated: February 16, 2024

Respectfully submitted,

| | |
|---|---|
| JACKSON LEWIS P.C.<br>One Biscayne Tower, Suite 3500<br>Two South Biscayne Boulevard<br>Miami, Florida 33131<br>Telephone: (305) 577-7600 | Levine & Partners, P.A.<br>3350 Mary Street<br>Miami, Florida 33133<br>Telephone: (305) 372-1352 |
| /s/ *Reynaldo Velazquez*<br>Reynaldo Velazquez, Esq.<br>Florida Bar No.: 069779<br>Email: *rey.velazquez@jacksonlewis.com*<br>Roman Sarangoulis, Esq.<br>Florida Bar No. 1011944<br>Email: *roman.sarangoulis@jacksonlewis.com* | /s/ *Allan Reiss*<br>Allan Reiss, Esq<br>Florida Bar No. 858500<br>Email: asr@levinelawfirm.com<br><br>*Counsel for RJ River, LLC* |

*Counsel for 450 North River Drive, LLC,*
*d/b/a Kiki on the River and Roman Jones*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document is being served on February 16, 2024, on all counsel of record on the Service List below via transmission of Notices of Electronic Filing generated by CM/ECF

*s/ Roman Sarangoulis*
Roman Sarangoulis, Esq.

CASE NO.: 1:22-CV-23074-BLOOM/Torres

**SERVICE LIST**

Brian Pollock, Esq.
Florida Bar No. 174742
Email: *brian@fairlawattorney.com*
FAIRLAW FIRM
135 San Lorenzo Ave.
Coral Gables, Florida 33146
Telephone: (305) 230-4884

*Attorneys for Plaintiff*

Reynaldo Velazquez, Esq.
Florida Bar No.: 069779
Email: *rey.velazquez@jacksonlewis.com*
Roman Sarangoulis, Esq.
Florida Bar No. 1011944
Email: roman.sarangoulis@jacksonlewis.com
JACKSON LEWIS P.C.
One Biscayne Tower
2 South Biscayne Boulevard, Suite 3500
Miami, Florida 33131
Telephone: 305-577-7600
Facsimile: 305-373-4466

*Counsel for 450 North River Drive, LLC, Kiki on the River and Roman Jones*

Allan Reiss, Esq.
Florida Bar No. 858500
Email: *Asr@Levinelawfirm.com*
Levine & Partners, P.A.
3350 Mary Street
Miami, Florida 33133
Telephone: (305) 372-1352
Facsimile: (305) 372-1352

*Attorneys for RJ River, LLC*