# EXHIBIT A

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF FLORIDA
 2                         MIAMI DIVISION
                    CASE NO. 1:22-cv-23074-BB
 3
    OCTAVIO COLLADO,
 4  for himself and all others
    similarly situated,
 5
            Plaintiffs,                March 29, 2023
 6                                     9:03 a.m.
            vs.
 7
    450 NORTH RIVER DRIVE, LLC,
 8  d/b/a KIKI ON THE RIVER,
    RJ RIVER, LLC, and ROMAN JONES,
 9
            Defendants.               Pages 1 THROUGH 33
10  _____

11                  TRANSCRIPT OF MOTION HEARING
                BEFORE THE HONORABLE BETH BLOOM
12                  UNITED STATES DISTRICT JUDGE

13  Appearances:

14  FOR THE PLAINTIFF:   FAIRLAW FIRM
                         BRIAN H. POLLOCK, ESQ.
15                       135 San Lorenzo Avenue, Suite 770
                         Coral Gables, Florida 33146
16
    FOR DEFENDANT 450:   JACKSON LEWIS, PC
17                       REYNALDO VELAZQUEZ, ESQ.
                         Two South Biscayne Boulevard, Suite 3500
18                       Miami, Florida 33131

19  FOR DEFENDANT        LEVINE & PARTNERS
    RJ RIVER:            ALLAN S. REISS, ESQ.
20                       3350 Mary Street
                         Miami, Florida 33133
21
    COURT REPORTER:      Yvette Hernandez
22                       U.S. District Court
                         400 North Miami Avenue, Room 10-2
23                       Miami, Florida 33128
                         yvette_hernandez@flsd.uscourts.gov
24

25
```

```
1              (Call to order of the Court, 9:03 a.m.)

2              COURTROOM DEPUTY:  Calling Civil Case Number 22-23074,

3       Octavio Collado v. 450 North River Drive, LLC, et al.

4              Counsel, please state your appearances for the record,

5       beginning with Plaintiffs' counsel.

6              MR. POLLACK:  Good morning, Your Honor.  Brian Pollock

7       for the Plaintiff, Mr. Collado, and the opt-in Plaintiffs.

8              THE COURT:  Hi.  Good morning.

9              MR. VELAZQUEZ:  Good morning, Your Honor.  Reynaldo

10      Velazquez on behalf of the Defendants.

11             MR. REISS:  Good morning, Your Honor.  Allan Reiss on

12      behalf of the Defendant RJ River, LLC.

13             THE COURT:  Good morning to each of you as well.

14             And for hearing this morning is Docket Entry 63, the

15      Defendants' motion to dismiss the Second Amended Complaint.

16      There are three counts within the Second Amended Complaint, and

17      the basis of the motion is with regard to Count 1.  It

18      conflates a claim for unlawful tip retention with a claim for

19      minimum wage violation.

20             As to Count 2, the Defendants allege that the

21      Plaintiff has failed to properly allege that he was paid less

22      than the minimum wage.

23             And Count 3, there is a question as to whether there's

24      a common law cause of action.

