UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-CV-23074-BLOOM/TORRES

OCTAVIO COLLADO,

      Plaintiff,

vs.

450 NORTH RIVER DRIVE, LLC
D/B/A KIKI ON THE RIVER
AND ROMAN JONES,

      Defendants.

_____/

### **MOTION FOR RULE 11 SANCTIONS**
### **AGAINST DEFENDANTS AND THEIR COUNSEL** [i]

      Former counsel for Plaintiff and the Collective, Brian H. Pollock, Esq. and FairLaw Firm (hereinafter the "Undersigned"), request the Court to enter an Order sanctioning Defendants, 450 North River Drive, LLC d/b/a Kiki on the River, RJ River, LLC and Roman Jones (collectively "Defendants"), and their counsel, Reynaldo Velazquez, Esq., Roman Sarangoulis, Esq., Allan S. Reiss, and their respective law firms, Jackson Lewis P.C., and Levine and Partners, P.A. ("collectively Defense Counsel"), under Fed. R. Civ. P. 11, and the following good cause:

## I. INTRODUCTION

      The Court properly sanctions Defendants and Defense Counsel for filing "Defendants' Motion for Sanctions Pursuant To 28 U.S.C. §1927 Against Brian H. Pollock, Esq. and FairLaw Firm" (hereinafter the "1927 Motion") on January 12, 2024 [ECF No. 243], as limited by ECF No. 253. They filed the 1927 Motion, knowing full well it was baseless, lacked any modicum of success in obtaining sanctions against the Undersigned, and any reasonable evaluation of the underlying facts would have revealed the same. It, and the arguments contained therein, are frivolous. Rule 11 was designed to curtail the meritless and ill-fated arguments Defendants and Defense Counsel advance. The baseless pursuit of a meritless motion for sanctions against the undersigned for advancing a novel legal, which the Court did not decide due to the procedural

1

error committed by Defense Counsel, is frivolous and sanctionable. Lastly, seeking sanctions against the undersigned based on when Mr. Collado finally executed his Answers to Interrogatories and when they were served is frivolous because Defendants always had Mr. Collado's time, pay, and tip records. Seeking sanctions against the undersigned for the reasons identified in ECF No. 243, as limited by ECF No. 253, without a good faith basis in law or fact, is the type of bad faith conduct that entitles the undersigned to recover the sanctions contemplated by Rule 11 against Defendants and Defense Counsel.

## II. FACTUAL AND PROCEDURAL HISTORY

1.  The undersigned first spoke with Mr. Collado on July 8, 2022.

2.  Mr. Collado explained that he had experience working in restaurants in South Florida before working for the Defendants, including Joe's Stone Crab, and that he knew the difference between tips and service charges due to his acknowledgment of the "Salt Bae case" that was decided several months before and its impact on the distribution of service charges.[1]

3.  During this initial consultation, Mr. Collado described how Defendants print out a sheet containing small print identifying, for each payroll period, everyone who received tips from the tip pool and the amount distributed to each after he started working at Kiki on the River ("Kiki"). Mr. Collado recognized people listed on the printout as getting tips who should not have been in the tip pool.

4.  Mr. Collado explained that he complained to Roman Jones about the distribution of the tips to non-tipped employees and discussed Mr. Jones' response to him.

5.  Mr. Collado was adamant that he was owed a lot of money in tips from Kiki, urged the undersigned to claim as many years back as possible, and actively urged those who worked at Kiki to contact the undersigned about recovering the tips misappropriated at Kiki.

---

[1]      The "Salt Bae case" reference was to the Eleventh Circuit Court of Appeals' decision in *Compere v. Nusret Miami, LLC*, 28 F.4th 1180 (11th Cir. 2022). The significance of his reference to the "Salt Bae" case is to demonstrate Mr. Collado's ability to distinguish distinction between a service charge and a tip/gratuity/overtip. The undersigned's discussions with Mr. Collado and the other former employees at Kiki revealed consistent themes, including that Kiki misappropriated the voluntary gratuities left by patrons (tips), that Roman Jones would be considered an "employer" under the FLSA and the FMWA, and that the misappropriated tip damages at issue would be significant.

2

6.      The undersigned discussed with Mr. Collado that although the distribution of tips is regulated by law, no laws protect or restrict the distribution of service charges and that he would only be able to seek recovery of the gratuities voluntarily left by patrons as tips but not a portion of the service charges Kiki automatically included in the bills.

7.      Before filing the complaint, the undersigned further investigated the claims to be pursued by collecting documents from him, and by speaking with others who contacted the undersigned concerned about the distribution of tips at Kiki (Yordan Acosta and Francis Taylor), by reviewing their documents, and by conducting legal and other factual research.

8.      Messrs. Collado, Acosta, and Taylor each separately talked about problems with the distribution of tips, that the tips they received did not seem accurate, why the tips they received did not seem accurate, that ineligible persons received tips from the tip pool, tips that they believed never were deposited into the tip pool, and Roman Jones' involvement in their work.

9.      After multiple individuals separately confirmed Mr. Collado's information about the improper retention and distribution of tips, and after reviewing documentation, the undersigned filed the instant lawsuit on September 23, 2022. [ECF No. 1.]

10.     The undersigned emailed a letter to Mr. Collado on September 29, 2022, explaining the status of his case and enclosing a copy of the Complaint.[2]

11.     At times, someone who consulted and/or retained the undersigned's law firm would complain about how Kiki collected, did not collect, or distributed the service charge it imposed on customers. The undersigned either personally clarified or made sure his staff explained and clarified the difference between a tip and a service charge, and that the case only involved tips.