25             So to that extent, let me dispense very quickly with
```

1    the Plaintiffs' claim that the Defendant has waived its right

2    to file this motion to dismiss.  And I do not believe that

3    there's been a waiver.  So we'll proceed with the merits of the

4    motion.

5            So Mr. Velazquez or Mr. Reiss, since it is your

6    motion?

7            MR. VELAZQUEZ:  Thank you, Your Honor.

8            May I approach?

9            THE COURT:  Yes.  Of course.

10           And if you feel more comfortable at counsel table -- I

11   know that you may have some items, but whatever is your

12   pleasure, sir.

13           MR. VELAZQUEZ:  I'll approach.

14           May it please the Court, Your Honor.  Reynaldo

15   Velazquez on behalf of the Defendants.

16           So we'll start today, Your Honor, with actually Count

17   2, because I think it's a good lead-in into the argument with

18   respect to Count 1.  And the main thrust of the argument from

19   the Defendants with respect to Count 2 is that the Florida

20   Minimum Wage Act, Your Honor, does not provide a cause of

21   action to recover tips.  It's plain and simple.

22           And if you look at the structure of the law, it's very

23   self-explanatory of what the Defendants' position is.  And the

24   law itself says that the Florida Minimum Wage Act -- the

25   purpose of it is to provide measures appropriate for the

1    implementation of Section 24, Article 10, of the Florida

2    Constitution.

3            And when you look at Section 24, Article 10, of the

4    constitution, this is what it says, Your Honor, quote:

5    Employers shall play employees wages no less than the minimum

6    wage for all hours worked in Florida, end quote.  Nothing about

7    minimum wages there, Your Honor.  That's all it says.  There's

8    nothing in the Florida Constitution providing an employee a

9    constitutional right to recover tips.  There's nothing in the

10   Florida Minimum Wage Act that gives employees a right to

11   recover tips.  And there's nothing in the constitution or the

12   Florida Minimum Wage Act that provides for a cause of action to

13   recover tips, Your Honor.

14           So that leads us to the portion of the allegations of

15   the actual complaint.  If the Florida Minimum Wage Act does not

16   provide a cause of action to recover tips, then Count 2 must

17   try to allege a minimum wage violation, if that's what

18   Plaintiff is intending to do.

19           THE COURT:  That's somewhat belied by the allegations,

20   where within Count 2 it speaks of distributing a portion of the

21   tips.

22           MR. VELAZQUEZ:  Absolutely, Your Honor.  And if you

23   look at Count 1, it even confirms what the Court's concern is.

24   It's replete with allegations of:  This case is about

25   recovering tips.  It's not about minimum wage violations.  And

1   significantly, with respect to the Florida Minimum Wage Act

2   count, is that there's allegations in there that says, quote:

3   "Plaintiffs were paid below" -- strike that.  Quote:  "The

4   direct wage," end quote, that Plaintiffs were paid is below the

5   minimum wage.

6          But that disregards the very next allegations that are

7   all over the complaint that says that they also received a

8   service charge.  And the reason why you don't see that, Your

9   Honor, is because they cannot allege that.  When you put the

10  service charge with the direct wage these individuals were

11  paid, they are far in excess of the Florida minimum wage and

12  the federal minimum wage, Your Honor.

13         THE COURT:  All right.  And with regard to Count 3 --

14  because you somewhat had me at hello with regard to Count 1.

15  And that's clear just based on the prayer for relief with

16  regard to Count 1, that it certainly appears to conflate the

17  claim for the unlawful tip retention with the minimum wage

18  violation.  But I do want to address Count 3 with regard to the

19  common law claim for relief.

20         And I understand that two of the individuals may have

21  contracts, but I just want to address the common law claim

22  where it appears that the FLSA and the Florida Minimum Wage Act

23  appear to somewhat occupy the area that is the subject of the

24  Plaintiffs' Second Amended Complaint.  Can you address that,

25  please.

1          MR. VELAZQUEZ:  Absolutely, Your Honor.  It will be my

2     pleasure.

3          So when analyzing a common law claim, whatever the

4     common law theory is cannot be inconsistent with Florida law,

5     or federal law, for that matter.  And the Supreme Court, Your

6     Honor, has specifically said, right, that any type of a claim

7     pertaining to common law has to be consistent.

8          So what do you do?  You start by looking at, then, the

9     Florida Constitution.  And what does the Florida Constitution

10    refer to when it speaks to wage?  It refers to the FLSA and the

11    regulations, Your Honor.  And this is what the FLSA says with

12    respect to tips and wages.  Okay?  And -- well, let me quote

13    the Florida Supreme Court with respect to what it says, because

14    it's significant.  And I found the page here it says, quote:

15    "For a principle of law to be governed by the common law in

16    Florida, that principle must not be inconsistent with the

17    constitution and the laws of the United States or the acts of

18    the legislature of this state."

19          Now -- so we go to the constitution, Your Honor.  And

20    the constitution states as follows, quote:  "Wages shall have

21    the meaning established under the FLSA and its implementing

22    regulations."

23          So now we go to the FLSA.  Right?  And this is what

24    the FLSA says with respect to wages, Your Honor.  It says,

25    quote:  "In determining wages, an employer is required to pay a

1  tipped employee the required amount paid such employee by the

2  employee's employer.  And it shall be equal to the following:

3  The cash wage paid by the employer," which is the direct wage

4  Your Honor, "and an additional amount on account of the tips

5  received by such employee, which amount is equal to the

6  difference between the direct wage paid by the employer and the

7  federal minimum wage."

8           Now, significantly, you take that -- and that is what

9  the statute then says, quote:  "As used in this section, the

10 regular rate shall not be deemed to include sums paid as gifts

11 as a reward for service."  Okay?

12          Now you take a step further, Your Honor, and you go to

13 the regulations to see what the regs say, because that's what

14 the Florida Constitution is telling us to do, Your Honor.  And

15 this is what the regs say:  "Any tips received by the employee

16 in excess of the tip credit need not be included in the regular

17 rate.  Such tips are not payments made by the employer," Your

18 Honor, "to the employee as remuneration for employment within

19 the meaning of the act."

20          And then there's another regulatory section that

21 states as follows, quote:  "A tip is a sum presented by a

22 customer as a gift or gratuity" -- by a customer, not the

23 employer, Your Honor -- "as a gift or gratuity, in recognition

24 for some service performed for the customer.  Whether the tip

25 is to be given and the amounts are matters determined solely by

1    the customer," end quote.

2          Your Honor, we respectfully submit when you look at

3    what the Florida Constitution directs everybody to look at for

4    purposes of what the definition of wage means, it does not mean

5    tips that are discretionary, which is what we're talking about

6    here.  Because there is no allegation in this complaint, Your

7    Honor, that these employees were paid on a tip credit basis.

8          THE COURT:  All right.  And if we look at the

9    definition of wages under Section 448.08, it would appear that

10   it's the compensation paid by an employer.  But tips don't come

11   from the employer.  So are they even encompassed by the Florida

12   definition of wages?

13         MR. VELAZQUEZ:  The only time, Your Honor, that they

14   could be encompassed is when an employer takes a tip credit.

15   That's an -- when they take a tip credit, as you know, Your

16   Honor, they pay a lesser rate, and then make up the difference

17   on tips.  That's when it's wages.

18         THE COURT:  But that's not pled anywhere within the

19   Second Amended Complaint.

20         MR. VELAZQUEZ:  Nowhere, Your Honor.

21         THE COURT:  All right.  Let me give -- and I thank

22   you, Mr. Velazquez.  I think really Mr. Pollock will need to

23   ask -- or answer some of the questions that the Court has,

24   because I do believe that your arguments have merit.

25         MR. VELAZQUEZ:  Thank you, Your Honor.  I appreciate

1   the opportunity.

2           THE COURT:  Mr. Pollock, let me just start with Count

3   1, because it appears that you are intending to set forth a

4   minimum wage claim, in addition to a tip retention claim.  I

5   know that you have stated in your response that you are not.

6   But then on Page 8 of your response you say that you are

7   alleging an FLSA minimum wage claim.

8           And if the Court looks directly to the Second Amended

9   Complaint, and the way that it's pled, even if the Court were

10  to accept the argument, your prayer for relief asks the Court

11  to declare that the Defendants are in willful violation of the

12  minimum wage provision of the FLSA.  So it certainly appears,

13  just looking at the pleading itself, that you're conflating the

14  claims and that appears to be a shotgun pleading.

15          So perhaps you can tell me why I'm wrong.

16          MR. POLLACK:  Sure, Judge.

17          The complaint, starting at Page -- at Paragraph 28,

18  through Paragraph 33, and then the ad damnum clause at Count 1,

19  seeks only -- and talks about only entitlement to a backpay

20  award of the tips and overtips.

21          There is nowhere within Count 1, nor Paragraphs 28

22  through 31, where we seek recovery of the difference between

23  the direct hourly wage paid and the FLSA's minimum wage of 7.25

24  an hour.  Everything talks about recovery of the tips and

25  overtips.