12.     After working with Mr. Collado, Mr. Acosta, and Mr. Taylor to discuss the tips at issue and the amounts each estimated to be at issue, the undersigned prepared the Statement of Claim [ECF No. 10]. The undersigned emailed each a letter explaining the Statement of Claim, enclosed a copy, and requested they advise him of any problems with it. [ECF No. 10.] None informed the undersigned of any problems with or inaccuracies in the Statement of Claim.

---

[2]      The undersigned provided a copy of the operative Complaint to Mr. Collado and each other person who joined this lawsuit, and at no time did Mr. Collado or anyone else inform the undersigned of any factual inaccuracies in any of the operative Complaints.

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

13.     The undersigned's investigation into the facts underlying this case did not end with the filing of the initial Complaint, as the undersigned and other members of his office spoke with more former employees of the Defendants about their experiences involving the tips at Kiki.

14.     For instance, the undersigned also spoke with Ines Berzina, Jovana Majetic, Andrea Compaoresi, and Andreas Bouras to discuss the information they had about the distribution and retention of tips, and they provided information that paralleled the information provided by Messrs. Collado, Acosta, and Taylor.

15.     In a conversation with one former Kiki employee who was eligible to participate in the tip pool who did not join the case, the undersigned learned that managers (specifically naming Xandra Hollow) would log into the Point of Sale ("POS") system as Captains, receive points as if they were Captains, and receive distribution of tips from the tip pool, even though they were ineligible managers.

16.     Others who worked at Kiki informed the undersigned that members of Sia Hemmati's family did not actually work in tipped positions at the restaurant but still received tips from the tip pool.[3] One person identified Mr. Hemmati's daughter as someone who did not work in a tipped position at Kiki but who received tips from the tip pool.

17.     Meanwhile, the office of the undersigned worked with Mr. Collado, Mr. Acosta, Mr. Taylor, Augusto Guerra, and Patricia Buraschi to help estimate and calculate the tips at issue under the FMWA before sending a letter demanding the recovery of tips for them and others similarly situated to the Defendants on November 10, 2022, pursuant to Fla. Stat. §448.110 and Art. X, §24, Fla. Const., while providing copies to each person named in the letter as a claimant. None thereafter identified any factual inaccuracies with the letter.

18.     This letter estimated 56 eligible employees for 260 weeks, and was based on the information obtained from Mr. Collado, Mr. Acosta, Mr. Taylor, Mr. Guerra, and Ms. Buraschi, and "subject to revision/adjustment based on the records" maintained by Defendants.[4] The letter also stated that it was based on "the absence of actual paychecks to [my clients] and the class and

---

[3]     Sia Hemmati is the Managing Partner of 450 North River Drive, LLC. [122-1 at 6.]
[4]     On July 24, 2023, Defendants identified another 358 people who had not yet joined the lawsuit and who were eligible to receive notice of their rights of the assemblage of a collective action for the three years at issue in Count I.

4

the records reflecting the gratuities left by patrons and the gratuities paid out."

19.    The undersigned filed an Amended Complaint on December 7, 2022, to include claims to recover the tips unlawfully retained or distributed under the FLSA, the Florida Minimum Wage Act, and Florida common law after the deadline to resolve the FMWA demand letter passed. [ECF No. 40.] A copy of this letter was sent to Mr. Collado, who did not identify any factual inaccuracies to the undersigned.

20.    Mr. Collado remained in contact with the undersigned. During one telephone conversation that occurred on December 7, 2022, Mr. Collado recounted a situation in which Ciro Constanzo, a former General Manager, told him $900,000 in tips was distributed amongst Roman Jones, Aris Nanos, and Sia Hemmatti in one year, and that another owner – Lee Lyons – was not aware of this situation. Mr. Collado also identified Defendants as using Unify Employee as their payroll company and City National Bank for their corporate accounts during the call.

21.    During the same conversation with Mr. Collado on December 7, 2022, he recalled and described a situation when he complained to Roman Jones and John Maria about the distribution of the tips at Kiki.

22.    The undersigned then sent a corrected FMWA demand letter to Defendants on December 8, 2022, to address a scrivener's error in the prior FMWA demand letter, again emailing copies of it to those identified in the letters as a claimant, and none advised the undersigned of any facts incorrectly stated therein.

23.    To assemble a collective action, the undersigned filed a Motion for Conditional Certification on January 19, 2022 [ECF No. 44].

24.    Mr. Collado executed a Declaration on December 13, 2022, and Mr. Guerra on December 19, 2022, after each confirmed the facts contained therein were true and correct. [ECF Nos. 44-1, 44-2.]

25.    Each described, in his Declaration, the differences between the service charges imposed by Kiki and gratuities (tips or overtips) left by customers, and that each was paid with "an hourly wage less than the applicable minimum wage, commissions (or service charges), and tips," along with other factual details. [ECF Nos. 44-1 at ¶¶11, 15, 16; 44-2 at ¶¶14, 16, 17.]

26.    The undersigned then filed the Second Amended Complaint ("SAC") on January 11, 2023 [ECF No. 59] and provided copies of it by email to Mr. Collado and the others who had

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884    FAX 305.230.4844
www.fairlawattorney.com

joined the case by then. The SAC alleged that Defendants paid a direct hourly wage that was "less than" or "below" the federal and Florida minimum wages. *Id.* at ¶¶8, 28, 40, 90, 98, 109.

27.    Defendants requested the Court to dismiss the SAC by contending that they were confused about whether Count I sought relief under 29 U.S.C. §203(m)(2)(B) as a claim for tip confiscation and retention or for recovery of minimum wages, by contending that Count II was not viable because the FMWA does not permit a claim for tip confiscation and retention absent a minimum wage violation, and by claiming that Count III was not viable because Florida law does not consider tips as wages. [ECF No. 63.]

28.    The undersigned filed a Response in Opposition to the Defendants' Motion to Dismiss directed to the SAC, to which the Defendants filed a Reply. [ECF Nos. 64, 69.]