```
1            And so my understanding of the FLSA -- and maybe this

2    is a labeling issue, which does not constitute or transform

3    these allegations in Count 1 into a shotgun pleading -- it

4    becomes a labeling issue, which I'll find the case, but that's

5    not cause for dismissal.

6            THE COURT:  Well, it's not just the labeling.  It's

7    the relief that you're seeking in Count 1.

8            MR. POLLACK:  Right.  And the relief that we're

9    seeking in Count 1, when I go specifically to that, at

10   Paragraph 76, is Plaintiff and the collective are entitled to a

11   backpay award of the tips and overtips they earned, but that

12   Defendants improperly retained, received, distributed, plus an

13   equal amount as liquidated damages, plus all attorney's fees

14   and costs.  And so then we go to the ad damnum clause at

15   Paragraph D, and it's:  "Awarding Plaintiff and the collective

16   the tips and overtips improperly withheld/distributed and an

17   equal amount as damages pursuant to 203(m)(2)(B) and 216(b)."

18           So there's nowhere within the relief requested that

19   Plaintiff, on behalf of himself or the other similarly

20   situated, are seeking the difference between the direct hourly

21   wage paid and the minimum wage paid.  So it does become a

22   labeling issue at most.

23           THE COURT:  Well, if I look at Paragraph 28:

24   "Defendants agreed to pay Plaintiff a direct hourly rate of pay

25   that was less than the applicable Florida federal minimum wage
```

1  supplemented by a portion of the non-discretionary service

2  charge" --

3          MR. POLLACK:  Okay.

4          THE COURT:  -- "Defendants received."

5          So it's unclear what claim you're making in Count 1.

6  Are you saying that your client was not paid the minimum wage,

7  or are you claiming that your client did not receive tips and

8  the employer retained them?

9          MR. POLLACK:  Your Honor, the facts are that my

10  clients were all paid a direct hourly wage that was less than

11  the minimum wage.  That is a fact.  The Defendants don't say

12  that that's untrue.  They don't dispute it.  That's a fact

13  that's borne out by the records in the case.

14          They were also paid a portion of the service charge.

15  And they were also paid the tips or overtips.  That's what

16  Paragraph 28 says, that -- it states the facts that we allege.

17  It doesn't seek recovery of the difference.

18          In Paragraph 33, where we talk about the unlawful pay

19  practices:  "The result of Defendants' unlawful pay practices

20  deprive Plaintiff and the other similarly-situated tipped

21  employees of wages," parenthesis, "tips and overtips that they

22  earned and should have received in a significant sum when

23  aggregated."  We're not talking about the difference between

24  the direct hourly wage and the minimum wage.

25          For that reason, the entirety of Count 1 talks about

```
 1    the tips and the overtips.  And yet, the recovery that we seek
 2    in Paragraph 76 and the ad damnum clause all talk about the
 3    tips and overtips.  There's nowhere within the prayer for
 4    relief in Count 1 that we're talking about the difference
 5    between the direct hourly wage and the 7.25 an hour.
 6          THE COURT:  All right.  So let me ask you to respond
 7    directly to the argument that:  "The Plaintiff does not allege
 8    that he was paid on a tip credit basis or the direct hourly
 9    rate he was paid, plus the percentage of the service charge he
10    received that was below the FLSA's minimum wage."
11          Where would the Court find that within Count 1?
12          MR. POLLACK:  I don't know that we need to go ahead
13    and aggregate how much we're paid because that's what we talked
14    about in -- let me go to it.
15          THE COURT:  Because to the extent that it is not
16    properly alleged, it does appear to the Court that you're
17    attempting to set forth in Count 1 a tip retention distribution
18    claim, a minimum wage claim, or both.  It seems that you're
19    conflating both within Count 1, as opposed to separating the
20    two.
21          MR. POLLACK:  Your Honor, the problem that we have,
22    right, in this situation, is what we're supposed to do under
23    the FLSA is -- in order to state a minimum wage claim, what
24    I've got to do is to allege the failure to pay at least the
25    minimum wage.  Right?
```