29.    To assemble a collective action for Count I of the SAC, the undersigned file a Renewed Motion for Conditional Certification on January 27, 2022 [ECF No. 65.]Messrs. Collado, Guerra, and Taylor executed Declarations in support of the Motion, wherein each described his experiences at Kiki, the differences between the service charges (imposed by Kiki) and gratuities (tips or overtips left by customers), and identified how each received as pay "an hourly wage less than the applicable minimum wage, commissions (or service charges), and tips." [ECF Nos. 65-1 at ¶¶13, 17; 65-2 at ¶¶17-19; 65-3 at ¶22.] Messrs. Collado, Guerra, and Taylor each attested to not receiving all the tips they should have received because Defendants improperly or failed to distribute them. [ECF Nos. 65-1 at ¶18, 65-2 at ¶21, 65-3 at ¶23.]

30.    Defendants then *admitted to liability* by conceding that discrepancies existed in the distribution of the tips at issue in this lawsuit in their February 8, 2023, Answers to Plaintiff's Interrogatories Nos. 4 and 19, validating the basis for pursuing recovery of tips for Mr. Collado and the others who worked at Kiki. [ECF No. 122-1.]

31.    The Court directed the parties to conduct a settlement conference on March 1, 2023.[5] In preparation, the undersigned discussed with Mr. Collado and others who attended the event's significance, the nature of the claims being pursued (for tips and not service charges), and the potential for resolution.

---

[5]    If compelled, the undersigned would divulge certain information discussed during the settlement conference and its impact on his view of the viability of the claims alleged.

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

32.     After the settlement conference was adjourned, the undersigned emailed a letter to Mr. Collado and the other former employees at Kiki who attended to remind them of the confidential nature of the proceedings, discuss the claims in the lawsuit, and specify that the claims were for recovery of "tips" under three different legal theories.

33.     The Court conducted a hearing on the Joint Motion to Dismiss on March 23, 2023, and dismissed the SAC without prejudice for the reasons stated on the record. [ECF No. 112.]

34.     Defendants objected to the initial discovery, resulting in a discovery hearing on April 5, 2023, wherein the Court required them to provide better and more complete responses. [ECF Nos. 121, 145.]

35.     The Third Amended Complaint (TAC) was filed on April 7, 2023 [ECF No. 122].[6]

36.     Like the SAC, the TAC reiterated that Defendants paid a direct hourly wage that was "less than" or "below" the applicable Florida minimum wage(s). *Id.*, at ¶¶95, 99, 101, 108, 110, 120, 122.[7] The TAC removed the references to the payment/receipt of a service charge as immaterial and unnecessary to the FMWA claims asserted based on the undersigned's understanding of how the FMWA incorporated 29 U.S.C. §203(m)(2)(B), and created a similar cause of action for recovery of tips improperly retained or distributed regardless of the wages paid.[8]

37.     Priya Krishna interviewed Mr. Collado and the undersigned on April 11, 2023, for an article to be published in the New York Times. Ms. Krishna discussed with Mr. Collado his experiences while working at Kiki, the differences between tips and service charges, and his thoughts on them. Mr. Collado responded to several of Ms. Krisna's follow-up questions by confirming how he told diners to tip in cash to ensure he would receive the money and asked the owners at Kiki about who received money from the service charges and tips without a response.[9]

---

[6]     Defendants misrepresent that the TAC alleged "that Defendants failed to pay minimum wages" in paragraphs 102, 111, and 123 of Count II. [ECF No. 243 at ¶7.]

[7]     The TAC omitted the references from the SAC to the payment of a reduced direct hourly wage (or "tip credit") in Count I as immaterial. [*Compare* ECF Nos. 59, 122.]

[8]     Defendants always had (and then produced in this case) the payroll records identifying how and how much they paid Mr. Collado and the other members of the Collective. Defendants also had Declarations wherein Mr. Collado attested to receiving an hourly wage below the applicable minimum wage, supplemented by a part of the service charges, and tip. [ECF Nos. 44-1, 65-1.]

[9]     The article, *The Restaurant Service Charge Isn't Going Anywhere*, was published in the New York Times on May 15, 2023, and includes statements attributable to Mr. Collado. (https://www.nytimes.com/2023/05/15/dining/restaurant-service-charges.html.)

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

38.     The Second Renewed Motion for Conditional Certification was filed on April 21, 2023, and included Mr. Collado's Declaration from December 13, 2022, and Declarations from Samantha Mehew, Hiosmel Zayas, and Brenna Wagnon [ECF Nos. 127, 127-1, 127-3, 127-4, 127-5]. Each separately attested to receiving an hourly wage below the applicable minimum wage, plus services charges and tips, and to receiving paystubs reflecting their hourly wages, service charges received, and tips distributed. *Id.*

39.     Defendants responded to the TAC with their Motion to Strike [ECF No. 136] followed by their Motion to Dismiss [ECF No. 137]. Defendants argued *inter alia* that certain language in Count II of the TAC should be stricken, while arguing that the Claim at Count II was not viable. *Id.*

40.     Plaintiff's Response in Opposition to the Motion to Strike elaborated on the position that the FMWA incorporated the FLSA's definition of wage, thereby incorporating 29 U.S.C. §203(m)(2)(B), and similarly created a cause of action for improper tip retention or distribution regardless of the total non-tip wages paid exceeded the minimum wage required by Florida law [ECF No. 143].