```
1            If we were just looking at this under 203 and 216(b),

2    and we said:  "Okay.  It's a failure to pay minimum wage

3    claim," what Your Honor would request that I do, and what the

4    Defendants would ask that Your Honor require me to do, is to

5    allege somewhere in the complaint that my clients were paid

6    less than the minimum wage in order to assert a minimum wage

7    claim.  Right?  And so what we have not done in the allegations

8    is do that.  We have not asserted a minimum wage -- a

9    difference in minimum wage claim.

10           So the FLSA doesn't talk about a violation of -- it

11   gives us two options other than child labor, which are minimum

12   wage and overtime.  And then when you talk about where the

13   definition of wage is at 203(m)(2)(B) -- 203(m) -- I have to

14   take a look.  In 203(m)(1), it talks about wage.  And then it

15   talks about wage includes tips and wage includes the other --

16   includes the direct hourly wage and then whatever it's

17   supplemented with.

18           We're not alleging in this -- in Count 1 a failure to

19   pay at least the minimum wage of 7.25 an hour.  And we don't

20   seek relief for that.  So --

21           THE COURT:  So what is -- that's what's a little

22   unclear.  What is the relief that you're seeking with regard to

23   Count 1?

24           MR. POLLACK:  The tips.  The difference in the tips

25   that were paid.  That's under 203(m)(2)(B).  We've specified
```

1   203(m)(2)(B).  We've specified multiple times in the claim what

2   we're seeking as damages.  And we're not seeking anywhere, and

3   we don't allege that they were paid in the aggregate less than

4   what was required under the minimum wage.  It's labeled as a

5   minimum wage claim because the FLSA gives you two options.  And

6   then the third option is child labor, which we're not dealing

7   with.

8        Unless we're going to say this is a new species under

9   203(m)(2)(B) based on the 2018 amendment, which is now it's

10  overtime, minimum wage, and tip confiscation.  If that's the

11  case, it's a mislabeling claim.  It's a mislabeling issue, not

12  a shotgun pleading or a conflating issues claim.  Because

13  there's nowhere in the complaint where we're seeking the

14  difference.  And we don't allege that.  And the reason why we

15  don't allege it is because we're not making that claim.  And if

16  we did allege it, then I could understand the argument.  But

17  because we didn't, Your Honor would dismiss that claim as pled.

18        THE COURT:  All right.  Let's move to the FMWA with

19  regard to Count 2.  And you have made an argument that the

20  FLSA's definition of wage is relevant.  So has Mr. Collado

21  anywhere alleged that he's being paid less than the minimum

22  wage?

23        MR. POLLACK:  No.  He's alleged that the direct hourly

24  wage was below, but he hasn't quantified the direct hourly wage

25  plus a service charge.

1       THE COURT:  Well, the FMWA requires that employers

2  shall pay employees wages no less than the minimum wage for all

3  hours worked.  So what allegation would support the cause of

4  action?

5       And then 448.110 states that:  "For tipped employees

6  meeting eligibility requirements for the tip credit under the

7  FLSA, employers may credit toward satisfaction of the minimum

8  wage tips up to the amount of the allowable FLSA tip credit."

9       So once again, where would the Court find the

10  allegation that Mr. Collado was paid less than the minimum wage

11  to sustain a cause of action with regard to Count 2?

12       MR. POLLACK:  Well, I think what we're dealing with

13  here, and what counsel was doing was kind of that shell game

14  where you just move things around and you try to --

15       THE COURT:  I'm not trying to move anything around.

16       MR. POLLACK:  No.  No.

17       THE COURT:  I'm looking at Count 2, and I'm merely

18  asking where it's alleged.

19       MR. POLLACK:  And I understand.  And I think what the

20  FLSA talks about and what the FLSA defines -- because the

21  Florida Minimum Wage Act defers to the FLSA's definition of

22  wage and minimum wage.  And so when you look at

23  203(m)(2)(A)(2) -- because (m)(1) talks about wage.  And then

24  when you talk about (m)(2), it talks about the wage that an

25  employee -- an employer is required to pay.  And that's from

1    the Fair Labor Standards Act.  It's 203(m)(2)(A).  And then it

2    has two subs, (2)(A)(1) and (2)(A)(2).  And (2)(A)(2) talks

3    about -- one is the cash wage, and two an additional amount on

4    account of the tips received by the employee.

5        And so here we go back to this falls under the minimum

6    wage.  Because the minimum wage is -- one part is the direct

7    hourly wage and the second part is the tips that supplement

8    that wage, that, as long as they're properly pooled or properly

9    distributed, aggregate to overcome the threshold of going above

10   Florida's minimum wage.

11       And so what we're talking about here -- and this is

12   why they kind of going together -- is whether you want to call

13   it a minimum wage or a tip confiscation, it all comes under the

14   same statutory rubric, which is the tips become part of that

15   wage.  And the reason is because the employer's allowed to

16   utilize the money that -- the gratuities that are left by the

17   customer to supplement the direct wage, as long as they're

18   properly handled.  And the FLSA contemplates that.

19       And what happened here was the employer was not

20   allowed to retain tips, but there was a question under the FLSA

21   as to whether supervisors and managers were.  And that was the

22   Ninth Circuit of Cumbie v. Woody Wu.  And so what the former

23   administration did was, in March and April of 2018, they closed

24   that loophole and prevented employers, supervisors, and

25   managers from retaining any part of the tips.  And so the

1    tips -- the minimum wage -- there's a direct hourly wage and

2    then it's supplemented by the tips, but it talks about the wage

3    includes the tips.

4          THE COURT:  Then perhaps we should look at the law.

5    You cited to the Biller case.  And it appears to the Court --

6    and I think that the Defendants' argument has merit in its

7    reply -- that, in that case, it's only when the employer is

8    taking a tip credit to reach the minimum wage.  And it's

9    unclear whether Mr. Collado was paid on a tip credit basis

10   because there is a failure to allege that the direct hourly

11   rate paid, plus the percentage of the amount he received, was

12   below the minimum wage.

13         So tell me how the law supports the claim as alleged.

14   And I think, quite frankly, it requires that Mr. Collado allege

15   that he is being paid less than the minimum wage.  And I'm

16   failing to see how you can actually get around that

17   requirement.

18         MR. POLLACK:  Okay.

19         THE COURT:  But did you want to make an argument with

20   regard to Biller, because I think that there is a distinction.

21   I mean, there was a quote that was taken from the case.  But if

22   we look at the case, it appears to somewhat support the

23   argument that the Defendant is making.

24         So in sum and substance, Mr. Pollock, I'm willing to

25   look at a case that directs this Court to find that Count 2