41.     Defendants' procedural blunder of filing a Motion to Strike and then a Motion to Dismiss [ECF Nos. 136, 137] precluded the Court from reaching the issue of whether the FMWA allows for recovery of tips improperly retained or distributed by an employer regardless of whether a tip credit is taken. [ECF No. 152: "Accordingly, the Court agrees with Plaintiff that Defendants' second Rule 12 motion—the Motion to Dismiss, ECF No. [147]—must be denied as being improperly filed."][10]

42.     The Court specifically considered Defendants' argument that "employees may recover only up to the tip credit and not the actual tips" and found "that the cases Defendants cites for this proposition provide **weak support**, as they discuss the FLSA rather than the FMWA." [ECF No. 152 at fn. 1.] [*Emphasis added.*]

---

[10]     Defendants' procedural error precluded the Court from making a substantive ruling on the viability of Plaintiff's FMWA claim alleged at Count II. The Court declined to address Defendants' arguments for dismissal of Count II because of their mistake, and so they are not "without blame" in allowing the FMWA claim to persist. *Compare Caiazza v. Marceno*, 2021 WL 1193166, at *1 (M.D. Fla. Mar. 30, 2021) (Denying sanctions under 28 U.S.C. §1927 and finding the Defendant "is not without blame. He could have moved for summary judgment on the matter but did not do so. This left the exemption for trial.")

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

43.     No court has yet ruled on the issue presented in Count II, whether the FMWA incorporates 29 U.S.C. §203(m)(2)(B), rendering it a novel issue of first impression.

44.     The undersigned diligently pursued discovery in this case, including serving interrogatories and requests for production on Defendants on January 9, 2023, and then timely obtaining a hearing to address Defendants' deficient responses thereto. [*See e.g.* ECF Nos. 120, 121, 145.] The undersigned then served a second request for production on Defendants on March 14, 2023. In response to the disclosure requirements imposed by Rule 26 and the discovery requests served on them, Defendants produced tens of thousands of documents in digital format.

45.     After going back and forth, and initially claiming that the documents could not be located, Defendants ultimately located and produced digital copies of the handwritten reports the Captains at Kiki would complete at the end of each shift to document their total sales, service charges collected, and tips collected for the three of the four weeks the undersigned requested/identified (Kiki Captain Closeout). The undersigned analyzed the Captain Closeouts to calculate the total tips reported as having been received in each of the three identified weeks against the tips Defendants reported as having distributed during those weeks in their Sales By Range and Sales Summary reports. The undersigned found accounting discrepancies between the amounts reported as collected in tips and the amounts distributed in tips each week, calling into question the accuracy of Defendants' records and accounting of the tips at issue in this lawsuit:

    a.      The total tips reported in the Kiki Captain Closeouts for the week of January 20-26, 2020, reflected a discrepancy of $2,984.72 with the tips Kiki reported as paying out in the Sales Summary report for the same week;

    b.      The total tips reported in the Kiki Captain Closeouts for the week of November 22-28, 2021, reflected a discrepancy of $9,387.25 with the tips Kiki reported as paying out in Sales By Range Report for the same week; and

    c.      The total tips reported in the Kiki Captain Closeouts for the week of February 22-27, 2022, reflected a discrepancy of $3,460.62 with the tips Kiki reported as paying out with the Sales Summary Export for the same week.

46.     Defendants, on the other hand, did not "work[] diligently" in seeking discovery and instead lollygagged by waiting until June 16, 2023, to propound any written discovery before the looming discovery cut-off of October 9, 2023. [ECF Nos. 26, 243 at ¶8.]

47.     Defendants possibly delayed serving written discovery because they always had the time and pay records for Mr. Collado. They created or possessed nearly all other records relevant

9

to the case claims and defenses. *See, e.g.*, Statement of Earnings at KIKI000008-000014 and KIKI000040-003808 (produced in discovery by Defendants as "Confidential.")

48.     Defendants mislead the Court by claiming that the undersigned unreasonably delayed responding to their written discovery served on June 16, 2023.

>     a.     Defendants neglected to acknowledge initially serving 25 initial interrogatories plus 43 requests for production (excluding sub-parts) directed to Mr. Collado and 29 Opt-Ins, totaling 750 interrogatories and 1,200 requests for production.

>     b.     Defendants served revised discovery requests on July 21, 2023, that included 6 interrogatories and 10 requests for production, totaling 120 interrogatories and 300 requests for production.

>     c.     Defendants failed to acknowledge the prior informal verbal agreement amongst counsel for an informal stay of discovery in favor of devoting efforts to mediate the case. [ECF No. 250-2.]

49.     Once the undersigned requested dates from Defendants to depose Sia Hemmati in the event the mediation proved unsuccessful on September 22, 2023, they responded by refusing to provide dates for his deposition until after they (i) received discovery responses and (ii) deposed Mr. Collado and reneged on the agreement previously struck. *Id.*

50.     The parties engaged in email exchanges not reflected on the record to confer about the pending discovery issues between October 13-18, 2023. The undersigned then prepared for and attended trial before Judge Dimitrouleas from October 30, 2023, to November 1, 2023, in *Valdivieso Figuera vs. All VIP Care Inc.*, S.D.Fla. Case No.: 0:22-CV-61553-WPD.

51.     The undersigned obtained verified answers to the interrogatories from Mr. Collado in compliance with the Court's Order [ECF No. 231] after an extensive process that started long before the hearing held on November 27, 2023, and his responses revealed information consistent with the claims pursued.[11] [*See* ECF No. 250-3.]

52.     Mr. Collado's verified Answers to Interrogatories [ECF No. 243-4] resulted from many discussions, including in-person discussions, with the undersigned law firm's paralegal, Steffany Sanguino. [ECF No. 250-3.]

53.     The undersigned coordinated to meet with Mr. Collado in person to prepare him for his deposition on Thursday, December 7, 2023.

---

[11]     Defendants sought no sanctions during the November 27, 2023, discovery discovery regarding these interrogatory answers, waiving the issue. [ECF No. 243-2.]