```
1    under the FMWA is properly pled.

2             MR. POLLACK:  Well, Your Honor, since the

3    implementation of -- since the revision of the FLSA in 2018, no

4    state court case has addressed this.  And so what we've alleged

5    is that he was paid -- and in fact, no state court case has

6    addressed whether service charge can be included in the direct

7    hour -- in the wage.

8             THE COURT:  I don't think it's a futile claim.  You

9    just haven't pled it properly --

10            MR. POLLACK:  Okay.

11            THE COURT:  -- with regard to Count 2.

12            And I want to move to Count 3 as well.  Because it --

13   I guess, where should the Court look to for authority on

14   Florida common law?  You cited to actually this Court's case of

15   Pastrana.  But if I look at the definition of wage, it appears

16   that the FMWA and the FLSA have really occupied the field in

17   relation to Mr. Collado's claims.

18            He's not claiming he wasn't paid a certain bonus.  I

19   mean, it seems like the causes of action are statutory in

20   nature under each of these statutory schemes.  And where would

21   the Court find some authority that there's a cause of action

22   based on Florida common law?

23            MR. POLLACK:  Well, Florida common law wouldn't be

24   codified, right?

25            THE COURT:  So is it an FMWA claim?
```

```
1              MR. POLLACK:  No.  It's --

2              THE COURT:  Okay.  Where would the Court find -- like,

3    what case would support the claim that's being made here?

4              MR. POLLACK:  Well, there's the Pastrana claim.

5    Right?  The Pastrana case, which this Court evaluated sua

6    sponte on a default.  Right?  And that was pled inartfully

7    under the FMWA.  But the allegations in our complaint are much

8    more in-depth than the allegations in the Pastrana complaint --

9    in the Pastrana First Amended Complaint, which was Docket Entry

10   25.

11             And then, in addition, we have a Hamann v. Little

12   Italy's Meatballs from the Middle District.  And that cited to

13   the state court cases, which talk about the breadth of what,

14   under Florida common law, are considered wages.  And it looked

15   at Short.  It looked at Coleman.  And it looked at the -- which

16   Coleman, from -- I think that was a Third DCA case, looked to

17   the Black's Law Dictionary definition of wages, which it

18   specifically noted included tips.