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

54.     Mr. Collado discussed that the Captain had the financial responsibility to account for the money collected/charged for food and drinks, service charges, and tips. He described turning in the receipts to the Manager on Duty, writing the total amounts received for each type of revenue on an envelope, and how he would distribute cash tips to people who were not eligible to receive tips – such as those working in the kitchen. Mr. Collado also discussed how he was reprimanded for asking patrons to tip in cash after having done so because Defendants were not properly distributing the credit card tips.

55.     Mr. Collado explained that besides guests who paid at the time of dining, Kiki allowed certain other guests to pay at the end of the month or weeks after dining. He explained that when those checks/accounts were paid, the money would go to the office, the office would log the money as "no revenue," and he would not see any no tips distributed from the money collected.

56.     Mr. Collado further stated that Mr. Hemmati had financial management responsibilities at Kiki before they hired their CFO, and that he was "siphoning" tips and distributing them to Roman Jones, Aris Nanos, and himself, based on a discussion he had with Ciro Constanza. Mr. Collado described overhearing the conversation Mr. Constanza had with Petra Stepanik (Bar Manager) and Petra. He specifically recalled Petra's remark "You have no idea what I've seen," in regard to improprieties at Kiki.

57.     Although Mr. Collado said he believed Mr. Hemmati's daughter improperly received money from the tip pool, he acknowledged not having personal knowledge of this fact.

58.     Mr. Collado further explained how Mr. Jones would direct him and others at Kiki to not charge customers for certain items (including costly ones such as bottles of wine, champagne, or alcohol), to attend to certain things he observed, and to take certain actions to improve the guest experience at Kiki.

59.     The undersigned also discussed with Mr. Collado the difference between tips and service charges, the discrepancy between the tips the Captains reported as having received and the tips that Defendants paid out, showed him the spreadsheets reflecting the discrepancies, and discussed the significance of the discrepancy (indicating financial irregularities).

60.     Mr. Collado's two-day deposition commenced but was not completed on Tuesday, December 12, 2023 [ECF No. 250-1].

61.     The morning session of Mr. Collado's deposition was largely innocuous, and during

11

the lunch break, the undersigned ate with Mr. Collado. Although Mr. Collado disclosed certain facts he intended to bring out later that afternoon, he did not later testify to them.

62.     Mr. Collado's deposition issues evolved from at first seeming to omit facts previously disclosed (whether in a sworn statement or a statement to the undersigned), to explicitly contradicting his prior sworn statements (and statements to the undersigned), to drawing conclusions from incomplete documents that did not allow such a conclusion to be drawn,[12] to claiming confusion and that he (and everyone else) received all they tips they were entitled to receive, to ultimately acknowledging Kiki paid him all the tips left by customers.[13] [ECF No. 250-1 at pp. 229.]

63.     After his deposition was adjourned, and while waiting for the elevator with Mr. Collado after his deposition concluded for the day, and without the undersigned saying anything, Mr. Collado remarked "I had to tell the truth."

64.     Mr. Collado discharged the undersigned the next day. [ECF No. 233, 234.]

65.     The undersigned conferred with defense counsel by requesting their position on the undersigned's withdrawal from this case by email at 5:14 p.m. on Monday, December 18, 2023.

66.     Defendants responded by email at 2:14 p.m. on Tuesday, December 19, 2023, that they needed to confer with their clients, requested the basis for withdrawal, and would attempt to coordinate a call with them and "circle back" by December 20, 2023.

67.     The undersigned responded at 3:55 p.m. that Mr. Collado had discharged the undersigned and was required to withdraw under Rule 4-1.16(a).

---

[12]     Defendants introduced excerpted pages from their payroll records that contained the payroll details identifying the amounts paid to Mr. Collado each week from September 6, 2019, to December 31, 2021, as Exhibits 6-9 (designated as "Confidential"). There was no way Mr. Collado could have actually verified (or calculated) whether he received all tips to which he was entitled based on the deposition Exhibits offered by Defendants. Missing was evidence or information that would have allowed for a comparison of the total weekly tips received against the total amount distributed in payroll, calculations for how the tips received were distributed, and calculations performed to go from the total tips received to the tips reported on Mr. Collado's weekly payrolls.

[13]     Mr. Collado testified that he had no basis to dispute that the amount of tips Defendants reported as having received in Exhibits 9-12 were inaccurate [ECF No. 250-1, pp. 192-3], despite his Answers to Interrogatories [ECF No.122-1], his discussions with the Undersigned, and his review of the spreadsheets reflecting the discrepancies between the tips calculated as having been received the Captain Reports and those reported as having been received in the Sales Summary Reports and Sales by Range Reports.

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

68.     Defendants ultimately responded by email at 8:01 a.m. on December 20, 2023, as follows: "Attached please find our clients' Rule 11 motion and exhibits in support. In light of the issues raised in the motion, our clients oppose your motion to withdraw from this case." The email attached a letter to the undersigned, a Motion for Rule 11 Sanctions Against Brian H. Pollock, Esq. and FairLaw Firm, and the Exhibits referenced in the Motion.

69.      Defendant opposed the undersigned's request to withdraw, conditioning withdrawal on having to respond to their unfiled Motion for Rule 11 Sanctions. [ECF No. 237.]

70.     The Court granted the undersigned's request to withdraw, finding that Defendants did not timely request sanctions pursuant to Rule 11. [ECF No. 241.]

71.     A week later, Defendant filed their Motion for Sanctions through Defense Counsel. [ECF No. 243.]

72.     The Undersigned served this Motion on February 9, 2024, and gave Defendants and Defense Counsel 21 days to withdraw the 1927 Motion [ECF No. 243] voluntarily and to abandon their attempt(s) at seeking sanctions from the undersigned, considering the facts and the law unequivocally establish that their arguments for sanctioning the Undersigned are meritless, lack any legitimate legal or factual basis, and that they knew their arguments were frivolous. (A copy of the letter, the draft Motion, and the email enclosing same are appended hereto as Exhibit "A".)