19             And so because this is a common law claim under

20   Florida law -- because they include the tips as wages under

21   Florida common law.  And so because we're dealing with a

22   specific -- statutes that are in derogation of the common law

23   with regard to both the FLSA and the FMWA, they don't talk

24   about tips being anything other than wages.  They don't say

25   tips aren't wages.  The only thing the FLSA says, at 531.60,
```

1    which Defense counsel pointed out, was when you're talking

2    about the regular rate for overtime, you don't include tips.

3    And that's 531.60, which Defendants have harped on, but that

4    talks about the regular rate.

5            THE COURT:  All right.  But you yourself have said, on

6    Page 16 of your response, that:  "Common law claims for unpaid

7    wages can be akin to claims for breach of contract."

8            MR. POLLACK:  They can be.

9            THE COURT:  But in Paragraph 28 of your complaint, you

10   state that:  "The Defendants agreed to pay Plaintiff a portion

11   of the gratuities left at the discretion of the Defendants'

12   patrons."

13           So doesn't that statement imply that the contract

14   allowed the Defendant to retain or distribute some portion of

15   the tips?  And if so, how have the Defendants breached a

16   contract?

17           MR. POLLACK:  No.  We don't allege that there's a

18   contract.  I'm saying they can be alleged.  And the times when

19   we see them, when they talk about wages, oftentimes, it's

20   talked about in a contract setting, but it doesn't have to be.

21           And in fact, when the Court looked at Pastrana when

22   you looked at Hamann v. Little Italy, it's not pled in terms of

23   a contract.  Hamann was actually pled as a violation of 448.08,

24   which is normally how these unpaid wage or unpaid tip claims

25   are pled.  And courts, time and time again, say that 448.08

1    doesn't provide a cause of action.

2           What it says is this is viewed under the common law of

3    Florida, that wages are the property of the employee and can't

4    be confiscated by the employer.  And so it doesn't have to be

5    pled as a contract claim, nor have the courts required it in

6    the two district court opinions that talked about 448.08 in the

7    context of tips.

8           THE COURT:  So if we look at 448.08 and the definition

9    of wages:  "The terms wages involves some compensation paid to

10    an employee for services rendered to his employer.  Broadly

11    read, this definition embraces salary, commission, bonuses,

12    vacation pay, and severance pay."  That's from the Coleman

13    case, the Third DCA case.  But tips don't come from an

14    employer.  So how are they encompassed by Florida common law's

15    definition of wages?

16           MR. POLLACK:  Well, the Coleman case also looked to

17    the Black's Law Dictionary definition of wages, which included

18    tips.

19           THE COURT:  Right.  So I think we're back to the fact

20    that, at least as pled -- and tips don't come from an employer.

21    So how are they encompassed by the Florida common law

22    definition of wages?

23           MR. POLLACK:  Because what we've alleged in this

24    situation is that the employer maintained dominion and control

25    over the tips, and then they kept part of them.  And so --

```
 1            THE COURT:  So it's compensation paid by an employer

 2    for the performance of service by an employee.

 3            MR. POLLACK:  Hold on.

 4        (Pause in proceedings.)

 5            THE COURT:  Because it would appear -- and I'm just

 6    asking the question with regard to the cause of action under

 7    Florida common law.

 8            MR. POLLACK:  Right.  I mean, 448, all it says is --

 9            THE COURT:  It speaks of wages --

10            MR. POLLACK:  No.

11            THE COURT:  -- are compensation paid by an employer.

12            MR. POLLACK:  Actually, 448.08, all it says is that:

13    "The court may award to the prevailing party, in an action for

14    unpaid wages, costs of the action and a reasonable attorney's

15    fee."

16            THE COURT:  No.  No.  No.  I'm talking about the

17    definition of wages.