### III. THE LAW

Rule 11 includes provisions intended to dissuade litigants and their counsel from pursuing claims or defenses for an improper purpose, as well as those that were not legally or factually supported.

> In pertinent part, Rule 11 provides that when an attorney signs or files a pleading, motion, or other paper, he or she certifies certain things, to the best of his or her knowledge, information and belief, formed after an inquiry reasonable under the circumstances: First, that the pleading is not being submitted for an improper purpose [Rule 11(b)(1)]; second, that the legal contentions are warranted by existing law or by a nonfrivolous argument for extending the law [Rule 11(b)(2)]; and third, that the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. [Rule 11(b)(3)]. *See* Fed. R. Civ. P. 11(b). The Rule authorizes courts to sanction attorneys, law firms or parties who have violated these provisions. Fed. R. Civ. P. 11(c)(1).

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

*Estrada v. FTS USA, LLC*, 2018 WL 1836007, at *2 (S.D. Fla. Jan. 23, 2018), *report and recommendation adopted,* 2018 WL 1811907 (S.D. Fla. Mar. 16, 2018). "The purpose of Rule 11 sanctions is to "'reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers.'" *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003) (*quoting Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir.2001).)

The 1993 Advisory Committee's notes reflect the requirement for "litigants to 'stop-and-think' before initially making legal or factual contentions." Fed. R. Civ. P. 11. The Rule provides for sanctions to be imposed when a filing is frivolous, legally unreasonable, without factual foundation, or is brought for an improper purpose. Specifically, Fed. R. Civ. P. 11(b) provides:

> By presenting to the Court a pleading, written motion, or other paper- whether by signing, filing, submitting, or later advocating it-an attorney or unrepresented party ce1tifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]
> >
> > (3) the factual contentions have evidentiary support or, if specifically so identified, will likely to have evidentiary support after a reasonable opportunity for further investigation or discovery ....

Rule 11 imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed. *See Collins v. Walden*. 834 F.2d 961 (11th Cir. 1987. In addition, an attorney is required "to perform a reasonably thorough and objective investigation of the facts before asserting them as bases for [the] causes of action." *Byrne v. Nezhat*, 261 F.3d 1075, 1115 (11th Cir. 2001); Fed R. Civ. P. 1l(b).

While the "selection of the type of sanction to be imposed lies within the district court's sound exercise of discretion," *Massengale*, 267 F.3d at 1301, once a court determines that a party violated Rule 11, a court is "mandated to impose sanctions." *Chapman & Cole v. Itel Container Int'l B.V.*, 865 F. 2d 676, 685 (5th Cir. 1989). Sanctions under the Rule may be imposed against a party and her counsel. *Byrne*, 261 F.3d at 1106.

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

To determine whether a filing is frivolous and subject to Rule 11 sanctions the Court traditionally engages in a two-step analysis involving "(1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998).

If the first prong of the analysis is met, then the court will move to analyze the second prong, which focuses on whether the non-moving party should have been aware the claim was frivolous. *Id.* Concerning the second prong, the court will look to the amount of time that was available for investigation before filing the document in question, whether the signing attorney had to rely on a client for the underlying facts at issue, and whether the document was based upon a plausible view of the law. *See Jones*, 49 F.3d 692 at 695. In the instant case, both prongs are met.

### III. ARGUMENT

Defendants and Defense Counsel knew they had no basis to sanction the undersigned counsel under 28 U.S.C. §1927 or its inherent authority. The Undersigned did not engage in bad faith conduct for which sanctions could be imposed under 28 U.S.C. §1927 or the Court's inherent authority. The Undersigned did not vexatiously multiply these proceedings, pursue knowingly frivolous claims, or act in bad faith. Defendants and Defense Counsel sought sanctions in their 1927 Motion by contending that the alleged claims were frivolous based on Mr. Collado's deposition testimony as the sole basis for arguing the lack of merit. [ECF No. 243.]

The Defendants do not dispute that the undersigned was blindsided by Mr. Collado's deposition testimony but, despite their purported outrage following his deposition epiphanies, improperly and curiously only sought recourse from the Undersigned. The only way for Defendants and Defense Counsel to have argued that the Undersigned lacked a legitimate basis to file and pursue the claims alleged was to either ignore or be ignorant of the underlying facts. Under either scenario, Defendants and Defense Counsel still made bold accusations and sought significant sanctions without citing any specific evidentiary or legal support for their baseless contentions.

Rule 11 was designed to curtail the meritless and ill-fated arguments advanced in the 1927 Motion. Defendants and Defense Counsel sought sanctions from the Undersigned based on arguments they knew to be frivolous for no purpose other than to harass the Undersigned. *See Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) ('A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for

15

the purpose of harassing an opponent.") (*Quoting Primus Automotive Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir.1997)). Under the applicable objective standard, the Court properly imposes sanctions against Defendants and Defense Counsel under Rule 11 to punish them commensurate with the severity of the harassment they perpetrated on the Undersigned through their filings:

> The Eleventh Circuit appears to adopt the latter approach utilizing Rule 11 sanctions as a form of punishment as opposed to a fee-shifting measure. *Pelletier v. Zweifel*, 921 F.2d 1465, 1522 (11th Cir. 1991); *In Re Sir John, Inc.,* 142 B.R. 524 (S.D. Fla. 1992). *See Donaldson v. Clark*, 819 F.2d 1551, 1556-7 (11th Cir. 1987) (whether sanctions are viewed as a form of cost-shifting or punishment, they are imposed for the purpose of deterring attorneys from violating Rule 11.) In all instances the court has broad discretion to tailor the sanction to the particular circumstances. *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1209-10 (11th Cir. 1987).