18            MR. POLLACK:  Right.

19            THE COURT:  That it's compensation paid to an employee

20    for services rendered by the employer.  So it's paid to the

21    employee by the employer.  But by the very nature of tips, they

22    don't come from an employer.  So how does the cases, the

23    Hamann -- how do all of these cases support a common law cause

24    of action for the retention of the tips?  I mean, even the

25    cases cited by Hamann say wages are all compensation paid by an
```

1    employer.

2         MR. POLLACK:  Again, it looks under Coleman.  Right?

3    Coleman talked about -- as part of the definition of wages:

4    "Every form of remuneration payable for a given period to an

5    individual for personal services, including salaries,

6    commissions, vacation pay, dismissal wages, bonuses, and

7    reasonable value of board, rent, lodging, payments in kind,

8    tips, and any other similar advantage received from the

9    individual's employer or directly with respect to work for

10   him."

11        And so these tips come about as a direct and proximate

12   result of the work that was performed by the employee for the

13   employer.

14        THE COURT:  Well, but the tips aren't paid by the

15   employer.  And I think that's the distinction here.  I mean,

16   Coleman looked at the Black's definition and concluded that

17   wages are all compensation paid by an employer.  So I guess my

18   question is:  If that's the definition under the common law,

19   then where is the common law cause of action?  Because

20   203(m)(1) of the FLSA defines wage.  203(m)(2)(B) says an

21   employer may not keep tips.  But all cases that describe the

22   common law say that wages are compensation paid by an employer.

23        In the Pastrana case, the Court noted that on Page 4.

24   Even on a default, the Court said:  "Plaintiff's factual

25   assertions and supporting affidavits, indicating the defendants

1    failed to pay them earned wages, state a claim under any common

2    law."  But this is different.  These are tips.

3         MR. POLLACK:  Right.  But the tips in this

4    situation -- what we allege were the tips were the credit card

5    tips, were left for the employees and paid to the custody of

6    the employer.  And so --

7         THE COURT:  But that's the unlawful retention that you

8    already have alleged by way of Count 1.  That can certainly be

9    clarified.  But I guess I'm just asking how the claim for

10   common law lies, when you have a claim under one statutory

11   scheme, another claim for another statutory scheme, that appear

12   to be proper.  I just don't see where the common law comes in.

13        MR. POLLACK:  I think the common law here provides --

14        THE COURT:  I'm just looking at the cases.  So if

15   there's a case that I should look to -- I mean, I've looked at

16   the case that I authored, I've looked at the cases that were

17   cited, and it all speaks of compensation paid by the employer.

18        MR. POLLACK:  Well, the tip allows the employer to

19   shift the burden of paying the employee.

20        THE COURT:  It still doesn't come within definition of

21   wages.

22        MR. POLLACK:  But it does when you step back and you

23   look and see what happens to this money when it's time to look

24   at it as far as the IRS is concerned.  Because for an employee,

25   when an employee receives tips, those tips are reported on a

1  W-2 as income.  And so those are reported as wages.  They're

2  not -- it's not 1099 income that's paid by somebody else,

3  pursuant to their, you know, working as a contractor.  That

4  money is paid to the -- the money is reported to the IRS as

5  wages earned.

6       And so that's what it comes down to, is it shifts the

7  burden of payment from the employer to allow it to shift it

8  over to the patrons, but it still is considered wages.  And so

9  when we look at the definition of wages under common law,

10  right, which would encompass how we would look at it under the

11  IRS statutory rubric, not just the FLSA --

12       THE COURT:  Well, show me -- I'm looking at the Short

13  case where it says:  "Florida law broadly construes wages,

14  within the meaning of Section 448.08, to include all

15  compensation paid by an employer for the performance of service

16  by an employee."

17       And then the Coleman case:  "The term wages involves

18  some compensation paid to an employee for services rendered to

19  his employer."

20       I think we come down to the very simple question that

21  tips just don't come from an employer.  And how are they are

22  encompassed by Florida's common law's definition of wages?  And

23  if you're saying how the IRS comes into play, I'm not quite --

24  I'm not quite understanding how that allows the Court to find

25  under the case law that there's a common law cause of action.

1          MR. POLLACK:  Well, if under Florida law tips weren't

2    wages, but under federal law they are considered wages, then we

3    would just be giving an out to every server.  I'm sure they'd

4    appreciate it.  But they'd have an out as far as saying:

5    "Look, my tips aren't wages.  I don't have to report them to

6    the IRS.  They don't meet the definition of wages."

7          But if they do meet the definition of wages under the

8    IRS -- and they certainly meet the definition of wages under

9    Florida common law -- it's -- I'm trying to think of the

10   parallel -- which is under the independent contractor, right?

11   Because under Florida common law, we look at somebody, whether

12   there's -- an employee or employer under Florida common law.

13   And in part of that analysis, we look to how the IRS treats

14   them, separate and apart under the FLSA statutory mechanism.

15         THE COURT:  But under the FLSA, it doesn't consider

16   tips wages.  It has a separate provision that prohibits tip

17   retention.  So how would that help you?

18         MR. POLLACK:  Well, tips were wages under the FLSA.

19         THE COURT:  Well, if tips are wages under the FLSA,

20   then you have a cause of action under the FLSA with regard to

21   Count 1.

22         MR. POLLACK:  Right.

23         THE COURT:  So I think we're back to the Florida

24   common law.  And if the argument is that somehow wages are

25   defined within the IRS Code, as -- I guess that's kind of the

```
1    argument you're making.  I'm not seeing it in the briefing, but
2    I'm trying to follow the argument -- I think we're still left
3    with whether there's a common law cause of action for tips
4    retained an employer.
5         MR. POLLACK:  Well, whether you put it under breach of
6    contract, whether you put it under theft --
7         THE COURT:  Well, I think that's where you started
8    least in your briefing, is that you actually said expressly --
9         MR. POLLACK:  They can be akin.
10        THE COURT:  -- that it's akin to a breach of contract.
11   Which, to that extent, I'm wondering whether you're conceding
12   that Counts 3B and 3C must be dismissed because you didn't
13   allege the existence of a contract between the Plaintiff and
14   Jones or RJ.
15        Now, there may be.  And perhaps that's the cause of
16   action, that there was a contract or an agreement, but it's not
17   pled with regard to two of the individuals.
18        MR. POLLACK:  Okay.
19        THE COURT:  So let me say that I believe that there
20   are viable causes of action.  They just haven't been pled
21   properly.  I think they can be.  But I think that, to a large
22   extent, the Defendants' arguments have merit with regard to the
23   conflating the causes of action with regard to Count 1, the
24   failure to allege that these individuals were paid less than
25   the minimum wage.
```

```
1              And with regard to Count 3, if there was an agreement,
2    then I believe that that agreement, whether it's a written
3    contract, whether it's a verbal agreement, whatever the
4    agreement may be, I think that there may be a cause of action
5    that perhaps they were paid on a tip credit basis, or less than
6    the minimum wage, and there was an agreement by the employer to
7    pay them, whatever it may be.  But I think there is a viable
8    cause of action.  It just needs to be pled properly.
9              MR. POLLACK:  Okay.
10             THE COURT:  Well, Mr. Velazquez, I've somewhat allowed
11   each of you to know where the Court stands.  Is there anything
12   further that you would like to say?
13             MR. VELAZQUEZ:  No, Your Honor.  Thank you for the
14   opportunity to address the Court.
15             THE COURT:  Yes.  Of course.
16             Mr. Pollock, how much time do you need, sir?
17             MR. POLLACK:  We'll take 20 days.
18             THE COURT:  Okay.  Is that sufficient for the
19   Defendants for a 20-day period?
20             MR. VELAZQUEZ:  No problem, Your Honor.
21             MR. POLLACK:  I'll get it done sooner.
22             THE COURT:  Then let me state, for the record, Docket
23   Entry 63, the Defendants' motion to dismiss is granted.
24             Today obviously is the 29th.  So 20 days -- I just
25   want to give you a date certain -- by April 18th.  And let me
```

1   state, Mr. Pollock, since the operative pleading is no longer

2   the Second Amended Complaint, necessarily, the Court's

3   determination with regard to a motion for a conditional

4   certification is premised not only on the pleading, but the

5   affidavit.

6           So to that extent, since the Second Amended Complaint

7   is no longer the operative pleading, Docket Entry 65 will be

8   dismissed -- or denied without prejudice.

9           MR. POLLACK:  That's fine.

10          And we'll probably go ahead and expand the definition

11  of the class because we've got almost 30 people who have opted

12  in.

13          THE COURT:  Okay.  Then it certainly is proper.

14          MR. POLLACK:  My concern is the issue of tolling

15  because the statute continues to run for those who haven't been

16  notified and opted in.  So we may be coming back to address

17  that issue.

18          THE COURT:  Well, I don't know how much time is left,

19  but do you need 20 days to amend the complaint?

20          MR. POLLACK:  That's why I said probably will do it

21  sooner.

22          THE COURT:  Okay.

23          MR. POLLACK:  But my concern is, you know, what's

24  happened -- you know, we've had -- we're going to have

25  responses.  You know, then we're going to have regurgitated a