*Ro-Ro Enterprises, Inc. v. State Farm Fire & Cas. Co.*, 1996 WL 556928, at *2 (S.D. Fla. Sept. 5, 1996). The Court properly considers the extent to which Defendants and Defense Counsel intended to wreak financial havoc on the Undersigned (and his family) by seeking $300,000 in sanctions, that the Response [ECF No 250] required the Undersigned to commit significant resources that otherwise would have been devoted to other matters, that Defense Counsel routinely practices employment law in this Court, the resources available to Defendants and Defense Counsel, the severity of their conduct, and the need to deter such conduct in this Court in the future.

> **A.**   **The 1927 Motion Is Objectively Frivolous.**

Defendant and Defense Counsel should have never filed or pursued the Motion for Sanctions [ECF No. 243], and their continued pursuit of it in light of the facts, the procedural history, and the law requires the imposition of sanctions against them under Rule 11. Defendants and Defense Counsel did not make a "reasonable inquiry" before seeking sanctions from the Undersigned, and upon the Court finding as much, it is obligated to sanction them under Rule 11. *Gulisano v. Burlington, Inc.*, 34 F.4th 935, 942 (11th Cir. 2022).

> 1.   The Claims That The Undersigned Failed To "Properly Investigate" Or
> Have A "Simple Conversation" With Mr. Collado Are Frivolous.

This argument for sanctions was withdrawn [*See* ECF No. 253]; therefore, the argument for sanctions based on the withdrawn contention has been removed.[14]

---

[14]   Defendants and Defense Counsel claimed that the Undersigned conducted an inadequate investigation, not that he facilitated Mr. Collado's presentation of false testimony. *But see U.S. v. Bradberry*,

16

      2.      <u>The Request To Sanction The Undersigned For Pursuing The FMWA Tip Credit Claim Is Frivolous.</u>

Defendants and Defense Counsel argued that the undersigned's continued prosecution of the FMWA claim contained in the TAC was improper and sanctionable in their 1927 Motion. [ECF No. 243.] They have yet to cite any authority decided since the Consolidated Appropriations Act amended the FLSA (by including 29 U.S.C. §203(m)(2)(B)) that precluded a claim under the FMWA to recover only (and all of) the tips unlawfully distributed or withheld. [*See* ECF Nos. 136, 137, 146, 147, 243.] The Undersigned did not cite any binding precedent addressing the issue in the Responses filed. [ECF Nos. 142, 143, 250.] No binding authority permits or forecloses a claim for recovery of tips under the FMWA without regard to whether the wages paid meet the minimum wage required by the FMWA. Without any authority addressing whether the FMWA incorporated 29 U.S.C. §203(m)(2)(B) to allow a claim to recover only misappropriated tips, regardless of the wage paid, the Undersigned presented a novel issue of first impression.

The court never decided this novel legal theory because the Defendants and Defense Counsel committed a procedural gaff by violating Rule 12(g) in filing a motion to strike followed by a motion to dismiss. [*See* ECF No. 136, 137, 152.] It was the Defendants and Defense Counsel, not the Undersigned, who prevented the Court from deciding the issues raised in the Motion to Dismiss directed to the TAC. [ECF No. 137, 152.] The argument the Undersigned advanced was that the FMWA incorporated 29 U.S.C. §203(m)(2)(B)'s restrictions on the distribution of tips and allowed for a claim for recovery of tips regardless of the wage paid. [ECF No. 143.] The pursuit of sanctions in the 1927 Motion against the undersigned for advancing a novel legal, which the Court did not decide due to the procedural error committed by Defendants and Defense Counsel, is frivolous.

      3.      <u>Defendants And Defense Counsel Baselessly Pursued Sanctions In Their 1927 Motion By Ignoring Or Failing To Utilize The Evidence They Created, Maintained, And Produced In Discovery.</u>

Defendants and Defense Counsel sought sanctions in their 1927 Motion against the Undersigned for purportedly delaying these proceedings. [ECF No. 243 at 12.] Defendants and

---

466 F.3d 1249, 1254 (11th Cir. 2006) ("[b]y knowingly facilitating the presentation of false testimony before the court, a defendant does more than just allow a witness to give perjured testimony; rather, he acts in a manner that obstructs the administration of justice.")

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

Defense Counsel baselessly argued that the Undersigned vexatiously multiplied these proceedings by delaying Mr. Collado's answer to Interrogatory No. 6, wherein he acknowledged that the hourly wage and service charges he received exceeded the FMWA's minimum wage. [ECF No. 243, 243-4.] To make this argument, Defendants and Defense Counsel must represent that they did not know and could not know Mr. Collado received more than the minimum wage required by the FMWA until receiving his sworn Answers to Interrogatories and deposition testimony. [ECF No. 243.]

The first problem with their argument is that there was no dispute that Mr. Collado's hourly wages and service charges exceeded the amount required by the FMWA. The other glaring problem with this argument is that, while not entirely responsible for the timing of Mr. Collado's response to the interrogatories, Defendants created and maintained Mr. Collado's time and pay records. Therefore, they already had the information (in more precise detail) than his answer to Interrogatory No. 6, and so the claim that they "needed his deposition testimony and interrogatory answer [to] definitively establish" he received more than the amount required by the FMWA is false. [ECF No. 243 at 16; *see e.g.*, KIKI000008-000014 and KIKI000040-003808, designated by Defendants as "Confidential."; and Depo. Collado, at Exhibits 5-8, designated by Defendants as "Confidential.")

Therefore, the claim that the undersigned unreasonably delayed Mr. Collado's answer to Interrogatory No. 6 or vexatiously multiplied this case is disingenuous at best. Defendants and Defense Counsel already had evidence identifying the wages and service charges they paid to Mr. Collado, just like they always possessed all the documents necessary to establish that his hourly wages and service charges exceeded the minimum wage required by the FMWA.