```
1   lot of the arguments.  So --

2            THE COURT:  Well, hopefully not.

3            MR. POLLACK:  I would hope not.  But you know, the

4   same arguments have been regurgitated now once, and I'm looking

5   at them probably being regurgitated now twice.

6            THE COURT:  Well, I think Mr. Velazquez recognizes, by

7   way of the Court's statements, that I believe that there is a

8   minimum wage violation.  I believe that there is a cause of

9   action under the FLSA and the FMWA.  It just needs to be pled

10  properly.

11           Common law, dependent upon whether there is an

12  agreement, then perhaps an action may lie.  So to that extent,

13  we may not have another round of briefings with regard to a

14  motion to dismiss.  But then again, somewhat premature to know.

15           Okay.  Is there anything further?

16           MR. VELAZQUEZ:  Your Honor, if we may in advance

17  request from the Court, instead of the traditional 10 days to

18  respond, 20 days, just in case.  Because I get the distinct

19  feeling that we may be seeing a lot of the same allegations

20  that we've already had numerous issues with, but maybe subtly

21  pled differently.  And we want to have adequate time to analyze

22  those properly.

23           THE COURT:  You want 20 days to respond to the Third

24  Amended Complaint?

25           MR. VELAZQUEZ:  Yes, Your Honor.
```

```
 1              THE COURT:  Any objection to that?

 2              MR. POLLACK:  I mean, I would just request a

 3   commensurate tolling of the limitations period if this is going

 4   to delay the Court's adjudication of the motion for conditional

 5   cert.  Because, you know, what our plan would be is to probably

 6   file either simultaneously, or nearly simultaneously, the

 7   Second Renewed Motion for Conditional Cert and the Third

 8   Amended Complaint, so as to not delay.  And then, when we've

 9   done -- we've addressed extensions in the past, which I have

10   not opposed, I've discussed with counsel the tolling

11   limitations period to address the running.

12              THE COURT:  Mr. Velazquez?

13              MR. VELAZQUEZ:  Your Honor, Mr. Pollock has been very

14   gracious with respect to extensions of time.  And we've

15   cooperated with him in that regard in terms of tolling issue.

16   But in this instance, Your Honor, we're here because of the way

17   that complaint was pled, and we're not prepared to -- at least

18   for the period of time that we're seeking, which is the 10

19   additional days, or the 10 days before that, is toll the

20   statute.  It's the way the complaint was pled.

21              And to be clear, Your Honor, we filed a motion to

22   dismiss the Amended Complaint, which was essentially similar.

23   We agreed for him to go ahead and file a Second Amended

24   Complaint, and essentially came back with the same thing.

25              THE COURT:  All right.  Well, why don't we cross that
```

```
1    bridge when we arrive at the park.
2            MR. VELAZQUEZ:  Fair enough.
3            THE COURT:  Okay?
4            MR. POLLACK:  And we can do it within 10 days, Judge.
5    So ...
6            THE COURT:  All right, then.
7            Good to see each of you.  Have a pleasant afternoon.
8            MR. POLLACK:  Thank you, Judge.
9            MR. VELAZQUEZ:  Thank you, Your Honor.
10        (Proceedings concluded at 9:52 a.m.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1    UNITED STATES OF AMERICA        )

2    ss:

3    SOUTHERN DISTRICT OF FLORIDA  )

4                    C E R T I F I C A T E

5             I, Yvette Hernandez, Certified Shorthand Reporter in

6    and for the United States District Court for the Southern

7    District of Florida, do hereby certify that I was present at,

8    and reported in machine shorthand, the proceedings had the 29th

9    day of March, 2023, in the above-mentioned court; and that the

10   foregoing transcript is a true, correct, and complete

11   transcript of my stenographic notes.

12            I further certify that this transcript contains pages

13   1 - 33.

14            IN WITNESS WHEREOF, I have hereunto set my hand at

15   Miami, Florida, this 1st day of May, 2023.

16

17                         /s/Yvette Hernandez
                           Yvette Hernandez, CSR, RPR, CLR, CRR, RMR
18                         400 North Miami Avenue, 10-2
                           Miami, Florida 33128
19                         (305) 523-5698
                           yvette_hernandez@flsd.uscourts.gov
20

21

22

23

24

25