### B.   Defendants And Defense Counsel Knew Their 1927 Motion And Its Contents Were Frivolous.

Having established that the Motion for Sanctions filed at ECF No. 243 is frivolous by lacking an adequate investigation in addition to lacking legal and factual support, *i.e.*, "meritless'," the second prong of the court's inquiry as to whether sanctions are appropriate considers whether the individual(s) signing and certifying the assertions should have been aware that they were frivolous; "that is, whether he would have been aware had he made a reasonable inquiry." *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996). Defendants and Defense

18

cannot claim ignorance of Rule 11, having recently drafted and attempted to pursue such a motion against the undersigned. [ECF No. 237.] Their Motion is based on rank speculation, not evidence, and ignored significant facts of record and procedural blunders. Defendants and Defense Counsel are savvy enough to have known that supposition, distraction, misrepresentation, and conflicting testimony would not support an award of sanctions under 28 U.S.C. §1927 or the Court's inherent authority. They could have, but did not, file anything to address the issues identified in their 1927 Motion until after the Undersigned sought to withdraw from the case.

Defendants and Defense Counsel should have engaged in the type of professionalism normally encountered when counsel seeks to withdraw upon discharge, but they did not. Instead of promptly responding to the undersigned's conferral, they served him with a Rule 11 Motion and conditioned withdrawal upon being able to pursue sanctions under Rule 11. [ECF No. 237.] Having failed in that endeavor and without a legitimate basis, Defendants and Defense Counsel repackaged their arguments and filed a frivolous Motion for Sanctions. [ECF Nos. 241, 243.] The Court properly now addresses the impropriety demonstrated by Defendants and Defense Counsel by sanctioning them under Rule 11 commensurate with the severity of their conduct.

The Jackson Lewis P.C. website reflects that Mr. Velazquez and Mr. Sarangoulis represent employers as their primary practice area. Mr. Velazquez has practiced in Florida since 1995, appearing in 183 cases in this Court; Mr. Reiss since 1990, appearing in 98 cases; and Mr. Sarangoulis since 2018, appearing in 38 cases in this Court. Given their individual and collective experience, the 1927 Motion and arguments contained therein are frivolous, in bad faith, should have never been presented, and they know better.

Once the Court decides that conduct is sanctionable under Rule 11, it considers the following nine (9) factors in fashioning the appropriate sanction:

> Specifically, we should consider the following factors in determining an appropriate sanction: (1) "[w]hether the improper conduct was willful, or negligent"; (2) "whether it was part of a pattern of activity, or an isolated event"; (3) "whether it infected the entire pleading, or only one particular count or defense"; (4) "whether the person has engaged in similar conduct in other litigation"; (5) "whether it was intended to injure"; (6) "what effect it had on the litigation process in time or expense"; (7) "whether the responsible person is trained in the law"; (8) "what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case"; and (9) "what amount is needed to deter similar activity by other litigants." Fed.R.Civ.P. 11, advisory committee notes (1993 Amendments).

19

*Thomas v. Early Cnty., Ga.*, 518 Fed. Appx. 645, 646 (11th Cir. 2013). The Court's award of monetary sanctions should start with an award of attorney's fees to the Undersigned by determining the number of hours reasonably expended in responding to Defendants' Motion for Sanctions [ECF No. 243] multiplied by a reasonable hourly rate – in this Court and in the Eleventh Circuit Court of Appeals – which is known as the "lodestar approach." *See Bivins v. Wrap It Up, Inc.*, 380 Fed. Appx. 888, 890 (11th Cir. 2010). The Eleventh Circuit utilizes a 12-prong test to determine what constitutes a reasonable hourly rate. *Id.* Also, the reasonable number of hours expended is the hours that the Court finds were reasonably spent in obtaining the result for the client. *See Norman v. Haus. Author. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (abrogated on other grounds). The Undersigned asks the Court to augment the award the attorney's fees as sanctions to accomplish the deterrence. *Baker v. Alderman*, 158 F.3d 516, 528 (11th Cir. 1998) ("deterrence remains the touchstone of the Rule 11 inquiry.") Appropriate sanctions should take into account the frivolous request for an award of over $300,000 in sanctions against the undersigned, the intended resultant stress, anxiety, sleepless nights, and significance of such a request on the Undersigned, the financial means of Defendants, their insurance carrier, and Defense Counsel, and deterring similar conduct by other litigants.

## V.  CONCLUSION

WHEREFORE Brian H. Pollock, Esq. and FairLaw Firm, request that the Court sanction Defendants, 450 North River Drive, LLC d/b/a Kiki on the River, RJ River, LLC and Roman Jones and their counsel, Reynaldo Velazquez, Esq., Roman Sarangoulis, Esq., Allan S. Reiss, and their respective law firms, Jackson Lewis P.C., and Levine and Partners, P.A., under Rule 11 following discovery regarding the attorney's fees expended by the Undersigned and the financial resources of Defendants, their insurance carrier, and Defense Counsel.

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

## <u>RULE 11 CERTIFICATION</u>

The Undersigned certifies that a copy of this Motion was served on defense counsel on February 9, 2024 and that it has not been filed with the Court until after the expiration of 21 days in compliance with Fed. R. Civ. P. 11.

Dated this 21st day of June 2024.

s/Brian H. Pollock, Esq.
Brian H. Pollock, Esq.
Fla. Bar No. 174742
brian@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, FL 33146
Tel:    305.230.4884
Fax:    305.230.4844
*Former Counsel for Plaintiff(s)*

---

i       The Court entered its Order on Defendants' Motion on Sanctions on May 7, 2024, denying the relief requested. [ECF No. 254.] Former counsel for Plaintiff does not seek sanctions against Defendants or Defense Counsel for the portion of their Motion for Sanctions [ECF No. 243] they timely withdrew, pursuant to Fed. R. Civ. P. 11, in ECF No. 253.

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com